ORIGINAL

Receipt No. 066060

FILED
JAN 17 2007
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| BANK OF GUAM,<br>Plaintiff,<br>vs.<br>UNITED STATES OF AMERICA,<br>Defendant. | Case No: 07- 32 C<br>**COMPLAINT** |

1. This Court has jurisdiction over this claim against the United States pursuant to 28 U.S.C. section 1491.

2. Plaintiff Bank of Guam, sometimes referred to as "the Bank," is a corporation organized under the banking laws of the Territory of Guam with its principal place of business in Hagåtña, Guam.

3. Defendant is the United States government, acting through the various agencies involved in the issuance of certain United States government obligations ("USGOs") that were purchased by the Bank, and by enacting the authority for the United States possession of Guam, also called the Territory of Guam (see 48 U.S.C. sec. 1421a), to tax the income from such USGOs.

4. For more than a century, the United States has sold USGOs to the public. The USGOs are negotiable instruments. USGOs trade actively, continuously, and with great liquidity and little risk as long as the United States' covenants about them are performed. At all times relevant to this proceeding, the United States government has sold those instruments on terms which included the covenant that the income received from the USGOs may not be taxed by a possession of the United States, and has so provided in its regulations and offering circulars pertaining thereto.

5. Beginning in or about 1978, the Bank purchased, and it continues to purchase, various United States bonds, notes, treasury bills and other USGOs which had been issued by the United States government and in particular, by the Bureau of the Public Debt in the United States Department of the Treasury. The Bank has been and is now the owner, transferee, holder, holder in due course, and/or bona fide purchaser for value (collectively, the "owner") of such USGOs.

6. For many years commencing in or about 1978, the Bank purchased USGOs and then held them after purchase, receiving interest income from those investments. Each such purchase was of an obligation issued by the United States government, which had made certain representations and commitments with respect to such obligations. Each such obligation was a contract between the United States government and the owners of such USGOs (hereinafter collectively referred to as "USGO contracts"), both in the sense that all owners of such obligations, such as the Bank, were intended third party beneficiaries of such contracts and in that each such obligation was and is a negotiable instrument, and that therefore the promises of the United States government to the original purchasers ran in favor of the instruments' owners or holders such as the Bank. In every such instance, it was an integral term of the contract that the income from USGOs would be free of any taxation by any possession of the United States, including the Territory of Guam.

7. Commencing in or about 1978, the Bank purchased a number of USGOs that stated in boldface print that they were "exempt from all taxation now or hereafter imposed…by…any of the possessions of the United States." More recently, since about 1986, USGOs have not been issued in paper form but were recorded electronically in book entry form. The printed legend disappeared from those later issues, but the United States continued to commit through the Code of Federal Regulations, whose provisions are incorporated in all USGO contracts, that the same tax-exempt status of USGOs continued. Thus, the USGO obligations issued after 1986 and purchased by the Bank continued to contain and still contain the United States government's covenant that the income from such USGOs is free of any Territorial taxation.

8. In purchasing USGOs, the Bank relied at all times on these contract terms and commitments as well as on the United States government's representations, both of which were to the effect that income from USGOs would not be subject to the Guam Territorial income tax.

9. Over the years since about 1978, through various audits, investigations, correspondence and inquiries, the Guam Territorial government sought confirmation and directions at various times and from time to time from offices of the United States government at its headquarters in Washington, D.C., including, among others, the Internal Revenue Service, as to whether income from such USGOs was subject to the Guam Territorial income tax. In every instance of which Plaintiff is aware, the agencies at the headquarters of the United States government, including the Internal Revenue Service, confirmed to the Guam Department of Revenue and Taxation ("GDRT") that income from such USGOs was not subject to the Guam Territorial income tax. Those confirmations were generally and specifically known by the Bank, which relied on them in continuing to purchase and to hold USGOs.

10. In January, 2001, the United States Court of Appeals for the Ninth Circuit held that income from USGOs was indeed subject to the Guam Territorial income tax, and that such tax was imposed not by the government of the Territory of Guam, which assessed such tax and to which such tax must be paid, but rather by the United States Congress. *Gumataotao v. Dir. of Dep't of Revenue and Taxation*, 236 F. 3d 1077 (9th Cir. 2001). The United States government is the authority under which the income from USGOs is now taxed by the government of the Territory of Guam, a possession of the United States (*see* 48 U.S.C. sec. 1421a). Without authority from the United States government, the Guam Territorial government would be unable to impose the Territorial income tax described in this Complaint. The Bank was not a party to the *Gumataotao* case.

11. Within days after the Ninth Circuit's *Gumataotao* decision, the GDRT issued a notice of deficiency to the Bank for the tax years 1992, 1993 and 1994, all pertaining to the Bank's failure to pay any Guam Territorial income tax on its income from USGOs.

