**No. 07-32C**
**(JUDGE BRADEN)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**BANK OF GUAM,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

# DEFENDANT'S MOTION TO DISMISS

---

**Respectfully submitted,**

**PETER D. KEISLER**
**Assistant Attorney General**

**JEANNE E. DAVIDSON**
**Director**

**BRIAN A. MIZOGUCHI**
**Trial Attorney**
**Commercial Litigation Division**
**Civil Division**
**Department of Justice**
**1100 "L" Street, NW**
**Washington, DC 20530**
**Tele: (202) 305-3319**

**OF COUNSEL:**
**THEODORE C. SIMMS II**
**Attorney-Advisor**
**Department of the Treasury**
**Bureau of the Public Debt**
**Washington, D.C.**

**April 18, 2007**

**Attorneys for Defendant**

# TABLE OF CONTENTS

**PAGE(S)**


DEFENDANT'S MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS . . . . . . . . . 4

QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

NATURE OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

I. Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

A. The United States Court of Federal Claims Is A Court Of Limited Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

B. RCFC 12(b) Motions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

II. The Bank's Complaint Must Be Dismissed For Lack Of Jurisdiction . . . . . . . . . 11

A. The Bank’s Claims Are Barred By The Statute Of Limitations . . . . . . . 11

B. To The Extent The Bank May Be Alleging Fraudulent Misrepresentation Or Inducement To Contract, Such A Claim Must Be Dismissed Because The Court Expressly Lacks Jurisdiction To Entertain Such Tort Claims 15

C. There Is No Jurisdiction For Judgment Declaring Breach, Reformation And Implying An Indemnification Obligation In Hypothetical Future USGOs That The Bank May Elect To Purchase . . . . . . . . . . . . . . . . . . . 17

III. The Bank's Complaint Fails To State A Claim Upon Which Relief May Be Granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**TABLE OF CONTENTS (CON'T)**

**PAGE(S)**

A. The Bank's Claims Should Be Dismissed Because The Bank Is Collaterally Estopped By Prior Litigation Rejecting Its Claim That The GTIT Is A Tax By A "Possession" And Thus Not Applicable To USGOs.. .19

B. The Bank Has No Claim Upon Which Relief May Be Granted Because The United States Was Not Bound Either To Exempt The Bank From Application Of The GTIT To USGOs Or To Indemnify The Bank Against GTIT Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Aetna Casualty and Surety Co. v. United States,
655 F.2d 1047 (Ct. Cl. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Airmotive Engineering Corp. v. United States,
210 Ct. Cl. 7, 11 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Bank of America v. Chaco,
539 F.2d 1226 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Bank of Guam,
2002 U.S. Dist. LEXIS 9662 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Bank of Guam v. Director of Dept. of Rev. & Taxation,
No. 01-00016, 2002 U.S. Dist. LEXIS 9662 (D. Guam 2002) . . . . . . . . . . . . . . . . passim

Caguas Central Federal Savings Bank v. United States,
215 F.3d 1304 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

California-Pac. Util. Co. v. United States,
194 Ct. Cl. 703, 720 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Conley v. Gibson,
355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Dynalectron Corp. v. United States,
4 Cl. Ct. 424, 428, aff'd mem., 758 F.2d 665 (Fed. Cir. 1984) . . . . . . . . . . . . . . . . . . . . . 10

Federal Crop Ins. Corp v. Merrill,
332 U.S. 380 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Fidelity Construction Co. v. United States,
700 F.2d 1379 (Fed. Cir.), cert. denied, 464 U.S. 826 (1983) . . . . . . . . . . . . . . . . . . . . 10

**TABLE OF AUTHORITIES (CON'T)**

**CASES** **PAGE(S)**

Figueroa v. United States,
57 Fed. Cl. 488 (2003) . . . . . . . . . . 11

Flowers v. United States,
__ Fed. Cl. __, 2007 WL 655513 . . . . . . . . . . 19

Gumataotao v. Director of Dept. Of Rev. & Taxation,
236 F.3d 1077 (9th Cir. 2001) . . . . . . . . . . passim

Hart v. United States,
910 F.2d 815 (Fed. Cir. 1990) . . . . . . . . . . 12

Hopland Band of Pomo Indians v. United States,
855 F.2d 1573 (Fed. Cir. 1988) . . . . . . . . . . 12

Int'l Order of Job's Daughters v. Lindeburg & Co.,
727 F.2d 1087 (Fed. Cir. 1984) . . . . . . . . . . 19

Kentucky ex rel. Cabinet for Human Resources v. United States,
16 Cl. Ct. 755, 760 (1989) . . . . . . . . . . 17

Kirby v. United States,
201 Ct. Cl. 527, 539 (1973), cert. denied, 417 U.S. 919 (1974) . . . . . . . . . . 12

L.S.S. Leasing Corp. v. United States,
695 F.2d 1359 (Fed. Cir. 1982) . . . . . . . . . . 12

Logan Canyon Cattle Assoc. v. United States,
34 Fed. Cl. 165 (1995) . . . . . . . . . . 17

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992) . . . . . . . . . . 17

Massachusetts Bay Transp. Auth. v. United States,
21 Cl. Ct. 252, 262 (1990) . . . . . . . . . . 17

Mills v. United States,
187 Ct. C 410 F. 2d 1255 (1969). . . . . . . . . . .24

Mostowy v. United States, 966 F.2d 668 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Putnam Mills Corp. v. United States,
202 Ct. C 479 F.2d 1334 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Simmons v. Small Business Administration,
475 F.3d 1372 (Fed. Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Soriano v. United States,
352 U.S. 270 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

U.S. v. Dauphin Deposit Trust Co.,
50 F. Supp. 73 (M.D.Pa. 1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

United States v. King,
395 U.S. 1 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

United States v. Mitchell,
445 U.S. 535 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

**STATUTES AND REGULATIONS**

31 C.F.R. §309.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

31 C.F.R. § 356.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

31 C.F.R.§ 356.32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Organic Act of Guam, 64 Stat. 392 (1950), 48 U.S.C. § 1421i . . . . . . . . . . . . . . . . . . . . . . . . 6

12 U.S.C. § 548 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

I.R.C. [26 U.S.C.] § 6110(k)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

28 U.S.C. §2501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 11

31 U.S.C. § 3124 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 23

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **BANK OF GUAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 07-32C** |
| | ) | **(Judge Braden)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S MOTION TO DISMISS**

Defendant, the United States, respectfully requests that the Court dismiss this case pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC") for lack of jurisdiction, or, alternatively, for failure to state a claim upon which relief can be granted.

