NO: 07-32C

(JUDGE BRADEN)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BANK OF GUAM

Plaintiff,

vs.

THE UNITED STATES

Defendant.

# PLAINTIFF BANK OF GUAM'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Kurt W. Melchior
NOSSAMAN, GUTHNER,
KNOX & ELLIOTT, LLP
50 California Street, 34th Floor
San Francisco, California 94111-4799
Telephone: (415) 398-3600
Facsimile: (415) 398-2438
kmelchior@nossaman.com

Attorneys for Plaintiff
BANK OF GUAM

## TABLE OF CONTENTS

(Page)


I. Introduction ....1

II. Summary of Complaint ....2

III. Argument ....4

A. Defendant has not met its burden under RCFC 12(b) ....4

B. The Bank's suit was brought well within the six-year statute of limitations ....6

1. *Franconia Assocs. v. United States,* 536 U.S. 129, completely defeats Defendant's argument on the statute of limitations ....8

2. The statute of limitations defense should not be accepted based on the assertion that the tax on USGOs was not imposed by a possession ....10

C. Contrary to the Defendant's arguments, the Bank has not alleged any impermissible tort claims ....12

D. The Bank has stated a proper claim for declaratory relief ....13

E. The Bank is not collaterally estopped from bringing any of its claims against Defendant ....17

F. Defendant's final "catch-all" argument that it is not bound in any way does not reveal any fatal flaws in the Complaint ....20

1. The Pleading Issues Raised By Defendant Have No Merit ....20

2. Defendant concedes that its promises of tax exemption for USGO income are contractual ....21

3. Contrary to Defendant's arguments, 31 U.S.C. Section 3124 and 31 C.F.R. Section 356.1 do not abrogate Defendant's regulations that USGO income may not be taxed by Guam ....22

4. Even those actions of a government agent that are without express or implied authority may be subsequently ratified by the government ....27

5. Contrary to Defendant's claim, the parties had an implied-in-fact agreement that USGOs were exempt from the GTIT ....29

6. Defendant has cited no single authority supporting its claim that its obligation to indemnify, as alleged by the Bank, is barred ....32

7. The timing of the tax and of the bank's purchases of USGOs does not affect the outcome of this Motion ....33

**TABLE OF CONTENTS (cont'd)**

**(Page)**

8. The Bank's ongoing practice of purchasing USGO's is not dispositive of any issue or claim....................36

IV. Conclusion....................36

# TABLE OF AUTHORITIES

**(Page)**

**Cases**

*APWU v. Potter*,
343 F.3d 619 (2d Cir. N.Y. 2003) ..... 23

*Arizona v. California*,
530 U.S. 395-396, 120 S. Ct. 2304, 147 L. Ed. 2d 374 (2000) ..... 18

*Aspenwood Inv. Co. v. Martinez*,
355 F.3d 1256 (10th Cir. 2004) ..... 23

*Atchison, Topeka & Santa Fe Railway Co. v. United States*,
225 U.S. 640 ; 32 S. Ct. 702 ; 56 L. Ed. 1236 (1912) ..... 29

*Atlas Corp. v. United States*,
895 F.2d 745 (Fed. Cir. 1990) ..... 35

*Bank of America Nat'l Trust & Sav. Ass'n. v. Chaco*,
539 F.2d 1226 (9th Cir. 1976) ..... 18, 19, 34

*Bank of Guam v. Dir. of Dep't. Revenue & Taxation*,
No. 01-00016, 2002 U.S. Dist. LEXIS 9662 (D. Guam, May 14, 2002) ..... 18, 19

*Bell Atlantic Corp. v. Twombly*
(2007) 550 U.S. ____ [slip opn. at 16] ..... 5, 6

*Burnside-Ott Aviation Training Center, Inc. v. United States*,
985 F.2d 1574 (Fed. Cir. 1993) ..... 36

*California-Pacific Utilities Co. v. United States*,
194 Ct. Cl. 703 (1971) ..... 28, 29

*Centex Corp. v. United States*,
395 F.3d 1283 (Fed. Cir. 2005) ..... 31, 32, 33, 35

*Chandler v. United States*,
312 F. Supp. 1263 (N.D. Cal. 1970) ..... 7

*Chandler v. United States*,
460 F.2d 1281 (9th Cir. Cal. 1972) ..... 7

*Coast-To-Coast Fin. Corp. v. United States*,
45 Fed. Cl. 796 (2000) ..... 31

*Cole v. Young*,
351 U.S. 536 (1956) ..... 27

**TABLE OF AUTHORITIES (cont'd)**

**(Page)**

*Commonwealth of Kentucky ex rel. Cabinet for Human Resources v. United States*,
16 Cl. Ct. 755 (1989) .......... 15

*Conley v. Gibson*,
355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) .......... 5, 6

*Cuyahoga Metropolitan Housing Authority v. United States*,
57 Fed. Cl. 751 (2003) .......... 23

*Digicon Corp. v. United States*,
56 Fed. Cl. 425 (2003) .......... 28

*Erickson v. Pardus*,
551 U.S. ___ (June 4, 2007) .......... 6

*Farmers Grain Co. of Esmond v. United States*,
29 Fed. Cl. 684 (1993) .......... 5

*Ferguson v. Union Nat. Bank of Clarksburg, W. Va.*,
126 F.2d 753 (4th Cir. 1942) .......... 27

*First Nationwide Bank*,
431 F.3d 1342 (Fed. Cir. 2002) .......... 35

*Flowers v. United States*,
75 Fed. Cl. 615 (2007) .......... 17, 19

*Franconia Assocs. v. United States*,
536 U.S. 129, 122 S. Ct. 1993, 153 L. Ed. 2d 132 (2002) .......... passim

*Garrison v. United States*,
74 U.S. 688; 7 Wall. 688, 19 L. Ed. 277 (1869) .......... 27

*General Warehouse Two, Inc. v. United States*,
181 Ct. Cl. 180, 389 F.2d 1016 (1967) .......... 31

*Gould, Inc. v. United States*,
935 F.2d 1271 (Fed. Cir. 1991) .......... 5

*Gumataotao v. Dir. of Dep't of Revenue & Taxation*,
236 F.3d 1077 (9th Cir. 2001) .......... passim

*Hamlet v. United States*,
873 F.2d 1414 (Fed. Cir. 1989) .......... 4

*Harper v. Cserr*,
544 F.2d 1121 (1st Cir. 1976) .......... 5

## TABLE OF AUTHORITIES (cont'd)

(Page)


*Hercules Inc. v. United States*,
516 U.S. 417, 116 S. Ct. 981, 134 L. Ed. 2d 47 (1996) ........ 32

*Houston Ready-Cut House Co. v. United States*,
119 Ct. Cl. 120, 96 F. Supp. 629 (1951) ........ 31

*Janowsky v. United States*,
133 F.3d 888 (Fed. Cir. 1998) ........ 28

*Jansen v. United States*,
170 Ct. Cl. 346, 344 F.2d 363 (1965) ........ 31

*Jay v. Boyd*,
351 U.S. 345 (1956) ........ 23

*Khanh Phuong Nguyen v. United States*,
539 U.S. 69; 123 S. Ct. 2130; 156 L. Ed. 2d 64 (2003) ........ 20

*L.S.S. Leasing Corp. v. United States*,
695 F.2d 1359 (Fed. Cir. 1982) ........ 8

*La Van v. United States*,
382 F.3d 1340 (Fed Cir. 2004) ........ 30

*Logan Canyon Cattle Ass'n. v. United States*,
34 Fed. Cl. 165 (1995) ........ 13, 14, 15

*Massachusetts Bay Transp. Authority v. United States*,
21 Cl. Ct. 252 (1990) ........ 14, 15

*Max Drill, Inc. v. United States*,
192 Ct. Cl. 608, 427 F.2d 1233 (1970) ........ 31

*New Jersey v. New York*,
523 U.S. 767, 118 S. Ct. 1726, 140 L. Ed. 2d 993 (1998) ........ 30

*Papasan v. Allain*,
478 U.S. 265 (1986) ........ 5

*Raymark Indus., Inc. v. United States*,
15 Ct. Cl. 334 (1988) ........ 5

*Resolution Trust Corp. v. Federal Sav. & Loan Ins. Corp.*,
25 F.3d 1493 (10th Cir. 1994) ........ 23

*Rivet v. Regions Bank*,
522 U.S. 470; 118 S. Ct. 921; 139 L. Ed. 2d 912 (1998) ........ 18

## TABLE OF AUTHORITIES (cont'd)


**(Page)**

*Scheuer v. Rhodes*, 416 U.S. 232, 40 L. Ed.2d 90, 94 S. Ct. 1683 (1974) .......... 4, 5

*Silverman v. United States*, 230 Ct. Cl. 701 (1982) .......... 28, 30

*Tecom, Inc. v. United States*, 66 Fed. Cl. 736 (2005) .......... 31

*The Brig Happy Return*, 37 Ct. Cl. 262 (1902) .......... 29

*United Sales v. United States*, 34 Fed. Cl. 88 (1995) .......... 15

*United States v. Chandler*, 410 U.S. 257 (1973) .......... 7

*United States v. Dauphin Deposit Trust Co.*, 50 F. Supp. 73 (L.D. Pa. 1943) .......... 7

