**No. 07-32C**
**(JUDGE BRADEN)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**BANK OF GUAM,**

**Plaintiff,**

**v.**

**THE UNITED STATES,**

**Defendant.**

---

**DEFENDANT'S REPLY TO PLAINTIFF BANK OF GUAM'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

---

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRIAN A. MIZOGUCHI
Trial Attorney
Commercial Litigation Division
Civil Division
Department of Justice
1100 “L” Street, NW
Washington, DC 20530
Tele: (202) 305-3319

OF COUNSEL:
THEODORE C. SIMMS II
Attorney-Advisor
Department of the Treasury
Bureau of the Public Debt
Washington, D.C.

July 19, 2007

Attorneys for Defendant

## TABLE OF CONTENTS

PAGE(S)


I. Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

II. The Bank's Complaint Must Be Dismissed For Lack Of Jurisdiction . . . . . . . . . . . . . . . . 3

A. The Bank's Claims Are Barred By The Statute Of Limitations . . . . . . . . . . . . . . 3

B. There Is No Jurisdiction For A Declaratory Judgment Declaring Breach, Reformation And Implying An Indemnification Obligation In Hypothetical Future USGOs That The Bank May Elect To Purchase . . . . . . . . . . . . . . . . . . . . . . . . . 6

III. Alternatively, The Bank's Complaint Fails To State A Claim Upon Which Relief May Be Granted . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

A. The Bank Is Collaterally Estopped By The Prior Dismissal With Prejudice Of Its Claim That It Was Contrary To Law And Thus Erroneous To Apply The GTIT To Interest Income from USGOs 7

B. The United States Did Not Contract To Exempt Or Indemnify The Bank From Application Of Congress's GTIT (48 U.S.C. § 1421i) 10

1. Long Before The Bank Allegedly Purchased USGOs, The United States Congress Imposed The GTIT (48 U.S.C. § 1421i) And Courts Held That The GTIT Is A Tax Imposed By Congress, Not Guam 10

2. No Treasury Statute, Regulation, Or USGO Promised To Exempt Or Indemnify The Bank From The GTIT (48 U.S.C. § 1421i) 12

3. The Bank Assumed The Risk That Congress's GTIT Was Not A Tax Imposed By A Possession 13

4. The United States Did Not Ratify Any Unauthorized Contract That The Bank's USGOs Were Exempt Or Indemnified From The GTIT 15

5. No Contract May Be Implied Or Reformed For Mistake To Exempt Or Indemnify The Bank's USGOs From The GTIT 17

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

**CASES** **PAGE(S)**

Auto Club of Mich. v. Commissioner,
353 U.S. 180 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Bank of America v. Chaco,
539 F.2d 1226 (9th Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Bank of Guam v. Director of Dept. of Rev. & Taxation,
No. 01-00016, 2002 U.S. Dist. LEXIS 9662 (D. Guam 2002) . . . . . . . . . . . . . . . . passim

Bell Atlantic Corp. v. Twombly,
550 U. S. ____ (May 21, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

Centex Corp. v. United States,
395 F.3d 1283 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Conley v. Gibson,
355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Figueroa v. United States,
57 Fed. Cl. 488 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Franconia Assocs. v. United States,
536 U.S. 129 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Gumataotao v. Director of Dept. Of Rev. & Taxation,
236 F.3d 1077 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Hercules, Inc. v. United States,
516 U.S. 417 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Merrion v. Jicarilla Apache Tribe,
455 U.S. 130 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**TABLE OF AUTHORITIES (CON'T)**

**CASES** **PAGE(S)**

Nonprofits' Ins. Alliance of California v. United States,
32 Fed. Cl. 277 (1994) . . . . . . . . . . 14

Seaboard Lumber Co. v. United States,
308 F.3d 1283 (Fed. Cir. 2002) . . . . . . . . . . 14

Simmons v. Small Business Administration,
475 F.3d 1372 (Fed. Cir. 2007) . . . . . . . . . . 5, 9

Strickland v. United States,
382 F. Supp. 2d 1334 (M.D. Fl. 2005) . . . . . . . . . . 17

The Floyd Acceptances,
74 U.S. (7 Wall.) 666 (1868) . . . . . . . . . . 15

United States v. Carlton,
512 U.S. 26 (1994) . . . . . . . . . . 12

United States v. Winstar Corp.,
518 U.S. 839 (1996) . . . . . . . . . . passim

**STATUTES AND REGULATIONS**

12 U.S.C. § 548 . . . . . . . . . . 11

26 U.S.C. § 6110(k)(3) . . . . . . . . . . 5, 16 19

28 U.S.C. §2501 . . . . . . . . . . 3

31 U.S.C. § 3124 . . . . . . . . . . 13

48 U.S.C. § 1421i . . . . . . . . . . passim

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **BANK OF GUAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 07-32C** |
| | ) | **(Judge Braden)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY TO PLAINTIFF BANK OF GUAM'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Defendant, the United States, respectfully submits this reply to the plaintiff Bank of Guam (the "Bank")'s opposition[1] to our motion to dismiss[2] this case pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims for lack of jurisdiction or, alternatively, for failure to state a claim upon which relief can be granted. The Bank claims breach of contracts formed with the purchase of United States Treasury Bonds, Notes, Bills and like obligations ("USGO") allegedly exempt or indemnified against taxation imposed by a "possession:"

> [c]ommencing in or about 1978, the Bank purchased . . . USGOs that stated in boldface print that they were "exempt from all taxation . . . *imposed* . . . *by* any of the *possessions* of the United States."

