# EXHIBIT A

JOAQUIN C. ARRIOLA
MARK E. COWAN
ANITA P. ARRIOLA
ARRIOLA, COWAN & ARRIOLA
259 Martyr Street, Suite 201
Hagåtña, Guam 96910
Tel: (671) 477-9730
Fax: (671) 477-9734

FILED
DISTRICT COURT OF GUAM
APR 24 2001
MARY L.M. MORAN
CLERK OF COURT

DENIS T. RICE
GARY P. KAPLAN
SIMON J. FRANKEL
**HOWARD RICE NEMEROVSKI CANADY FALK & RABKIN**
A Professional Corporation
Three Embarcadero Center
Seventh Floor
San Francisco, California 94111-4065
Tel: (415) 434-1600
Fax: (415) 217-5910

JEROME SAPIRO, JR.,
DAVID A. SAUERS
**THE SAPIRO LAW FIRM**
711 Van Ness Ave. Ste 440
Post Office Box 649015
San Francisco, CA 94102-3142
Tel: (415) 771-0100
Fax: (415) 771-3142

Attorneys for Petitioner
BANK OF GUAM

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

DISTRICT COURT OF GUAM

TERRITORY OF GUAM

| | |
|---|---|
| BANK OF GUAM,<br>Petitioner,<br>vs.<br>DIRECTOR OF DEPARTMENT OF REVENUE & TAXATION,<br>Respondent. | CIVIL CASE NO. 01-00016<br><br>**VERIFIED PETITION IN TAX CASE** |

Petitioner Bank of Guam, pursuant to 48 U.S.C. §§ 1421i and 1424 and LTR 1, hereby petitions for a redetermination of the deficiency set forth by the Director of Department of Revenue & Taxation ("Director") in his Notice of Deficiency dated January 24, 2001, and as the basis for its case alleges as follows:

1. Petitioner is a corporation organized under the Banking Laws of the Territory of Guam, with its principal office now at 111 Chalan Santa Papa, P.O. Box BW, Hagåtña, Guam 96910. Petitioner's taxpayer identification number is 96-0002144. Petitioner's return for the 1992 year was filed on or before September 15, 1993 with the Department of Revenue and Taxation, Government of Guam ("Department"); the return for the 1993 year was filed with the Department on or before September 15, 1994; the return for the 1994 year was filed with the Department on or before September 15, 1995. Each such return was filed at Tamuning, Guam.

2. The Notice of Deficiency (a copy of which, including so much of the statements and schedules accompanying the notice as is material, is attached hereto as Exhibit 1) was mailed to petitioner on January 24, 2001, and was issued by the Department. The alleged deficiencies total $6,886,903.30, exclusive of interest and penalties.

3. The deficiencies as determined by the Director are in income taxes for petitioner's taxable years ended December 31, 1992, 1993, and 1994, in the amounts of $2,176,892.90, $2,153,504.85, and $2,556,505.55, respectively, all of which is in dispute.

4. The determination of tax set forth in the Notice of Deficiency is based upon the following errors:

(a) The Director erred in determining that interest income on United States government obligations ("Treasury obligations") received by petitioner with respect to the years 1992, 1993, and 1994 in the amounts of $6,825,149.00, $7,057,320.00, and

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

$6,850,151.00, respectively, is taxable under Section 61(a)(4) of the Guam Territorial Income Tax (G.T.I.T.) and Section 1.61-7(b)(3) of the G.T.I.T. regulations. The Director's interpretation is contrary to law and to the contractual terms relating to the purchase of such Treasury obligations.

(b) But even if the Director's legal position, that this interest income is subject to tax under the G.T.I.T., were legally correct, the Director is equitably estopped from taking this position with respect to petitioner for the tax years at issue in the Notice of Deficiency because, as detailed below, the Director specifically represented otherwise to petitioner on numerous occasions in the past; petitioner relied on the Director's representations to petitioner's serious and irreversible detriment; such reliance by petitioner was foreseeable to the Director; and it would be unfair, unreasonable, and unconscionable to allow the Director to change his position with retroactive effect under these circumstances.

(c) The Director's decision in determining with retroactive effect and contrary to his prior position on the matter that interest income on Treasury obligations received by petitioner is taxable (with respect to the years 1992, 1993 and 1994) constitutes an abuse of discretion.

(d) The Director erred in determining that adjustments in the amount of $1,350,000.00 and $1,797,000.00 with respect to the "unrecaptured" balance of petitioner's bad debt reserve account must be included in petitioner's taxable income for the years 1993 and 1994, respectively, under Section 585(c)(3) of the G.T.I.T and Section 1.585-6 of the G.T.I.T. regulations.

5. The facts upon which petitioner relies, as the basis of its case, are as follows:

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

(a) During the tax years 1992, 1993, and 1994, petitioner received interest income of $6,825,149.00, $7,057,320.00 and $6,850,151.00, respectively, on United States Treasury obligations, under the following pertinent circumstances.

(1) During the relevant period, the Government of Guam ("Government"), including various departments of it, placed significant deposits with petitioner in interest-bearing accounts. As a condition of placing such deposits, the Government regularly by statute and policy required that petitioner collateralize the deposits by investing one hundred percent or more of the amount of the deposits in Treasury obligations or other eligible securities, which in turn were pledged to secure the Government's accounts at the Bank. Accordingly, during the years at issue, petitioner has, to comply with this Government-imposed condition and due to the limited availability of other types of eligible securities, invested in Treasury obligations for the purpose of collateralizing Government deposits held by petitioner.

(2) During this period, petitioner was subject to extensive regulation and oversight by the Banking Commissioner of Guam, who at all relevant times was also the Director of the Department of Revenue and Taxation. As a result, the Director was regularly and fully informed as to the affairs of petitioner, including but not limited to the Government's deposits made with petitioner, the interest paid on such deposits, the investments made by petitioner, the returns on those investments, and petitioner's tax treatment of those investment returns, including interest on Treasury obligations. Accordingly, at all relevant times, the Government and the Director have been keenly aware that petitioner has purchased Treasury obligations as required by statute as a condition of accepting Government deposits. In addition, the Government, including the Director, has long known that petitioner, in seeking Government deposits as a substantial part of its

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

business, has relied on repeated representations by the Director and his authorized agents that the Department would treat the interest income received by petitioner on Treasury obligations as exempt from tax pursuant to the G.T.I.T. The principal facts upon which the petitioner relies as the basis for this assertion are set out below.

(3) During the tax years 1978, 1979, and 1980, petitioner erroneously reported interest income on Treasury obligations as an item of taxable income on its returns filed with the Department. However, in or about 1981, petitioner was informed that interest income on Treasury obligations was not taxable by the Department under the G.T.I.T. Thereafter, petitioner submitted to the Department a refund claim for the 1978, 1979, and 1980 tax years, basing its claim on the understanding that interest income on Treasury obligations was not taxable by the Department. The Department approved petitioner's refund claim, thereby confirming that such interest was not taxable. The overpayments previously made by petitioner resulting from the inclusion of interest income on Treasury obligations were either refunded to petitioner by the Department or credited against taxes owed by petitioner to the Department in subsequent tax years. True and correct copies of letters pertaining to this refund dated September 20, 1985 and August 25, 1986 are attached hereto as Exhibits 2 and 3.

(4) In reliance upon the Department's action on its 1978, 1979, and 1980 refund claims, petitioner continued in all its subsequent tax returns to treat interest on Treasury obligations as non-taxable. The Department did not question petitioner's tax returns until several years later, when on or about June 4, 1987, the Department initiated an audit of petitioner's tax returns for the 1983, 1984, and 1985 tax years on unspecified grounds. On or about October 8, 1987, the Department sent petitioner a preliminary notice of deficiency that sought to treat the interest income received by petitioner on Treasury

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

obligations during these tax years as taxable under the G.T.I.T. Consistent with its position that such interest was not taxable, thereafter, on or about December 2, 1987, the Department revoked that preliminary notice of deficiency.

(5) On or about April 6, 1988, the Department once again issued a preliminary notice of deficiency with respect to the 1983, 1984, and 1985 tax years, raising once more the issue of whether the interest income on Treasury obligations was taxable under the G.T.I.T. Petitioner filed a Protest against the proposed deficiency for the 1983, 1984, and 1985 tax years, detailing its legal analysis of the non-taxability of interest on Treasury obligations. A true and correct copy of the Protest is attached hereto as Exhibit 4. Petitioner is informed and believes that during this same period, the Director and/or his authorized agents were uncertain as to the taxability of interest income on Treasury obligations under the G.T.I.T. and sought guidance from the United States Internal Revenue Service in Washington, D.C. on that issue. On or about June 9, 1988, in response to a letter from the Director of the Department, the Office of the Chief Counsel at the Internal Revenue Service in Washington, D.C. wrote to the Director and set out the unambiguous position of the Internal Revenue Service ("IRS") that interest income on Treasury obligations was not subject to tax under the G.T.I.T. The IRS position was based upon the grounds that taxation of interest on U.S. obligations was inconsistent with Treasury regulations promulgated by the Bureau of Public Debt regarding the exemption from taxation of U.S. government bonds and other obligations. A true and correct copy of that June 9, 1988 letter is attached hereto as Exhibit 5.

