**NO: 07-32C**

**(JUDGE C. MILLER)**

---

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

**BANK OF GUAM**

**Plaintiff,**

**vs.**

**THE UNITED STATES**

**Defendant.**

---

# PLAINTIFF BANK OF GUAM'S RESPONSE BRIEF CONCERNING ISSUE PRECLUSION

---

Kurt W. Melchior
NOSSAMAN, GUTHNER,
KNOX & ELLIOTT, LLP
50 California Street, 34th Floor
San Francisco, CA 94111-4799
Telephone: (415) 398-3600
Facsimile: (415) 398-2438
kmelchior@nossaman.com

Attorneys for Plaintiff
BANK OF GUAM

On December 7, 2007, this Court ordered that "Defendant shall file a supplemental brief ... regarding the scope and nature of the judgment entered in Bank of Guam v. Director of Department of Revenue and Taxation, 01-CV-16 (filed Sept. 12, 2003), and its effect on whether plaintiff is precluded by the doctrine of issue preclusion from arguing that the GTIT [Guam Territorial Income Tax] is not a tax imposed by Congress, but one imposed by Guam. Defendant is directed to address whether and to what extent this judgment implements the [D]istrict [C]ourt's opinion of May 12, 2002, insofar as it ordered that judgment be entered dismissing plaintiff's first claim in that litigation." Defendant has filed that brief, and this is plaintiff's reply.

**1. Relevant Facts.**

The pertinent questions are (1) what was decided in the case to which this Court's December 7, 2007 order refers (hereafter, "the *Guam* Case"), and (2) whether, and if so, how, that decision relates to the matters at issue in the present case. The answers are (1) that the judgment in the *Guam* Case merely established a deficiency in the tax that is part of the Bank's measure of damages here, and (2) that neither that judgment nor the prior interlocutory order disposed of any issue relevant to this case.

The present Complaint alleges that the Bank bought and held many United States Government Obligations ("USGOs"), that "[i]n every such instance [of the Bank's ownership], it was an integral term of the contract that the income from USGOs would be free of any taxation by any possession of the United States, including the Territory of Guam" (Complaint, ¶ 6), and that all the USGOs purchased by the Bank "contain the United States government's covenant that the income from such USGOs is free of any Territorial taxation." (Complaint, ¶ 7.) Over the years, the government represented that its regulations meant that Guam could not tax that income. (Complaint, ¶¶ 7-9.) It next alleges that "[i]n January, 2001, the United States Court of Appeals of the Ninth Circuit held that income from USGOs was indeed subject to the Guam Territorial income tax, and that such tax was imposed not by the government of the Territory of Guam, which assessed such tax and to which such tax must be paid, but rather by the United

States Congress." (Complaint, ¶ 10.) It alleges that "[w]ithout authority from the United States government, the Guam Territorial government would be unable to impose the Territorial income tax described in this Complaint." (*Ibid.*) Finally, it alleges that "[t]he United States government, through its Congress, breached the [USGO] contract terms ... by authorizing the imposition of the Guam territorial income tax thereon." (*Id.*, ¶ 13.)

Thus, briefly summarized, the Complaint in this case alleges that the USGOs which the Bank purchased had been sold by defendant United States subject to a covenant that their income would be free of Territorial tax, but that the United States Congress by its laws, as interpreted by the Ninth Circuit in 2001, allowed the Territorial tax to be imposed. The Bank alleges that it had to pay such taxes, that those payments were a breach of the contractual covenant, and that they constitute the Bank's damages. (*Id.*, ¶¶ 19-20.) Nothing in the Complaint alleges that (to quote the December 7 Order), "the GTIT is not a tax imposed by Congress, but one imposed by Guam." In fact, Congress and Guam worked as a tag team to impose, assess and collect this tax.

Nothing in the *Guam* Case is inconsistent with or even rules on any of these matters. The relevant documents concerning the *Guam* Case were filed in this Court on November 30, 2007 (Document 17). The Guam District Court sat there as a tax court.[1] By its verified petition, the Bank sought "a redetermination of the deficiency set forth by the Director of Department of Revenue and Taxation" ("GDRT") (Exh. A, p. 2), alleging in paragraph 4(a) that "[t]he Director erred in determining that interest income on United States government obligations ... received by petitioner ... is taxable under Section 61(a)(4) of the Guam Territorial Income Tax" and relevant regulations, and went on to assert that even if the tax would otherwise lie, the Director should be equitably estopped and that his actions constituted an abuse of discretion. (*Id.*, ¶¶ 4(b), (c).) The petition explained at length the tortuous course of the tax treatment of USGO income by the GDRT and prayed for a determination, among other matters, "that the interest income received by petitioner from Treasury obligations during [certain] tax years is not subject to tax

---

[1] See 48 U.S.C., § 1421i(h)(1) and 11 Guam Code Annotated § 36101.

under Section 61 of the G.T.I.T….."