12. The Bank commenced litigation against the GDRT, challenging the authority of the Guam Territorial government to tax the Bank's income from USGOs. In 2003, the Bank settled that litigation by paying a $15 million tax deficiency to the Guam Territorial government with respect to the Bank's income from USGOs for all open tax years through and including 2001. The Bank based its decision to settle on the *Gumataotao* precedent, which governed all courts within the jurisdiction of the United States Court of Appeals for the Ninth Circuit, including the United States District Court for the Territory of Guam. That controlling decision made it pointless for the Bank to maintain the litigation against the GDRT.

13. The United States government, through its Congress, breached the contract terms, representations and promises contained in all of the Bank's USGOs that income from USGOs would be free of the Guam Territorial income tax, by authorizing the imposition of the Guam territorial income tax thereon.

14. At the time of the *Gumataotao* decision and at all times since, the Bank had a substantial business relationship with the Guam Territorial government, whereby the Territorial government maintained large deposit balances in its accounts at the Bank. Pursuant to certain government regulations, it was a condition of the maintenance of certain of such deposits at the Bank that the Bank must maintain account balances in USGOs in amounts that would provide adequate assurances to the Guam Territorial government that its funds deposited at the Bank were not in jeopardy.

15. At the time of the *Gumataotao* decision and at all times since, and as a consequence of the commitments and obligations described in the preceding paragraph, it was impracticable for the Bank to divest itself fully of its investments in USGOs. Accordingly, the Bank has continued to purchase USGOs and to hold them in its investment portfolio since the issuance of the *Gumataotao* decision.

16. The income from all of the USGOs described in the preceding paragraphs was, and it continues to be, represented by the United States government as being free of taxation by its possessions, including the Territory of Guam.

17. Since the settlement described at paragraph 12 above, the Bank has paid additional Guam Territorial income taxes to the government of Guam on all of the income it has earned from USGOs. The amount so paid is in excess of $ 2.3 million as of the date of this Complaint and is continually increasing from tax period to tax period. For the reasons alleged at paragraphs 14 and 15 above, it is impracticable for the Bank to alter its investment strategy so as to avoid paying Territorial income taxes on such USGO income to the government of Guam pursuant to the *Gumataotao* decision. Therefore, the Bank will continue to purchase and hold such USGOs and to pay Territorial income taxes on the income derived therefrom to the government of the Territory of Guam.

**FIRST CLAIM**

**(BREACH OF CONTRACT)**

18. Plaintiff incorporates in this First Claim all of the allegations of paragraphs 1 through 17 above, as if the same were herein fully set forth.

19. The United States government has breached its contractual obligation that the income from USGOs shall be free of the Guam Territorial income tax; and its representation to that effect has proved to be false.

20. As a direct and proximate result of the United States government's breach of contract, the Bank has suffered actual damages as follows:

(a) $15 million, which it paid to the government of the Territory of Guam as Guam Territorial income taxes on its income from USGOs pursuant to the settlement described at paragraph 12 above;

(b) An amount according to proof, but in excess of $2.3 million, consisting of income taxes the Bank has paid to the Territory of Guam on the income from such USGOs for tax years commencing in 2002;

(c) Interest on the above items as provided by law; and

(d) Further amounts according to proof at the trial.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

**SECOND CLAIM**

**(REFORMATION)**

21. Plaintiff incorporates in this Second Claim all of the allegations of paragraphs 1 through 17, 19 and 20 above, as if the same were herein fully set forth.

22. At all times prior to the *Gumataotao* decision, both the Bank and those agencies of the United States government which were in charge of the offer, sale and taxation of USGOs understood that the acts of the United States Congress did ***not*** authorize the levy of any Guam Territorial income tax on income from USGOs. At all those times, this understanding was a

mutual and reasonable mistake by both parties, was a critical term of the USGO contracts, and was a decisive reason for the Bank to purchase the USGO contracts.

23. This common and mutual mistake of both parties requires reformation of all of the USGO contracts purchased by the Bank during that period, so as to place on the United States government the financial burden of the Guam Territorial income taxes that the Bank paid to the Guam Territorial government on account of the income the Bank realized from its investments in USGOs. To do so, the United States should be required to reimburse the Bank for all such taxes, with interest as provided by law.

24. Following the *Gumataotao* decision, the United States government continued to represent to the buyers and owners of USGOs, including the Bank, that the income from such USGOs was free of all taxes by possessions of the United States such as the Territory of Guam, and so represents to this day. Because of the strictures on its business operations described in paragraphs 14 and 15 above, the Bank has continued to purchase USGOs and is likely to do so in the future.

25. The Bank's decision to continue purchasing USGOs after *Gumataotao* was influenced in part by the fact that, notwithstanding *Gumataotao*, the United States government continued and still continues to represent to the public, including the Bank, that the income from USGOs was and is free from taxes payable to Guam, which is a covenant the United States government could readily perform but has not implemented, and by the Bank's reliance on the integrity and good faith of the United States government's representation to that effect. That reliance was reasonable because the United States government had and has within its means both the power to cause the Guam Territorial income tax on such income not to be collectible, and conversely the power to state plainly that income from the USGOs *would* thereafter be subject to

the Guam Territorial income tax. Because the representation that the income from the USGOs continues to be free of Territorial taxation is still contained in the regulations adopted by the United States Department of Treasury, it continues to be an integral part of the USGO contracts. These circumstances, too, require reformation of all of the USGO contracts purchased by the Bank after the *Gumataotao* decision, in the same manner as described at paragraph 23 above.