Plaintiff, the Bank of Guam (the "Bank"), claims, in essence, that the United States is liable for breach of contract because (1) the United States Congress authorized its territorial possession of Guam to collect a Guam Territorial Income Tax ("GTIT"); and (2) the Bank was required to pay that tax upon the interest income it received when, in 1978, it commenced purchasing United States Treasury Bonds, Notes, Bills and like obligations ("USGOs"). The Bank contends that the USGOs are contracts exempt from taxation by a "possession" of the United States and claims that the GTIT is a tax by a "possession." Congress's authorization of the GTIT appears to be the only act attributed to the United States by the Bank in its complaint before this Court as the cause of the alleged breach of contract. <u>See</u> Compl. ¶ 13.

However, Congress authorized the GTIT in 1950, and in 1976, <u>two years before the Bank first allegedly purchased USGOs,</u> the United States Court of Appeals for the Ninth Circuit

held that the GTIT was enacted by the Congress and is not a tax imposed by Guam. Bank of America v. Chaco, 539 F.2d 1226, 1227-28 (9th Cir. 1976). This GTIT-as-"possession" tax theory underlying the Bank's complaint also was rejected in Gumataotao v. Director of Dept. of Rev. & Taxation, 236 F.3d 1077, 1081 (9th Cir. 2001), and was rejected again, in prior litigation involving – and thus collaterally estopping – the Bank of Guam's claim that it was wrongfully taxed by a "possession." See Bank of Guam v. Director of Dept. of Rev. & Taxation, No. 01-00016, 2002 U.S. Dist. LEXIS 9662 (D. Guam 2002).

The Bank's complaint ignores binding precedent and essentially asks this Court to grant the Bank a complete shelter from taxes either by a possession or through the GTIT -- by requiring the United States to indemnify the Bank against its GTIT liability. The Bank demands this indemnification for any GTIT that was paid, settled, or that might be paid upon any future interest income, including hypothetical future USGOs that the Bank may elect to purchase in the future. Requiring the United States to indemnify the Bank against the GTIT, notwithstanding the Bank's obvious assumption of this risk, would be contrary to law and an unjust windfall.

Alternatively, the Bank claims that a mutual mistake was made, and further demands that the Court reform all present and future USGOs the Bank purchases to require the United States to indemnify it against the GTIT, and to declare the United States in breach of the contracts, as so reformed. However, there is no jurisdiction for this Court to entertain claims arising out of contracts that do not yet exist. Nor is there any legal basis to grant relief upon the Bank's claim to the effect that the United States agreed to be bound to a contract that, contrary to law, treats the GTIT as imposed by a possession rather than by Congress, and that would indemnify the Bank for GTIT liability upon its income it receives from USGOs that it elected to purchase.

We respectfully submit that the Court should dismiss the Bank's claims because: (1) the statute of limitations has elapsed, barring jurisdiction with respect to the Bank's allegation that the breaching action of the United States was Congress's authorizing the imposition of the GTIT – an act that occurred in 1950, as reported in the Bank of America decision published in 1976, and that predated all of the Bank's alleged 1978-and-later purchases of USGOs; (2) to the extent that the Bank might intend to allege fraudulent misrepresentation or inducement to contract, the Court expressly lacks jurisdiction to entertain such tort claims; (3) no jurisdiction exists to entertain the Bank's claim seeking a declaratory judgment that future purchases of USGOs will be breached or reformed, and shall be deemed impliedly to contain an agreement by the United States to indemnify the Bank; (4) even assuming jurisdiction, the Bank is collaterally estopped from recovering upon its claims because they are dependent upon the theory, rejected in the Bank's prior litigation, that the GTIT was wrongfully assessed upon USGOs; and (5) assuming that it is not entirely collaterally estopped, the Bank cannot prove any agreement with, and binding upon, the United States, that specifically the GTIT would not apply to income derived from USGOs, or that the United States would be required to indemnify the Bank in the event that it was required to pay the GTIT.

In support of this motion, we respectfully submit the following memorandum.

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

**QUESTIONS PRESENTED**

1. Whether the Bank's claims should be dismissed pursuant to RCFC 12(b)(1) for lack of jurisdiction because the complaint was filed after the expiration of the Court's six-year statute of limitations, 28 U.S.C. § 2501, and because the Court lacks jurisdiction to entertain claims based upon the torts of fraud or misrepresentation, or to declare judgment as to future contracts not yet in existence.

2. Whether the Bank's claims should be dismissed pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief may be granted.

**STATEMENT OF THE CASE**

**Nature Of The Case**

Plaintiff, the Bank of Guam, commencing in 1978, purchased USGOs, and alleges that it has paid a settlement and continues to pay taxes pursuant to the imposition of the GTIT upon interest income that it receives from its USGOs. The first claim of the Bank's complaint is that the United States "breached its contract obligation that the income from USGOs shall be free of the Guam Territorial income tax . . . ." See Compl. ¶ 19. Conversely, the Bank's second claim contends that the parties made a mutual mistake and their contracts should be reformed as if the GTIT was not authorized by Congress but instead was a tax of the possession of Guam from which USGOs were exempt, and to require that the United States indemnify the Bank against its past and future[1] GTIT liability. See Compl. ¶¶ 22-27. The Bank contends that "the United

[1] The Bank admits that the cause of its continuing purchase of USGOs has been that
(continued...)