*United States v. Hassanzadeh*, 271 F.3d 574 (4th Cir. 2001) .......... 23

*United States v. King*, 395 U.S. 1 (1969) .......... 15

*United States v. Seckinger*, 397 U.S. 203 (1970) .......... 27

*United States v. Testan*, 424 U.S. 392 (1976) .......... 15

*United States v. Winstar Corp.*, 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed. 2d 964 (1996) .......... passim

*Usery v. Kennecott Copper Corp.*, 577 F.2d 1113 (10th Cir. 1977) .......... 27


**Statutes**


12 U.S.C. § 548 .......... 18

28 U.S.C. § 1491 .......... 15, 16

28 U.S.C. § 2501 .......... 6

**TABLE OF AUTHORITIES (cont'd)**


**(Page)**

31 U.S.C. § 3124 ........ 22, 26, 33

48 U.S.C. § 1421 *et seq.* ........ 33

55 Stat. 7 ........ 34

106 Stat. 4506 ........ 15

**Rules**

U.S. Fed. Cl. R. 12(b) ........ 2, 4, 6, 20

U.S. Fed. Cl. R. 8(a)(2) ........ 4

**Regulations**

31 C. F.R. § 356.6 ........ 24

31 C.F.R. § 309.1 ........ 25

31 C.F.R. § 309.4 ........ passim

31 C.F.R. § 340.0 ........ 25

31 C.F.R. § 340.3 ........ passim

31 C.F.R. § 343.4 ........ 22

31 C.F.R. § 345.5 ........ 22

31 C.F.R. § 356.1 ........ 21

31 C.F.R. § 356.32 ........ 22, 24, 26

31 C.F.R. § 356.32(a) ........ 26

31 C.F.R. § 357 ........ 24

31 C.F.R. § 357.2 ........ 24

31 C.F.R. §§ 309.1-309 ........ 24

31 C.F.R. §§ 309.1-309.14 ........ 24

31 C.F.R. §§ 340.1-340.12 ........ 25

31 C.F.R. pt. 309 ........ 22, 24, 25

## TABLE OF AUTHORITIES (cont'd)

**(Page)**

31 C.F.R. pt. 340 ........ 22, 24, 25

31 C.F.R. pt. 356 ........ 22, 24, 25, 26

31 C.F.R. pt. 357 ........ 24, 25

31 C.F.R. pt. 357.2 ........ 24

**Other Authorities**

Rest. 2d. Contracts, § 202(4) ........ 30

Rest. 2d Contracts ........ 9

Rest. 2d Contracts, § 202(1) (1981) ........ 11

## I. Introduction

The United States ("Defendant") breached very significant contractual obligations it owed to Plaintiff Bank of Guam ("Bank") and now attempts to sidestep the claim for damages caused by that breach. At a minimum, nearly twenty million dollars that should be reimbursed to the Bank are at stake. The Bank's breach of contract lawsuit is premised on the established principle of law set forth in the *Winstar* case (*United States v. Winstar Corp.*, 518 U.S. 839, 116 S.Ct. 2432, 135 L.Ed. 2d 964 (1996)) and confirmed in subsequent case law: The Government remains liable on its contracts even after (or because) the law pertaining to the contracts has changed. The Bank brought its Complaint at the appropriate time, when all the critical elements of a contract claim—agreement, breach, and damages—had been fulfilled. Contrary to the Defendant's lead argument concerning the statute of limitations, the Bank brought the Complaint well within the six-year statutory period, in keeping with the Supreme Court case, *Franconia Assocs. v. United States*, 536 U.S. 129, 122 S. Ct. 1993, 153 L. Ed. 2d 132 (2002). Defendant's Motion to Dismiss ("Motion") provides no authority for dismissal. The Motion should be denied.

In what should prove to be a futile effort to have this case dismissed, Defendant primarily advances two points: (1) The Bank's claims against Defendant are wholly based on the assertion that Congress wrongfully authorized the territorial possession of Guam to collect a Guam Territorial Income Tax ("GTIT"), and that authorization took place in 1950, triggering the statute of limitations at that time, decades before the Bank purchased any of the Territorial income tax-free United States Government obligations ("USGOs") at issue, and (2) The tax complained of by the Bank was not a tax imposed by a possession but rather by Congress. Over

and over, Defendant makes these points as if they must lead inevitably to dismissal. They do not. Defendant has mischaracterized the thrust and substantive allegations of the Complaint.

Regarding the six-year statute of limitations, Defendant has ignored the Supreme Court's *Franconia* decision, which is virtually on all fours with this case. Defendant ignores Treasury regulations by which it has covenanted that the Territory of Guam cannot tax income from Treasury securities. All of its arguments for dismissal require illogical leaps and a complete disregard of the actual Complaint and the established premises on which it is based.

Defendant must meet a high standard to achieve dismissal on an RCFC 12(b) Motion. It has utterly failed to do so. Instead, Defendant spews forth a number of irrelevancies and unfounded arguments in the hope that together they will induce dismissal. The Bank must be permitted to move forward with its Complaint, and the Defendant should be required to file an Answer forthwith.

## II. Summary of Complaint

For more than a century, Defendant has sold USGOs to the public. (Complaint, ¶ 4.) In accordance with applicable regulations and offering circulars, Defendant, acting through its Treasury Department, sells these negotiable instruments on terms that include the covenant that the income received from them (*e.g.*, interest income) may not be taxed by any of Defendant's possessions. (*Ibid.*) The Territory of Guam is one of Defendant's possessions. (*Id.*, ¶ 10.)

The Bank is a corporation organized under the banking laws of the Territory of Guam, with its principal place of business in Hagåtña, Guam. (*Id.*, ¶ 2.) Since 1978, the Bank has purchased and held USGOs and, in so doing, has realized substantial amounts of interest income. (*Id.*, ¶¶ 5-6.) Every USGO that the Bank purchased was a contract between it and

Defendant. The Bank, as the owner of such obligations, is an intended third party beneficiary of such contracts. Moreover, because each such obligation is a negotiable instrument, Defendant's promises to the original purchasers run in favor of the owners or holders of these instruments, such as the Bank. An integral term of all such contracts is that the income derived from USGOs will be free from taxation by Defendant's possessions. (*Id.*, ¶ 6.) *See, e.g.*, 31 C.F.R. §§ 309.4, 340.3.

From time to time since 1978, the Guam Territorial government sought and received confirmation from Defendant, acting through its Treasury Department, Internal Revenue Service, that income from such USGOs was not subject to the GTIT. (*Id.*, ¶ 9.) Over the years, the Bank was made aware that Defendant had issued such confirmations to the Guam Department of Revenue and Taxation ("GDRT"). The Bank relied on Defendant's confirmations that USGOs were exempt from the GTIT in deciding to continue to purchase and to hold those instruments. (*Ibid.*)

In January, 2001, the United States Court of Appeals for the Ninth Circuit issued a decision in which it held that income from USGOs was subject to the GTIT. *Gumataotao v. Dir. of Dep't of Revenue & Taxation*, 236 F.3d 1077 (9th Cir. 2001) ("*Gumataotao*"). Moreover, the Court held, the GTIT is imposed by Defendant (specifically, by Congress ), not by the Guam Territorial government, which, through the GDRT, assesses, collects, and otherwise administers the GTIT. (Complaint, ¶ 10.)

Acting through Congress, Defendant authorized assessment of the GTIT against income derived from USGOs. (*Id.*, ¶ 13.) In so doing, Defendant breached its covenant that such income will be free from taxation by Defendant's possessions. [*Ibid.*]

The Bank was damaged by Defendant's breach beginning in 2003, when it paid a $15,000,000 tax payment to the GDRT with respect to the interest income that the Bank had earned from its investments in USGOs in the prior tax years, through and including 2001, that then remained open. (*Id.*, ¶ 12.) For subsequent tax years, the Bank has paid more than $2,300,000 to the GDRT for the GTIT assessed against its USGO interest income. (*Id.*, ¶ 17.)

The Guam Territorial government maintains substantial deposit balances in its accounts at the Bank. By law, however, the Guam Territorial government may maintain such deposit accounts at the Bank only if, and to the extent that, the Bank holds USGOs in amounts that provide assurance to the Territorial government that those deposit accounts are not in jeopardy. (*Id.*, ¶ 14.) Consequently, it is impracticable for the Bank to divest itself fully of its investments in USGOs. (*Id.*, ¶ 15.) Moreover, Defendant, acting through its Treasury Department, continues to this day to sell USGOs on terms that include the covenant that the income received from them may not be taxed by any of Defendant's possessions. (*Id.*, ¶ 16.)

Based on the foregoing allegations of fact, the Bank has stated claims for breach of contract, reformation, breach of implied contracts, and declaratory relief.

## III. Argument

### A. Defendant has not met its burden under RCFC 12(b).

Rule 8(a)(2) of the rules of this Court requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." In requesting a dismissal pursuant to Rule 12(b), Defendant faces a very high hurdle. The Court must accept as true the Complaint's factual allegations and must construe the facts in the light most favorable to plaintiff, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 40 L. Ed.2d 90, 94 S. Ct. 1683 (1974). *See also Hamlet v. United States*, 873 F.2d 1414, 1416 (Fed. Cir. 1989); *Farmers Grain Co. of Esmond v. United States*, 29

Fed. Cl. 684, 686 (1993). A complaint need only make a prima facie showing of jurisdiction to defeat a motion to dismiss. *Farmers Grain, supra*, 29 Fed. Cl. at 686. *Cf. Raymark Indus., Inc. v. United States*, 15 Ct. Cl. 334, 338 (1988).