Compl. ¶ 7 (emphasis added). The Bank's claim suffers from a fatal deficiency because the Guam Territorial Income Tax ("GTIT"), 48 U.S.C. § 1421i, about which it complains is not a tax imposed by a possession, but rather was imposed by the Congress, when it enacted a Federal-

[1] Referenced herein as "Pl. Opp."

[2] Referenced herein as "Def. MTD."

level tax in Guam by "mirroring" the Federal Internal Revenue Code. Congress authorized the GTIT in 1950, and in 1976, two years before the Bank first allegedly purchased USGOs, the United States Court of Appeals for the Ninth Circuit (in which the Bank resides) confirmed that the GTIT was imposed by the Congress and "is not a tax imposed by Guam." Bank of America v. Chaco, 539 F.2d 1226, 1227-28 (9th Cir. 1976); Def. MTD at 6. The argument that the GTIT is a contrary-to-law "possession" tax was rejected again in Gumataotao v. Director of Dept. of Rev. & Taxation, 236 F.3d 1077, 1081-82 (9th Cir. 2001), and in prior litigation involving – and thus collaterally estopping – the Bank of Guam's claim that it was wrongfully taxed by the "possession" of Guam. See Bank of Guam v. Director of Dept. of Rev. & Taxation, No. 01-00016, 2002 U.S. Dist. LEXIS 9662 (D. Guam 2002). In brief, plaintiff has not alleged any contract with the United States for USGO exemption or indemnification from the Congress's GTIT, as distinguished from a tax imposed by a possession. In any event, any such contract would have been contrary to law, unauthorized, and not binding upon the United States. The Bank concedes that it does not claim fraudulent misrepresentation or inducement to contract, and that it does not rely upon the statements of Federal employees. Pl. Opp. at 12-13, and 27. In sum, the Bank has not stated and cannot state a claim upon which relief may be granted.

Moreover, nothing in the Bank's opposition overcomes the lack of jurisdiction that exists as to untimely claims and claims for breach or reformation of hypothetical future contracts that the Bank insists that it can create by purchasing USGOs despite public notice that the GTIT is not a "possession" tax.

## I. Standard Of Review

On June 5, 2007, we filed a notice of supplemental authority regarding Bell Atlantic Corp. v. Twombly, 550 U. S. ____, (May 21, 2007). The Bank describes the standard of review as requiring no "possible" basis on which it could prevail and asserts that Bell Atlantic "merely said" what the "beyond doubt" language means. Pl. Opp. at 5. The Supreme Court, however, "retire[d]" the "beyond doubt . . . no set of facts" language of Conley v. Gibson, 355 U.S. 41, 45-46 (1957), Bell Atlantic at 16-17, and required facts establishing a "plausible" claim, id., at 24. Because the Bank's complaint is premised upon a mistaken legal argument that an exemption from taxes imposed by a "possession" extends to taxes imposed by the Congress -- it should be noted that “[l]egal conclusions, deductions, or opinions couched as factual allegations are not given a presumption of truthfulness.” Figueroa v. United States, 57 Fed. Cl. 488, 497 (2003), aff'd, 466 F.3d 1023 (Fed. Cir. 2006), cert. denied, 177 S.Ct. 2248 (2007).

## II. The Bank's Complaint Must Be Dismissed For Lack Of Jurisdiction

### A. The Bank’s Claims Are Barred By The Statute Of Limitations

We moved to dismiss based upon the six-year statute of limitations upon claims within this Court's jurisdiction, 28 U.S.C. § 2501, because the Bank, in its complaint, attributes the cause of liability to an act of the United States Congress:

> The United States government, *through its Congress, breached the contract* terms, representations and promises contained in all of the Bank's USGOs that income from USGOs would be free of the Guam Territorial income tax, *by authorizing the imposition of the Guam territorial income tax thereon.*

Compl. ¶ 13 (emphasis added); Def. MTD at 12. The Bank in its opposition continues to attribute breach liability to the United States based upon Congress's authorizing the GTIT:

> [a]cting through Congress, Defendant authorized assessment of the GTIT against income derived from USGOs. (*Id.*, [Complaint] ¶ 13). In so doing, Defendant breached its covenant that such income will be free from taxation by Defendant's possessions.

Pl. Opp. at 3. Similarly, "Congress, and later the Ninth Circuit, took away what the Treasury, as seller of the bonds, promised." Pl. Opp. at 11. The last and only breaching act by the United States alleged by the Bank, is the Congress's authorization of the GTIT cited in Compl. ¶ 13. The Bank's alleged USGO purchases began in 1978. Compl. ¶ 7; Def. MTD at 13-14.