(6) The Director gave to petitioner an unsigned memorandum addressed to the Attorney General in which the Director opined, after reciting detailed legal authorities, that interest from Treasury obligations was not subject to the G.T.I.T. A true and

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

correct copy of the memorandum is attached hereto as Exhibit 6. The Director later informed petitioner that he had signed the memorandum. Shortly thereafter, in a memorandum dated July 13, 1988, the Attorney General of Guam recognized and determined that it was appropriate for the Director to follow the "unequivocal" conclusion of the IRS and, "in view of [the] explicit directions from the Internal Revenue Service," to take the position that interest income on Treasury obligations was not taxable under the G.T.I.T, and so advised the Director. A true and correct copy of that July 13, 1988 memorandum is attached hereto as Exhibit 7. A copy of the memorandum was given to petitioner by the Director.

(7) Consistent with this conclusion, later in 1988 the Department took the position that interest on Treasury obligations was not taxable under G.T.I.T., withdrew the second preliminary notice of deficiency issued to petitioner, and closed the audit of petitioner's tax returns for the 1983, 1984, and 1985 tax years. The Department issued to petitioner Form 4549 (Income Tax Examination Changes) concluding that the deficiency for each of the tax years 1983, 1984 and 1985 was "-0-." A true and correct copy of the Form 4549 is attached hereto as Exhibit 8. During 1988, representatives of the Department (including but not limited to the Director) unequivocally represented to petitioner that it was the position of the Department that petitioner's interest income on Treasury obligations was non-taxable under the G.T.I.T. In particular, the Director or his agents provided petitioner with copies of the IRS Chief Counsel's letter and the July 13, 1988 memorandum of the Attorney General of Guam. Representatives of the Department also represented that the interest income received by petitioner on its Treasury obligations was not subject to the G.T.I.T., representations that the Director and his agents were authorized to make. At that point in time, the Director of the Department communicated to petitioner that he considered the issue "closed."

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

(8) During 1988, the question of whether or not petitioner's interest income on Treasury obligations was subject to the G.T.I.T. had been publicized in the Guam Tribune, then a newspaper on Guam. A shareholder of petitioner caused to be published numerous advertisements in which he falsely alleged impropriety on the part of petitioner's management, including non-payment of income taxes. The effect of these advertisements was to focus significant public attention on both petitioner's and the Department's treatment of interest income received by petitioner from Treasury obligations. In response to these advertisements petitioner initiated contempt proceedings against the shareholder in *Bank of Guam v. Pangilinan et al.*, No. 83-00032. During the contempt proceedings, petitioner introduced substantial testimony and evidence confirming proper payment of its taxes and the legal basis that interest on Treasury obligations was non-taxable. At conclusion of the trial, the District Court entered findings that the shareholder's allegations were false and misleading, entered a judgment of contempt, and assessed significant monetary sanctions against the shareholder.

(9) Accordingly, based upon all of the foregoing acts and events, when the Director represented to petitioner that the interest income was non-taxable, he knew or should have known that petitioner would rely on the position of the Director and the Department with respect to the taxability of interest income on Treasury obligations under the G.T.I.T. because he was in a position to know the true facts as to the Department's position on taxability of this income.

(10) In addition, petitioner is informed and believes that in the eight years after 1988, the Director knew from his own representations and position (i.e., based on the proper interpretation of the G.T.I.T., the wording traditionally and historically printed on the face of Treasury obligations, on regulations promulgated by the United States Bureau of

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

Public Debt and codified at 31 C.F.R. Sections 309.4 and 340.3, and on the U.S. Constitution) that petitioner reasonably believed interest income on Treasury obligations could not be taxed under the G.T.I.T.

(11) On or about March 10, 1992 petitioner filed a written request that the Department rule on the Bank's interest expense deduction where the interest expense is related to exempt income earned from Treasury obligations. A true and correct copy of the March 10, 1992 letter is attached hereto as Exhibit 9. On March 26, 1992, consistent with the unequivocal position the Director had taken in 1988 that petitioner's interest income on Treasury obligations was non-taxable, the Director wrote to petitioner and specifically advised petitioner that when petitioner purchased Treasury obligations as "pledged collateral required under contractual arrangements" between petitioner and the Government of Guam, "the interest expense necessary to carry the exempt bonds" would not be disallowed under Section 265 of the G.T.I.T. The Director was clearly and necessarily basing this letter on the Department's position that the interest income from Treasury obligations was not taxable. A true and correct copy of this March 26, 1992 letter is attached hereto as Exhibit 10.

(12) Following the unequivocal position taken by the Director in or about 1988 and reconfirmed in 1992 that interest earned on Treasury obligations was not taxable, petitioner did not know, and could not have reasonably known, that after the years here at issue, some years later, for motives which are in question as set forth herein, the Director would elect to reverse his position and attempt to apply an entirely opposite position retroactively to earlier years, during which years the Director's position of non-taxability had been communicated to and relied upon by petitioner.

(13) Following the unequivocal position taken by the Department in and before 1988 and reconfirmed in 1992, that interest earned on Treasury obligations was

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

not taxable, petitioner relied on that position to its great and irreversible detriment, in respects that include but are not limited to the following:

(i) During the 1992, 1993, and 1994 tax years, had petitioner known that the interest income on Treasury obligations was deemed taxable by the Department, or later would be treated by the Department as taxable, petitioner would not have paid "preferred" or higher interest rates on Government interest-bearing deposits placed with petitioner. Specifically, had petitioner known that the Department claimed taxability, petitioner would have paid to the Government a lower rate of interest on such interest-bearing deposits. Petitioner is informed and believes that the Government of Guam was aware, or in the exercise of reasonable diligence would have been aware, that it was receiving a higher interest rate on its deposits with petitioner than it would have received if the Government had informed petitioner that Director would later assert that the interest income on Treasury obligations was subject to G.T.I.T. In reliance on the clear position that had been taken by the Director/Department, petitioner instead paid out a higher interest rate to the Government of Guam than it otherwise would have.

(ii) During the 1992, 1993, and 1994 years, had petitioner known that the interest income on Treasury obligations was taxable, or would later be claimed by the Department to be taxable, petitioner would have charged the Government of Guam its normal and customary banking fees, including but not limited to return item fees, stop payment order fees, monthly maintenance fees, bank statement fees, revocation and renewal fees, on all Government deposits. Had petitioner known that the Department claimed taxability, it would not have waived such fees which, based upon the amount of Government deposits, were substantial. Petitioner is informed and believes that the Government of Guam knew, or in the exercise of reasonable diligence, should have known,

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

that it was not paying the normal and customary banking fees ordinarily charged by petitioner. However, in reliance on the clear position previously taken by the Director/Department, petitioner did not charge or receive the normal and customary banking fees it otherwise would have.

(iii) During the 1992, 1993, and 1994 years, had petitioner known that the interest income on Treasury obligations was taxable, or would later be claimed by the Department to be taxable, petitioner would not have paid higher interest rates on interest-bearing deposits placed by non-Government depositors with petitioner. Had petitioner known that the Department would later claim taxability, petitioner would have paid to its non-Government depositors a lower rate of interest on such interest-bearing deposits. Petitioner is informed and believes that the Government of Guam knew, or in the exercise of reasonable diligence should have known, that petitioner was paying higher interest rates on non-Government deposits than it would have if petitioner had known that the interest income on Treasury obligations might be subject to G.T.I.T. In reliance on the clear position taken by the Director/Department, petitioner instead paid out a higher interest rate to non-Government depositors than it otherwise would have, and it cannot possibly retrieve this money from its non-Government depositors now.

(iv) Based on its year end after-tax income for the 1992, 1993, and 1994 years, petitioner paid out dividends on common stock to its shareholders in the amounts of $1,940,000.00, $2,434,000.00, and $1,955,000.00, respectively. Had petitioner known that the Government would later reverse its position and contend that interest income on Treasury obligations is taxable, petitioner would not have paid out the amount of dividends that it did for these years; indeed, had petitioner known that its interest income could be subject to Guam taxation, it would have paid out substantially less in dividends for

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

the 1992, 1993, and 1994 years, if in fact it was able to pay out any dividends at all for those years. However, in reliance on the unequivocal position previously taken and reconfirmed by the Department, petitioner paid out the dividends in these years, and it cannot possibly retrieve this money from its shareholders now.

(14) At all relevant times, the Director of the Department, who also served at all relevant times as the Banking Commissioner of Guam, had regulatory jurisdiction over petitioner in his capacity as Banking Commissioner and was thereby at all times required by law to examine petitioner's affairs and financial condition, including but not limited to the extent of investments petitioner was making in Treasury obligations, the extent of deposits of the Government held by petitioner, and the fact that petitioner was treating the interest income on Treasury obligations as non-taxable under the G.T.I.T. The Director of the Department as Banking Commissioner, received complete financial information, including petitioner's audited financial statements and annual reports, and learned additional facts from its own reviews of petitioner. Accordingly, the Director knew, and regularly received information consistent with the knowledge, that petitioner was relying in its business strategy, investment decisions, and financial planning and budgeting on the Department's position that interest income on Treasury obligations was not taxable under the G.T.I.T. The Director knew or should have known that it would be to the detriment of petitioner if the Department changed the unequivocal position it had represented to petitioner.

(15) Given the unequivocal position taken by the Director in 1988 that interest income on Treasury obligations is not taxable under the G.T.I.T, and the Director's knowledge thereafter that petitioner was investing in Treasury obligations in reliance on the position taken by the Director (and taking other related actions in reliance on the Director's

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

position, as set out above), it would be unfair and unconscionable to allow the Director to change position at this time with respect to the 1992, 1993, and 1994 tax years, and to require petitioner to pay the assessed deficiency with respect to the interest income on Treasury obligations.