On May 14, 2002, the Guam District Court partially granted the respondent Director's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). That part of the Order is brief and limited. It states, "The respondent argues that *Gumataotao v. Director of Dep't. of Rev. and Taxation*, 236 F. 3d 1007 [*sic*] (9th Cir. 2001) controls the disposition of the petitioner's claim that the interest income from United States Treasury Bonds are tax-exempt [*sic*]." The court responded:

> The Ninth Circuit's holding in *Gumataotao* directly contradicts the petitioner's assertion that the respondent erred when he determined that Guam could tax the interest income on United States Treasury Bonds. Thus, the respondent's assertion that the *Gumataotao* holding controls the disposition of the Petitioner's First Claim[2] is correct and, as the petitioner correctly concedes, the Court is bound by that holding."[3] (Emphasis supplied.) (Document 17, Exh. B, p. 4.)

The court denied the motion to dismiss the remaining "claims," allowing the case to continue on the equitable estoppel and abuse of discretion issues.

Over a year later, the parties entered into a dispositive stipulation (Document 17, Exh. C) which states "that the issues in this matter have been resolved as follows: Petitioner agrees to pay $5,000,000.00 … as the deficiency" for certain tax years. The stipulation further states that:

> The respective concessions made by each party which led to the final resolution of each issue set forth in this Stipulation of Settlement are not to be interpreted as reflecting the view of either party on the merits of each such issue. Moreover, the parties stipulate that such respective concessions, except as otherwise expressly indicated herein, are limited to this proceeding and are not [to] be interpreted as concessions by either party with respect to any issue in any other proceeding or with respect to any other year. (Emphasis supplied.)

Based on that stipulation, the parties agreed "that the Court may enter the foregoing as a decision of the Court in this proceeding." (*Ibid.*) In consequence of that stipulation, the Court then "ORDERED AND DECIDED, that there is a total deficiency" in the amount of $5,000,000

---

2 Though the Bank's petition did not plead it separately, the Guam court labeled the issue whether Guam could tax USGO income as the "first claim."

3 The Bank had conceded that the Court was bound by *Gumataotao* but believed that *Gumataotao* was wrongly decided. Therefore, it "set out [its] principle [sic] arguments in this regard to preserve them for appeal." (*Id.*, p. 4, n.1.)

(*Id.*, p. 3) and entered a judgment which reads in full: "Judgment is hereby entered in accordance with the Stipulated Decision re Settlement filed September 12, 2003." (*Ibid.*, Ex. D.)

**2. As a Matter of Law, the Judgment in the *Guam* Case Has No Issue Preclusive Effect.**

The judgment in the *Guam* Case was the result of a stipulated settlement, not of any decision on the merits, and the parties expressly agreed that the settlement would not have issue preclusive effect. There was no "judgment on the merits." The Guam court made no findings of fact or conclusions of law. The parties expressly agreed that the settlement would not have issue preclusive effect. Collateral estoppel does not apply because the case was never tried and there was no opportunity to appeal.

In *United States v. International Building Co.*, 345 U.S. 502, 73 S. Ct. 807, 97 L. Ed. 1182 (1953), the Court rejected a claim of collateral estoppel based on a prior stipulated settlement of a Tax Court case. Its language is instructive here:

> We conclude that the decisions entered by the Tax Court for the years 1933, 1938, and 1939 were only a pro forma acceptance by the Tax Court of an agreement between the parties to settle their controversy for reasons undisclosed. There is no showing either in the record or by extrinsic evidence ... that the issues raised by the pleadings were submitted to the Tax Court for determination or determined by that court. They may or may not have been agreed upon by the parties. Perhaps, as the Court of Appeals inferred, the parties did agree on the basis for depreciation. Perhaps the settlement was made for a different reason, for some exigency arising out of the bankruptcy proceeding. As the case reaches us, we are unable to tell whether the agreement of the parties was based on the merits or on some collateral consideration. **... But [u]nless we can say that [the judgments] were an adjudication of the merits, the doctrine of estoppel by judgment would serve an unjust cause: it would become a device by which a decision not shown to be on the merits would forever foreclose inquiry into the merits.** Estoppel by judgment includes matters in a second proceeding which were actually presented and determined in an earlier suit. ... A judgment entered with the consent of the parties may involve a determination of questions of fact and law by the court. But unless a showing is made that that was the case, **the judgment has no greater dignity, so far as collateral estoppel is concerned, than any judgment entered only as a compromise of the parties.**