26. This Court should reform all of the USGO contracts between the parties so as to cause them to contain an obligation on the part of the United States government, requiring it to reimburse and indemnify the Bank for all the Guam Territorial income taxes the Bank has paid to the Guam Territorial government on account of the income that the Bank has realized from its investments in USGOs and which it may be required to pay to the Guam Territorial government on account of such income hereafter.

27. As so reformed, the contracts should require the United States government to reimburse the Bank in amounts equal to all the Guam Territorial income taxes the Bank has paid and will hereafter be required to pay on account of the income that the Bank has realized and will hereafter realize from its investments in USGOs, together with interest on all sums so paid as provided by law.

28. The United States government is in breach of the thus reformed contracts, and the Bank has been damaged by such breach in amounts according to proof.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

**THIRD CLAIM**

**(IMPLIED CONTRACTS)**

29. Plaintiff incorporates in this Third Claim all of the allegations of paragraphs 1

through 17, 19, 20, and 22 through 28 above, as if the same were herein fully set forth.

30. As shown by the parties' course of conduct alleged above, at all times relevant hereto there existed, and there continue to exist, contracts implied in fact between the Bank and the United States government as to each USGO purchased by the Bank, by which the United States government is obligated to reimburse the Bank for any sums it has paid, or may hereafter be required to pay, to the government of the Territory of Guam as Guam Territorial income taxes on the income that the Bank has realized and will hereafter realize from its ownership of such USGOs. With respect to each USGO purchased by the Bank, there was such an implied-in-fact contract between the parties in that there was mutuality of intent to contract, consideration, lack of ambiguity in offer and acceptance, and actual authority to bind the United States government.

31. The implied contracts, and each of them, require that the United States government reimburse the Bank in amounts equal to all the Guam Territorial income taxes the Bank has paid, or will hereafter be required to pay, to the Guam Territorial government on account of income that the Bank has realized or will hereafter realize from its investments in USGOs, together with interest thereon as provided by law.

32. The United States government is in breach of the thus implied contract terms, and the Bank has been damaged by such breach in amounts according to proof.

WHEREFORE, Plaintiff prays for judgment as hereinafter set forth.

**FOURTH CLAIM**

**(DECLARATORY RELIEF)**

33. Plaintiff incorporates in this Fourth Claim all of the allegations of paragraphs 1

through 17, 19, 20, 22 through 28, and 30 through 32 above, as if the same were herein fully set forth.

34. Because of the facts and circumstances alleged above, the Bank expects to continue to purchase and hold USGOs as to which the United States government has represented and continues to represent that the income from them is free from any obligation to pay Guam Territorial income taxes to the government of the Territory of Guam.

35. The Bank requires a declaration from this Court that such representations do and will breach the present and future USGO contracts between the parties, that such contracts must be reformed in the manner described at paragraphs 23 and 25 above, and that the United States government must reimburse the Bank for any Guam Territorial income taxes the Bank pays, or will pay hereafter, to the government of the Territory of Guam on the income from USGOs that the Bank now holds and may purchase hereafter.

WHEREFORE, Plaintiff Bank of Guam prays for judgment against Defendant United States of America as follows:

1. For damages according to proof, but not less than $17,300,000.00, together with interest thereon as provided by law, and for its reasonable attorneys' fees.

2. For reformation of all USGOs and USGO contracts between the parties, so as to insert therein the term that the United States government is required to reimburse the Bank for any and all Guam Territorial income taxes heretofore or hereafter paid by the Bank to the government of the Territory of Guam with respect to the Bank's income from USGOs.

3. For a declaration that the United States government is obligated to reimburse the Bank on a forward basis for all sums which the Bank will hereafter be obliged to pay to the government of the Territory of Guam as Guam Territorial income taxes on income the Bank

realizes from USGOs that it purchases under the contract term or the representation that the income therefrom is free from taxation by the government of the Territory of Guam.

4. For such other and further relief as may be just in the premises.

Dated: January 12, 2007

By: [signature]

KURT W. MELCHIOR, ESQ.
Nossaman, Guthner, Knox & Elliott, LLP
Phone: (415) 398-3600
Facsimile: (415) 398-2438
ATTORNEY OF RECORD FOR PLAINTIFF
BANK OF GUAM

OF COUNSEL

JEROME SAPIRO, JR., ESQ.
The Sapiro Law Firm
Phone: (415) 771-0100
Fax: (415) 771-3142

KATRINA J. LEE, ESQ.
Nossaman, Guthner, Knox &
Elliott, LLP
Phone: (415) 398-3600
Facsimile: (415) 398-2438