States government is in breach of the thus reformed contracts." Compl. ¶ 28. The Bank's third claim seeks a declaratory judgment for "Implied Contracts" to provide for an implied indemnification for hypothetical future USGOs that the Bank may elect to purchase. See Compl. ¶¶ 29, 34-35.

**Statement Of Facts**

1. Plaintiff, the Bank, is a corporation organized under the laws of the Territory of Guam with its principal place of business in Guam. Compl. ¶ 2.

2. The United States Department of the Treasury sells and issues marketable Treasury Bills, Notes and Bonds. See Compl. ¶ 3; 31 C.F.R. part 356.

3. The Bank alleges that:

> [c]ommencing in or about 1978, the Bank purchased a number of USGOs that stated in boldface print that they were "exempt from all taxation now or hereafter imposed . . . by any of the possessions of the United States." More recently, since about 1986, USGOs have not been issued in paper form but were recorded electronically in book entry form. The printed legend disappeared from those later issues, but the United States continued to commit through the Code of Federal Regulations, whose provisions are incorporated in all USGO contracts, that the same tax-exempt status of USGOs continued. Thus, the USGO obligations issued after 1986 and purchased by the Bank continued to contain and still contain the United States government's covenant that the income from such USGOs is free of any Territorial taxation.

[1] (...continued)
the Bank has a "substantial business relationship" with the Guam government and that in order to maintain its large deposits at the Bank, Guam wishes to have the Bank purchase USGOs to provide adequate assurance that its funds on deposit are not in jeopardy. See Compl. ¶¶ 14-15, 24. It follows that the Bank would be purchasing USGOs and thereby subjecting itself to the GTIT, regardless of anything the United States is alleged to have done. The Bank purchases USGOs to meet its client's wishes, not because it has been induced into doing so by the United States.

Compl. ¶ 7.

4. In 1976, two years before the Bank allegedly commenced purchasing USGOs, the United States Court of Appeals for the Ninth Circuit (which includes Guam), published a decision concerning another bank's claim that the GTIT was a tax by Guam. Bank of America v. Chaco, 539 F.2d 1226 (9th Cir. 1976).

5. In the 1976 Bank of America decision, the court of appeals explained, among other things, that:

> Appellant Bank of America contends that since it is compelled to pay the Guam territorial income tax as imposed by § 31 of the Organic Act of Guam, 64 Stat. 392 (1950), 48 U.S.C. § 1421i, the additional burden of the 4% net profits tax imposed by . . . Guam
>
> . . . there is no dispute that the Guam territorial income tax was enacted by Congress, the issue is whether . . . it is nevertheless to be considered an imposition by the Government of Guam . . .
>
> . . . . The tax imposed by § 31 . . . is a territorial income tax mirroring the provisions of the federal tax code . . . . The tax is collected by the Government of Guam for its own use in lieu of direct appropriations from the United States Treasury.
>
> We conclude, therefore, that the enactment of § 31 by the United States Congress of the territorial income tax was done primarily to relieve the United States Treasury of the necessity of making direct appropriations; that although Congress has delegated the collection and enforcement functions to the Government of Guam, the latter is powerless to vary the terms of the federal income tax laws as applied to Guam, except as permitted by Congress. We therefore hold that the Guam territorial income tax is not a tax imposed by Guam for the purposes of 12 U.S.C. § 548; that the 4% net profit business privilege tax is the only tax imposed by Guam . . . .

Id. at 1226-28.

6. The Department of the Treasury, Bureau of Public Debt regulation at part 356, known as the Uniform Offering Circular ("UOC") is applicable to sales of marketable Treasury securities on or after March 1, 1993. 31 C.F.R. § 356.1 ("govern[s] the sale and issuance of marketable Treasury securities issued on or after March 1, 1993"). This regulation, at 31 C.F.R.§ 356.32, captioned "What tax rules apply?" contains the following statement:

> (a) *General.* Securities issued under this part are subject to all applicable taxes imposed under the Internal Revenue Code of 1986, or its successor. Under section 3124 of title 31, United States Code, the securities are exempt from taxation by a State or political subdivision of a State, except for State estate or inheritance taxes and other exceptions as provided in that section.

7. Section 3124 of title 31, United States Code, contains the following provision:

> (a) Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State.
> . . . .

Gumataotao, 236 F.3d 1977 (9th Cir. 2001).

8. In 2001, the Court of Appeals for the Ninth Circuit published a decision affirming the dismissal of claims that the GTIT [i.e., the same income tax at issue in Bank of America] could not be applied to USGOs. Gumataotao, 236 F.3d 1077 (9th Cir. 2001). The Gumataotao decision reported, among other things, that "it was Congress, not the Guam Government, that imposed a tax on U.S. Bonds." Id. at 1081.

9. The Guam Department of Revenue and Taxation ("GDRT") has sought to collect the GTIT from the Bank on account of the income it receives from USGOs. Compl. ¶ 11.

10. The Bank filed suit in the United States District Court for the District of Guam, challenging as legally erroneous the imposition of the GTIT upon USGOs. Compl. ¶ 12.

11. On May 14, 2002, the court issued its decision upon the Bank's challenge to the imposition of the GTIT upon USGOs. Bank of Guam v. Director of Dept. Of Rev. & Taxation, No. 01-00016, 2002 U.S. Dist. LEXIS 9662 (D. Guam 2002). The court reported, among other things, that the Bank's substantive claim was dismissed for failure to state a claim upon which relief may be granted, stating that:

> The respondent argues that *Gumataotao v. Director of Dep't of Rev. and Taxation*, 236 F.3d 1077 (9th Cir. 2001) controls the disposition of the petitioner's claim that interest income from United States Treasury Bonds are tax-exempt. [citation omitted]. In *Gumataotao*, the Ninth Circuit affirmed this Court's FRCP 12(b)(6) dismissal of the petitioner's claim there and held that: (1) properly construed, the GTIT does not exempt interest paid to Guam residents from United States Treasury Bonds; (2) it is not unconstitutional for Guam to collect taxes from its residents on the interest; (3) Title 31 of the United States Code does not exempt interest paid to Guam residents from United States Treasury Bonds; and, (4) allowing Guam to tax United States Treasury Bonds is not "incompatible" with congressional intent. *See Gumataotao*, 236 F.2d at 1078. . . .
>
> The Ninth Circuit's holding in *Gumataotao* directly contradicts the petitioner's assertion that the respondent erred when he determined that Guam could tax the interest income on United States Treasury Bonds.