Moreover, if the undisputed facts reveal any possible basis on which the non-moving party might prevail, the Court must deny the motion. *Scheuer v. Rhodes, supra*, 416 U.S. at 236. In ruling upon a motion to dismiss for failure to state a claim, the Court must accept as true both the facts presented in the Complaint and any reasonable inferences therefrom and should construe them in a light most favorable to the Bank. *Papasan v. Allain*, 478 U.S. 265, 283 (1986) (citing, inter alia, *Scheuer v. Rhodes, supra*); *Gould, Inc. v. United States*, 935 F.2d 1271, 1274 (Fed. Cir. 1991); *Harper v. Cserr*, 544 F.2d 1121, 1122 (1st Cir. 1976).

In a "Motion to File Supplemental Authority," Defendant has called the Court's attention to the Supreme Court's very recent decision in *Bell Atlantic Corp. v. Twombly* (2007) 550 U.S. ____ [slip op. at 16], for its "retirement" of a passage in *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), which stated that a complaint is sufficient unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley,* 355 U.S. at 45-46. But the Court in *Bell Atlantic* did not change the relevant pleading standard under Rule 8, nor did it change the standards for ruling on a motion to dismiss, nor did it overturn *Conley v. Gibson*. Rather, the Court merely said that the "beyond doubt" language means that, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." (Slip op. at 16.)

The Complaint here is quite specific in its allegations of what the Defendant promised the Bank and how that promise was breached. It therefore exceeds the *Bell Atlantic*

standards. The Bank's statement of its claim is only required to '"give the defendant fair notice of what the ... claim is and the grounds upon which it rests."' *Bell Atlantic Corp. v. Twombly*, 550 U.S. ___ (2007) (slip op., at 7-8) (quoting *Conley v. Gibson, supra*, 355 U.S. at 47). Clearly, Defendant has more than "fair notice" of the Bank's claim and of the grounds upon which the Bank's claim rests.

*Bell Atlantic* did not change the established rule that when ruling on a motion to dismiss, a court is required to accept as true all of the factual allegations contained in the Complaint. *Erickson v. Pardus*, 551 U.S. ___ (June 4, 2007) (slip op., at 5) (citing *Bell Atlantic Corp.*)

Defendant has not presented a single legal authority that merits the granting of its Rule 12(b) motion.

**B. The Bank's suit was brought well within the six-year statute of limitations.**

Defendant claims that the Bank's suit is time barred pursuant to Section 2501 of Title 28 of the United States Code. Section 2501 provides for a six-year statute of limitations for "[e]very claim of which [this] Court. . . has jurisdiction." Defendant's argument appears to be as follows: In light of Congress' authorization of the GTIT in 1950, the six-year statute of limitations began running then and expired long ago. After all, so the Defendant's argument goes, the Bank claims that Defendant is liable for breach of contract because Congress authorized the imposition of the GTIT. Motion, pp. 12-13.[1] Defendant's argument must fail.

---

[1] Defendant makes this argument even though the Complaint describes the long history of a course of conduct before this dispute arose, and an understanding which has been shared and even fostered by Defendant until this day (*see* Complaint, ¶¶ 9, 16), to the effect that despite whatever taxing authority Congress may have enacted in 1950 or at any other time, income *from United States Government obligations* was not subject to Guam's Territorial tax.

Defendant's argument disregards the primary premise of the Complaint: Under the rule of *United States v. Winstar Corp.*, *supra*, the Bank is entitled to recover its damages, which are measured by the taxes it paid to the GDRT on its USGO income. Those damages did not accrue until the Bank, contrary to the USGO contract terms, became obliged to pay those taxes and then paid them. USGOs are issued pursuant to contracts between Defendant and the purchaser. *Chandler v. United States,* 312 F. Supp. 1263, 1265 (N.D. Cal. 1970) ("rights or [estates] in … savings bonds are created by federal contract and controlled by federal law"), *aff'd, Chandler v. United States,* 460 F.2d 1281 (9th Cir. Cal. 1972), *rev'd on other grounds, United States v. Chandler,* 410 U.S. 257 (1973). Terms and conditions stated in Treasury Department regulations and circulars are included in those contracts. *United States v. Dauphin Deposit Trust Co.,* 50 F. Supp. 73,76 (L.D. Pa. 1943)*; see* Motion, p. 22. Under *Winstar,* the Government remains liable on its contracts even though the law under which the contracts were made has changed.[2] Under this rule, Defendant is liable for the damages the Bank has suffered due to Defendant's failure to provide the contractually promised benefit of no taxation by its possessions. Those damages are measured by the amount of the taxes it paid to the Territory of Guam.

Moreover, the Supreme Court decision in *Franconia Assocs. v. United States,* discussed *infra*, entirely forecloses Defendant's position on the running of the statute of limitations.

---

[2] See Part III.F.7, *infra*, for discussion of the point that the timing of the tax and of the Bank's purchases of USGOs does not affect this rule.

### 1. *Franconia Assocs. v. United States,* 536 U.S. 129, completely defeats Defendant's argument on the statute of limitations.

As Defendant points out, a claim first accrues on the date when all the events have occurred to fix Defendant's liability and entitle the claimant to demand payment. *L.S.S. Leasing Corp. v. United States*, 695 F.2d 1359, 1365 (Fed. Cir. 1982); *see* Motion, p. 12. Thus, it does not follow that Defendant's mere authorization of the GTIT started the statute of limitations running on the Bank's claims regarding taxes on income from USGOs, whether purchased or unpurchased at the time. If the law were to permit such claims, Defendant would constantly be subject to highly speculative claims. The statute of limitations did not begin to run until the Bank was actually damaged by paying Guam a tax on its income from USGOs. *Franconia Assocs. v. United States*, *supra*, is virtually on all fours with this case as concerns the running of the statute of limitations and forecloses the government's position entirely.

In *Franconia*, certain housing developers' contracts with the Government allowed them to prepay their development loans. Over time, Congress became concerned that the prepayments were eviscerating the subsidized housing programs which these loans supported. Congress changed the law several times, primarily by enacting a law with the acronymous name of ELIHPA, forbidding prepayments with increasing severity.[3] The borrowers, who had entered into loan agreements before 1979, sued the United States in 1997, claiming that the changes in the law had effected "a repudiation of their contracts." *Franconia,* 536 U.S. at 133-35, 122 S. Ct. at 1997-99. The Government argued, however, and this Court and the Court of Appeals agreed, that the suit was too late, and the statute of limitations had run, because "'the breach [which plaintiffs claimed] occurred immediately upon enactment of ELIHPA'" in 1988. This

---

[3] This is a brief and highly condensed description of the successive legislative tightenings of the government loan programs in issue, but sufficient to explain the point of the *Franconia* holding.

was so, the Government argued, '"because, by its terms, ELIHPA took away the borrowers' unfettered right of prepayment.'" *Franconia*, 536 U.S. at 139, 122 S. Ct. at 2000. That argument is exactly like the one presented here by Defendant, that the enactment of the GTIT in 1950 took away the bond holders' right to receive the USGO interest free of Guam taxation, even though Defendant, itself, had consistently held until *Gumataotao, supra,* in 2001 that such income ***was not*** subject to the GTIT.

The unanimous Supreme Court demolished that argument. Quoting Corbin and the Restatement (Second) of Contracts, the Court ruled that in enacting ELHIPA Congress had only *repudiated*, not breached, its contractual obligations. A repudiation, the High Court ruled, is a "'voluntary affirmative act' indicating that the promisor 'will commit a breach' when performance becomes due." *Franconia,* 536 U.S. at 143, 122 S. Ct. at 2002. The promisee may elect to treat that repudiation as a breach and sue; but the repudiation also '"give[s] the promisee the right of electing either to . . . wait till the time for [the promisor's] performance has arrived, or to act upon [the renunciation] and treat it as a final assertion by the promisor that he is no longer bound by the contract.'" (*Ibid.*)

Under that analysis, "**if the injured party instead [of electing to treat the repudiation as an immediate breach] opts to await performance, 'the cause of action accrues, and the statute of limitations commences to run, from the time fixed for performance rather than from the earlier date of repudiation.**'" (*Ibid.*; emphasis supplied.)

From that quote, it is but a very short step to the case at bar. Congress may have enacted the law in 1950 that the *Gumataotao* court held 51 years later to have authorized the territorial tax on income from USGOs. But, even assuming against all reason that Defendant could have "repudiated" in 1950 a series of promises (that the bond income would be free of the

territorial tax) which it did not make until the bonds were sold to this holder commencing in or about 1978, the Bank, as the victim of those broken promises, could "opt[] to await performance." In other words, the Bank could enjoy the income as territorial tax-free when actually received, and have its cause of action accrue only when that expectation went unfulfilled. So seen, there can be no question that this action, brought well within six years from the Bank's 2003 payment of the territorial tax, was timely.

In addition, to state the obvious, the adoption in 1950 of the GTIT was not a breach of Defendant's repeated covenants that income from USGOs is free of territorial income tax. Nowhere in Treasury regulations or in the GTIT does Defendant say that it will not perform its covenant and that it will allow Guam to tax USGO income. The adoption of the GTIT could not be a breach of contracts Defendant had not yet made.