In its opposition, the Bank analogizes from Franconia Assocs. v. United States, 536 U.S. 129 (2002), and argues that Congress only "repudiated" contracts and that the Bank could "opt[] to await performance," alleging that its cause of action would accrue only when its "expectation" that it could enjoy Treasury income as "territorial tax free" later "went unfulfilled" (presumably meaning when the Bank finally paid its taxes). Pl. Opp. at 8-10. Franconia is distinguishable because the alleged repudiating act of Congress occurred after the alleged contract, and the alleged repudiation involved an option to pre-pay a debt, a performance that was entirely elective to the plaintiff. See Franconia, 536 U.S. at 143. In contrast, the Bank's complaint cites a 1950 act of Congress authorizing the GTIT as the breach. And the Bank's tax obligation accrued as it received Treasury income -- payment of taxes is not an elective option, like debt pre-payment.

The Bank's opposition at 10-12 misapprehends the point we intend in noting the contradistinction that Congress, not Guam, imposed the GTIT. Congress's 1950 legislation, and the Ninth Circuit's confirmation of the GTIT as a tax imposed by Congress as distinguished from a tax by Guam, placed the public, including the Bank, on notice that the GTIT is not a tax by a possession. See Def. MTD at 13-14.

We noted that the Bank's complaint does not allege that, when it commenced purchasing USGOs, the United States represented to the Bank in a statute, regulation or on the face of USGOs that the GTIT specifically was a tax imposed by a “possession” rather than by Congress. The Bank concedes that it is not alleging fraudulent misrepresentation or inducement to contract. Pl. Opp. at 12-13. Thus, the last and only alleged act as between the United States and the Bank, other than the Congress's authorization of the GTIT cited as the breaching act in Compl. ¶ 13, was the sale of USGOs commencing in 1978 that were exempt from taxation imposed by any "possessions." Compl. ¶ 7. However, the Bank knew or should have known that Congress authorized the GTIT in 1950, and that appellate precedent in the Ninth Circuit in which the Bank resides confirmed in 1976 that the GTIT was imposed by the Congress and was not a tax imposed by Guam upon bank income. See Bank of America, 539 F.2d at 1227-28.

We observed that the Bank's complaint does not allege that, when it filed its tax returns for 1978 -- the year in which it allegedly commenced purchasing USGOs, and prior to any alleged dispute -- it reported the interest income on those obligations as exempt from the GTIT, rather than reporting such income as being subject to the GTIT. Def. MTD at 16. The Bank's opposition did not dispute the accuracy of this observation and inference, from which it follows that the Bank had no expectation when it purchased USGOs that it would be exempt from the GTIT. For that reason, in addition to those set forth in Section III of our motion and this reply, its claims should be dismissed pursuant to Rule 12(b)(6). Alternatively, to the extent that the Bank believed that it had a contract for such exemption, the statute of limitations should begin running when, as it alleges, "[t]he United States government, through its Congress, breached the contract terms . . . by authorizing the imposition of the Guam territorial income tax thereon."

Compl. ¶ 13. That authorization occurred in 1950. The statute of limitations should begin to run with the purchase of USGOs subject to the act of breach complained of by the Bank.[3]

### B. There Is No Jurisdiction For A Declaratory Judgment Declaring Breach, Reformation And Implying An Indemnification Obligation In Hypothetical Future USGOs That The Bank May Elect To Purchase

The Bank's complaint "requires a declaration from this Court" that the representations of the United States will breach the "future USGO contracts between the parties, that such contracts must be reformed . . . . ," Compl. ¶ 35, and "that the United States government is obligated to reimburse the Bank on a forward basis for all sums the Bank will hereafter be obliged to pay" for the GTIT "on income the Bank realizes from USGOs that it purchases under the contract term or the representation that the income therefrom is free from taxation by the government of the Territory of Guam," Compl. at. 10-11. We moved to dismiss because there can be no jurisdiction to provide anticipatory declaratory relief for hypothetical future contracts that simply do not exist. Def. MTD at 17-18.

In its opposition, the Bank relies erroneously upon the Court's jurisdiction regarding bid protests and review of contracting officer decisions pursuant to the Contract Disputes Act. See Pl. Opp. at 15-16, citing United Sales v. United States, 34 Fed. Cl. 88, 94 (1995). The Bank appears to be arguing that jurisdiction to declare that future contracts be reformed to include an indemnification should be found because the Court will be addressing similar claims about existing contracts, and "due to its [the Bank's] need to purchase further Government obligations." Pl. Opp. at 16. As set forth in our motion, there is no jurisdiction to issue such a declaratory

---

[3] Alternatively, in no event could the statute begin to run later than the point when, in contrast to the alleged contract, the Bank apparently filed tax returns treating 1978 USGO income as taxable under the GTIT, contrary to the contract expectations that it alleges here.

judgment because it would not be merely incidental to a claim for money presently due but instead would anticipate and dictate the terms of contracts that did not, need not, and have not come into being. The Bank has not suffered any harm, and cannot have any standing to sue, regarding such hypothetical future contracts. Further, the Bank's alleged election in the future to purchase USGOs reveals the lack of any causation attributable to the United States.[4]

The Bank's claims as to contracts that it will elect to enter illustrates a fundamental defect in its claim: the Bank in effect claims that it can, by purchasing USGOs, enter into contracts for income exempt from a tax imposed by any possession and therefore the GTIT, all while knowing as a matter of law that the GTIT is imposed by the United States Congress, not by a possession. No such expectation or contract could reasonably be found to exist, and certainly no jurisdiction exists to entertain a claim to reform and declare breached future such hypothetical contracts.