(16) Petitioner is also informed and believes that, as a result of petitioner's treating the interest income on Treasury obligations as non-taxable for these years in reliance on the Director's clear position on this issue, the Government received certain benefits that it would not otherwise have received. These benefits to the Government included but were not limited to the following:

(i) Shareholders of petitioner, substantially all of whom are residents of Guam, received greater dividends from petitioner as a result of the Director's conduct (as set forth above) and, in turn, paid to the Government greater income taxes than they would have had petitioner distributed lesser dividends;

(ii) The Government regularly received a higher rate of interest on the deposits it placed with petitioner than it would have received if petitioner had known that the Director, contrary to his explicit representations, would later reverse his position and assert as taxable interest income on the Treasury obligations that collateralized the Government's deposits;

(iii) Petitioner paid its non-Government depositors a higher rate of interest on the interest-bearing deposits they placed with petitioner than it otherwise would have paid and is informed and believes that, in turn, they paid to the Government greater income taxes than they would have had petitioner paid a lower rate of interest;

(iv) Petitioner is informed and believes that other results of its treatment of interest income on Treasury obligations during the 1992, 1993, and 1994 years

as non-taxable, in reliance on the Director's explicit representations, have included but have not been limited to the showing of superior financial ratios in Petitioner's financial statements, which resulted in:

- petitioner's lending of a greater amount of funds than it otherwise would have to support development on Guam, which has in turn resulted in more taxes being paid to the Government on additional income and assets resulting from such development and from the employment that has resulted from petitioner's greater lending;
- petitioner's greater ability to expand properties and employ more people, which has resulted in more taxes being paid to the Government on petitioner's properties and by petitioner's employment; and

(v) The Director knew or reasonably should have known, in his capacity as Banking Commissioner, that if petitioner had a liability for income taxes on Treasury obligations during the 1992, 1993, and 1994 years, the financial ratios in petitioner's financial statements were not correct and should have been so cited by the Director, thereby diminishing such loans and expansion.

(17) In addition, it would further be unfair and unconscionable to allow the Director to change his hitherto unequivocal position with respect to the taxability of interest income on Treasury obligations received by petitioner because petitioner is informed and believes that the Director's recent change of position, and his decision to treat the interest income on Treasury obligations as subject to the G.T.I.T., including on a retroactive basis, and to serve petitioner with the Notice of Deficiency at issue, are arbitrary and capricious, an abuse of discretion, and motivated by political considerations. In particular, petitioner is informed and believes that such change was the result of political

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

animus towards petitioner held by the Governor of Guam and his agents. The facts upon which the petitioner relies at this time for this assertion are as follows:

(i) Petitioner is informed and believes that the position of the Department, that the interest income on Treasury obligations is not taxable under the G.T.I.T., changed sometime after the new Governor was elected in 1994 and the current Director of the Department took office, due to petitioner's and/or certain of its officers and directors' failure to endorse the Governor during and after his election campaign.

(ii) In the eight years after 1988, the Department did not audit petitioner with respect to the taxability of interest income on Treasury obligations. Petitioner is informed and believes that during the same period, the Department neither audited nor challenged any other taxpayer with respect to this issue. In 1997, the Department suddenly initiated an audit of petitioner with respect to the 1992, 1993, and 1994 tax years. The auditor from the Department stated to petitioner that instructions to audit petitioner had come directly from "above", i.e., the Governor. The auditor from the Department made clear that he was only interested in investigating the issue of interest income received by petitioner on Treasury obligations. He failed to express any interest in investigating any of the issues that petitioner is informed and believes are routinely examined in a regular audit of a taxpayer, and petitioner is informed and believes that the auditor did not use the Audit Technique Guide for Commercial Banks (or any other part of the Internal Revenue Manual) in his audit of petitioner.

(iii) Petitioner is informed and believes that the new position of the Department, that interest income on Treasury obligations is not taxable under the G.T.I.T., hardened against petitioner when Lourdes Leon Guerrero became an opposition candidate for lieutenant governor in the 1998 gubernatorial primary election. Ms. Leon

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

Guerrero is the sister of petitioner's chief executive officer and president, and daughter of the chairman and founder of the petitioner. She was also a director of petitioner until 1997. Agents of the present Governor suggested that, in exchange for certain concessions by petitioner and/or certain of its officers or directors, the Government would not take steps against petitioner, including but not limited to, asserting that the interest income received by petitioner on Treasury obligations was subject to tax under the G.T.I.T. Petitioner declined these offers.

(iv) At about this time the current Governor or his agents took action to alter or to threaten to alter then existing and long-standing business relationships between the Government or its agencies and petitioner, including moving many of the Government deposits from petitioner to other banks, notwithstanding the fact that such other banks charged the Government substantially greater administrative fees than those charged by petitioner. Around the same time, several Government agencies raised with petitioner the possibility of changing the trusteeship on numerous Government bond indentures for which petitioner had earlier been appointed as trustee. In addition, many bond indentures were not awarded to petitioner even though petitioner submitted the most favorable proposals and had the best qualifications.

(v) Petitioner is not aware of any taxpayers other than petitioner and Antonio R. Gumataotao that have been audited or received notices of deficiency with respect to the taxability of interest income on Treasury obligations since 1988. Accordingly, petitioner is informed and believes that the Notice of Deficiency including its retroactive reversal of the Department's prior position reflects and is a result of the political position of the Governor and his agents with respect to petitioner.

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

(18) In the administration of the G.T.I.T., the Director has discretion to reverse a prior decision or practice and to apply a new decision or practice prospectively only and not retroactively. The Director has, in fact, reversed prior interpretations or practices in administration of the G.T.I.T. and made such application prospective only and not retroactive. To the extent that the Director now contends that interest on Treasury obligations is taxable under the G.T.I.T., and if that contention is valid, such determination should only apply prospectively. Based upon the Director's prior decision that interest on Treasury obligations is non-taxable, his awareness that petitioner relied to its detriment on such position in its reporting and operations, and the unconscionable and unfair political animus motivating the Director's reversal of his previous position, a retroactive application of the rule that interest on Treasury obligations is taxable constitutes an abuse of discretion.

(b) As of December 31, 1991, petitioner was classified for the first time as a "large bank" for purposes of Section 585 of the G.T.I.T. In 1991, pursuant to Section 585 of the G.T.I.T. and Section 1.585-6 of the G.T.I.T. regulations, petitioner elected the "specific charge-off" method of accounting for bad debts and, therefore, was required to "recapture" over a four-year period (i.e., include in taxable income) the positive balance of the bad debt reserve account previously established for income tax purposes. Petitioner included in its income for the 1991 and 1992 taxable years 10 percent and 20 percent, respectively, of what it, at that time, believed to be the balance of the bad debt reserve account. As a result of the audit conducted by what is now PricewaterhouseCoopers, LLP, petitioner realized that the balance of its bad debt reserve amount was negative at both December 31, 1991 and December 31, 1990, and therefore, pursuant to Section 1.585-6 of the G.T.I.T. regulations, petitioner had no "recapture" amount. Since the petitioner had included the "recaptured" amounts on its originally-filed 1991 and 1992 income tax returns

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

in error, in 1995 and 1996, it timely filed amended income tax returns for the taxable years 1991 and 1992, respectively. Such amended returns were accepted by the Department. Now, in the Notice of Deficiency, the Director has inexplicably insisted that petitioner recapture the balance of the bad debt reserve account even though such balance was negative in the taxable years 1990 and 1991, and despite the fact that petitioner previously established this point in its filing of amended returns and, in the instant case, upon the Director's request, has provided sufficient documentation to substantiate its claim.

WHEREFORE, petitioner prays that this Court:

1. Find that the interest income received by petitioner from Treasury obligations during the 1992, 1993, and 1994 tax years is not subject to tax under Section 61 of the G.T.I.T., either under the G.T.I.T., or the U.S. Constitution or Code of Federal Regulations or because the Director is equitably estopped from taking the position that such interest income is taxable under the G.T.I.T. or because the Director's decision that such interest income is taxable with retroactive effect constitutes an abuse of discretion.

2. Find that, under Section 585 of the G.T.I.T. and Section 1.585-6 of the G.T.I.T. regulations, no amount of the balance of petitioner's bad debt reserve account as of December 31, 1991 was required to be included in petitioner's taxable income for the taxable years 1993 and 1994.

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

3. Grant petitioner such other and further relief as the Court, in its discretion, deems just and proper.

DATED: April 24, 2001.

Respectfully submitted,
ARRIOLA, COWAN & ARRIOLA

By: ______________________
JOAQUIN C. ARRIOLA
Attorneys for Petitioner
BANK OF GUAM

DENIS T. RICE
GARY P. KAPLAN
SIMON J. FRANKEL
HOWARD, RICE, NEMEROVSKI, CANADY, FALK & RABKIN
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, CA 94111
Tel: 415-434-1600
Fax: 415-217-5910

JEROME SAPIRO, JR.
DAVID A. SAUERS
SAPIRO LAW FIRM
711 Van Ness Avenue, Suite 440
San Francisco, CA 94102-3244
Tel: 415-771-0100
Fax: 415-771-3142

ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

# VERIFICATION

Guam, U.S.A., )
) ss:
City of Hagåtña. )

**ANTHONY A. LEON GUERRERO**, being first duly sworn, deposes and says: that he is the duly authorized representative of **BANK OF GUAM**, a corporation organized and existing under the laws of Guam; that he has read the foregoing instrument and knows the contents thereof, and the same is true of his own knowledge, except as to those matters which are therein stated on his information and belief, and as to those matters, he believes them to be true.