(345 U.S. at 505-06 [citations omitted; emphasis supplied]).[4] Here, the judgment was entered in settlement of the Bank's tax petition. It was a compromise and did not determine any question of

---

4 *International Building* was expressly followed in *Arizona v. California*, 530 U.S. 392, 415-16, 120 S. Ct. 2304, 2319, 147 L. Ed. 2d 374 (2000), cited at p. 18 of the Bank's brief in opposition to the motion to dismiss the present case.

fact or law and can have no collateral estoppel effect at all.

### 3. The Interlocutory Guam Ruling Does Not Support Issue Preclusion.

Defendant offers very little analysis of the law concerning the issue preclusion effect of an interlocutory ruling where, as here, the case is later settled on terms which expressly disclaim any binding effect in other cases. Here, the parties expressly stipulated that their agreements to resolve the entire action "are limited to this proceeding and are not [to] be interpreted as concessions by either party with respect to any issue in any other proceeding…." (See Document 17, Ex. C.) There is in fact much law on this subject.

The black letter rule with respect to issue preclusion[5] has been extensively discussed by the courts. We will focus on decisions of the Federal Circuit.

In *In re Freeman*, 30 F. 3d 1459, 1465 (Fed. Cir. 1994), the court held that "a judgment on the merits in a first suit precludes relitigation in a second suit of issues actually litigated and determined in the first suit." But in order to trigger issue preclusion, the matter had to go to final judgment in the first action, and the finding for which controlling status is sought must have been necessary to the judgment entered in the previous action. (*Id.* at 1465-1466.) In *Genentech, Inc. v. U.S. Intern. Trade Com'n.*, 122 F. 3d 1409, 1416 (Fed. Cir. 1997), the court held that "an interlocutory ruling that has not been subject to appeal normally cannot be given preclusive effect" and that "issues which could not be appealed are never precluded." Under these authorities, the *Guam* Court's order dismissing the "first claim" of the Bank's tax petition can have no issue preclusion effect because it never became a final judgment and was not appealable.

Defendant relies on a statement in *Abbott v. United States*, 41 Fed. Cl. 553, 562 (1998), to the effect that where a judicial determination is followed by a stipulated judgment, "the fact 'that a judgment is entered by stipulation does not *in and of itself* remove the effect of a court's prior

---

[5] Claim preclusion, or res judicata, involves the same parties as in the prior action and requires that the claim was finally disposed of in the first action so that it cannot be raised again. *Jet, Inc. v. Sewage Aeration Systems*, 223 F. 3d 1360, 1362 (Fed. Cir. 2000). As explained in the text, issue preclusion, which can be asserted by a non-party to the first action, does not apply here because it generally requires a final disposition of an issue adversely to the party against whom issue preclusion is asserted in the later case.

determination of specific issues in the litigation.'" (Emphasis in original.) However, as the *Abbott* court went on to note, "the stipulated judgment 'must be construed to determine its effect in light of all of the circumstances.'" (*Ibid.*)

*Abbott* is revealing as to how that rule applies. In that case, the stipulated judgment in the first case expressly vacated the decision of the court on two other issues but did "not profess to vacate the prior summary judgment ruling on the Lanehart overtime issue," for which issue preclusion was claimed. Rather, the judgment expressly acknowledged the interlocutory *Lanehart* ruling, waived all rights to appeal from it, and in effect left the *Lanehart* ruling in place while vacating other disputes in order to settle the entire case. Here, the opposite occurred. The parties in the *Guam* Case agreed that their concessions would have no issue preclusive effect.

To quote Judge Yock in *Abbott*:

> It is clear from the plain language of the stipulated judgment that the parties manifested an intention to be bound by Judge Harkins' ruling .... If a stipulated judgment, 'by its terms, indicates that the parties thereto intend to preclude any challenge to [an issue decided by summary judgment during the course of litigation], even in subsequent litigation involving a new cause of action, then that issue can be precluded.' (*Id.*, 41 Fed. Cl. at 563 [citations omitted].)