Bank of Guam, 2002 U.S. Dist. LEXIS 9662 at *7. The court held that the Bank's claim was controlled by the Ninth Circuit's holding in Gumataotao, and dismissed the Bank's claim. The court further held that:

> Furthermore, because it is not conceivable that petitioner could amend its complaint to allege facts that would cure this defect and because the sole issue here is a matter of settled and substantive law, the Court DENIES the petitioner leave to amend its First Claim.

Id. at *8.

12. The Bank alleges that it thereafter settled the district court litigation, paying a $15 million tax deficiency to the Guam Territorial government with respect to the Bank's income from USGOs for all open tax years through 2001. Compl. ¶ 12.

13. The Bank in its complaint in this case pleads the following:

> 14. At the time of the *Gumataotao* decision and at all times since, the Bank had a substantial business relationship with the Guam Territorial government, whereby the Territorial government maintained large deposit balances in its accounts at the Bank. Pursuant to certain government regulations, it was a condition of the maintenance of certain such deposits at the Bank that the Bank must maintain account balances in USGOs in amounts that would provide adequate assurances to the Guam Territorial government that its funds deposited at the Bank were not in jeopardy.
>
> 15. At the time of the *Gumataotao* decision and at all times since, and as a consequence of the commitments and obligations described in the preceding paragraph, it was impracticable for the Bank to divest itself fully of its investments in USGOs. Accordingly, the Bank has continued to purchase USGOs and to hold them in its investment portfolio since the issuance of the *Gumataotao* decision. . . .
>
> 17. . . . For the reasons alleged at paragraphs 14 and 15 above, it is impracticable for the Bank to alter its investment strategy so as to avoid paying Territorial income taxes on such USGO income to the government of Guam . . . . Therefore, the Bank will continue to purchase and hold such USGOs and to pay Territorial income taxes on the income derived therefrom . . . .

Compl. ¶¶ 14-15, 17.

## ARGUMENT

I. Standard Of Review

### A. The United States Court of Federal Claims Is A Court Of Limited Jurisdiction

This Court is a court of limited jurisdiction. Dynalectron Corp. v. United States, 4 Cl. Ct. 424, 428, aff'd mem., 758 F.2d 665 (Fed. Cir. 1984). Its jurisdiction to entertain claims and to grant relief depends upon, and is circumscribed by, the extent to which the United States has waived its sovereign immunity. United States v. Testan, 424 U.S. 392, 399 (1976). The waiver of sovereign immunity, and hence the consent to be sued, must be expressed unequivocally and cannot be implied. Id. Jurisdiction in this Court must be construed strictly and all conditions placed upon such a grant must be satisfied before the Court may accept jurisdiction. See United States v. Mitchell, 445 U.S. 535, 538 (1980). As the United States Court of Appeals for the Federal Circuit has stated, "[i]n construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress." Fidelity Construction Co. v. United States, 700 F.2d 1379, 1387 (Fed. Cir.), cert. denied, 464 U.S. 826 (1983).

The Government's consent to suit in this Court is generally based upon the Tucker Act, 28 U.S.C. § 1491. Testan, 424 U.S. at 397. Pursuant to the Tucker Act, an action may be maintained in this Court if it is "founded either upon the Constitution or any Act of Congress, or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." Id.; 28 U.S.C. § 1491(a)(1).

The Tucker Act creates no substantive right of recovery against the United States. Except in limited circumstances not present here, the Act confers jurisdiction upon the United States Court of Federal Claims only when there is an existing substantive right to money currently due and owing. Testan, 424 U.S. at 398. Accordingly, for the Court to possess jurisdiction here, the Bank must prove the existence of an express or implied contract, or some money-mandating statute or regulation that has been violated.

**B. RCFC 12(b) Motions**

This Court will grant a RCFC 12(b)(6) motion only if it appears beyond doubt that plaintiff has failed to allege facts sufficient to support his claim. Figueroa v. United States, 57 Fed. Cl. 488, 497 (2003) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Mostowy v. United States, 966 F.2d 668, 672 (Fed. Cir. 1992)). For purposes of ruling upon a motion to dismiss, the Court accepts as true the complaint's undisputed factual allegations and should construe them in a light most favorable to plaintiff. Figueroa, 57 Fed. Cl. at 497. However, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss," and "legal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness." Id.

**II. The Bank's Complaint Must Be Dismissed For Lack Of Jurisdiction**

**A. The Bank's Claims Are Barred By The Statute Of Limitations**

Section 2501 of Title 28, United States Code, provides that:

> [e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues.

This statute is jurisdictional, because filing within the six-year period was a condition of Congress's waiver of the United States' sovereign immunity pursuant to the Tucker Act. Caguas Central Federal Savings Bank v. United States, 215 F.3d 1304, 1310 (Fed. Cir. 2000). As such, the statute of limitations must be strictly applied:

> [T]he 6-year statute of limitations on actions against the United States is a jurisdictional requirement attached by Congress as a condition of the government's waiver of sovereign immunity and, as such, must be strictly construed. [citations omitted] Exceptions to the limitations and conditions upon which the government consents to be sued are not to be implied. Soriano v. United States, 352 U.S. 270, 276 (1957).

Hopland Band of Pomo Indians v. United States, 855 F.2d 1573, 1577 (Fed. Cir. 1988); accord Hart v. United States, 910 F.2d 815, 818-19 (Fed. Cir. 1990).