**2. The statute of limitations defense should not be accepted based on the assertion that the tax on USGOs was not imposed by a possession.**

Defendant also folds into its statute of limitations argument its point—repeated over and over in the Motion—that the tax complained of was imposed by Defendant and not by the possession of Guam. It is unclear why Defendant portrays this point as one in its favor. Presumably, Defendant means to say that, to the extent it made any representations that possessions could not levy the taxes in question, those representations were never breached since the taxes were not levied by the possession itself but by Congress. This argument—another misguided one—has no apparent relation to Defendant's statute of limitations defense. Nor does Defendant explain what that relationship might be. *See* Motion, pp. 14-15. In fact, as *Gumataotao* carefully explains, *Guam taxes the interest* from the USGOs ("**Guam May Tax Guam Residents on the Interest From U.S. Bonds**": Caption B at 236 F.3d at 1079); but it was *Congress which caused that tax to apply*:

> Rather than writing an entirely new tax code for Guam, Congress applied the provisions of the Internal Revenue Code . . . to Guam as the Guam Territorial Income Tax." (*Ibid.* at 1079-80, citation omitted.)

Of course it is one of the central points of the Bank's Complaint that Congress, and later the Ninth Circuit, took away what the Treasury, as seller of the bonds, promised: that the income from these instruments would be free of tax payable to any Territory. But how this issue is one about the suit being barred by the statute of limitations escapes us.

To the extent the Court considers Defendant's argument to be that it has fulfilled all of its promises under the contracts because, while it may have guaranteed that income from USGOs would not be taxable *by possessions, Gumataotao* has held that no possession has ever taxed USGOs (only Congress did it) and, therefore, no breach of contract has occurred, such argument must be rejected. Defendant does not present that argument, so we will not respond to it in full. However, if Defendant had made it, it would miss the point just made, that Congress authorized and Guam then collected the offending tax.[5] It would also ignore the intent and meaning of the USGO contracts and the course of conduct of the parties to them. The Restatement (2d) of Contracts, § 202(1) (1981), indicates that, in interpreting a contract, "[w]ords and other conduct are interpreted in light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight." *See also, Winstar,* 518 U.S. at 863 (quoting this part of the Restatement). Here, a principal purpose of the parties in each

---

4 Until Guam's Director of Revenue and Taxation set out to collect tax on the USGO income from taxpayer Gumataotao and the Ninth Circuit accepted his argument that "two-way mirroring," which would have continued the analysis long applied by the I.R.S. and other agencies and held the bond income to be free of Territorial tax, was "plainly inappropriate in this context" so that the tax did lie (p. 1080), it was a fairly debatable question whether the 1950 tax authorization actually reached the USGO income. The United States itself certainly believed for many years, and asserts even today, that the bond income was not subject to Territorial tax. (Complaint, ¶¶ 9, 24.)

transaction was to purchase and sell USGOs, the income from which would be exempt from territorial taxes. The tax exempt character of the USGO income attracted the Bank to USGOs throughout the decades and caused it to continue to purchase them. In light of these circumstances, the fact that Defendant, acting (as we have just explained) through Congress and the federal courts, and the GDRT have now defined away the Bank's rights under the contracts is contrary to the intent of the documents constituting the many agreements for the sale and purchase of USGOs, as evidenced by their plain language. Defendant is clearly not able to fulfill its promises under the contracts with the Bank.

**C. Contrary to the Defendant's arguments, the Bank has not alleged any impermissible tort claims.**

In Part II.B. of its Motion, Defendant alleges that "to the extent the Bank may be alleging fraudulent misrepresentation or inducement to contract, such a claim must be dismissed because the Court expressly lacks jurisdiction to entertain such tort claims." Motion, p. 15.[5] The Court should not even entertain this argument because Defendant does not point to any specific allegation or claim that should be stricken or dismissed as an impermissible tort claim.

The fact is that the Bank brought a claim for breach of contract, nothing else. Its four claims are respectively entitled Breach of Contract, Reformation, Implied Contracts and Declaratory Relief. The Bank understands the difference between contract and tort, and it knows that this Court has no jurisdiction over tort claims. Defendant only discusses what the Bank did <u>not</u> allege, instead of pointing to any specific line or claim of the Complaint that states or

---

[5] The Defendant's argument states that "even assuming that the Bank intended to allege that it was the victim of some sort of fraudulent misrepresentation or inducement to purchase USGOs . . . such a claim would be a tort claim expressly beyond the Court's jurisdiction." (Motion, pp. 16-17.)

constitutes a tort claim outside this Court's jurisdiction. *See* Motion, pp. 15. There are no such tort claims, and Defendant identifies none.

**D. The Bank has stated a proper claim for declaratory relief.**

Defendant asserts as one of the grounds for its Motion to Dismiss that "There Is No Jurisdiction For Judgment Declaring Breach, Reformation And Implying An Indemnification Obligation In Hypothetical Future USGOs That The Bank May Elect To Purchase." It then briefly argues that the claim cannot be brought because it "seeks declaratory judgment regarding contracts that do not exist." (Motion, p. 17.) Unfortunately for Defendant, the cases it cites do not support its position.

In *Logan Canyon Cattle Ass'n. v. United States*, 34 Fed. Cl. 165, 168 (1995), which Defendant cites, the Court dismissed a complaint because there was no claim for money associated with the complaint. The parties had a dispute about the reconstruction and maintenance of a boundary fence at a location for which the plaintiff had a ten year grazing permit. The Regional Forester directed that the Forest Service would provide the material and the permittees would perform the work required to reconstruct the fence. That did not satisfy the permittees, who sued in a District Court. There, the Government argued that the claim "falls within the exclusive jurisdiction of the Court of Federal Claims," (*id.* at 168) and the permittees followed the Government's advice and sued in this Court.

This Court dismissed the action on the ground that a suit for a declaration of rights, requiring the Government to build the fence or to pay the costs thereof, "historically has not been available in this forum under the Tucker Act." (*Id.*) Interestingly, however, the Court said at Footnote 4 on page 168 that "[t]his court does not have jurisdiction over claims for specific performance [citation], and generally lacks authority to grant requests for declaratory

judgments. [Citation.] The jurisdiction of this court to entertain an action is dependent upon a claim for money presently due." (Emphasis supplied.) Here, the Bank presents a valid claim for money presently due. Under *Logan Canyon*, that is enough to grant this Court the power to entertain a claim for declaratory relief arising from related facts, which is the Bank's Fourth Claim.

The next case Defendant cites is *Massachusetts Bay Transp. Authority v. United States*, 21 Cl. Ct. 252 (1990), though apparently only for the fact that it was cited in *Logan Canyon*. The *Massachusetts Bay* case helps the Bank, if anyone. The issue was ripeness. The Massachusetts Bay Transit Authority sued for breach of warranty and other related delays. (*Id.* at 257.) The Court noted that "[t]he case or controversy requirement of Article III of the United States Constitution prohibits federal courts from issuing advisory opinions or deciding disputes that are not concrete and adverse. [Citations.] Although established under Article I, the Claims Court traditionally has applied the case or controversy requirement unless jurisdiction conferred by Congress demands otherwise. [Citations.]" It then went on to note that the test for ripeness is "the likelihood of injury" and that "[a] case is ripe for review only if plaintiff faces a realistic danger of sustaining direct injury." (*Id. at* 258.) Later in the opinion, at pp. 262 *et seq*., the Court discussed its declaratory relief jurisdiction specifically and noted that it was dismissing the declaratory relief claim for the same reasons as discussed with respect to ripeness. It then stated that "[a] request for declaratory relief still must satisfy the case and controversy aspects of the ripeness doctrine." (*Ibid.*) The *Massachusetts Bay* case was dismissed because the Court found that "[p]laintiff will not suffer harm unless the Massachusetts State Court awards judgment [against certain consultants whom the Authority had sued] and the consultants are unable to satisfy the award. Thus, this court lacks jurisdiction over allegations hinging on resolution" of

that claim and of other related issues. (*Id.* at 262.) We will show in a moment that this case satisfies the ripeness concerns of the *Massachusetts Bay* court. Like *Logan Canyon*, that case actually helps rather than hurts the Bank.

The next case which Defendant cites in support of its motion is *Commonwealth of Kentucky ex rel. Cabinet for Human Resources v. United States*, 16 Cl. Ct. 755 (1989), again apparently only because that case was cited in *Logan Canyon*. In the *Kentucky* case, the Court actually decided to exercise jurisdiction and ruled for the plaintiff. There is little or nothing in the *Kentucky* case which even bears on the Government's argument. The Court found that the claim for declaratory relief was "included in Tucker Act jurisdiction over any express or implied contract." *Commonwealth,* 16 Cl.Ct. at 762.

Defendant then cites *United States v. Testan*, 424 U.S. 392 (1976) and *United States v. King*, 395 U.S. 1 (1969), in support of its position. The *King* case does hold outright that this Court does not have authority to enter declaratory relief judgments, but, as is well known from a number of opinions, that ruling has been overturned by an amendment to the jurisdictional provision which governs this Court, 28 U.S.C. section 1491. This Court specifically so held in *United Sales v. United States*, 34 Fed. Cl. 88, 94 (1995), noting the 1992 amendments of the Federal Courts Administration Act of 1992, Pub. L. No. 102-572, 106 Stat. 4506 (1992). And it bears noting that *Testan* was not a contract case at all, but a suit to compel reclassification of certain government employees, together with an incidental claim for back pay if the reclassification succeeded. The Court ruled that since "respondents do not rest their claims upon a contract; neither do they seek the return of money paid by them to the government," there simply was no jurisdiction in this Court over the entire claim—which was not a claim for declaratory relief. *United States v. Testan*, 424 U.S. 392, 400 (1976).