## III. Alternatively, The Bank's Complaint Fails To State A Claim Upon Which Relief May Be Granted

### A. The Bank Is Collaterally Estopped By The Prior Dismissal With Prejudice Of Its Claim That It Was Contrary To Law And Thus Erroneous To Apply The GTIT To Interest Income from USGOs

The Bank complains that the United States breached contracts that contain text providing that USGOs are "exempt from all taxation . . . *imposed* . . . *by* any of the *possessions* of the United States." See Compl ¶ 7. Whether it was contrary to law to apply the GTIT to the Bank's

[4] This "need" is the Bank's elective want - i.e. to satisfy the alleged demands of one of its depositors (coincidentally, Guam) that the Bank invest in instruments that provide its depositor with adequate assurance that it is safe to maintain an account with the Bank. See Compl. ¶¶ 14, 15 and 24; Def. MTD at 9, 24-25, n.10. The Bank's admission as to the cause of its continued purchase of USGOs despite caselaw holding that the GTIT is a tax imposed by the Congress, not by the possession of Guam, defeats any claimed contract expectation of exemption or indemnification from the GTIT.

USGOs is an issue that the Bank is precluded from relitigating. In Bank of Guam v. Director of Dept. Of Rev. & Taxation, No. 01-00016, 2002 U.S. Dist. LEXIS 9662 (D. Guam 2002), the United States District Court for the District of Guam dismissed with prejudice the Bank's claim that it was contrary to law to apply the GTIT to interest income received from USGOs. The Bank contends that there can be no collateral estoppel because it settled its earlier claim. Pl. Opp. at 18. That is incorrect in pertinent part, i.e., as to the count of the Bank's complaint in Bank of Guam that claimed it was contrary to law to apply the GTIT to interest income from the Bank's USGOs. Bank of Guam, 2002 U.S. Dist. LEXIS 9662 at *7. The Bank argued that the Ninth Circuit's Gumataotao decision was "wrongly decided" but conceded that it was controlling. Id. The Bank's claim with respect to whether it was contrary to law to apply the GTIT to USGOs was dismissed – with prejudice – denying leave to amend – for failure to state a claim upon which relief may be granted. Id. at *8. Bank of Guam is dispositive of the core issue in this case: whether, as a matter of law, the exemption of USGOs from any taxation imposed by a "possession" extended to the GTIT imposed by the Congress.

The Bank of Guam decision was not reported as vacated by any settlement of the Bank with Guam. The Bank therefore has had the opportunity to litigate, actually litigated, and had dismissed with prejudice, its claim dependent upon the issue of whether its USGOs were subject to the GTIT. The Bank's election not to appeal its dismissal with prejudice in Bank of Guam in no way vacates the issue preclusion resulting from that decision.

In its opposition, the Bank attempts to deviate from the plain "imposed . . . by any . . . possessions" language of its USGOs, claiming that its contract promised that USGOs "would be

free of" a possession tax. Pl. Opp. 19.[5] Allegedly, because Guam was "permitted" to "collect" the Congress's GTIT, Pl. Opp. 19, there was a breach of contract because, the Bank alleges, this meant that USGOs "were in fact taxable by Guam." Pl. Opp. 35. The Bank's attempted distinctions are contrary to the actual text of the USGOs and regulations alleged by the Bank. Further, the United States as a matter of law cannot breach any promise to "be free of" a tax imposed by the territorial "possession" of Guam, because, as was clearly the law before the Bank purchased any USGOs, the GTIT was imposed by the Congress, not by a possession. The Bank's complaint here -- that USGOs and Treasury regulations provided that USGOs were "exempt from all taxation . . . *imposed* . . . *by* . . . any of the *possessions* . . . " and thus the GTIT, see Compl. ¶ 7 (emphasis added) -- is substantively the same issue necessarily disposed of in Bank of Guam, i.e., that it was contrary to law and thus erroneous to apply the GTIT to interest income from USGOs. See Bank of Guam at *2, 6-8. The Bank lost that issue, and is collaterally estopped from relitigating it here, against the United States. See Simmons v. Small Business Administration, 475 F.3d 1372, 1374 (Fed. Cir. 2007)("'[a] party precluded from relitigating an issue with an opposing party . . . is also precluded from doing so with another person.' Restatement (Second) of Judgments § 29").[6] Accordingly, the Bank's complaint should be dismissed because issue preclusion collaterally estops the Bank from prevailing upon its claims, Def. MTD at 18-21.

---

[5] See also Pl. Opp. at 20 ("may not be taxed by a possession"); 32 ("exempt from territorial taxation"); and 35 ("sold the bonds as territorial income tax-free").

[6] Equitable estoppel and abuse of discretion claims against the Director of Guam's Department of Revenue and Taxation that were not dismissed, and apparently later settled, are not relevant to the Bank's claim before this Court. See Def. MTD at 20, n.5.