**ANTHONY A. LEON GUERRERO**

SUBSCRIBED AND SWORN to before me this 24th day of April, 2001, by **ANTHONY A. LEON GUERRERO**.

Notary Public

VILMA C. YURKO
NOTARY PUBLIC
In and for Guam, U.S.A.
My Commission Expires: November 13, 2002
P.O. Box 3389
Hagåtña, Guam 96932



ARRIOLA, COWAN & ARRIOLA, HAGATNA, GUAM 96910

EXHIBIT 1

Dipåttamenton Kontribusion yan Adu'åna
DEPARTMENT OF
# REVENUE AND TAXATION
GOVERNMENT OF GUAM Gubetnamenton Guåhan

CARL T.C. GUTIERREZ, Governor Maga'låhi
MADELEINE Z. BORDALLO, Lt. Governor Tifienta Gubetnadora

JOSEPH T. DUENAS, Director Direktot
GEORGE V. CRUZ, Deputy Director Sigundo Direktot

January 24, 2001

**CERTIFIED MAIL**

**Bank of Guam**
P.O. Box BW
Hagatna, Guam 96932

Type of Tax: Corporate Income
Tax Years Ended & Deficiencies:

| | |
|---|---|
| 9212 | $ 2,176,892.90 |
| 9312 | 2,153,504.85 |
| 9412 | 2,556,505.55 |

90-Day Letter Expires: April 24, 2001

**NOTICE OF DEFICIENCY**

We have determined that there is a deficiency (increase) in your income tax as shown above. I regret we have been unable to reach a satisfactory agreement in your case. This letter is a NOTICE OF DEFICIENCY ("90-Day Letter) sent to you as required by law. The enclosed statement shows how we computed the deficiency.

If you do not intend to contest this determination in the U.S. District Court of Guam, please sign and return the enclosed waiver form (Form 870). This will permit an early assessment of the deficiency and limit the accumulation of interest.

If you decide not to sign and return the waiver, the law requires that after 90 days from the date of this letter (150 days, if this letter is addressed to you outside of Guam), we will assess the deficiency and take action to collect the tax. However, within the time stated, you may contest this determination by filing a petition with the District Court. We may not assess any deficiency for this year until after District Court has decided your case.

You may obtain a copy of the rules for filing a petition with the District Court by writing to the Clerk of the U.S. District Court of Guam, 4th floor U.S. Courthouse, 520 West Soledad Avenue, Hagatna, Guam 96910.

If you intend to file a petition with the District Court, you must do so by April 24, 2001 (90 or 150 days, as the case may be); this period is fixed by law, and the District Court cannot consider your case if your petition is filed late.

Sincerely,

**JOSEPH T. DUENAS**, Director

By: [signature]
Joseph L.G. Rios, Jr., Administrator
Technical Research & Appeals Bureau

Enclosures: Notice of Deficiency Statement
Form 870 (Waiver)



EXHIBIT 1

Department of Revenue & Taxation

# Notice of Deficiency Statement (Part 2 of 2)

Return Form No. 1120

**Name and Address of Taxpayer(s)**

Bank of Guam
P.O. Box BW
Hagatna, Guam 96932

Due 8/19/01 2,541,673.57 recvd 11/8/01

**Taxable Year(s) Ended:** December 31, 1992, 1993, and 1994

| Deficiency: | | |
|---|---|---|
| $ | 2,176,892.90 | (12/31/92) |
| | 2,153,504.85 | (12/31/93) |
| | 2,556,505.55 | (12/31/94) |

**Penalties:**

**Date of 30-day letter:** July 1, 1998

## Adjustment to Income

| | TYE 9212 | TYE 9312 | TYE 9412 |
|---|---|---|---|
| Adjusted Gross or Taxable Income Shown on Return or As Previously Adjusted | $ 8,955,160.00 | $ 7,020,059.00 | $ 7,467,988.00 |
| Adjustments: | | | |
| (a) Taxable Interest Income | 6,825,149.00 | 7,057,320.00 | 6,850,151.00 |
| (b) Interest Income Expense Deduction | (422,524.00) | (2,169,308.00) | (1,270,506.00) |
| (c) Recapture of Reserves for Bad Debts | -0- | 1,350,000.00 | 1,797,000.00 |
| Corrected Adjusted Gross or Taxable Income | $ 15,357,785.00 | $ 13,258,071.00 | $ 14,844,633.00 |

## Explanation of Items

(a) It has been determined that interest earned from U.S. Treasury obligations is taxable under section 61(a)(4) of the Guam Territorial Income Tax Law (GTIT) and section 1.61-7(b)(3) of the GTIT regulations.

(b) It has also been determined that the expenses related to the income from U.S. Treasury obligations is deductible under GTIT sections 162 and 212 and the regulations thereunder.

(c) The Bank of Guam for tax purpose is no longer considered a "small" bank under the provisions of GTIT section 585(c)(2). As a result, the bank is no longer able to deduct additions to their Reserve for Bad Debt account. Instead, the Bank must elect one of two methods prescribed under GTIT section 585(c)(1). The Bank utilized the method prescribed under regulation section 1.585-6 beginning 1991 but discontinued it in 1993 for some unknown reason. Adjustments were made to include the "unrecaptured" amounts for tax years 9312 and 9412 as required under regulation section 1.585-6.

## Computation of Income Tax

| | TYE 9212 | TYE 9312 | TYE 9412 |
|---|---|---|---|
| Corrected Tax | $ 5,221,646.90 | $ 4,540,324.85 | $ 5,095,621.55 |
| Less: Foreign Tax Credits | (300,258.00) | (350,000.00) | (332,391.00) |
| Plus: Other Taxes | -0- | -0- | -0- |
| Total Corrected Tax Liability | $ 4,921,388.90 | $ 4,190,324.85 | $ 4,763,230.55 |
| Less: Total Tax Shown on Return or as Previously Adjusted | (2,744,496.00) | (2,036,820.00) | (2,206,725.00) |
| Adjustments to Earned Income Credit | -0- | -0- | -0- |
| Deficiency of Income Tax | $ 2,176,892.90 | $ 2,153,504.85 | $ 2,556,505.55 |

| | | | |
|---|---|---|---|
| Total Corrected Tax Liability | $ 4,921,388.90 | $ 4,190,324.85 | $ 4,763,230.55 |
| Less: Amount Previously Collected Without Assessment | (2,000,000.00) | | (1,933,855.00) |
| Estimated Tax Payments | | (2,250,000.00) | (370,000.00) |
| Assessments/Tax Payments | (744,496.00) | | |
| Earned Income Credit | | | |
| Adjustments to Prepayment Credits | | | (9,732.00) |
| Plus: Previous Refund | | | |
| Amt Applied to Estimated Tax | | 213,180.00 | 97,130.00 |
| Amount Due and Payable (excluding interest and penalties) * | $ 2,176,892.90 | $ 2,153,504.85 | $ 2,546,773.55 |

* NOTE: If payment has been made, please notify this office by calling 475-1813. The amount does not include interest or penalties. They will be computed on the date of payment.

| Form 870 (Rev. March 1992) | Department of Revenue & Taxation **Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment** | Date Received by Rev & Tax |
|---|---|---|

| Names & Addresses of Taxpayer(s) *(Number, street, city or town, state, zip code)* | Social Security or Employer Identification No.: |
|---|---|
| Bank of Guam<br>P.O. Box BW<br>Hagatna, Guam 96932 | 96-0002144 |

**Increase/(Decrease) in Tax and Penalties**

| Tax Year Ended | Balance Tax Due | Penalty | Penalty Code Section | | | | |
|---|---|---|---|---|---|---|---|
| 12/31/92 | $2,176,892.90 | See Note* | | | | | |
| 12/31/93 | $2,153,504.85 | See Note* | | | | | |
| 12/31/94 | $ 2,546,773.55 | See Note* | | | | | |
| | | | *Note: To be computed at a later date. | | | | |

**Instructions**

**General Information**

If you consent to the assessment of the deficiencies shown in this waiver, please sign and return the form in order to limit any interest charge and expedite the adjustment to your account. Your consent will not prevent you from filing a claim for refund *(after you have paid the tax)* if you later believe you are so entitled. It will not prevent us from later determining, if necessary, that you owe additional tax; nor extend the time provided by law for either action.

If you later file a claim and the Department disallows it, you may file suit for refund in the District Court of Guam, but you may not file a petition with the U.S. Tax Court.

We will consider this waiver a valid claim for refund or credit of any overpayment due you resulting from any decrease in tax and penalties shown above, provided you sign and file it within the period established by law for making such a claim.

**Who Must Sign**

If you filed jointly, both you and your spouse must sign. If this waiver is for a corporation, it should be signed with the corporation name, followed by the signatures and titles of the corporate officers authorized to sign. An attorney or agent may sign this waiver provided such action is provided such action is specifically authorized by a power of attorney which, if not previously filed, must accompany this form.