The court appropriately described *Hartley v. Mentor Corp.*, 869 F. 2d 1469 (Fed. Cir. 1989), which defendant cited to this Court without any analysis, as "holding that issue decided on summary judgment had preclusive effect in subsequent litigation, where stipulated judgment did not conflict with or vacate the summary judgment ruling and where parties voluntarily relinquished the right to appeal the summary judgment ruling." (*Abbott, supra,* 41 Fed. Cl. at 563.)[6]

Of the many more Federal Circuit cases on the subject, none parallel the case at bar. For instance, *RF Delaware, Inc. v. Pacific Keystone Technologies, Inc.*, 326 F. 3d 1255 (Fed. Cir. 2003), held that there could be no collateral estoppel because the decision in the first case did not

---

6 This exception has its origin in § 13 of the Restatement (Second) of Judgments. There, comment *g* develops the point at length and is generally cautious about allowing preclusive effect to interlocutory rulings. Due to space limitations, we will not discuss that material in detail.

go to final judgment; but speculative dicta follow. Other cases have held that there can be no issue preclusion unless the party against whom the preclusion is asserted had a chance to appeal the earlier decision. See, *e.g., Interconnect Planning Corp. v. Feil*, 774 F. 2d 1132, 1135 (Fed. Cir. 1985). In *Dana v. E.S. Originals, Inc.*, 342 F. 3d 1320 (Fed. Cir. 2003), which allowed issue preclusion where the interlocutory matter had been "fully heard," the Circuit appears to have followed the law which governed at the case's geographic point of origin, there the Eleventh Circuit. Guam lies in the Ninth Circuit, whose law is clear that "collateral estoppel does not apply when the ruling in issue was not subject to appeal." *Radcliffe v. Rainbow Const. Co.*, 254 F. 3d 772, 787 (2001). We point this out in case the Court concludes that it should follow the point of origin rule here.

This Court has followed the *Freeman/Feil* formula on issue preclusion. In *Saladino v. United States*, 62 Fed. Cl. 782, 788 (2004), it ruled that "the [prior court's] resolution of those issues [sought to be precluded] [must have been] necessary to its resulting judgment…."

If the Court would not follow the rule of *Freeman, supra*, and *Feil, supra*, that a prior decision that was not final and subject to appeal cannot be a basis for collateral estoppel, it must look carefully at the history of the *Guam* tax case subsequent to the interlocutory decision. The Stipulated Decision re Settlement in that case, and the ensuing court order and simple judgment by the clerk, make clear that the parties did not intend to accept the court's interlocutory determination as final in any way.[7] Rather, the stipulation provides that the order of the court should be only that money be paid to the Guam tax collector, but that the concessions which led to the settlement "are not to be interpreted as reflecting the view of either party on the merits of each such issue." They "are limited to this proceeding" and are not to be regarded as a "concession … with respect to any issue in any other proceeding …." It is hard to think of clearer language to indicate that under "the plain language of the Stipulated Judgment," to return

---

[7] The Bank knew right along that the Guam Court was bound to follow *Gumataotao*. See FN 3, *supra*.

to Judge Yock's formulation of the issue, the parties did not "manifest[] an intention to be bound by [the prior] ruling." (*Abbott, supra*, 41 Fed. Cl. at p. 563.)

Defendant has not favored the Court with careful analysis of the issue, preferring a broad brush approach (see Defendant's Supplemental Brief, page 7).[8] But it must be clear that the manner in which the *Guam* tax case was finally resolved precludes its use as a bar to relitigation of an issue which was only interlocutorily decided there.

**4. In Any Event, The *Guam* Ruling Does Not Determine Any Issue Before This Court.**

As noted at the outset, the Complaint in the present case, which defendant seeks to have dismissed, alleges that the United States covenanted that the USGO income "would be free of any taxation by any possession of the United States, including the Territory of Guam." (Complaint, ¶ 6.) The petition in the *Guam* Case alleges that the tax which the Bank protested was assessed by Guam. Its introduction states that the Bank "petitions for a redetermination of the deficiency set forth by Director of the Department of Revenue & Taxation" (of Guam), and it then refers to a "Notice of Deficiency [which] was issued by the Department" (Exh. A, p. 2). The assessment was said to have been made "under section 61(a)(4) of the Guam Territorial Income Tax." (*Id.*, ¶ 4(a).) In its Rule 12(b)(6) Order, the *Guam* tax court held that under *Gumataotao, supra*, "the GTIT [Guam tax] does not exempt interest paid to Guam residents from United States Treasury Bonds" and rejected "petitioner's assertion that the respondent erred when he determined that Guam could tax the interest income on United States Treasury Bonds." (*Ibid.*, Ex. B, p. 4; emphasis supplied throughout.)