A claim against the United States first accrues on the date when all the events have occurred to fix the liability of the Government and entitle the claimant to demand payment. L.S.S. Leasing Corp. v. United States, 695 F.2d 1359, 1365 (Fed. Cir. 1982); Kirby v. United States, 201 Ct. Cl. 527, 539 (1973), cert. denied, 417 U.S. 919 (1974).

The Bank, in its complaint, attributes the cause of liability to an act of the United States Congress:

> The United States government, *through its Congress, breached the contract terms*, representations and promises contained in all of the Bank's USGOs that income from USGOs would be free of the Guam Territorial income tax, *by authorizing the imposition of the Guam territorial income tax thereon.*

Compl. ¶ 13 (emphasis added). However, Congress authorized the GTIT in 1950. Bank of America, 539 F.2d at 1226 (Guam territorial income tax imposed by § 31 of the Organic Act of Guam, 64 Stat 392 (1950), 48 U.S.C. § 142li); see also Gumataotao, 236 F.3d at 1079. The

Bank knew, or should have known, that the GTIT was authorized by Congress when it was enacted in 1950.

Further, not later than 1976, the Bank knew or should have known based upon published appellate precedent governing its circuit that the GTIT was enacted by Congress and was not a tax imposed by the Government of Guam upon bank income. See Bank of America, 539 F.2d at 1227. In Bank of America, the plaintiff contended that because it was compelled to pay the GTIT, it should be exempt from paying the additional four percent net profits tax imposed by the Government of Guam because such imposition would violate a Federal law, 12 U.S.C. § 548, which allows the local government to tax the net income of a bank only once. Id. at 1226-27. In framing the issue, the court noted that "[a]lthough there is no dispute that the Guam territorial income tax was enacted by Congress, the issue is whether or not it is nevertheless to be considered an imposition by the Government of Guam." The court held that:

> We conclude, therefore, that the enactment of § 31 by the United States Congress of the territorial income tax was done primarily to relieve the United States Treasury of the necessity of making direct appropriations; that although Congress has delegated the collection and enforcement functions to the Government of Guam, the latter is powerless to vary the terms of the federal income tax laws as applied to Guam, except as permitted by Congress. We therefore hold that *the Guam territorial income tax is not a tax imposed by Guam* for the purposes of 12 U.S.C. § 548; that the 4% net profit business privilege tax is the only tax imposed by Guam . . . .

Id. at 1228-29 (emphasis added).

Presumably, notwithstanding Compl. ¶ 13, the Bank would not allege that Congress's authorization of the GTIT breached contracts before the Bank had purchased the USGOs that it alleges were the contracts breached. The Bank's complaint alleges that "[c]ommencing in or

about 1978" it purchased USGOs that stated they were exempt from tax imposed by "possessions." Compl. ¶ 7. Notably, the Bank does not allege that, when it commenced purchasing USGOs, the United States represented to the Bank that (contrary to law as set forth in the 1976 Bank of America decision) the GTIT specifically was a tax imposed by a "possession" rather than by Congress. Thus, the last and only alleged act by the United States directed at the Bank, other than the Congress's 1950 authorization of the GTIT cited in Compl. ¶ 13, would have been the sale of USGOs commencing in 1978 that were exempt from tax by a "possession" but subject to the imposition of the GTIT authorized by the Congress.

To the extent that the Bank is relying upon the language describing USGOs as exempt from taxes by any "possessions" that had been imprinted upon USGOs, that language, the Bank alleges, ceased to exist "since about 1986" with the switch from paper to book entry. Compl. ¶ 7. The Bank's allegation to the effect that the "possession" exemption representation in Treasury regulations governing the sale of its marketable securities continued in place at all times, appears to be a mistaken legal argument. Since 1993, Treasury regulations governing the sale and issuance of marketable book-entry Treasury Bills, Notes, and Bonds issued on or after March 1, 1993, 31 C.F.R. § 356.1, address tax exemption and do not express any exemption from taxation by a U.S. possession.[2]

---

[2] Other Treasury regulations concerning competitive bidding for Treasury bonds, see 31 C.F.R. part 340, and the sale of bills, part 309, refer to an exemption for "possessions," at §340.3 and 309.4, respectively. Part 340 "will be subject to the terms and conditions and the rules and regulations herein set forth, except as they may be modified in the public notice or notices issued by the Secretary in connection with particular offerings." §340.0. Accord 31 C.F.R. §309.1. 31 C.F.R. § 356.1, commonly known as the UOC, provides that "[t]he provisions in this part, including the appendices, and each individual auction announcement

(continued...)

In particular, 31 C.F.R. § 356.32, captioned "What tax rules apply?" provides that:

> (a) . . . . [u]nder section 3124 of title 31, United States Code, the securities are exempt from taxation by a State or political subdivision of a State except for State estate or inheritance taxes and other exceptions as provided in that section.

The general statutory rule on tax exemption of USGOs, section 3124(a) of Title 31 of the United States Code, does not mention "possessions" in exempting USGOs from state taxation and has been held not to exempt Treasury securities from the GTIT. Gumataotao, 236 F.3d at 1082. Accordingly, the Bank's complaint must be dismissed as time-barred by the six-year statute of limitations governing this Court's jurisdiction.

**B. To The Extent The Bank May Be Alleging Fraudulent Misrepresentation Or Inducement To Contract, Such A Claim Must Be Dismissed Because The Court Expressly Lacks Jurisdiction To Entertain Such Tort Claims**

Although the Bank alleges that the United States "breached its contract obligation that the income from USGOs shall be free of the Guam Territorial income tax; and its representation to that effect has proved to be false" see Compl. ¶ 19, the Bank does not allege that the United States either affixed upon a USGO or incorporated in a Treasury regulation governing USGO sales to the Bank, the specific representation that USGOs "shall be free of the Guam Territorial

---

[2] (...continued)
govern the sale and issuance of marketable Treasury securities issued on or after March 1, 1993," and should govern such purchases by the Bank. A reference to the exemption for "possessions" also appears in 31 C.F.R. § 342.6. This part applies, however, to Savings Notes, a type of non-marketable security (id. at § 342.2) that was withdrawn from sale in 1970 ((id. at § 342.0), and thus predates the Bank's alleged USGO purchases commencing in 1978.