Section 1491 now grants declaratory relief jurisdiction to this Court where the declaratory relief claim is combined with a claim for money damages for breach of contract. *United Sales* plainly so holds. The question remains, is the declaratory relief which the Bank requests sufficiently related to the matured contract claims which it has properly asserted?[6] The Bank has alleged that it is required by other government regulations to maintain account balances in USGOs in amounts that would provide adequate assurances to the Guam Territorial government that its funds deposited at the Bank are not in jeopardy, and that the Bank therefore has continued to purchase and hold USGOs in order to maintain its banking business. (Complaint, ¶¶ 14-15.) The Complaint also alleges that Defendant has at all times represented, and continues to represent, that the income from those USGOs is free of taxation by the Territory of Guam. (Complaint, ¶ 16.) With respect to the non-declaratory parts of the Complaint, the Court will have to address the questions whether Defendant's representation that income from the USGOs remains free of Guam Territorial taxation, while at the same time Defendant had authorized the imposition of such a tax, constitutes a breach of contract; whether that breach has caused damages to the Bank in the form of such tax payments it was forced to make; and whether Defendant is required to make the Bank whole. Those questions are the same with respect to the taxes the Bank has already paid and with respect to those taxes that the Bank will definitely have to pay to the Territory due to its present ownership and holdings of USGOs and due to its need to purchase further United States government obligations, which Defendant continues to represent are Territorial income tax-free, as alleged in paragraphs 14, 15 and 17 of the Complaint. Therefore the issues in the declaratory relief part of this case and those in the

---

6 We appreciate that Defendant contends that the Bank's primary claims are fatally defective. That argument is addressed in other portions of this brief. For present purposes, we assume that Defendant's motion to dismiss on other grounds will be overruled.

claims for money damages are the same and are ripe for determination: Is Defendant in breach of its contract? Did, and will, the Bank suffer damages as a result of such breach? Must Defendant reimburse the Bank for such damages?

It would be sheer pedantry with no logical basis to require the Bank to sue anew each time that it pays Guam Territorial income taxes on USGO income. As long as Defendant holds out the income from USGOs as being territorial income tax-free, one decision should be able to resolve all of the Bank's claims that arise from Defendant's breach of that covenant.

**E. The Bank is not collaterally estopped from bringing any of its claims against Defendant.**

Contrary to Defendant's arguments, the collateral estoppel doctrine does not bar any part of this lawsuit, much less the entire lawsuit. As explained in *Flowers v. United States*, 75 Fed. Cl. 615 (2007), cited by Defendant, the Court may find issue preclusion under the following circumstances: (1) the issue is identical to one decided in the first action; (2) the issue was actually litigated in the first action; (3) resolution of the issue was essential to a final judgment in the first action; and (4) plaintiff had a full and fair opportunity to litigate the issue in the first action. *Flowers*, 75 Fed. Cl. at 632. Once again, Defendant's argument is fuzzy at best, but it appears that Defendant claims issue preclusion regarding two issues: (1) "whether the GTIT is a tax imposed by the possession of Guam" (Motion, p. 19), and (2) "whether the GTIT wrongly was imposed upon interest income from USGOs" (Motion, p. 21).

Regarding the first issue, the collateral estoppel argument misses the point entirely: The Bank does not dispute, and in fact it specifically alleged, that Defendant authorized the imposition of the GTIT (*See* Complaint, ¶ 13.) The very premise of the Bank's Complaint—and a necessary element of the Bank's *Winstar* argument—is that Defendant authorized the imposition of the GTIT In the prior litigation to which Defendant refers, *Bank of Guam v. Dir.*

*of Dep't. Revenue & Taxation*, No. 01-00016, 2002 U.S. Dist. LEXIS 9662 (D. Guam, May 14, 2002) ("*Bank of Guam v. Director*"), the Bank tried to claim that the tax did not apply to its USGO income, and that part of its complaint was dismissed on motion. (*Ibid.*) That claim (an attempt to relitigate *Gumataotao*) is not even close to the issues the Bank is raising in this suit, which are based on the premise that *Gumataotao* states the law and that the GDRT has applied the holding of that case to the Bank's USGO income.

In any event, there can be no collateral estoppel because the earlier case was not prosecuted to final judgment. (Complaint, ¶ 12.) As the Supreme Court has observed:

> [S]ettlements ordinarily occasion no *issue preclusion* (sometimes called collateral estoppel), unless it is clear . . . that the parties intend their agreement to have such an effect. 'In most circumstances, it is recognized that consent agreements ordinarily are intended to preclude any further litigation on the claim presented but are not intended to preclude further litigation on any of the issues presented. Thus, consent judgments ordinarily support claim preclusion but not issue preclusion.' [Citation.] This differentiation is grounded in basic res judicata doctrine. It is the general rule that issue preclusion attaches only 'when an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment." *Arizona v. California*, 530 U.S. 395-396, 120 S. Ct. 2304, 2319, 147 L. Ed. 2d 374 (2000).

It is disappointing that Defendant fails to understand such elementary concepts of law and wastes this Court's and the plaintiff's time with such absurd arguments.

Nor can collateral estoppel be based on *Bank of America Nat'l Trust & Sav. Ass'n. v. Chaco,* 539 F.2d 1226 (9th Cir. 1976). None of the parties in this lawsuit were parties to the *Chaco* matter or in privity with them, which is a necessary element of claims or issue preclusion. *Rivet v. Regions Bank,* 522 U.S. 470, 476, 118 S. Ct. 921, 925, 139 L. Ed. 2d 912 (1998). In *Chaco,* the Court decided only whether the GTIT was to be "considered an imposition by the Government of Guam for the purposes of 12 U.S.C. § 548," "which allows the local

government to tax the income of a bank but once." *Chaco*, 539 F.2d, at 1227. At issue was whether a four percent of net profits business privilege tax was imposed by Guam (the "local government") or by Congress. The Court decided that issue in favor of the Territory. Section 548 is not at issue here. Because the Bank was not in any way involved in that action, *Chaco* is only a precedent, not an issue or claim preclusion case for the purpose of this action. In any event, *Bank of America v. Chaco* holds no more than that Congress had not prevented Guam from imposing the four percent net profits tax. No decision until *Gumataotao* permitted Guam to collect any taxes on USGO income.

Regarding the second issue (*i.e.*, whether the GITT was wrongly imposed on USGO income), Defendant wrongly conflates the issues raised by the Complaint in this case and the issue the Bank raised in *Bank of Guam v. Director*. The Bank is not arguing here that the GTIT was wrongly imposed by Guam. Rather, it is arguing that its having to pay that very tax to Guam breached Defendant's contract that the USGO income would be free of Territorial tax. The District Court for the Territory of Guam did not decide that issue. There the Bank only sought to relitigate the *Gumataotao* ruling: Could Guam's Director of the GDRT collect a Territorial tax on the Bank's interest income from USGOs? *Bank of Guam v. Director*, *7. That is a wholly different question from those presented here: Whether the payment of that tax was a burden which Defendant had contractually promised the Bank that it would never have to meet, and whether that breach resulted in damages which Defendant owes to the Bank. Moreover, as already discussed, that action never went to final judgment, which is a prerequisite for any claim of collateral estoppel or issue preclusion. *Flowers*, 75 Fed. Cl., at 632.

Collateral estoppel thus does not bar the Bank's Complaint.

### F. Defendant's final "catch-all" argument that it is not bound in any way does not reveal any fatal flaws in the Complaint.

#### 1. The Pleading Issues Raised By Defendant Have No Merit.

Defendant spends much of the last section of its Argument, at Part III.B., and indeed much of its entire brief, discussing what the Bank has **not** alleged. It complains that the Bank did not plead that the Government ever made "the specific representation that USGOs 'shall be free of the Guam Territorial income tax.'" (Brief, pp. 15-16.) This is an astonishing argument since, like all federal courts, this Court only requires "a short and plain statement of the claim showing that the pleader is entitled to relief." (Rule 8(a)(2), Rules of the United States Court of Federal Claims.) The Bank has alleged in paragraph 4 of its Complaint that Defendant "has sold those instruments on terms which included the covenant that the income received from the USGOs may not be taxed by a possession of the United States, and has so provided in its regulations and offering circulars pertaining thereto." That allegation is more than ample to make the point that Defendant promised that USGO income would be free of the tax which was imposed on it.[7] In *Khanh Phuong Nguyen v. United States,* 539 U.S. 69, 70 123, S. Ct. 2130, 2132, 156 L. Ed. 2d 64 (2003), the United States Supreme Court referred to Guam as "a possession of the United States since the end of the Spanish-American War" and noted that "Congress established Guam as an unincorporated Territory . . . in 1950." (*Ibid.*) Thus, a tax payable to Guam is among those which the Complaint alleges would not be levied, according to Defendant's contractual commitments.

---

7 If, for any reason, the Court requires further specificity or specific allegations of the numerous representations by Defendant that USGO income is not subject to GITT, the Bank requests leave to amend. However, we suggest that is a subject for discovery, not for notice pleading.