### B. The United States Did Not Contract To Exempt Or Indemnify The Bank From Application Of Congress's GTIT (48 U.S.C. § 1421i)

#### 1. Long Before The Bank Allegedly Purchased USGOs, The United States Congress Imposed The GTIT (48 U.S.C. § 1421i) And Courts Held That The GTIT Is A Tax Imposed By Congress, Not Guam

Plaintiff's complaint is dependent upon a core construct that is incorrect as a matter of law: that there is a contract between the United States and the Bank to exempt or indemnify the Bank from a possession tax and thus the GTIT. However, the United States did not contract with the Bank to exempt or indemnify it from application of the Congress's GTIT (48 U.S.C. § 1421i) – as distinguished from a tax imposed by a "possession." Def. MTD at 22-25. In its complaint, the Bank does not allege that the United States, either in a printed USGO or Treasury regulation governing their sale, agreed with or even represented to the Bank that its USGOs were exempt or indemnified from the Congress's GTIT. The Bank could not properly plead or prevail upon such an allegation, because the United States did not and legally could not enter into any authorized agreement binding itself to an agreement that would be contrary to law: i.e., to exempt or indemnify USGOs from the Congress's imposition of the Internal Revenue Code as mirrored through the GTIT in Guam, 48 U.S.C. § 1421i,[7] as a tax imposed by a possession.

[7] Bank of America v. Chaco, 539 F.2d 1226, 1227-28 (9th Cir. 1976) (the GTIT "is a territorial income tax mirroring the provisions of the federal tax code . . . . collected by the Government of Guam for its own use in lieu of direct appropriations from the United States Treasury . . . . We conclude, therefore, that the enactment of § 31 by the United States Congress of the territorial income tax was done primarily to relieve the United States Treasury of the necessity of making direct appropriations; that although Congress has delegated the collection and enforcement functions to the Government of Guam, the latter is powerless to vary the terms of the federal income tax laws as applied to Guam, except as permitted by Congress. We therefore hold that the Guam territorial income tax is not a tax imposed by Guam for the purposes of 12 U.S.C. § 548; that the 4% net profit business privilege tax is the only tax imposed by Guam . . . .).

(continued...)

The Bank declares that it is "astonishing" that we mention that "the Bank did not plead that the Government ever made the specific representation that USGOs 'shall be free of the Guam Territorial income tax.'" Pl. Opp. 20. The Bank argues this is "astonishing" because its complaint alleges that the Government sold USGOs "on terms which include the covenant that the income received from the USGOs may not be taxed *by a possession* . . . ." Id. (emphasis added). This passage illustrates the baseless nature of the Bank's complaint. The plain language imprinted upon USGOs or in regulations cited by the Bank in alleging a contract sets forth no more than an exemption from taxation "imposed . . . by any . . . possessions." The Bank's complaint relies upon a conflation of the Congress and a "possession" that is contrary to law because, in 1950, prior to any alleged USGO contract, the Congress, not Guam, imposed the GTIT, 48 U.S.C. § 1421i. In 1976, again prior to the alleged contracts, the Ninth Circuit confirmed that the GTIT is a tax imposed by the Congress, and not by the possession of Guam.[8] Any alleged exemption or indemnification from taxes imposed by a state or possession simply does not extend to the Congress's imposition of the Internal Revenue Code as mirrored by the GTIT.[9]

---

[7] (...continued)

The Bank attempted to distinguish Bank of America as "only a precedent" and because it involves 12 U.S.C. § 548. Pl. Opp. at 19-20. The Bank's purported distinction is one that is without a difference. Bank of America necessarily held that the GTIT was not a possession-imposed tax, in holding that 12 U.S.C. § 548 (which precluded more than one possession-imposed tax upon bank income) had not been violated. Noting that Congress imposed the GTIT, the court held that Guam's net profit business privilege tax was "the only tax imposed by Guam." Id. at 1228.

[8] See note 7, supra, discussing the Ninth Circuit's 1976 Bank of America decision.

[9] See Def. MTD at 6-8 and authorities cited therein.

**2. No Treasury Statute, Regulation, Or USGO Promised To Exempt Or Indemnify The Bank From The GTIT (48 U.S.C. § 1421i)**

Much of the Bank's opposition depends upon an argument to the effect that because some Treasury regulations indicate that income from Treasury obligations is exempt from tax imposed by a "state" or "possession," the Bank had a contract to be exempt or indemnified from the GTIT. See Pl. Opp. at 21-27. The Bank's arguments are flawed for the same reason that its complaint is baseless: nothing in the GTIT, USGO-related statutes and regulations, or USGO text alleged by the Bank refers to the GTIT, let alone contractually promises to exempt or indemnify the Bank from the GTIT (or any other tax imposed by the Congress).

The Supreme Court has established that "[t]ax legislation is not a promise, and a taxpayer has no vested right in the Internal Revenue Code." United States v. Carlton, 512 U.S. 26, 33 (1994). The Congress's GTIT imposes a Federal-level "mirror" code that is the Internal Revenue Code. See 48 U.S.C. §1421i; Bank of America v. Chaco, 539 F.2d at 1227; Gumataotao v. Director of Dept. of Rev. & Taxation, 236 F.3d 1077, 1079-81 (9th Cir. 2001). Thus, no promise can be found in Federal tax legislation, including the GTIT, or in Treasury regulations relating to taxation of USGOs.