**Consent to Assessment and Collection**

I consent to the immediate assessment and collection of any deficiencies *(increase in tax and penalties)* and accept any overassessment *(decrease in tax and penalties)* shown above, plus any interest provided by law. I understand that by signing this waiver, I will not be able to contest these years in the District Court of Guam, unless additional deficiencies are determined for these years.

| | | |
|---|---|---|
| Your Signature | | Date |
| Spouse's Signature | | Date |
| Taxpayer's Representative Signature | | Date |
| Corporate Name | | |
| Corporate Officer's Signature | Title | Date |
| Corporate Officer's Signature | Title | Date |

Form 870 (Rev. 3-92)

Department of Revenue and Taxation

## Notice of Deficiency Statement (Part 1 of 2)

Return Form No.
1120

Name and Address of Taxpayer(s)

Bank of Guam
P.O. Box BW
Hagatna, Guam 96932

We have determined the deficiency (increase in tax) and penalties shown below.

| Taxable Year Ended | Deficiency | Penalties | Penalty Code Sections |
|---|---|---|---|
| December 31, 1992 | $ 2,176,892.90 | see NOTE below | |
| December 31, 1993 | 2,153,504.85 | see NOTE below | |
| December 31, 1994 | 2,556,505.55 | see NOTE below | |

In making this determination of your Guam Territorial Income Tax Liability, careful consideration has been given to the report of examination, a copy of which was sent to you on July 1, 1998.

NOTE: Penalties and interest will be computed at a later date.

EXHIBIT 2

A.A. LEON GUERRERO
SR. VICE PRESIDENT/GENERAL ADMINISTRATION

MEMBER OF THE FEDERAL DEPOSIT INSURANCE CORP.

# Bank of Guam

*"The People's Bank"*
P.O. Box BW
Agana, Guam 96910

Tel: 472-8865 Thru 8867
472-8971 Thru 8979

September 20, 1985

Dave Santos
Director
Department of Revenue & Taxation
Government of Guam
Agana, Guam 96910

Dear Dave:

As you are probably aware the Bank of Guam as of December 31, 1984 has a tax receivable due from the Government of Guam of approximately $709,163.00 (Principal) plus interest. At the present time, we are finalizing our computation of the interest which involves various rate through out the period in question.

This amount due has been in our books for quite a while and I'm sure you can appreciate our desire to try and initiate its liquidation. We are aware, however, and are sensitive to the Governments present cash flow tightness and are willing to agree to payment in four (4) quarterly installments as follows:

| | |
|---|---|
| October 1, 1985 | Principal payment of $236,388.00 |
| December 31, 1985 | Principal payment of $236,388.00 |
| March 31, 1986 | Principal payment of $236,387.00 |
| June 30, 1986 | The balance of the interest due for the entire period involved. |

I will be appraising your office of the interest that would be due at that period given the senario of repayment herein as structured above.

We do appreciate your consideration and assistance on this matter and if there should be any difficulties in meeting the above request, please let us know immediately. Looking forward to a final resolution on this matter.

Please indicate your acceptance by signing on the spaces provided below.

Sincerely,

A.A. Leon Guerrero
Senior Vice President
General Administration

AALG:mdm

EXHIBIT 2

ACCEPTED BY: ____________ DATE: 9/20/85

EXHIBIT 3

ANTHONY A. LEON GUERRERO
Executive Vice President/
Chief Operating Officer

# Bank of Guam
"The People's Bank"

MEMBER OF THE FEDERAL
DEPOSIT INSURANCE CORP.

P. O. Box BW
Agana, Guam 96910
Tel: 472-8865/6/7

Only locally owned Bank - founded 1972 by Jesus S. Leon Guerrero

RECEIVED
AUG 28 1986

August 25, 1986

Dave Santos
Director
Department of Revenue & Taxation
855 West Marine Drive
Agana, Guam 96910

Dear Dave:

Pursuant to our agreement of September 25, 1985 relative to the repayment schedule of the Bank of Guam income tax refunds, we hereby acknowledge receipt of the principal amounts in total. In lieu of the final payment for accrued interest, we hereby request that the amount be applied to our 1985 Corporate income tax return. A schedule reflecting the calculation will be attached to the return which will be filed on or about September 15, 1986.

Thank you for your assistance in this matter.

Sincerely,

A.A. LEON GUERRERO
Executive Vice President
Chief Operating Officer

AALG:mdm

Please acknowledge agreement

EXHIBIT 3

EXHIBIT 4

BEFORE THE DIRECTOR OF THE DEPARTMENT OF REVENUE AND TAXATION

Agana, Guam

---

...EIVED
Department of Revenue and Taxation
Director's Office
Date: JUN 03 1988
Initial:

PROTEST

of

BANK OF GUAM

Agana, Guam

---

Against Proposed Deficiencies in Guam Corporate Income Taxes

For the Calendar Years

1983
1984
1985

**EXHIBIT 4**

May 17, 1988

Mr. Frank B. Leon Guerrero
Deputy Commissioner
Department of Revenue & Taxation
855 West Marine Drive
Agana, Guam 96910

Dear Mr. Leon Guerrero:

Bank of Guam
P.O. Box BW
Agana, Guam 96910
F - 192
1120 1983, 1984, 1985

We hereby acknowledge receipt of the 30 day letter addressed to the above indicated taxpayer, transmitting the Revenue Agents Report dated April 6, 1988, proposing adjustments to the taxpayer's income for the calendar years 1983, 1984, and 1985. We also acknowledge the 30 day extension granted by the Department of Revenue and Taxation for the filing of this protest.

The proposed, agreed, and protested tax deficiencies are as follows:

Tax Deficiency

| Taxable Year | Proposed | Agreed | Protested |
|---|---|---|---|
| 1983 | 608,164.00 | -0- | 608,164.00 |
| 1984 | 982,034.00 | -0- | 982,034.00 |
| 1985 | 1,238,629.00 | -0- | 1,238,629.00 |

The taxpayer takes exception to the following proposed adjustments:

| | 1983 | 1984 | 1985 |
|---|---|---|---|
| a) Interest income | 2,226,790. | 2,339,891. | 3,163,010. |
| b) Interest expense | < 132,260.> | < 231,950.> | < 514,360.> |

The taxpayer also takes exception to adjustments that were omitted from the revenue agents report. Examples of adjustments omitted are:

1) Bad debt provision for income tax purposes
2) Contribution carryover
3) Investment tax credit carryover
4) Tax over book losses on the sale of securities, due to proposed adjustment (a) above

As the above omitted adjustments are generally limited to taxable income, adjustments will be discussed at conference as required.

The following are the issues, facts, and authorities upon which taxpayers rely:

## Issue (a) Interest income

The Bank of Guam was incorporated in 1972 to conduct banking operations as a territorial bank in Guam. Banks and bank holding companies are generally subject to income taxes as are other corporations. There are, however, special rules and regulations relating to many items of income and expense. The Internal Revenue Code of 1954 defines a "bank" as a bank or trust company incorporated and doing business under the laws of the United States (including laws relating to the District of Columbia or of any state, a substantial part of the business of which consists of receiving deposits and making loans and discounts, or of exercising fiduciary powers similar to those permitted to national banks under authority of the Controller of the Currency, and which is subject by law to supervision and examination by State or Federal authority having supervision over banking institutions. (IRC Section 581) Banks and bank holding companies file their federal income tax returns on Form 1120. The return is the vehicle used for reporting the income, deductions, and resulting tax liability of the bank. The Bank of Guam timely filed its Guam corporate income tax returns for the calendar years 1983, 1984 and 1985 with the Department of Revenue and Taxation, Government of Guam.

The Bank of Guam reported all items of financial statement income and expense from operations in the appropriate places on each of the returns under examination. Differences between financial statement income and income for income tax purposes are reconciled in Schedule M-1. Income from U.S. Government obligations, municipal and territorial obligations and others were included on Scheduled M-1 as being not subject to Guam corporate income tax.

The examining agent in his revenue agents report has taken exception to the Bank of Guam treatment of U.S. obligation interest income. The examining agent cites IRC Section 61 to include all income from whatever source including U.S. Obligation interest. The Bank of Guam has provided the examining agent with a substantial amount of information to support the position that U.S. obligation interest is not subject to Guam income tax. The examining agent uses this information and suggests different conclusions. The Bank of Guam disagrees with the revenue agent's position and summarizes its position briefly as follows.

The Organic Act of Guam ("Organic Act") adopted by the United States Congress in 1950 recognized the political status of Guam as a U.S. unincorporated territory. Section 31 of the Organic Act, enacted on August 1, 1950, created a separate

territorial income tax for Guam. Section 31 of the Organic Act reads in part as follows:

The income tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in Guam.

In Laguana v. Ausell, 102 F. Supp. 949 (D.C. Guam 1952), Aff'd 212 F.2d 207 (9th Cir. 1954), the court reasoned that Section 31 established a territorial income tax to be collected by the Government of Guam, and that Guam and the United States were to be treated as separate and distinct taxing jurisdictions, even though their income tax laws arose from an identical statute applicable to each.

Congress in 1958, amended Section 31 of the Organic Act to further expand the guidelines for the interpretation of the Guam territorial income tax. New Section 31(d) provides for the creation of a "mirror image" concept for Guam's territorial income tax. New Section 31(d) provides that:

In applying as the Guam Territorial income tax laws in force in Guam pursuant to . . . this section, except where it is manifestly otherwise required, the applicable provisions of the Internal Revenue Codes of 1954 and 1939 shall be read so as to substitute "Guam" for "United States", "Governor or his delegate" for "Secretary or his delegate", "Governor or his delegate" for "Commissioner of Internal Revenue" and "Collector of Internal Revenue, District Court of Guam" for District Court" and with other changes in nomenclature and other language, including the omission of inapplicable language where necessary to effect the intent of this section.