Defendant argues here that "the issue upon which the alleged contravention of law turns, in both cases, is whether the GTIT is a tax imposed by the Congress, not 'by any of the

[8] Defendant cites *Pedrina v. Chun*, 906 F. Supp. 1377, 1402 (D. Haw. 1995) at p. 6 of its brief to note that a judgment may be given preclusive effect pending its appeal. There was no appeal in the *Guam* Case. *Pedrina* denied issue preclusion because the prior action was ultimately dismissed for lack of prosecution (*Id.* at 1406). Defendant also cites *Pedrina* at p. 4 for the proposition that a judgment under Rule 12(b)(6) can be a final judgment on the merits: a correct proposition where the dismissal became final, which as explained in the text, in the *Guam* Case it did not.

possessions of the United States.'" (Defendant's Suppl. Brief, p. 4.) But the Bank has alleged no such issue in this proceeding, nor did the *Guam* court decide one. Rather, the Bank alleged here that "the United States government, through its Congress, breached the contract terms ... by authorizing the imposition of the Guam territorial income tax" on USGO income. (Complaint, ¶ 13; emphasis supplied.) *Gumataotao* and the *Guam* court's 12(b)(6) Order both held exactly the same thing. See 236 F. 3d at 1081: "Guam did not pass any law purporting to tax the Federal bonds, Congress did."

*Gumataotao* also confirms, as the Bank in substance alleges here (Complaint, ¶ 10), that "the government of Guam could indeed tax its residents on interest earned from U.S. bonds." (*Id.*, at 1078; emphasis supplied.)

In any event, Guam does have its income tax laws, and Congress has specifically authorized and approved them.[9] Section 61 of the Guam Territorial income tax, referred to in the Bank's tax petition (see *supra*, p. 2), is a part of those laws. Plaintiff had to pay the Territorial tax pursuant to these legal requirements.

In short, Congress enacted and authorized a "Guam Territorial income tax," but Guam imposes and collects it. Both under *Gumataotao* and under the District Court's Order in the *Guam* tax case which necessarily followed *Gumataotao*, that tax is collected and paid over to Guam as a Territorial income tax. That tax was imposed on the Bank when the government of Guam changed its policy and decided to follow *Gumataotao* instead of its many prior rulings that USGO interest income was Territorial tax free. (See *Guam* tax case petition at pp. 5-9 and 14-

---

[9] 48 U.S.C. § 1421i reads as follows:

(a) Applicability of Federal laws; separate tax

The income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in Guam ...
(b) Guam Territorial income tax

The income-tax laws in force in Guam pursuant to subsection (a) of this section shall be deemed to impose a separate Territorial income tax, payable to the government of Guam, which tax is designated the "Guam Territorial income tax."

17.) The issue which the Bank raises in this case is whether this imposition of the tax breaches the federal Government's covenant that USGO income shall be free of any Territorial taxes. That issue was not addressed in the *Guam* tax case. It must remain for adjudication.

Defendant has not addressed any of these points. The Bank submits that there is no issue in its present claim which could be precluded by the Rule 12(b)(6) Order in the *Guam Case*, even if that Order were procedurally subject to collateral estoppel. *Gumataotao*, the *Guam* tax court's 12(b)(6) Order, and the Complaint in the present action all point in the same direction: Congress authorized a Territorial tax and Guam collected that tax. Did those facts breach the defendant's repeated covenants and representations that there would be no Territorial tax on the USGO income? The merits of that matter have not been reached and remain for trial.

**5. Conclusion.**

The Court's Order asks the parties to address "whether plaintiff is precluded by the doctrine of issue preclusion from arguing that the GTIT is not a tax imposed by Congress, but one imposed by Guam." As explained above, that is not an issue framed by the Complaint. In fact, the tax was both "imposed by Congress," and then "assessed and collected by Guam" under Congressional authorization. As a Territory, Guam could not take any independent action except as blessed by Congress. *Late Corporation of Church of Jesus Christ. v. United States*, 136 U.S. 1, 42; 10 S. Ct. 792, 802; 34 L. Ed. 478 (1890). See also 48 U.S.C. § 1421 *et seq.*

For this reason, as well as those noted in plaintiff's prior briefs, the motion to dismiss under Rule 12(b)(6) should be denied in its entirety.

Respectfully submitted,

Dated: February 7, 2008

/s/ Kurt W. Melchior
Kurt W. Melchior
Attorney of Record for Plaintiff
BANK OF GUAM