Even assuming, however, that any Treasury regulation that does exempt taxes by "possessions" applies to the Bank's purchases, as noted above, the GTIT is a tax imposed by the United States Congress and not a tax by the "possession" of Guam.

income tax."[3] The only specific representation alleged by the Bank was that Treasuries were sold, initially with the imprint, consistent with Treasury regulations at the time, that they were "exempt from all taxation . . . imposed . . . by . .. any of the *possessions* of the United States." Compl. ¶ 7 (emphasis added). As noted above, in 1976, two years before the Bank purchased its first USGO, the court of appeals for the Ninth Circuit had held, in the Bank of America case, that the GTIT was not a tax of the possession of Guam. Id. at 1227-28.

The Bank did not allege that it failed to understand from the outset of its USGO purchases in 1978, 28 years after Congress enacted the GTIT and two years after the Bank of America decision, that Congress, not Guam, imposed the GTIT. Nor did the Bank allege any promise by the United States affixed to or incorporated in a USGO or Treasury regulation governing their sale to the Bank, that the United States would indemnify the Bank against the GTIT's application to USGOs. Indeed, the Bank does not even allege that, when it filed its tax returns for 1978 (the year in which it alleged commencing its purchases of USGOs) and all later years, it reported the interest income on those obligations as exempt from the GTIT rather than reporting, prior to any dispute, such income as being subject to the GTIT. In sum, the Bank neither made, nor could make, any allegation of a contract that could give rise to liability of the United States. However, even assuming that the Bank intended to allege that it was the victim of

[3] Compl. ¶ 8 alleges the Bank relied on contract terms and Government representations "*to the effect* that income from USGOs would not be subject to the Guam Territorial income tax" (emphasis added) and then argues that the United States breached contract terms, representations and promises that USGOs would be free of the GTIT (Compl. ¶ 13). The Bank did not, however allege, nor can it plead, any specific expressed Treasury regulation, representation, or promises that USGOs are exempt from Congress's GTIT - as distinguished from a tax by a State, or U.S. possession.

some sort of fraudulent misrepresentation or inducement to purchase USGOs because they were exempt specifically from the GTIT, such a claim would be a tort claim expressly beyond the Court's jurisdiction. See Aetna Casualty and Surety Co. v. United States, 655 F.2d 1047, 1059-60 (Ct. Cl. 1981). To the extent, then, that the Bank intended its complaint to allege that the United States engaged in an act or omission amounting to misrepresentation, the complaint must be dismissed for lack of jurisdiction.[4]

**C. There Is No Jurisdiction For Judgment Declaring Breach, Reformation And Implying An Indemnification Obligation In Hypothetical Future USGOs That The Bank May Elect To Purchase**

The Bank's complaint contains as its third claim, captioned "IMPLIED CONTRACTS," a demand for declaratory relief as to future contracts. The Bank's complaint and its prayer for judgment numbered "3" state that it "requires a declaration from this Court" that the representations of the United States will breach the "future USGO contracts between the parties, that such contracts must be reformed . . . ." (Compl. ¶ 35) and "that the United States government is obligated to reimburse the Bank on a forward basis for all sums the Bank will hereafter be obliged to pay" for the GTIT "on income the Bank realizes from USGOs that it purchases under the contract term or the representation that the income therefrom is free from taxation by the government of the Territory of Guam" (Compl. pp. 10-11). Simply stated, the Bank's third claim seeks declaratory judgment regarding contracts that do not exist.

This Court lacks jurisdiction to entertain suits when "the claim is anticipatory." Logan Canyon Cattle Assoc. v. United States, 34 Fed. Cl. 165, 168 (1995). The Court generally lacks

[4] As is discussed in section III of this memorandum, even assuming jurisdiction, the Bank failed to state a claim upon which relief could be granted.

authority to grant requests for declaratory judgments, and its jurisdiction to entertain an action is dependent upon a claim for money presently due. Id., citing Massachusetts Bay Transp. Auth. v. United States, 21 Cl. Ct. 252, 262 (1990) and Kentucky ex rel. Cabinet for Human Resources v. United States, 16 Cl. Ct. 755, 760 (1989); accord United States v. Testan, 424 U.S. 392, 397-98 (1976); United States v. King, 395 U.S. 1, 3 (1969). Likewise, the Bank lacks standing to pursue claims regarding future purchases that it may elect to make, because it has not suffered an "'injury in fact' – an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not 'conjectural' or 'hypothetical'" . . . . Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). There is no jurisdiction to issue such a declaratory judgment because it would not be merely incidental to a claim for money presently due but instead would dictate the terms of contracts that did not and have not come into being.

## III. The Bank's Complaint Fails To State A Claim Upon Which Relief May Be Granted

As we demonstrated above, the Court should dismiss this case for lack of jurisdiction. Assuming, for purposes of argument, jurisdiction exists to entertain the Bank’s claims, we respectfully submit that the Court should dismiss the Bank’s complaint pursuant to RCFC 12(b)(6) for failure to state a claim upon which relief may be granted.

### A. The Bank's Claims Should Be Dismissed Because The Bank Is Collaterally Estopped By Prior Litigation Rejecting Its Claim That The GTIT Is A Tax By A "Possession" And Thus Not Applicable To USGOs

The Bank’s complaint consists of claims that the United States breached a term of its USGOs providing in effect (or conversely, that the USGOs should be reformed as if they had provided) for an exemption from the Congress's GTIT, and seeking declaratory judgment for similar reformation and implied indemnification in future hypothetical USGOs. Each of these

claims is dependent upon the core construct that USGOs are exempt from tax by a possession; that the GTIT is a tax imposed by the possession of Guam, and thus that it would be wrongful for the GTIT to apply to the Bank's income from USGOs. The core issue of whether the GTIT is a tax imposed by the possession of Guam was rejected by the court of appeals in Bank of America in 1976, before any of the Bank's USGO purchases commencing in 1978, and in Gumataotao, which also held that the GTIT was a tax imposed by the United States Congress, not by Guam. These appellate precedents bar the Bank's claims as a matter of law. Further, the Bank's complaint should be summarily dismissed because the Bank is collaterally estopped from prevailing upon its claims, as they are all dependent upon the erroneous construct that USGOs are sold with an exemption from the GTIT and thus it was wrong for the GTIT to apply to USGOs.