Next, Defendant raises the straw man argument that the Bank claimed that Defendant was obligated "to exempt the Bank from application of the GTIT to USGOs" (Motion, p. 22). The Bank does not allege any such thing. The Bank alleges instead that Defendant ***promised in its contracts*** that there would be no territorial tax on USGO income and that Defendant breached that promise by allowing, indeed by specifically authorizing, the tax in issue. Such is the essence of the Bank's *Winstar* claim that it is entitled to recover amounts equal to the taxes it paid to the GDRT on its USGO income, as damages for the breach of that promise. *See United States v. Winstar Corp.*, 518 U.S. 839 (1996). Defendant simply misstates the issues.

**2. Defendant concedes that its promises of tax exemption for USGO income are contractual**

At the outset of this part of its argument, Defendant concedes that the USGOs "themselves, 'together with the Statutes, Treasury Regulations, and [Treasury] Circulars,' can constitute a contract determining the rights of the parties therein" (Motion, p. 22), which is what the Bank alleged (Complaint, ¶¶ 7, 8). It is thus unnecessary to discuss that point further.

Defendant goes on to argue that "since 1993," 31 C.F.R. § 356.1 "omit[s] any reference to exemption from taxation by a US Possession." (*Ibid.*) Even if this statement were correct and complete, which it is not (as explained in the next section), that would not help Defendant because (a) other sections of the same regulations, such as section 340.3,[8] specifically provide that "The bonds . . . will be exempt from all taxation now or hereafter imposed on the principal and interest thereof by any . . . of the possessions of the United States," and (b) the complaint alleges at paragraph 11 that the taxes collected by Guam include those from audits for

---

[8] *See* Part III.F.3, *infra*.

the years 1992 and later, thus obviously involving periods prior to whatever the Treasury promulgated with respect to new post-1993 USGO issues.

To which of various regulations the Bank's USGOs are subject, whether any of them are subject to the pre-1993 versions of the regulations, and how the several regulations may apply to the Bank's USGOs (as discussed briefly in Part III.F.3 below) are matters that obviously involve factual and legal issues requiring development and cannot be disposed of on a motion to dismiss.

**3. Contrary to Defendant's arguments, 31 U.S.C. Section 3124 and 31 C.F.R. Section 356.1 do not abrogate Defendant's regulations that USGO income may not be taxed by Guam.**

Defendant's arguments based on 31 U.S.C. section 3124 and 31 C.F.R. Part 356 are ephemeral. Defendant seems to argue that, because one Part of the Treasury regulations does not discuss territorial income tax at all, that Part countermands all other regulations that expressly prohibit territories from taxing USGO income. Specifically, Defendant seems to argue (Motion, pp. 14–5 and esp. fn. 2) that Treasury regulations governing the sale and issuance of Treasury securities are in 31 C.F.R. Part 356 and that Parts 309 and 340 are subject to Part 356. From this, Defendant seems to contend (Motion, pp. 14-15 & 22-23) that, because 31 U.S.C. section 3124 and 31 C.F.R. section 356.32 prohibit *States* from taxing income from Treasury securities, Defendant does not breach its contracts with the Bank when it allows Guam, a Territory, to tax USGO income.

Defendant's arguments based upon section 3124 and Part 356 are wrong. That statute and regulation do not give a Territory authority to tax USGO income. To the contrary, other regulations that govern specific USGOs, such as bills, bonds and notes, ***expressly prohibit*** a Territory from taxing such income. *See, e.g.*, 31 C.F.R. sections 309.4, 340.3, 343.4, and 345.5. Since 31 U.S.C. section 3124 and 31 C.F.R. Part 356 do not say that a possession ***may*** tax

income from USGOs but are silent on that subject, Defendant's interpretation of them ***as implying*** that a Territory may tax such income conflicts with a "common-sense reading of the language" of the statute and regulations as a whole. This is impermissible. *Resolution Trust Corp. v. Federal Sav. & Loan Ins. Corp.*, 25 F.3d 1493, 1500 (10th Cir. 1994).

If Defendant had wanted to covenant that a Territory **may** tax USGO income, it could have said so, but it would also have had to delete the prohibition against such tax from its regulations. Defendant did not do so, and to this day Defendant covenants in its regulations that a Territory may not tax USGO income. Defendant cannot now "torture the language" of the regulations to escape from its contractual obligations. (*Ibid.*) *See also, Aspenwood Inv. Co. v. Martinez*, 355 F.3d 1256, 1261 (10th Cir. 2004).

Defendant's argument is also contrary to standards of construction of federal regulations. Like a statute, to the extent possible, provisions within a single Title of the Code of Federal Regulations must be construed to harmonize their various parts or sections internally and with each other. A regulation must be construed so that all of its provisions are given effect, so that no part will be made inoperative or is superfluous. *Jay v. Boyd*, 351 U.S. 345, 360 (1956); *United States v. Hassanzadeh*, 271 F.3d 574, 582 (4th Cir. 2001); *Cuyahoga Metropolitan Housing Authority v. United States*, 57 Fed. Cl. 751, 759 (2003). As stated in *APWU v. Potter*, 343 F.3d 619, 626 (2d Cir. N.Y. 2003):

> "[A] basic tenet of statutory construction, equally applicable to regulatory construction, [is] that [a text] should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error." *Silverman v. Eastrich Multiple Investor Fund*, 51 F.3d 28, 31 (3d Cir. 1995) (internal quotation marks omitted).

In short, regulations that address the same subject must not be construed in a way that makes related regulations nugatory. Instead, they should be reconciled. Defendant's argument would have 31 C.F.R. section 356.32 nullify several other sections of Title 31, in violation of this fundamental principle.

Most importantly, Defendant improperly reads 31 C.F.R. Part 356 in isolation, contrary to its express language. When the Treasury regulations are read together, they clearly show that Defendant covenants to this day that a Territory may not tax the income from USGOs. 31 C.F.R. Parts 356, on which Defendant relies, and 357 contain regulations governing the auction and issue of marketable book entry USGOs. Section 356.6 of Part 356 makes USGOs subject to Part 357. Part 357.2, in turn, contains the definitions which govern "this Part" (Part 357). The definitions make clear that the word "*State*" does not mean **just** States of the United States. Section 357.2 states explicitly:

> *State* means any State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, or any other territory or possession of the United States.

Thus, the plain fact of the matter is that the very regulations on which Defendant relies define "*State*" to include "*Territory*;" and the very point which Defendant thinks helpful in fact destroys its position: The regulation it cites declares income from the USGOs to be free of Territorial taxes, among others. We could rest our case right there.

But there is more. 31 C.F.R. section 357.1 says that the rights and obligations of Defendant and the rights of any Person against Defendant are governed by Treasury regulations, without limitation. Part 357 thereby incorporates the other regulations governing particular USGOs, including Parts 309 and 340. 31 C.F.R. Part 309 contains regulations authorizing issue and sale of Treasury bills. When offered for sale, Treasury bills are subject to 31 C.F.R. sections 309.1 through 309.14 unless those sections are modified in the notices for particular offerings.

31 C.F.R. section 309.1 ["The Treasury bills . . . **will be subject to the terms and conditions and to the general rules and regulations herein set forth**, except as they may be modified in the public notices issues . . . in connection with particular offerings." (Emphasis added.)

31 C.F.R. Part 340 contains regulations authorizing issue and sale of Treasury bonds. When offered for sale, Treasury bonds are subject to 31 C.F.R. sections 340.1 through 340.12 unless modified by notices regarding particular offerings. 31 C.F.R. section 340.0 ["The bonds so offered . . . **will be subject to the terms and conditions and the rules and regulations herein set forth**, except as they may be modified in the public notice or notices . . . in connection with particular offerings." (Emphasis added; footnote omitted.)]

Thus, even if Parts 309 and 340 had not been incorporated into Part 357 and Part 357 had not been incorporated into Part 356, the Treasury regulations still expressly state that Parts 309 and 340 govern the terms and conditions of Treasury bills and Treasury bonds unless those terms and conditions are modified elsewhere in connection with particular offerings. One aspect of the terms and conditions governed by Parts 309 and 340 is taxation. Part 309 expressly prohibits both states and possessions of the United States from taxing the principal or interest of Treasury bills. 31 C.F.R. section 309.4 states:

> . . . **The bills** shall be subject to estate, inheritance, gift or other excise taxes, whether Federal or State, but **shall be exempt from all taxation now or hereafter imposed on the principal or interest thereof by** any State, or **any of the possessions of the United States**, or by any local taxing authority. [Emphasis added.]

Similarly, Part 340 expressly prohibits both states and possessions of the United States from taxing the principal or interest of Treasury bonds. 31 C.F.R. section 340.3 states:

> . . . The bonds will be subject to estate, inheritance, gift or other excise taxes, whether Federal or State, **but will be exempt from all taxation now or hereafter imposed on the principal or interest thereof by** any State, or **any of the possessions of the United States**, or by any local taxing authority. [Emphasis added.]

Defendant cites section 356.32(a), which merely says:

> (a) *General.* Securities issued under this part are subject to all applicable taxes imposed under the Internal Revenue Code of 1986, or its successor. Under section 3124 of title 31, United States Code, the securities are exempt from taxation by a State or political subdivision of a State, except for State estate or inheritance taxes and other exceptions as provided in that section.