Further, even assuming, for the sake of argument only, that statutes, regulations, and USGO text can comprise a contract concerning taxation, at most they would pertain only to taxes imposed by a state or "possession." It is settled law that the GTIT is a tax imposed by the Congress, not by the possession of Guam, Bank of America, 539 F.2d at 1227-28, and thus is not subject to any limitations upon taxation of USGOs by a possession. Gumataotao, 236 F.3d at 1081-82 (holding that "it was Congress, not the Guam Government, that imposed a tax on U.S. Bonds" and that the provisions of 31 U.S.C. § 3124 regarding the exemption of USGOs from

taxation by a state [assumed to include a "possession"] are "inapposite" because "Congress, not the local legislature of Guam, imposed the tax on interest from federal bonds"); Bank of Guam v. Director of Dept. of Rev. & Taxation, No. 01-00016, 2002 U.S. Dist. LEXIS 9662 (D. Guam 2002)(dismissing with prejudice the Bank's claim that it is contrary to law to apply the GTIT to interest income from United States Treasury Bonds).

### 3. The Bank Assumed The Risk That Congress's GTIT Was Not A Tax Imposed By A Possession

The Bank's opposition attempts to characterize its claim as a "Winstar"-related case. E.g. Pl. Opp. at 1, 31-35. The Bank appears to argue that it had (and, despite the law to the contrary, that it can continually elect to create) a contract with the United States to the effect that the exemption of USGOs from tax imposed by a "possession" extends to a tax imposed by the Congress. See Pl. Opp. at 32-36. The Bank's claim is, as we have demonstrated, contrary to settled law. The Bank had no contract with the United States that its USGOs would be exempt or indemnified from the GTIT. Further, the law did not "change" nor was it "reversed." The Congress's 1950 legislation establishing the GTIT, and appellate precedent that the GTIT is not a tax imposed by the "possession" of Guam, were in place well before the Bank purchased USGOs. United States v. Winstar Corp., 518 U.S. 839 (1996), and related cases cited by the Bank such as Centex Corp. v. United States, 395 F.3d 1283 (Fed. Cir. 2005), et. al., are thus inapposite.

Even if the law had not been settled, however, the Bank plainly assumed the risk of taxation. Def. MTD at 1, 24-25. As the Court of Appeals for the Federal Circuit has held:

> [I]f [the risk] was foreseeable there should have been a provision for it in the contract, and the absence of such a provision gives rise to the inference that the risk was assumed. . . . In *Winstar Corp.*,

> the contracts at issue provided that the government would give certain regulatory treatment with regard to capital reserve requirements to parties who purchased failed thrifts.

Seaboard Lumber Co. v. United States, 308 F.3d 1283, 1295 (Fed. Cir. 2002)(emphasis added). Here, there was no contract providing "certain regulatory treatment" that USGOs were exempt from the Congress's GTIT. Any such promise would have been tantamount to a restraint upon the Congress's authority to legislate in the tax arena – and would have to be made unmistakably and not implied. As observed in Winstar, 518 U.S. at 876-77, courts should not infer that a contract with the Government waives the sovereign power to tax "unless it has been specifically surrendered in terms which admit of no other reasonable interpretation," quoting Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 148 (1982).[10] Plainly, given the 1950 legislation of the GTIT and 1976 appellate precedent confirming that the United States Congress, not the possession of Guam, imposed the GTIT, it was foreseeable and a "reasonable interpretation" that the GTIT was a tax imposed by the United States Congress, not the possession of Guam. The Bank could not reasonably be mistaken or blithely assume, that an indication that USGOs were exempt from taxation imposed by a state or "possession" would also extend to the Federal-level Internal Revenue Code mirror tax that Congress imposed through the GTIT, 48 U.S.C. § 4821i, or that if the GTIT did apply, then the United States would indemnify the Bank against payment of the GTIT. Ignorance of the law is not an excuse. The Floyd Acceptances, 74 U.S. (7 Wall.) 666, 682-83 (1868). The Bank assumed the risk and has no Winstar-like claim because it never

[10] Income tax exemptions are matters of legislative grace which the courts have consistently strictly construed; accordingly, income taxes must be paid unless the taxpayer is squarely within the parameters of a listed exemption from taxation. Nonprofits' Ins. Alliance of California v. United States, 32 Fed. Cl. 277, 282 (1994).

had a contract that, beyond any other reasonable interpretation, specifically locked in certain GTIT tax treatment or indemnification from the GTIT and, further, never experienced a post-contract enactment by Congress changing a law in contravention of such a contract.

**4. The United States Did Not Ratify Any Unauthorized Contract That The Bank's USGOs Were Exempt Or Indemnified From The GTIT**

As we demonstrated, the Bank has no unmistakable contract with the United States that USGO's shall be exempt from the Congress's GTIT or that the United States will indemnify the Bank if it has to pay the GTIT. Even assuming that an attempted promise of GTIT exemption or indemnification had been made, no authority is alleged or apparent that establishes that the Congress unmistakably authorized the Treasury to enter into a contract promising that the Bank's USGOs would be exempt or indemnified from the Congress's GTIT -- a mirror code application of the Internal Revenue Code in Guam – in addition to taxes imposed by a State or possession.[11] Accordingly, the alleged contract, being unauthorized, provides no basis upon which relief can be granted. See Def. MTD at 23-24; see also The Floyd Acceptances, 74 U.S. (7 Wall.) at 676-77.