Internal revenue code section 61 generally provides that gross income except as otherwise provided means all income from whatever source derived including compensation for services, gross income derived from business, interest, and several other categories.

Internal revenue code section 103 provides that gross income does not include interest on (1) the obligations of a State, a Territory, or a possession of the United States, or any political subdivision of any of the foregoing, or of the District of Columbia.

A literal application of the "mirror image" concept with the substitution of terms found in Section 13.1(d) of the Organic Act would result in Internal Revenue Code section 103 being applicable to Guam in the following form:

"Gross income does not include interest on obligations of the ... [United States]...".

In other words, to the extent the words "possession of the United States", refers to Guam, we substitute the words "United

States". The "mirror image" system under which the United States income tax laws are converted into Guam income tax laws, require not only that the term "Guam" be substituted for the term "United States" and vice versa, but also requires that where "Guam" is included in the word "possession", the words "United States" must to that extent be substituted for the term "possession". That is the only interpretation which renders Section 103 meaningful under the Guam income tax laws. It is clear from the structure of the mirror system, that the word substitution system used to convert one statute to the other requires that the terms "United States" and "Guam" must be interchanged whether those words are specific or whether they are inferred by inclusion in a group (such as in the term "possession"). The touch stone of the mirror tax system is that the possession is to treat the United States in the same manner as the United States treats the possession. The Third Circuit has held this "true mirror image" to be at the very heart of the system. See Vitco, Inc. vs. Government of the Virgin Islands 560 F 2d 180 (3rd Circuit) (1977).

Both equality of treatment and a true mirror image of the Internal Revenue Code demands that Guam grant tax exempt status with respect to Federal obligations on the same basis that the United States grants tax exempt status to obligations issued by the Territory of Guam.

Further basis for the Bank of Guam position against imposition of a Guam tax on interest income from U.S. Government obligations is the doctrine of supremacy of the U.S. Federal Government and its instrumentalities over the states, territories and possessions of the United States.

The doctrine of federal supremacy setting forth the requirement that the Federal Government and its instrumentalities must be free from infringement by the states was first set forth and reviewed in a lengthy, scholarly opinion by Chief Justice Marshall of the United States Supreme Court in the case McCullough v. Maryland, 17 U.S. (4 Wheat.) 316 (1819). McCullough involved the issue of the rights of the State of Maryland to levy a special tax on the operations of a federal bank of the United States operating in the State of Maryland. Justice Marshall reasoned that the American people had declared the Constitution of the United States, and the laws made in pursuance thereof, to be supreme, and that, accordingly, the states could not infringe upon or otherwise negatively affect the ability of the Federal Government to carry out its Constitutional purposes. The court held that the power of a state to tax the operations of the Federal Government or its instrumentalities included the "power to destroy" and such power in a state "cannot be tolerated".

The doctine of federal supremacy eventually evolved to specifically prohibit the imposition of a state income tax upon the Federal Government, its instrumentalities or its property. In Van Brocklin v. Anderson, 117 U.S. 151 (1886),

the Supreme Court held that property of the United States was exempt from general state taxation. Several years later in Farmers and Mechanics Bank v. Minnesota, 232 U.S. 516 (1914), the Supreme Court ruled that bonds issued by a territory of the United States were exempt from state taxation on the ground that the territory was a federal instrumentality. Additionally, in Northwestern Mutual Life Insurance Co. v. Wisconsin, 275 U.S. 136 (1927), the court stated, citing Home Savings Bank v. City of Des Moines, 205 U.S. 503, 509 (1906), Farmers & Mechanics Bank, supra, and First National Bank v. Anderson, 269 U.S. 341, 347 (1925), that:

> [I]t cannot be denied that bonds of the United States are beyond the taxing power of the states . . . [I]t has been settled doctrine here that where the principal is absolutely immune, no valid tax can be levied upon income arising therefrom . . . , accordingly, if the . . . act really imposes a direct charge upon interest derived from United States bonds, it is pro-tanto void.

Finally, in Macallan Co. v. Commonwealth of Massachusetts, 279 U.S. 620 (1928), the Supreme Court held that a state tax, however small, upon federal securities or interest derived therefrom, interferes with or tends to interfere with the constitutional power to borrow money on the credit of the United States and constitutes a burden upon the operations of the Federal Government and carried far enough could prove destructive.

Guam as an unincorporated territory of the United States has no broader power than that granted by Congress and the Constitution of the United States. States and territories of the United States including Guam are restricted by the doctrine of federal supremacy. Congress has given no express right for Guam to tax interest from U.S. Government obligations. While there is no specific case involving Guam relative to taxation of U.S. instrumentalities or interest on United States Government Obligations, there are cases involving territories with statutes similar to Section 31 of the Organic Act which support the conclusion that the doctrine of federal supremacy applies equally with respect to the territories or insular possessions of the United States as it does with respect to the various states. In Harris v. Municipality of St. Thomas and St. John, (D. Virgin Islands) 111 F. Supp. 63 (1953), the court reasoned that territories of the United States are regarded as "inchoate" states, organized under the laws of Congress and limited by their Organic Act and the Constitution of the United States.

In H.I. Hettinger & Co. v. Municipality of St. Thomas & St. John, (CA Virgin Islands) 187 F.2d 774 (1951), the court surmised that the power to tax is not an attribute of

sovereignity of a territory of the United States, but must come from a grant from Congress. The court further noted that the power of the territories to levy taxes are restricted by the United States Constitution, the specific Congressional enactments, and the implied restriction whereby property and instrumentalities of the United States are exempt from taxation by a state or territory.

In Hettinger, supra, the court cited Domenech v. National City Bank, 294 U.S. 199 (1935), stating that "the taxing body of the territory cannot tax a United States agency unless Congress says so". The court was interpreting a Virgin Islands tax statute similar to Section 31 of the Organic Act, and concluded that Congress in the statute granted the Virgin Islands broad taxing power "comparable to those possessed by the States".

There is no indication in the Organic Act, that the United States government consented to allow the Territory of Guam to tax U.S. Government Obligations or the income from those Obligations. Congress has not so consented in the case of any other state or territory. Moreover, the courts of the United States in reviewing the Organic Acts of the Virgin Islands and Puerto Rico have held that the power of a territory to tax its sovereign will not be implied and the grant of a general power to tax will not be construed as consent to tax the Government of the United States. "Nothing less than an Act of Congress clearly and explicitly conferring the privilege will suffice". Domenech vs. National City Bank, 294 U.S. 199 205 (1935). See also Rivera vs. Buscaglia, 146 F.2nd 461 (1944). Accordingly, there is no legal precedent for assuming Guam's right to tax unless that right is specifically set forth in the Organic Act.

Congress, by statute, has specifically prohibited states and territories from taxing certain obligations of United States Government agencies. For example, income from obligations issued by Banks for Cooperatives organized under the Farm Credit Act and income from obligations issued by the Federal Home Loan Bank are taxable by the United States but specifically exempt from taxation by Guam. This is totally contrary to any supposed Congressional intent that Guam have the authority to tax U.S. Obligations in the same manner as the United States taxes those obligations. No statute, regulation, case, pronouncement or other bit of evidence has been presented suggesting that Congress intended by virtue of the Organic Act that Guam be granted the authority to tax income from U.S. Government Obligations. In fact the regulations issued by the Department of the Treasury of the United States provide that Treasury Bills are "exempt from all taxation now or hereafter imposed on the principal or interest thereof by any state, or any of the possessions of the United States" Treasury Regulation 31 CFR 309.4. That is clear enough!

In summary, Guam, as an unincorporated Territory of the United States, has no broader power than any other state or territory

to tax U.S. Government Obligations or the interest from those obligations. It is well settled that the states and territories of the United States are restricted in their taxing authority by the doctrines of Federal Supremacy and Sovereignty. We have no reason to believe that Guam is not similarly restricted. Congress has given no express right for Guam to tax income from U.S. Government Obligations and accordingly, no such right exists.

## Issue (b) Interest expense

The examining agent has determined that the Bank of Guam is allowed to deduct the interest expense relating to interest income from obligations of the United States goverment. We disagree. Internal Revenue Code Section 265(2) provides that interest on indebtedness incurred or continued to purchase or carry tax-exempt obligations is not deductible. A large portion of the Bank of Guam's indebtedness, is subject to payment on immediate and short-term demand, and hence it must have considerable flexibility as to the source of its funds. In the ordinary course of the banking business, it is necessary in receiving funds for day-to-day operations to resort to short-term indebtedness from a number of sources. Recognizing this, Revenue Procedure 7020 provides that, in general, interest paid or accrued by a bank that is incurred in the ordinary course of its day-today business will not be disallowed under Section 265 unless there are circumstances demonstrating a direct connection between the borrowing and the tax-exempt investment. Revenue Procedure 70-20 further states that it will ordinarily be inferred that a direct connection does not exist in cases involving the following classes of short-term indebtedness: bank deposits (including interbank deposits and certificates of deposits); short-term notes; short-term Eurodollar deposits and borrowings; federal funds transactions (and similar interbank borrowing to meet reserve requirements and other day-to-day and short-term interbank borrowings), repurchase agreements, and borrowings directly from the Federal Reserve to meet reserve requirements. Revenue Procedure 70-20 defines "short-term" bank indebtedness as indebtedness for a term not to exceed three years.