The doctrine of collateral estoppel or "issue preclusion" focuses upon whether a particular issue, rather than a claim or cause of action, already has been litigated. Flowers v. United States, __ Fed. Cl. __, 2007 WL 655513, p. 15 (Fed. Cl. 2007), citing Int'l Order of Job's Daughters v. Lindeburg & Co., 727 F.2d 1087, 1091 (Fed. Cir. 1984). The Federal Circuit described issue preclusion as:

> (1) the issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) plaintiff had a full and fair opportunity to litigate the issue in the first action.

Flowers, 2007 WL 655513 at 15, citing A.B. Dick Co. v. Burroughs Corp., 713 F.2d 700, 702 (Fed. Cir. 1983).

In 2001, the Bank filed a suit before the United States District Court for the District of Guam, contesting the application of the GTIT to its USGOs. See Bank of Guam v. Director of Dept. Of Rev. & Taxation, No. 01-00016, 2002 U.S. Dist. LEXIS 9662 (D. Guam 2002).[5] The Bank's claim was dismissed for failure to state a claim upon which relief may be granted:

> The respondent argues that *Gumataotao v. Director of Dep't of Rev. and Taxation*, 236 F.3d 1077 (9th Cir. 2001*)* controls the disposition of the petitioner's claim that interest income from United States Treasury Bonds are tax-exempt. [citation omitted]. In *Gumataotao*, the Ninth Circuit affirmed this Court's FRCP 12(b)(6) dismissal of the petitioner's claim there and held that: (1) properly construed, the GTIT does not exempt interest paid to Guam residents from United States Treasury Bonds; (2) it is not unconstitutional for Guam to collect taxes from its residents on the interest; (3) Title 31 of the United States Code does not exempt interest paid to Guam residents from United States Treasury Bonds; and, (4) allowing Guam to tax United States Treasury Bonds is not "incompatible" with congressional intent. *See Gumataotao*, 236 F.2d at 1078. . . .
>
> The Ninth Circuit's holding in *Gumataotao* directly contradicts the petitioner's assertion that the respondent erred when he determined that Guam could tax the interest income on United States Treasury Bonds.

Bank of Guam, 2002 U.S. Dist. LEXIS 9662 at *7. The district court held that the Bank's claim was controlled by the Ninth Circuit's holding in Gumataotao, and dismissed the Bank's claim. The court went on to hold that:

---

[5] The Bank also claimed that the GDRT should be equitably estopped, and had abused his discretion, in reversing his position about whether the GTIT would be collected. Id. at *2-3. According to the District Court, the Bank's equitable estoppel claim "relies in large part upon its allegation that the respondent was not only . . the Director of the Department of Revenue and Taxation charged with collecting taxes, but he was also the Banking Commissioner charged with overseeing and regulating the [Bank]'s financial condition and . . . statements . . . [an] unique factual situation [and] arguably proposing a 'novel' legal theory." Id. at *12. That fact situation is irrelevant to the Bank's claim against the United States here.

> Furthermore, because it is not conceivable that petitioner could amend its complaint to allege facts that would cure this defect and because the sole issue here is a matter of settled and substantive law, the Court DENIES the petitioner leave to amend its First Claim.

Id. at *8.

The Bank therefore has had the opportunity to litigate, and actually litigated to a final judgment, the issue of whether the GTIT wrongly was imposed upon interest income from USGOs. The Bank lost that issue, and is collaterally estopped from relitigating it here, against the United States. See Simmons v. Small Business Administration, 475 F.3d 1372, 1374 (Fed. Cir. 2007)("[a] party precluded from relitigating an issue with an opposing party . . . is also precluded from doing so with another person." Restatement (Second) of Judgments § 29").[6] Because the Bank lost and is collaterally estopped from litigating whether it is wrongful to impose the GTIT upon USGOs, it follows that it cannot obtain relief upon its breach of contract, reformation and declaratory judgment claims, all of which depend upon the proposition that it would be erroneous for the GTIT to be applied to USGOs.

---

[6] Although the district court dismissed and denied leave to amend the Bank's claim that its USGOs were exempt from the GTIT, Bank of Guam, 2002 U.S. Dist. LEXIS 9662 at *8, it did not dismiss the Bank's equitable estoppel and abuse of discretion claims. However, these claims evidently were later abandoned by the Bank because "[i]n 2003, the Bank settled that litigation by paying a $15 million tax deficiency to the Guam Territorial government with respect to the Bank's income from USGOs for all open tax years through and including 2001." See Compl. ¶ 12. The Bank does not allege, nor does it otherwise appear, that the United States was impleaded as a necessary party to its district court challenge to the assessment of the GTIT upon USGOs. Nor does it appear that the Bank tendered to the United States the opportunity to defend or otherwise consult regarding the Bank's settlement, that it now demands be the subject of a judgment by this Court indemnifying the Bank for its GTIT liability.

**B. The Bank Has No Claim Upon Which Relief May Be Granted Because The United States Was Not Bound Either To Exempt The Bank From Application Of The GTIT To USGOs Or To Indemnify The Bank Against GTIT Liability**

In its complaint, the Bank does not allege that the United States, either upon a USGO or Treasury regulation governing their sale, represented to the Bank, that its USGOs were exempt specifically from the GTIT, as distinguished from a tax imposed by any of the *possessions* of the United States.[7] Nor does the Bank's complaint allege any promise by the United States to the Bank to indemnify it in the event that USGOs were subject to the GTIT. The Bank could not properly plead or prevail upon such an allegation, because the United States did not enter into any authorized agreement binding itself to exempt USGOs from the GTIT or to indemnify the Bank against the GTIT.