Clearly, section 356.32(a) prohibits States from taxing income from USGOs. But section 356.32 is silent as to whether Territories may tax that income. It does not say that possessions may tax Treasury securities. If it did, section 356.32 would conflict with sections 309.4 and 340.3.

Defendant's argument that section 356.32 nullifies sections 309.4 and 340.3, even though section 356.32 does not address taxation by a possession, violates a fundamental rule of regulatory interpretation, namely that the relevant sections of the regulations should be construed to give effect to **all** the relevant provisions, so that no section will be made inoperative, superfluous, void or insignificant, and so that one section will not destroy another.) *See* discussion, *supra*, p. 22.)

Sections 356.32, 309.4, and 340.3 can only be harmonized one way: They supplement each other and do not contradict each other. All three say that States may not tax income from USGOs. The latter two also prohibit possessions like the Territory of Guam from taxing income from USGOs, but section 356.32 is silent on that issue. That they supplement each other is consistent with the literal wording of the three sections. It is also consistent with the duty to harmonize their construction so that all are given effect.

Defendant correctly points out that 31 U.S.C. section 3124 and 31 C.F.R. Part 356 do not expressly exempt Treasury securities from taxation by a possession of the United States (Motion, pp. 14–15 & 22). But that begs the question. 31 C.F.R. section 356.32 merely says that

a State may not tax a Treasury security. Neither the statute nor the regulation says that a possession may tax USGO income. Defendant may wish they had; but the Court should reject Defendant's argument because the Court may not interpret a regulation to mean what an agency may have "intended but did not adequately express." *Usery v. Kennecott Copper Corp.*, 577 F.2d 1113, 1119 (10th Cir. 1977).

Conversely, regulations that directly govern particular USGOs (*e.g.*, sections 309.4 and 340.3, discussed above) do expressly prohibit possessions such as Guam from taxing income from USGOs. Since Defendant drafted the regulations that prohibit such taxation, the Court must construe the regulations "strictly against the defendant." *Ferguson v. Union Nat. Bank of Clarksburg, W. Va.*, 126 F.2d 753, 758 (4th Cir. 1942), following *Garrison v. United States*, 74 U.S. 688, 690, 7 Wall. 688, 690, 19 L. Ed. 277, 278 (1869). *See also United States v. Seckinger*, 397 U.S. 203, 210–11 (1970); and *Cole v. Young*, 351 U.S. 536, 556 (1956). In short, Defendant's argument fails.

**4. Even those actions of a government agent that are without express or implied authority may be subsequently ratified by the government.**

Defendant argues that, even if a Federal Government employee had "stated to the Bank that the GTIT was a possession tax,[9] or that the United States would indemnify the Bank if it turned out not to be an exempt possession tax," those statements would not be binding on it "because they would be contrary to law and unauthorized." (Motion, p. 23.) Again, Defendant has misstated the allegations in the Complaint in order to raise a straw man argument. The Bank does not allege that its claim is based on any comments by federal employees, but rather on contract language found in the USGOs themselves or in Defendant's own regulations and on the conduct of the parties to the contracts before this dispute began. Or is Defendant arguing that its

---

[9] Surely, the Defendant meant to say, "an *impermissible* possession tax".

Departments such as the Treasury cannot bind it in the formal issue of securities and in the pronouncements of its official public rulings and regulations?

Even if the Treasury Department lacked the authority to authorize the tax exemption in the contracts, which is not the case, "it is well established that an agency can 'institutionally' ratify the contract, even in the absence of specific ratification by an authorized official." *Digicon Corp. v. United States*, 56 Fed. Cl. 425, 426 (2003). "[I]nstitutional ratification occurs when the Government seeks and receives the benefits from an otherwise unauthorized contract." (*Id.*) An unauthorized contract can be ratified by the institution when "the government receives a direct benefit and a ratifying contracting officer possesses some level of authority." (*Id.*, citing *Janowsky v. United States*, 133 F.3d 888, 891 (Fed. Cir. 1998); *see also, Silverman v. United States*, 230 Ct. Cl. 701, 707 (1982) (finding ratification where a "senior FTC official was not a contracting officer, with expressly delegated authority to enter into contracts on behalf of the FTC, but he did have authority to approve vouchers for payment as representing charges for goods or services furnished to the FTC in accordance with existing contracts").)

The facts of the cases which Defendant cites in its motion bear no resemblance to those at bar. For example, in *California-Pacific Utilities Co. v. United States*, 194 Ct. Cl. 703 (1971), a colonel negotiated with the plaintiff utility for access to the utility's right of way during troop maneuvers and, in the process, committed to indemnify the utility for any losses, which both parties thought to mean property damage. A soldier was seriously injured by coming into contact with a power line, and the utility's insurer then sought indemnity for the resulting tort damage payments from the Government. ***That*** type of commitment could not be made by a government officer, the Court found; but it specifically noted that "the United States may be

estopped by acts of its agents, officers, or employees when they act within the scope of their authority" (*Id.* at 720). The black letter observations in Defendant's brief bear no relation to the official issuance of Government obligations by the Treasury Department as being free of certain taxes, which is this case.

In the present case, Defendant itself represented on the face of USGOs, in offering circulars, and in Treasury Regulations that USGOs were not subject to state or territorial taxation. It cannot be disputed that the Treasury Department has "some level of authority" to sell USGOs to the public. By accepting payment for the USGOs, which were ultimately purchased by the Bank, Defendant received the direct benefit of the contracts—*i.e.*, full use of the investors' money until maturity of the USGOs. Thus, to the extent that the contracts were unauthorized, which is an absurd proposition in the face of the Treasury's securities program, they were institutionally ratified by Defendant when it accepted payment for the USGOs, locking the buyers—and eventually the Bank, as subsequent purchaser—into long term financial commitments.

**5. Contrary to Defendant's claim, the parties had an implied-in-fact agreement that USGOs were exempt from the GTIT.**

Defendant asserts, incorrectly, that "At no point in time, pre- or post the 1993 Treasury regulations, did the United States in its USGOs or by regulation contract with the Bank that the GTIT constituted an exempt tax." (Motion, p. 23.) We have already shown that Defendant contracted that the USGO income would be free of territorial taxes. Specific reference to the GTIT was not necessary. Rather, Guam's tax is included among the general promise that there would be no tax on USGO income *from any territory*: "The greater includes the less." *Atchison, Topeka & Santa Fe Railway Co. v. United States,* 225 U.S. 640, 649, 32 S. Ct. 702, 703, 56 L. Ed. 1236 (1912); *The Brig Happy Return*, 37 Ct. Cl. 262, 266 (1902).

Even if the representations that USGOs are exempt from Guam income tax were not authorized by Defendant, an implied-in-fact agreement would nevertheless exist between Defendant and the Bank on the issue of tax exemption. An implied-in-fact contract is "founded upon a meeting of minds, which, although not embodied in an express contract, is inferred, as a fact, from conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *La Van v. United States*, 382 F.3d 1340, 1346 (Fed Cir. 2004); *see also Silverman v. United States,* 230 Ct. Cl. at 710-11 (court looking at the "subsequent actions" of the plaintiff and the Government official to determine their "common understanding" constituting their implied-in-fact agreement).

The acts of the parties should greatly assist the Court in adjudicating a controversy about the meaning of a contract. *See,* Rest. (2d.) Contracts § 202(4) ("Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement"). This provision has been frequently cited by the courts, as well stated by Justice Scalia, albeit in dissent. In *New Jersey v. New York,* 523 U.S. 767, 830-831, 118 S. Ct. 1726, 1760, 140 L. Ed. 2d 993 (1998),[9] the Justice wrote:

> It is hornbook contracts law that the practical construction of an ambiguous agreement revealed by later conduct of the parties is good indication of its meaning. See, *e.g.*, 17A Am. Jur. 2d, Contracts § 357 (1991); Restatement (Second) of Contracts §§ 202(4), 203 (1979); Uniform Commercial Code § 2-208(1), 1 U.L.A. 407 (1989).

---

9 The majority opinion did not disagree with Justice Scalia's view of contract law but applied an unrelated rule, "'that artificial fill belongs to the owner of the submerged land onto which it is deposited.'" *New Jersey*, 523 U.S. at 784, 118 S. Ct. at 1737.

> We have applied that principle before to treaty cases (the Compact here is of course a treaty). See, *e.g.*, *Air France v. Saks*, 470 U.S. 392, 396; 105 S. Ct. 1338, 1340-1341; 84 L. Ed. 2d 289 (1985) ("'[T]o ascertain [the] meaning [of treaties] we may look beyond the written words to . . . the practical construction adopted by the parties'") (quoting *Choctaw Nation of Indians v. United States*, 318 U.S. 423, 431-431, 63 S. Ct. 672, 677, 678, 87 L. Ed. 877 (1943)).