The Bank's opposition falls back upon arguments generally to the effect that a contract with the United States was later authorized or ratified. See Pl. Opp. at 27-29, 32-33. As we have

[11] It should be emphasized that the Congress imposed the GTIT through the use of a "mirror" code that effectively extends the Internal Revenue Code's Federal taxation to residents of Guam. See n. 7, supra, (discussing Bank of America); Gumataotao, 236 F.3d at 1079-81. There can be no dispute that the Federal Government, as distinguished from a State or possession, may, through the Internal Revenue Code, tax income from USGOs. The Bank's complaint, extended to its logical but absurd conclusion, requires an assumption that the Congress, having imposed the Internal Revenue Code upon the Bank and other Guam residents through the GTIT "mirror" code, nonetheless authorized the contrary result that the Treasury could agree that the Bank and other Guam residents would be exempt or indemnified from the GTIT.

demonstrated, there is no USGO or Treasury regulation specifying that the Bank would be exempted or indemnified from the GTIT. Further, the Bank conceded that its claim is not based upon any comments by federal employees. See Pl. Opp. at 27. Thus, all that remains is the Bank's vague reference to "conduct of the parties before this dispute began." Id. However, the only conduct of the United States that matters is that its Congress, not the possession of Guam, imposed the Internal Revenue Code through the GTIT mirror code in 1950. Other than subsequent sales of USGOs beginning in 1978, there has been no conduct alleged between the United States and the Bank. Rather, it appears that at most, the Bank may be referring to conduct involving the Guam Department of Revenue and Taxation, and not the Bank. With respect to any intended allegations regarding IRS advice to Guam, see Compl. ¶ 9, such advice is irrelevant as to the Bank. IRS determinations can only be used by the particular taxpayer who requested it and cannot be relied upon by other taxpayers. I.R.C. [26 U.S.C.] § 6110(k)(3) (unless otherwise provided by regulation, IRS determinations "may not be used or cited as precedent").

In any event, whatever conduct the Bank intended to allege and rely upon as to whether USGOs would be subject to the GTIT, the Bank was not entitled to rely upon such conduct. As the Ninth Circuit held in Gumataotao:

> even assuming [plaintiff] could prove that the Director and the Commissioner [of the United States Internal Revenue Service] previously opined that Guam could not tax the interest from federal bonds, they are not bound by those statements. As the Supreme Court has noted on numerous occasions: 'The doctrine of equitable estoppel is not a bar to the correction by the Commissioner of a mistake of law." *Auto Club of Mich. v. Commissioner*, 353 U.S. 180 . . . [citations omitted] . . . . neither the Director nor the Commissioner is bound by an earlier mistaken interpretation of law.

236 F.3d at 1083. The Bank's argument as to "conduct" thus should be dismissed.[12]

**5. No Contract May Be Implied Or Reformed For Mistake To Exempt Or Indemnify The Bank's USGOs From The GTIT**

In response to our motion's point that the United States in its USGOs or regulations never contracted with the Bank that it would be exempt from the GTIT, the Bank contends that it had a contract that "USGO income would be free of territorial [presumably meaning Guam] taxes. Specific reference to the GTIT was not necessary." Pl. Opp. at 29. The Bank argues that it had an implied contract that "Guam's tax is included among the general promise that there would be no tax on USGO income *from any territory:* 'The greater includes the less.'" Id. The Bank thus appears to concede that it never contracted with the United States specifically and unmistakably as to the GTIT. The Bank's argument that "specific reference to the GTIT was not necessary" illustrates the circularity of its claim, conflating taxes imposed by a possession with the

[12] The Bank also argues in effect that even if the Treasury Department lacked the authority to contract with the Bank to exempt or indemnify it from the Congress's GTIT, that an "institutional" contract ratification occurs when the Government seeks and receives benefits from an otherwise unauthorized contract. Pl. Opp. at 28. "Institutional" ratification, in addition to being a "rare circumstance" that frequently is rejected, has been found where "there has been significant government involvement with the claimant, including involvement by agents with contracting authority, demonstrating a clear acceptance of an unauthorized agreement" (such as the Digicon case cited by the Bank, Pl. Opp. at 28, in which the Air Force "demonstrated acceptance of unauthorized [sic] agreement by executing an express written agreement, explicitly and repeatedly recognizing the existence of the unauthorized agreement, benefitting from . . the unauthorized agreement . . . ."). Strickland v. United States, 382 F. Supp. 2d 1334, 1348 (M.D. Fl. 2005). These "rare circumstance[s]" are not present here. Among other things, no express agreement unmistakably exempting or indemnifying the Bank from the GTIT is alleged. Further, it is not plausible that the United States would benefit by agreeing to exempt or indemnify the Bank from the United States Congress's GTIT, which imposed the Internal Revenue Code through the GTIT mirror code and avoided the need for making direct appropriations from the Treasury. See Bank of America, 539 F.2d. at 1227-28. Institutional ratification in this case would amount to equitable estoppel of the United States with respect to a tax matter. The United States may not, however, be so bound. See Gumataotao, 236 F.3d at 1083.