Pursuant to IRC Section 291, 20 percent (15 percent before 1985) of the amount of interest allocable to tax-exempt obligations acquired after 1982 is not deductible. Unless regulations from the Service provide otherwise, the amount of interst expense allocable to the post-1982 tax-exempt obligations will be the pro rata portion of the total interest expense determined by comparing the average monthly adjusted basis of the tax-exempt obligations to the average adjusted basis of all assets.

The taxpayer believes that the examining agent has erred as discussed in this protest and respectfully requests a district conference to further discuss the issues. Additional substantiation as necessary will be presented at conference.

Declaration of Taxpayer:

Under the penalties of perjury, I declare that I have examined the statement of facts presented in this protest and in any accompanying schedules and statements and, to the best of my knowledge and belief, they are true, correct, and complete.

BANK OF GUAM

by Jesus S. Leon Guerrero

Title President and Chairman of the Board

Declaration of Agent:

Under the penalties of perjury, I declare that this protest was prepared by me and, although I do not know of my own knowledge that the facts contained herein are true and correct, on the basis of information furnished me I believe them to be true and correct.

Robert J. Steffy
Certified Public Accountant

EXHIBIT 5

Office of
Chief Counsel
Internal Revenue Service
Branch 1
Associate Chief Counsel (International)
Room 3319
950 L'Enfant Plaza South, SW
Washington, DC 20024
JUN 9 1988

The Honorable Joaquin G. Blas
Director
Department of Revenue and Taxation
Government of Guam
855 West Marine Drive
Agana, Guam 96910

Re: Taxation of Interest on U.S. Government Obligations

Dear Director Blas:

This is in response to your letter of May 4, 1988 regarding the taxation of interest on U.S. government obligations by the Government of Guam.

Pursuant to your request, we have reviewed the opinion of the Government of Guam Attorney General dated July 21, 1987. The fundamental problem we have with accepting the position set forth in that memo is that it is inconsistent with the Treasury Regulations promulgated by the Bureau of Public Debt regarding the exemption from taxation of U.S. government bonds, notes, etc. (See attached list). The current regulations, with two exceptions, 31 CFR sections 341.13 (Retirement Plan Bonds) and 346.13 (Individual Retirement Bonds), state that the income derived from the obligations is exempt from taxation by any state, any possession of the United States, or any local taxing authority. The regulations governing Retirement Plan Bonds and Individual Retirement Bonds do not mention taxation or exemption from taxation by possessions.

The Internal Revenue Service is bound by the regulations promulgated by the Bureau of Public Debt. However, as we indicated to Mr. Guerrero during his last visit, the Bureau of Public Debt is planning to change those regulations prospectively so that the interest on U.S. obligations will not escape all taxation.

In addition, it should be noted that many of the obligations expressly state on their face that they are exempt from taxation by possessions. (See specimen attached). These obligations are contracts between the United States and the purchaser, and the United States is bound by the terms thereof.

EXHIBIT 5

The Virgin Islands previously requested our advice as to whether they were authorized to tax interest on U.S. obligations and we also advised them that to do so would be contrary to the regulations promulgated by the Bureau of Public Debt.

MICHAEL F. PATTON

Enclosures: as stated

OBLIGATIONS REGULATIONS

| | |
|---|---|
| 31 CFR section 309.4 | (Treasury Bills) |
| 31 CFR section 316.9 | (Series E Savings Bonds) |
| 31 CFR section 332.9 | (Series H Savings Bonds) |
| 31 CFR section 340.3 | (Treasury Bonds) |
| 31 CFR section 341.13 | (Retirement Plan Bonds) |
| 31 CFR section 342.5 | (Savings Notes) |
| 31 CFR section 343.4 | (U.S. Mortgage Guaranty Insurance Company Tax and Loss Bonds) |
| 31 CFR section 345.5 | (Treasury Certificates of Indebtedness) |
| 31 CFR section 346.13 | (Individual Retirement Bonds) |
| 31 CFR section 347.5 | (2 Percent Treasury Bonds) |
| 31 CFR section 348.4 | (2 Percent Depositary Bonds) |
| 31 CFR section 349.14 | (Book-Entry Treasury Bills) |
| 31 CFR section 351.8 | (Series EE Savings Bonds) |
| 31 CFR section 352.10 | (Series HH Savings Bonds) |

EXHIBIT 6

MEMORANDUM

To: Attorney General

From: Director of Revenue and Taxation

Subject: Reconsideration of Attorney General's Opinion DRT 87-0848

Since the issuance of the Attorney General's opinion DRT 87-0848, my staff has been researching this issue further in light of new materials which were presented by various tax sources.

The staff informs me that they have new facts that were not available earlier nor treated in the opinion, which casts doubt on the correctness of that opinion.

The Attorney General's opinion relies heavily on the intent of Congress and the inequitable results that would ensue if the interest were held to be exempt from both Guam and U.S. Taxation.

This argument would probably hold if there were no direct evidence available to dispute it. There are, however, certain matters which were not considered in the opinion that treats this question directly.

One central question that the Attorney General's opinion did not address is the immunity of Federal instrumentalities from State or Territorial taxation. In the case of McCulloch v. Maryland, 1819 4 Wheat, 316,44ED 579, the doctrine of Federal immunity from state taxation on obligations of the U.S. was cemented in case law. The Supreme Court held interest from bonds and obligations of the United State was not taxable by any State (Territory) except by permission of the United States. A state has no authority to enact laws which would diminish in the slightest degree the market value or attractiveness of obligations issued by the United States in an effort to secure necessary credit. (New Jersey Realty Title. Ins. Co v. Division of Tax Appeals in Department of Taxation and Finance of N.J 70 S.CT.413,338 U.S. 665.)

EXHIBIT 6

The United States in this case did not grant permission to the Government of Guam to tax earnings from U.S. Obligations. The Attorney General's opinion holds that Congress gave implied consent to the taxation of interest. It states that "Congress has given its consent that the interest be taxed and indeed has mandated such tax by extending the Internal Revenue Code to Guam and not providing any exemption for such interest to residents of Guam."

The Internal Revenue Code may have been extended to Guam, however, relinquishing by a sovereign nation of its immunity power cannot be implied. In Graves v. New York ex rel. O'Keefe 306 U.S. 466,599,Ct.959(1935) the court in describing whether the imposition of New York State income tax on the salaries of employees of the Homeowners Loan Corporation is proper states:

> "Congress has given no intimation of any purpose either to grant or withhold immunity from state taxation of the salary of the corporations' employees, and the congressional intention is not to be gathered from the statute by implication."
>
> "It is true that the silence of Congress, when it has authority to speak, may sometimes give rise to an implication as to the Congressional purpose. The nature and extent of that implication depend upon the nature of the Congressional power and the effect of its exercise. But there is little scope for the application of that doctrine to the tax immunity of governmental instrumentalities. The constitutional immunity of either government from taxation by the other, where Congress is silent, has its source in an implied restriction upon the power of the taxing government. So far as the implication rests upon the purpose to avoid interference with the functions of the taxed government or the imposition upon it of the economic burden of the tax, it is plain that there is no basis for implying a purpose of Congress to exempt the federal government or its agencies from tax burdens which are unsubstantial or which courts are unable to discern. Silence of Congress implies immunity no more than does the silence of the Constitution. It follows that when exemption from state taxation is

> claimed on the ground that the federal government is burdened by the tax, and Congress has disclosed no intention with respect to the claimed immunity, it is in order to consider the nature and effect of the alleged burden, and if it appears that there is no ground for implying a constitutional immunity, there is equally a want of any ground for assuming any purpose on the part of Congress to create an immunity."

It is quite clear that granting or withholding immunity from taxation cannot be implied but must be expressly given.

In addition to the constitutional argument, Section 3124 of Title 31 of the U.S. Code prohibits States from taxing earnings of U.S. Obligations. The accompanying regulation Section 309.4 includes territories in the definition of a State.

If Guam were administering a Federal Tax Law, the prohibition would not apply since the Federal Government is not restricted from taxing its own obligations. If however, Guam is administering a Territorial Income Tax, then the prohibition of Section 3124, Title 31 would apply.

Whether or not Guam administers a U.S. tax or a territorial tax is answered by Section 31 of the Organic Act. Section 31 makes the income tax laws of the United States a separate territorial income tax payable to the Government of Guam.

This was given Judicial application in the Sayre decision. The conclusion of the court is that Guam is administering a Territorial Income Tax Law rather than Federal Tax Law.

In making the tax a territorial tax it allows the court doctrine in McCulloch to apply and Section 3124 of Title 31 would then be equally applicable to Guam.

Often times guidance on the exigencies of the mirror code must come from another source that operates similar to the situation in Guam.

The Virgin Islands which also mirrors the Internal Revenue Code is not taxing the interest from U.S. Obligations. They use the McCulloch doctrine to exempt the interest.

Because of the ambiguities that this problem presented, the Deputy Tax Commissioner in his recent trip to Washington D.C. on behalf of the Guam Tax Reform Commission met with the Attorneys at the Internal Revenue Service International Office and presented the problem to the mirror theory attorneys. As a result of that visit, the Chief Counsel wrote to me on June 9, 1988 outlining his agreement with the assessment that the interest is not taxable.