Treasury securities themselves, "together with the Statutes, Treasury Regulations, and [Treasury] Circulars" can constitute a contract determining the rights of the parties therein. E.g. U.S. v. Dauphin Deposit Trust Co., 50 F. Supp. 73, 76 (M.D.Pa. 1943)(referring to Liberty Bonds). As the Bank alleged, USGOs were once sold in paper form imprinted with a statement – consistent with Treasury regulations at the time -- that they were exempt from taxes imposed by "possessions" of the United States. However, since 1993, Treasury regulations governing the sale and issuance of marketable book-entry Treasury Bills, Notes, and Bonds ("USGOs") issued on or after March 1, 1993, 31 C.F.R. § 356.1, address tax exemptions and omit any reference to exemption from taxation by a U.S. possession. The Treasury's regulation in addressing tax exemption refers to 31 U.S.C. § 3124. See 31 C.F.R. § 356.32(a). The general statutory rule on

[7] See note 3.

tax exemption of USGOs, section 3124(a) of Title 31 of the United States Code, does not mention "possessions" in exempting USGOs from state taxation and has been held, in Gumataotao, not to exempt Treasury securities from the GTIT.

At no point in time, pre- or post the 1993 Treasury regulations, did the United States in its USGOs or by regulation contract with the Bank that the GTIT constituted an exempted tax. Nor could the Bank conceivably amend its complaint to make such an allegation – because it would be contrary to law, as follows from the Ninth Circuit's 1976 decision in Bank of America holding that the GTIT was imposed by the Congress, not Guam.[8]

Even assuming, for the sake of argument, that a Federal Government employee had stated to the Bank that the GTIT was a possession tax, or that the United States would indemnify the Bank if it turned out not to be an exempt possession tax, those statements would not be binding upon the United States, because they would be contrary to law and unauthorized. The United States is not estopped to deny the authority of its agents, Putnam Mills Corp. v. United States, 202 Ct. Cl. 1, 479 F.2d 1334, 1338 (1973); California-Pac. Util. Co. v. United States, 194 Ct. Cl. 703, 720 (1971), and any person who deals with the Government assumes the risk that the officials with whom it deals have no authority. Federal Crop Ins. Corp v. Merrill, 332 U.S. 380, 384 (1947); Airmotive Engineering Corp. v. United States, 210 Ct. Cl. 7, 11 (1976).

---

[8] Moreover, any tax related statements to or by the Guam Department of Revenue and Taxation regarding the applicability of the GTIT, are not binding upon the United States *vis a vis* the Bank. With respect to the Bank's allegations regarding IRS advice to Guam, see Compl. ¶ 9, IRS determinations can only be used by the particular taxpayer who requested it and cannot be relied upon by other taxpayers. See I.R.C. [26 U.S.C.] § 6110(k)(3)(unless otherwise provided by regulation, IRS determinations may not be used or cited as precedent).

In particular, one who relies upon a legal interpretation by a Government official assumes the risk that it is in error. Id., citing Mills v. United States, 187 Ct. Cl. 696, 700, 410 F. 2d 1255, 1257 (1969). No Government official was authorized to contract for a treatment of USGOs that would be contrary to law as set forth in Bank of America, Gumataotao, and Bank of Guam, i.e., that would agree that USGOs would be exempt from taxation pursuant to the GTIT.

Further, although the Bank did not allege that any Treasury or other Government official entered into a contract to indemnify, or even represented that the United States would indemnify, the Bank in the event that it would have to pay the GTIT, no such contract or representation would have been binding, for lack of authority. Because an indemnification generally involves a potentially unlimited obligation not covered by appropriations, in the absence of express statutory authority, no indemnification agreement can be made with the United States. See California-Pac. Util. Co., 194 Ct. Cl. 703, 1971 WL 17822, *5. Nor may an indemnification agreement be implied, because to do so would violate the Anti-Deficiency Act. See Hercules, Inc. v. United States, 516 U.S. 417 (1996). No statute or covering appropriation providing for the United States to indemnify the Bank against application of the GTIT, has been alleged by the Bank. [9]

---

[9] According to the Bank, it is the wish of one of the Bank's depositors with whom it has "a substantial business relationship" – Guam – that the Bank hold USGOs to provide "adequate assurances" that Guam's funds on deposit at the Bank "were not in jeopardy." See Compl. ¶¶ 14, 15. Notwithstanding the fact that the Bank's USGOs had been subjected to the GTIT, the Bank contends that it could continue to rely upon representations that such obligations are exempt from taxes by "possessions" as extending also to exempt the Congress's GTIT, and alleges that: "[b]ecause of the strictures on its business operations described in paragraphs 14 and 15 above the Bank has continued to purchase USGOs and is likely to do so in the future." Compl. ¶ 24. It follows that the Bank would be purchasing USGOs and thereby subjecting itself

(continued...)

## CONCLUSION

For the foregoing reasons, we respectfully submit that the Banks' complaint, in its entirety, should be dismissed for lack of jurisdiction or, alternatively, for failure to state a claim upon which relief may be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

s/Brian A. Mizoguchi
BRIAN A. MIZOGUCHI
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
Attn.: Classification Unit 8th Flr.
1100 L Street, N.W.
Washington, D.C. 20530

Tel: 202.307.0282
Telecopier:(202) 305-7643

Attorneys for Defendant

OF COUNSEL:
THEODORE C. SIMMS II
Attorney-Advisor
Department of the Treasury
Bureau of the Public Debt
Washington, D.C.

Dated: April 18, 2007

[9] (...continued)
to the GTIT, regardless of any act by the United States. The Bank purchases USGOs to meet its client's wishes, not because it has been or will be induced into doing so by the United States. In sum, any GTIT liability that the Bank incurs is the result of the Bank's election, and is not caused by any act or omission of the United States.

CERTIFICATE OF FILING

I hereby certify that on April 18, 2007, a copy of the foregoing "DEFENDANT"S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Brian A. Mizoguchi