It has long been the law in this Court that the interpretation of a contract by the parties before a controversy arises is extrinsic evidence relevant to the interpretation of the contract. *Tecom, Inc. v. United States*, 66 Fed. Cl. 736, 749 (2005); *Coast-To-Coast Fin. Corp. v. United States*, 45 Fed. Cl. 796, 801-02 (2000); *Max Drill, Inc. v. United States*, 192 Ct. Cl. 608, 427 F.2d 1233, 1240 (1970) ("The interpretation of a contract by the parties to it before the contract becomes the subject of controversy is deemed by the courts to be of great, if not controlling weight"); *General Warehouse Two, Inc. v. United States*, 181 Ct. Cl. 180, 389 F.2d 1016, 1020 (1967) ("It is well settled that the conduct of the parties to a contract is of great weight in interpreting the contract . . . . (citations omitted)); *Jansen v. United States*, 170 Ct. Cl. 346, 554-55, 344 F.2d 363, 369 (1965) ("It is a canon of construction that the interpretation placed by the parties upon a contract during its performance is demonstrative of their intention"); *Houston Ready-Cut House Co. v. United States*, 119 Ct. Cl. 120, 187-88, 96 F. Supp. 629, 635 (1951) ("The interpretation of a contract by the parties to it before it becomes the subject of controversy is deemed by the courts to be of great, if not controlling, weight").

The point is neatly summarized in *Centex Corp. v. United States,* 395 F.3d 1283, 1311 (Fed. Cir. 2005): "[T]he plaintiffs' argument regarding the deductibility of built-in losses finds compelling support in the entire course of the federal government's subsequent treatment of FSLIC acquisitions between the 1981 statute [implicitly allowing tax deductions] and the

Guarini amendment [which deprived the plaintiffs of the tax deductions]". The Court, of course, held that the Government could not deprive the plaintiff of those benefits by a change in the law.

In the present case, looking at the acts of the parties over the decades of their performance of the contracts, one can only conclude that the parties, including the Treasury Department as the issuer of USGOs and the GDRT as administrator of the GTIT, as well as the Bank, had always understood and intended the income from USGOs to be exempt from territorial tax until *Gumataotao* told them otherwise.

**6. Defendant has cited no single authority supporting its claim that its obligation to indemnify, as alleged by the Bank, is barred.**

The Bank alleges that Defendant must now reimburse or indemnify the Bank, by way of damages, for taxes wrongfully imposed on interest income from USGOs. In response, Defendant claims that there is no agreement to indemnify and that any such agreement to indemnify would violate the Anti-Deficiency Act.

The authorities cited by Defendant concern a situation where a federal employee or agency is barred by the Act from entering into a contract for future payment of money in advance of, or in excess of, an existing appropriation. *See Hercules Inc. v. United States,* 516 U.S. 417, 116 S. Ct. 981, 134 L. Ed. 2d 47 (1996). Under the theory advanced by Defendant, no remedy would exist for Defendant's breach of a contractual obligation which resulted in monies owed. Moreover, this case does not fit the situation where an appropriation exists but does not cover the circumstances of the case, thus running afoul of the Anti-Deficiency Act.

In fact, the *Centex* case is in these respects on all fours with the case at bar, in that the plaintiff there was allowed to recover damages on account of the enactment of a law which exacted from the government contractor a tax that the relevant Government agency had promised

would not apply. *Centex*, 395 F.3d at 1288. At p. 1305, the Federal Circuit had this to say on the point:

> [W]hile it is true that neither the FHLBB nor FSLIC could bind Congress with respect to the enactment of legislation, it is clear that they could make a binding promise to pay damages in the event that the tax laws were changed in a way that injured CTX and Texas Trust. The only difference between a breach of an express promise to pay damages in the event of a change in the tax laws and the implied covenant at issue in this case is that the former is express and the latter is implied. The government agencies' authority to enter into such covenants is not relevant in distinguishing between the two cases.

Since the *Centex* decision is just two years old and comes from the court which oversees this Court, one is left to wonder why Defendant continues to make arguments which have been so recently and so definitively rejected.

**7. The timing of the tax and of the bank's purchases of USGOs does not affect the outcome of this Motion**

We next address a point made only obliquely in the Motion to Dismiss: Is Defendant excused from damages because—as ultimately determined in *Gumataotao*—the tax which the Bank had to pay was in fact enacted as early as 1950, before the Bank purchased the instruments here in question?

Defendant may be tempted to argue that, under *Winstar*, it can be liable for breach of contract only where there is an existing contract with the Government and a subsequent enactment of a law deprives the plaintiff of the benefits of that contract. In the present case, the law and regulations that the GDRT eventually interpreted to deprive the Bank of its tax exemption were enacted before the Bank ever contracted to purchase USGOs: The tax in question was assessed pursuant to the *Gumataotao* court's interpretation of the Organic Act of Guam, 48 U.S.C. § 1421 *et seq.*, which Congress passed in 1950. And 31 U.S.C. section 3124

was first enacted in the 1941 Public Debt Act,[10] and 31 C.F.R. section 309.4 (exempting "Treasury Bills") while 31 C.F.R. section 340.3 (exempting "Treasury Bonds ") were enacted in 1976 and 1962, respectively. And *Gumataotao* explains that these provisions were applied to Guam, although subject to one-way mirroring, through the Organic Act of Guam, 48 U.S.C. § 1421 *et seq*, in 1950. Thus, Defendant might be tempted to argue, because all these laws and regulations were enacted, and *Bank of America* was decided, before the Bank's USGO contracts were entered into—*i.e.* before the Bank began purchasing USGOs in 1978—there has been no new enactment of law, as in *Winstar*. Instead, the argument might go, the law has always been that USGOs were taxable by Guam. It is just that, prior to *Gumataotao*, the GDRT's powers in that regard had not been affirmed by a court.

Such an argument would be unavailing because it would ignore the fact that Defendant (via the GDRT, acting under the authority of Congress) *reversed* its position on the taxability of USGOs, in direct contradiction to the terms of the contracts and after years of Government assurances, the parties' conduct, and a decades-long course of dealing which had affirmed and reaffirmed that USGOs were exempt from territorial taxation. (*See* Complaint, §§ 7, 9.) Based on the Defendant's and GDRT's repeated representations that USGO interest income was not taxable, the Bank reasonably understood that it was in compliance with its contracts and the law in asserting the territorial tax exemption for its USGO interest income. The Government's reversal of its position, ultimately announced by the federal courts[11] after years and years of administrative pronouncements that the same law did not result in such

---

[10] "Interest upon…USGOs issued on or after the effective date of this Act by the United States or any agency or instrumentality thereof shall not have any exemption…under the Federal tax Acts now or hereafter enacted [exceptions not applicable]." 55 Stat. 7.

[11] As noted earlier, the courts are, of course, parts of the Government, just as the Congress.

taxation, deprived the Bank of a significant benefit that had previously been available to it under its USGO contracts.[12]

Under *Winstar* and subsequent cases, Defendant may not avoid liability where such a reversal of position removes a contractual benefit. *See First Nationwide Bank*, 431 F.3d 1342, 1350 (Fed. Cir. 2002) ("the unilateral removal of [the plaintiff's] tax benefit was reasonably found to have violated the covenant [of good faith and fair dealing]"); *see also Centex*, 395 F.3d at 1311 (Government found liable because "the governmental action at issue...was designed specifically to allow the government to reappropriate the profits that the plaintiffs expected to obtain from the [contract], thereby abrogating the government's obligations under the contract").

In any event, if the facts of this case as proved at trial establish that Defendant ***knew*** that USGOs were in fact taxable by Guam at the times when it sold the bonds as territorial income tax-free, a point which seems to follow from Defendant's arguments about timing (Motion, pp. 12-13), that would not leave the Bank without a remedy in this Court. Several cases have addressed the subject of reformation (*see* Complaint, §§ 21 et seq.) where the government makes a promise which it cannot keep, but on which the plaintiff has reasonably relied. *Atlas Corp. v. United States*, 895 F.2d 745, 750 (Fed. Cir. 1990) is typical:

> A "mistake" that can support reformation is a belief that is not in accord with the facts. Restatement (Second) of Contracts, § 151. To satisfy this element of a reformation claim, a plaintiff must allege that he held an erroneous belief as to an existing fact. .... Reformation serves to bring the parties' written contract in accord with their agreement.

---

[12] *Compare Centex*, 395 F.3d at 1309 ("The question raised by this case is whether the government is liable in damages for breach of the contract when Congress enacts specifically targeted legislation that appropriates for the government a portion of the benefits previously available to the contractor").

*See also Burnside-Ott Aviation Training Center, Inc. v. United States*, 985 F.2d 1574, 1581 (Fed. Cir. 1993).

**8. The Bank's ongoing practice of purchasing USGO's is not dispositive of any issue or claim.**

In Footnotes 1 and 9 to its Motion, Defendant suggests that the Bank has created a situation of its own making and has only itself to blame for any tax liabilities incurred. Defendant points out that the Bank continues to purchase USGOs and is likely to do so in the future due to a substantial business relationship with one of the Bank's depositors, namely the Government of Guam. (*See* Motion, fn. 1; Complaint ¶¶ 14-15.) This allegation only explains *why* the Bank keeps holding and buying USGOs. Defendant still represents in its regulations that the income from USGOs remains free of the Territorial tax which, however, the Bank must pay nonetheless. The reason why the Bank must continue in its course of holding and buying these instruments is not dispositive of and completely unrelated to the issues whether the contractual agreements between Defendant and the Bank require that any interest income earned from the USGOs shall not be taxed by a Territory such as Guam and whether the Defendant must pay damages to the Bank for the breach of that contractual term. Those matters have been addressed at length above.

## IV. Conclusion

For all of the foregoing reasons, the Court must deny the Defendant' Motion To Dismiss.

Dated: June 20, 2007 Respectfully submitted,

/s/ Kurt W. Melchior

---

Kurt W. Melchior
Attorney of Record for Plaintiff
BANK OF GUAM