Congress's imposition of a Federal-level tax through the GTIT's mirroring of the Internal Revenue Code. The Bank's argument that, because the "[t]he greater includes the lesser," an exemption for "territorial" taxes includes the GTIT, is illogical and erroneous. The USGOs and Treasury regulations alleged by the Bank refer to an exemption from taxes imposed by a State or "possession." A tax imposed by the United States is not a "lesser" subset of taxes imposed by a State or possession; if anything, it is the opposite – a greater Federal-level tax that applies through a mirror application of the Internal Revenue Code -- separate and above any State or possession tax.

The Bank also misplaces its reliance upon an argument that an implied contract can be found based upon extrinsic evidence, i.e., conduct of the parties. See Pl. Opp. at 30-37. These cases, which generally involve efforts to construe an "ambiguous agreement" (Pl. Opp. 30) or whether losses were deductible under a 1981 statute (Pl. Opp. at 31-32 discussing Centex), or whether Congress enacted a law breaching a prior contract promise (Pl. Opp. at 32-35, discussing Winstar and Centex related cases), are inapposite. There is no ambiguity here. The Bank's pleadings reflect that it never obtained from the United States the requisite specific and unmistakable contract promise that admits of no reasonable interpretation other than that the Congress's GTIT would not apply to the Bank's USGOs. See United States v. Winstar Corp., 518 U.S. at 876-77.[13]

---

[13] Another reason that no agreement to indemnify the Bank against the Congress's GTIT should be implied, is that it would expose the United States to an open-ended liability for which no appropriation has been made, contrary to the Anti-Deficiency Act. See Hercules, Inc. v. United States, 516 U.S. 417, 426-27 (1996). The Bank cites Centex in an attempt to avoid this limitation upon implied agreements. Pl. Opp. at 32-33. Centex, however, is irrelevant, because here the Bank never had an agreement with the United States that promised the Bank that it would be exempt or indemnified from the Congress's GTIT, and because the Congress never (continued...)

The Bank conceded that its claim does not rely upon statements by Federal employees. Pl. Opp. at 27. Further, any alleged conduct between the United States and Guam, but not the Bank, legally is irrelevant to, and not binding upon, the United States. See I.R.C. [26 U.S.C.] § 6110(k)(3) (unless otherwise provided by regulation, IRS determinations may not be used or cited as precedent); Gumataotao, 236 F.3d at 1083 (holding that IRS is not bound by statements as to whether bonds are taxable).

Finally, for the reasons discussed in our motion's memorandum and this reply, it is plain that there was no "meeting of the minds" between the United States and the Bank that, contrary to law – Congress's imposition of the GTIT, 48 U.S.C. § 1421i, appellate precedent, and collateral estoppel -- any USGO exemption from taxes imposed by a possession would extend to the Federal-level Internal Revenue Code as mirrored by the Congress through its GTIT. Further, as we noted, it appears from the Bank's silence in its complaint and its response to our motion, that the Bank itself from the outset of its purchases of USGOs in 1978, reported the income from USGOs as subject to the GTIT. Def. MTD at 16.[14] Therefore, the Bank's claim that a mutual

---

[13] (...continued)
later changed any law in breach of such a promise.

[14] That the Bank would purchase USGOs regardless of whether they are exempt from taxation is evident from the Bank's admission that it purchases USGOs for reasons wholly independent from any expectation as to whether they are taxable – i.e., to satisfy the alleged desire of its customer for assurances that its funds may safely be deposited in the Bank. See Compl. ¶¶ 14, 15 and 24; Def. MTD at 9, 24-25, n.10.

"mistake" occurred and thus that its past, present and future USGOs should be reformed,[15] likewise should be dismissed.

## CONCLUSION

For these reasons, as well as those set forth in our motion, we respectfully submit that the Banks' complaint, in its entirety, should be dismissed with prejudice for lack of jurisdiction or, alternatively, for failure to state a claim upon which relief may be granted.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

s/Brian A. Mizoguchi
BRIAN A. MIZOGUCHI
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
Attn.: Classification Unit 8th Flr.
1100 L Street, N.W.
Washington, D.C. 20530
Tel: 202.307.0282
Telecopier:(202) 305-7643

Attorneys for Defendant

OF COUNSEL:
THEODORE C. SIMMS II
Attorney-Advisor
Department of the Treasury
Bureau of the Public Debt
Washington, D.C.

Dated: July 19, 2007

[15] See Compl. ¶¶ 22-27. The Bank contends that "the United States government is in breach of the thus reformed contracts." Compl. ¶ 28. The Bank also seeks a declaratory judgment for "Implied Contracts" to provide for an implied indemnification for hypothetical future USGOs that the Bank may elect to purchase. See Compl. ¶¶ 29, 34-35.

CERTIFICATE OF FILING

I hereby certify that on July 19, 2007, a copy of the foregoing "DEFENDANT"S MOTION TO DISMISS" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Brian A. Mizoguchi