He relates that the U.S. obligations expressly state on their face that "they are exempt from taxation by possessions. These obligations are contracts between the United States and the purchaser, and the United States is bound by the terms thereof."

Guam is a party to that contract through the Organic Act. The contract must be honored by all State and Territorial taxing authorities. The right to tax the income from U.S. obligations belongs to the Federal Government alone.

It is very clear to me based on the above discussions that Interest from Obligation of the U.S. is not taxable by the Territory of Guam.

I am requesting that you review the Attorney General's opinion in light of the above discussion and withdraw the opinion retroactively.

Thank you.

JOAQUIN G. BLAZ

EXHIBIT 7

SENT BY: -14-88 ; 14:09 ; DIRECTOR'S OFFICE→ 9403693;# 1

JOSEPH F. ADA
Governor

FRANK F. BLAS
Lieutenant Governor

DEPARTMENT OF
# REVENUE & TAXATION
GOVERNMENT OF GUAM

JOAQUIN G. BLAZ, Director • V.M. CONCEPCION, Deputy Director

RECEIVED
JUL 14
Bank of Guam
HQ

File

## TELECOPY TRANSMITTAL

PLEASE DELIVER THE FOLLOWING PAGES TO:

Name: Tony Leon Guerrero

Firm: Bank of Guam

Location: Agana, Guam

Fax #: 477-8687

From: Joaquin G. Blaz

Fax #: 472-2643

Date: July 14, 1988

If you do not receive 2 pages (including this one) in good condition, please call as soon as possible at (671) 477-5106.

ADDITIONAL INFORMATION:

EXHIBIT 7

855 West Marine Drive Agana, Guam 96910 • Tel: (671) 477-5106 Telex: 721-6218 GOVGUAM • Fax: (671) 472-2643

GOVERNMENT OF GUAM
AGANA, GUAM 96910

July 13, 1988

Memorandum Ref: RT 87-0848

To: Director, Department of Revenue and Taxation

From: Attorney General

Subject: Internal Revenue Service Chief Counsel Opinion Regarding Taxability of United States Government Obligations

You have requested our office to consider a recent letter opinion prepared by the Chief Counsel for the Internal Revenue Service, which opinion and advice to you runs contrary to our earlier opinion dated July 21, 1987, reference RT 87-0848.

The Internal Revenue Service has taken an unequivocal position with regard to the issue of taxation in this matter, and has advised you in the above mentioned letter from the Office of Chief Counsel dated June 9, 1988, and signed by Michael F. Patton that it would be contrary to Bureau of Public Debt regulations for Guam to tax the interest on U.S. Government obligations. In view of these explicit directions from the Internal Revenue Service, the Department of Revenue and Taxation, if satisfied with the soundness of the Chief Counsel's Office's advice, should act accordingly in this matter.

E. Barrett-Anderson
ELIZABETH BARRETT-ANDERSON

RECEIVED
Department of Revenue and Taxation
Director's Office
Date: JUL 14 1988
Initial: Amc

EXHIBIT 8

Page ____ of ____ Pag

Form 4549 (Rev. Sept. 1979) — Department of the Treasury - Internal Revenue Service

# Income Tax Examination Changes

Return Form No. 1120

| Name and Address of Taxpayers | S.S. or E.I. Number | Filing Status |
|---|---|---|
| BANK OF GUAM<br>P.O. BOX BW<br>AGANA, GUAM 96910 | 96-0003144 | CORPORATION |

Person Examination Changes Were Discussed With — Name and Title: ROBERT J. STIFFY, CPA

| 1. Adjustments to Income | Year: 1983 | Year: 1984 | Year: 1985 |
|---|---|---|---|
| a. | | | |
| b. | | | |
| c. | | | |
| d. | | | |
| e. | | | |
| f. | | | |
| g. | | | |
| 2 Total Adjustments | -0- | -0- | -0- |
| 3. Adjusted Gross, Taxable or Tax Table Income Shown on Return or as Previously Adjusted | <641,233> | 95756 | 643377 |
| 4. Corrected Adjusted Gross, Taxable or Tax Table Income | <641,233> | 95756 | 643377 |
| 5 Tax | -0- | 24052 | 275704 |
| 6. Alternative Tax, if Applicable (From page ____) | | | |
| 7. Tax Surcharge | | | |
| 8. Corrected Tax Liability (Lesser of line 5 or 6 plus line 7) | -0- | 24052 | 275704 |
| 9 Less Credits (Specify) a. Investment Credit | | 24052 | 24611 |
| b. | | | |
| c. | | | |
| 10. Balance (Line 8 less total of lines 9a through 9c) | -0- | -0- | 251093 |
| 11. Plus: a. Tax From Recomputing Prior Year Investment Credit | 555 | | |
| b. Self-Employment Tax | | | |
| c. | | | |
| 12 Total Corrected Income Tax Liability (Line 10 plus total of lines 11a through 11c) | 555 | -0- | 251093 |
| 13 Total Tax Shown on Return or as Previously Adjusted | 555 | -0- | 251093 |
| 14 Deficiency (Increase in tax before credit adjustments, line 12 less line 13) | -0- | -0- | -0- |
| 15 Overassessment (Decrease in tax before credit adjustments, line 13 less line 12) | -0- | -0- | -0- |
| 16 Adjustments to Prepayment Credits | | | |
| 17 Balance Due (Line 14 or 15 adjusted by line 16) | | | |
| 18. Overpayment (Line 14 or 15 adjusted by line 16) | | | |
| 19 Penalties, if any (See explanation) | | | |

Other Information

This report supercedes RAR dtd 9/30/87.

Examiner's Signature: Joseph M. [illegible] — District: Agana — Date: 12-27-88

Consent to Assessment and Collection - I do not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report. Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus any interest as provided by law. It is understood that this report is subject to acceptance by the District Director.

| NOTE If a joint return was filed, both taxpayers must sign. | Signature of Taxpayer: BANK OF GUAM | Date | Signature of Taxpayer | Date |
|---|---|---|---|---|
| By: R. J. Stiffy CPA | | Title | | Date: 12/29/[illegible] |

EXHIBIT 8

EXHIBIT 9

ANTHONY A. LEON GUERRERO
Executive Vice President/
Chief Operating Officer

# Bank of Guam

"The People's Bank"

MEMBER OF THE FEDERAL DEPOSIT INSURANCE CORP.

P.O. Box BW
Agana, Guam 96910
Tel: 472-8865/6/7

Only locally owned Bank - founded 1972 by Jesus S. Leon Guerrero

March 10, 1992

Mr. Joaquin G. Blaz
Director of Revenue
and Taxation
Government of Guam
855 West Marine Drive
Agana, Guam 96910

Dear Mr. Blaz,

This letter is to request a tax ruling for the Bank of Guam. As you are aware, Income derived from investment in U.S. Treasury securities is exempt from Guam tax under the mirror image of the Internal Revenue Code. With certain exceptions, interest expense allocable to exempt income is disallowed as a tax deduction.

The Bank accepts deposits from the Government of Guam. The deposits received by the Bank from the Government are required to be collateralized by the Bank with investments in U.S. Treasury securities to safeguard the Government's funds.

The Bank is not investing in U.S. Treasury securities for tax avoidance reasons. Furthermore, the Bank has no opportunity to invest these funds in a different manner that might generate a higher investment return. Accordingly, the Bank does not believe it is appropriate for any of its interest expense allocable to this exempt interest income to be disallowed as a tax deduction.

Accordingly, the Bank requests that the Department of Revenue and Taxation rule that the Bank will not have any interest expense disallowed as a tax deduction where the interest expense is allocable to exempt income earned from U.S. Treasury securities that are required to be held by the Government as collateral for the Bank deposits.

If you have any questions about this matter, please call me.

Sincerely,

ANTHONY A. LEON GUERRERO
Executive Vice President
Chief Operating Officer

EXHIBIT 9

DEPARTMENT OF

# REVENUE & TAXATION

GOVERNMENT OF GUAM

JOSEPH F. ADA
Governor

FRANK F. BLAS
Lieutenant Governor

JOAQUIN G. BLAZ, Director • V.M. CONCEPCION, Deputy Director

MAR 26 1992

Anthony A. Leon Guerrero
Executive Vice President
Chief Operating Officer
BANK OF GUAM
P.O. Box BW
Agana, Guam 96910

RECEIVED MAR 3 ... BANK ...

Dear Mr. Leon Guerrero:

This is in response to your correspondence of March 10, 1992 concerning disallowance of interest expense under Section 265 of the Guam Territorial Income Tax Law. I would like to dwell upon the deductibility of interest expense necessary to carry pledged collateral required under contractual arrangements entered into by a lending institution and the Government of Guam.

Normally the bank would make investment decisions based solely upon profitability and other economic considerations. Decisions to purchase tax exempt bonds would normally be predicated upon the aforementioned considerations. However, when the decision to invest in securities is not at arms length but are dictated by contractual arrangements between the bank and the Government of Guam then the normal operation of Section 265 should not apply to disallow the interest expense necessary to carry the exempt bonds.

Should you care to discuss this matter further please call.

Sincerely,

Joaquin G. Blaz

EXHIBIT 10

855 West Marine Drive Agana, Guam 96910 • Tel: (671) 477-5101 • Fax: (671) 472-2643