NO. 07-32C
(JUDGE C. MILLER)

BANK OF GUAM,
Plaintiff,

vs.

THE UNITED STATES,
Defendant.

**PLAINTIFF'S MOTION FOR RECONSIDERATION, AND MEMORANDUM IN SUPPORT THEREOF**

Kurt W. Melchior
NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP
50 California Street, Thirty-Fourth Floor
San Francisco, California 94111-4707
Telephone: (415) 398-3600
Facsimile: (415) 398-2438
kmelchior@nossaman.com

Attorneys for Plaintiff
BANK OF GUAM

# Table of Contents


Page

I. THE STANDARD FOR GRANTING RECONSIDERATION ..... 1

II. THE COURT ERRED IN CALCULATING THE STATUTE OF LIMITATIONS WHICH APPLIES TO THIS CASE ..... 1

III. THE COURT'S RULING THAT THE BANK'S CLAIMS WITH RESPECT TO TAXES PAID FOR YEARS PRIOR TO 2001 ARE BARRED IS A MANIFEST ERROR OF LAW ..... 4

A. Claim Preclusion Is Not Jurisdictional. ..... 4

B. In Any Event, There Is No Basis For Issue Preclusion, Whether For The Years 1992, 1993 And 1994 Or For "All Tax Years Prior To 2001." ..... 5

C. In Any Event, There Is No Basis For Barring Claims For "All Tax Years Prior to 2001." ..... 7

IV. THE COURT'S MOST BASIC ERROR LIES IN ITS RULING THAT IF CONGRESS RATHER THAN GUAM CAUSED THE SUBJECT TAX TO APPLY, PLAINTIFF HAS STATED NO CLAIM ..... 9

A. What This Court Said In Its Ruling. ..... 10

B. What The Bank Actually Alleged In Its Complaint ..... 11

C. The Basis Of Defendant's Motion. ..... 13

D. What The Bank Argued In Its Briefs. ..... 14

E. What The Actual Facts Are ..... 18

F. *Gumataotao* In Perspective. ..... 21

G. The Record Of This Tax's Creation Shows That The Tax Levy Violates The Government's Promise That Bond Income Shall Be Exempt From Territorial Tax. ..... 22

H. The *Winstar* Rule. ..... 26

I. *Gumataotao* May Have Been Wrongly Decided. ..... 29

1) The Law Before *Gumataotao*. ..... 29

2) *Gumataotao* Rejected A Two-Way Mirroring Approach To Avoid "Disparate Tax Treatment" And "Because Of The Equality Principle." ..... 30

J. Breach Of The Covenant Of Good Faith And Fair Dealing. ....................33

K. Conclusion On *Gumataotao* And On The Bank's *Winstar* Claims. ..........34

V. THE COURT ERRED IN DISMISSING THE BANK'S CLAIMS FOR DECLARATORY RELIEF. ..........................................................................35

VI. CONCLUSION..........................................................................................37

# Table of Authorities

**Page**

**Cases**

*Abramson Enters. v. Government of the Virgin Islands*
994 F.2d 140 (3d Cir. 1993)....................30, 32

*Bodek v. Department of Treasury, Bureau of Public Debt*
532 F.2d 277 (2nd Cir 1976)....................23

*Boyd v. U.S.*
493 F.Supp. 529 (W.D. Pa. 1980)....................23

*CBS Corporation v. United States*
75 Fed. Cl. 498 (2007)....................1, 18

*Centex Corp. v. United States*
395 F.3d 1283 (Fed. Cir. 2005)....................27, 34

*Chapman Law Firm Co. v. Greenleaf Construction Co.*
490 F.3d 934 (Fed. Cir. 2007)....................12

*Chicago Bridge & Iron Co. v. Wheatley*
430 F.2d 973 (3d Cir. 1970)....................30, 32

*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*
544 U.S. 280, 125 S.Ct. 1517, 161 L. Ed. 2d 454 (2005)....................4

*Ferguson v. Union National Bank*
126 F.2d 753 (4th Cir. 1942)....................26

*First Heights Bank, FSB v. United States*
422 F.3d 1311 (Fed. Cir. 2005)....................27

*First Nationwide Bank v. United States*
431 F.3d 1342 (Fed. Cir. 2005)....................27

*Forbes v. Maddox*
339 F.2d 387 (9th Cir. 1964)....................22

*Franconia Assocs. v. United States*
536 U.S. 129, 122 S.Ct. 1993, 153 L. Ed. 2d 132 (2002)....................2, 3

*Garrison v. United States*
74 U.S. 688, 19 L. Ed. 277, 7 Wall. 688 (1869)....................26

*Goodyear Atomic Corp. v. Miller*
486 U.S. 174, 108 S.Ct 1704, 100 L. Ed. 2d 158 (1988)....................24

*Great Cruz Bay, Inc. v. Wheatley*
495 F.2d 301 (1974)....................32

*Griffin Broadband Communs., Inc. v. United States*
79 Fed. Cl. 320 (2007)....................13

*Guldager v. United States*
204 F.2d 487 (6th Cir 1953)....................23

*Gumataotao v. Director of Department of Revenue and Taxation*
236 F.3d 1077 (9th Cir. 2001).................... passim

*Heiner v. Mellon*
304 U.S. 271, 58 S.Ct. 92682 L. Ed. 1337 (1938)....................8

*Ind. Mich. Power Co. v. United States*
422 F.3d 1369 (Fed. Cir. 2005)....................2

*John R. Sand & Gravel Co. v. United States*
552 U.S. ___, 128 S.Ct. 750 (2008)....................2

*Johnson v. Quinn*
821 F.2d 212 (3d Cir. 1987)....................32

*Johnson v. United States*
54 Fed. Cl. 187 (2002)
*aff'd* 2003 U.S. App. Lexis 16892 (Fed. Cir. 2003)....................3

*Kokkonen v. Guardian Life Ins. Co. of America*
511 U.S. 375, 114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)....................35, 37

*Laguana v. Ansell*
212 F.2d 207 (9th Cir. 1954)
*cert. denied* 348 U.S. 830 (1954)....................21, 23

*Late Corporation of the Church of Jesus Christ of Latter-Day Saints v. United States*
136 U.S. 1, 10 S.Ct. 792, 34 L. Ed. 478 (1890)....................18

*Local Oklahoma Bank, N.A. v. United States*
452 F.3d 1371 (2006)....................26, 34

*Massachusetts Bay Transportation Authority v. United States*
254 F. 3d 1367 (2001)....................28

*National Air Traffic Controllers Association v. United States*
160 F.3d 714 (1998)....................35

*Purk v. United States*
30 Fed. Cl. 565 (1994) ....................................................................................3

*Rodriguez v. United States*
69 Fed. Cl. 487 (2006) ....................................................................................33, 34

*Sacramento Municipal Utility District v. United States*
74 Fed. Cl. 727 (2006) ....................................................................................1

*Sayre v. Riddell*
395 F.2d 407 (9th Cir. 1968) .......................................................................... passim

*Seaboard Lumber Co. v. United States*,
41 Fed. Cl. 401 (1998.) ....................................................................................25

*Sommers Oil Co. v. United States*
241 F.3d 1375 (Fed. Cir. 2001)........................................................................12

*Spicer v. United States*
217 F. Supp 44 (D. Kan. 1963)
*aff'd* 332 F.2d 750 (10th Cir. 1964)................................................................23

*U.S. v. Brockamp*
519 U.S. 347, 117 S.Ct. 849, 136 L. Ed. 2d 818 (1997)..................................2

*United States v. Dauphin Deposit Trust Co.*
50 F.Supp. 73 (M.D.Pa.1943)..........................................................................24, 25

*United States v. International Bldg. Co.*
345 U.S. 502, 73 S.Ct. 807, 97 L. Ed. 1182 (1953)........................................6

*United States v. Seckinger*
397 U.S. 203, 90 S.Ct. 880, 25 L. Ed. 2d 224 (1970)......................................26

*United States v. Winstar Corp.*
518 U.S. 839, 116 S.Ct. 2432, 135 L. Ed. 2d 964 (1996).................................... passim

*Vitco, Inc. v. Virgin Islands*
560 F.2d 180 (1977).........................................................................................30, 31

*Wolak v. United States*.
366 F.Supp. 1106, 1112-13 (D. Conn. 1973) ..................................................24

**Rules**

Federal Rules of Civil Procedure, Rule 8(c)...................................................4

Rules of the United States Court of Federal Claims, Rule 12(b)(1) ......................... passim

Rules of the United States Court of Federal Claims, Rule 12(b)(6) ........................5, 16, 37

Rules of the United States Court of Federal Claims, Rule 59 ..........................................1

**Regulations**

31 Code of Federal Regulations, section 309.4 ..........................................................22

31 Code of Federal Regulations, section 340.3 ..........................................22, 23, 33

31 Code of Federal Regulations, section 357.2 ..........................................................23

Guam Territorial Income Tax Regulations, section 1.61-7(b)(3) ....................................17

**Statutes**

26 United States Code section 6213 ..........................................................................2

26 United States Code, section 1442 ........................................................................32

26 United States Code, section 1442 ........................................................................29

26 United States Code, section 441(a) .......................................................................8

26 United States Code, section 441(b) .......................................................................8

26 United States Code, section 6511 .........................................................................2

26 United States Code, section 6511(a) ......................................................................2

26 United States Code, section 881 ..........................................................................29

26 United States Code, section 881(b) .......................................................................17

26 United States Code, section 882(e) .......................................................................17

26 United States Code, section 887 ..........................................................................29

48 United States Code Annoated, section 1423a ..........................................................22

48 United States Code, section 1421 ........................................................................18

48 United States Code, section 1421a .......................................................................11

48 United States Code, section 1421i ..........................................................8, 17, 21

48 United States Code, section 1421i(b) ....... 17

48 United States Code, section 1421i(d)(1) ....... 29

48 United States Code, section 1421i(e) ....... 29

Internal Revenue Code, section 103(a) ....... 30, 31

Internal Revenue Code, section 103(c) ....... 31

Internal Revenue Code, section 61(a)(4) ....... 17, 31

Omnibus Budget Reconciliation Act of 1989 ....... 29

Organic Act of Guam, section 31 ....... 17, 21

**Other Authorities**

Guam-Tax Laws, Pub. L. 92-606 (1972) ....... 29

House Rpt. No. 101-247 (Pub. L. 101-239)
(4 U.S. Code Cong. & Admin. News, 101st Congress, 1st Sess.) (1989) ....... 29

House Rpt. No. 92-1479 (Pub. L. 92-606)
(3 U.S. Code Cong. & Admin. News, 92d Congress, 2d Sess. (1972) ....... 29

I.T. 4046, C.B. 1951-1 ....... 17

Restatement 2d, Contracts, section 178 ....... 28

Restatement 2d, Contracts, section 180 ....... 28

Restatement 2d, Contracts, section 202, Comment g ....... 25

The American Heritage Dictionary of the English Language,
Fourth Edition, Houghton Mifflin Company, 2004 ....... 22

**MOTION FOR RECONSIDERATION**

Plaintiff, the Bank of Guam, respectfully moves that this Court reconsider its Order filed in this action on March 12, 2008 (Document 31), which granted the defendant's motion to dismiss pursuant to RCFC 12(b)(1) with respect to all tax years prior to 2001 and with respect to the fourth count of the Complaint, and which granted the defendant's motion to dismiss pursuant to RCFC 12(b)(6) with respect to the first, second and third counts of the Complaint.

The grounds for this motion are that the Court made numerous manifest errors of law and mistakes of fact and that the motion is necessary to prevent manifest injustice.

Plaintiff's grounds for the motion for reconsideration and legal and factual points in support of that argument are fully stated in the memorandum of points and authorities in support of this motion, which is filed herewith.

Plaintiff respectfully requests that the Court grant its motion for reconsideration and that, upon reconsideration, it enter a new and different order denying the defendant's motions to dismiss this action under both RCFC 12(b)(1) and RCFC 12(b)(6).

While plaintiff appreciates that allowing oral argument of this Motion is within the Court's discretion, it will gladly participate in such argument if set by the Court.

Dated: March 24, 2008 Respectfully Submitted,

By: /s/ Kurt W. Melchior
Kurt W. Melchior
Attorney for Plaintiff
BANK OF GUAM

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION OF THIS COURT'S ORDER DISMISSING THE COMPLAINT**

## I. THE STANDARD FOR GRANTING RECONSIDERATION

The grounds stated in Rule 59, RCFC, for reconsideration are "any of the reasons established by the rules of common law or equity applicable as between private parties in the courts of the United States." Our research has located no decision which discusses grounds for reconsideration in terms of the quoted language; but the case law is clear as to what are the standards for granting such a motion. As stated by Judge Firestone of this Court in *CBS Corporation v. United States*, 75 Fed. Cl. 498, 500-501 (2007), under Rule 59 of this Court's rules, "[i]n order to obtain relief, a party must show a manifest error of law, or mistake of fact." Another ground for such relief is "that the motion is necessary to prevent manifest injustice." (*Ibid.*) Another judge has similarly observed that under Rule 59, "[t]he decision to grant a motion for reconsideration is within the Court's discretion. . . . To prevail, the moving party must identify a manifest error of law or mistake of fact." (*Sacramento Municipal Utility District v. United States*, 74 Fed. Cl. 727, 728 (2006).)

Plaintiff submits that this Court has committed a number of manifest errors of law and mistakes of fact, and that these errors caused it to reach an erroneous and manifestly unjust result. The bases for these observations and conclusions follow. No more is required in order to sustain the motion.

## II. THE COURT ERRED IN CALCULATING THE STATUTE OF LIMITATIONS WHICH APPLIES TO THIS CASE

This Court erred when it ruled that Guam's Notice of Deficiency was the point of the alleged breach, rather than the date of the actual payment of the tax which occurred in 2003. At this point, that variance does not affect the outcome of the matters before the Court, but the Court's error seem to have been a material consideration in the Court's determination that the Bank's Complaint "with respect to all tax years prior to 2001" was dismissed for lack of jurisdiction. Therefore we briefly address this issue.

The Supreme Court has recently reaffirmed that it is a jurisdictional requirement that actions before this Court must be filed within the six-year statute of limitations. (*John R. Sand & Gravel Co. v. United States*, 552 U.S. ___, 128 S.Ct. 750, 757 (2008).) This Court stated in its opinion that under *Franconia Assocs. v. United States*, 536 U.S. 129; 122 S.Ct. 1993; 153 L. Ed. 2d 132 (2002), "[a] party faced with anticipatory repudiation may elect to treat such repudiation as an immediate breach, or it may choose to wait until the repudiating party actually breaches the contract" (Opinion at 9; *see Ind. Mich. Power Co. v. United States*, 422 F.3d 1369, 1373 (Fed. Cir. 2005)). What the Supreme Court actually said in *Franconia* is that "'the cause of action accrues, and the statute of limitations commences to run, from the time fixed for performance. . . .'" (*Franconia*, 536 U.S. at 143, 122 S.Ct. at 2002.)

This Court has concluded that "[t]he filing of the Notice of Deficiency in January 2001 . . . constituted an actual breach. . . ." (Opinion at 9). That statement is incorrect, since the filing of a Notice of Deficiency does not constitute a "time fixed for performance" of the payment of a tax, including the tax to which the Bank objects, and thus is not a triggering event under the Bank's view of the case. The <u>tax payment</u> is the relevant point of breach.

A deficiency assessment is just one step in the course of assessing and collecting a tax. Under 26 U.S.C. § 6213, after a Notice of Deficiency is mailed, the taxpayer has stated periods of time within which to file a petition for redetermination of the deficiency in the Tax Court. Years of litigation may follow before any such tax is ultimately found to be owing and then paid. The amount of the tax paid may be redetermined by the Tax Court and may turn out to be quite different from that originally assessed.

As the Supreme Court noted in *U.S. v. Brockamp*, 519 U.S. 347; 117 S.Ct. 849; 136 L. Ed. 2d 818 (1997), tax collecting requires very precise compliance with statutory rules. Likewise, 26 U.S.C. § 6511 also establishes basic time limits for steps to recover taxes paid, which take as their starting point the filing of a tax return or the actual, subsequent payment of a tax. Section 6511(a) defines the limitation period for claiming a credit or refund as "within 3

years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later. . . ."

Thus, the concept that the assessment of the deficiency is the point at which the Government breached its covenant occurred is wrong: the breach happens not at the time of assessment of the deficiency but when the tax is actually paid. That was the point where, in this case, the "tax free" promise was actually broken.

This Court has repeatedly observed that the date of the actual payment of a tax determines the timeliness of claims for subsequent legal relief, such as claims for refund or suits for recovery of a tax paid. (*See, e.g., Johnson v. United States*, 54 Fed. Cl. 187, 193 (2002) *aff'd* 2003 U.S. App. Lexis 16892 (Fed. Cir. 2003); *Purk v. United States*, 30 Fed. Cl. 565, 570 (1994) .) The history of the Bank's tax issues with the Guam Department of Revenue and Taxation about its United States Government Obligations ("USGO") interest income, described in some detail at pp. 18-21 below, likewise shows that taxes have repeatedly been assessed, but the assessments were vacated and the assessed deficiencies were never collected. Thus, actual payment of the tax is the only relevant standard for calculating the time when the actual violation of the tax-free covenant occurred, *i.e.* for breach of performance. (*See Franconia, supra.*) The relevant evidentiary facts are fully recited in paragraphs 5(a)(3)-(11) of the Bank's Petition in the Guam Tax case, Exhibit A to Plaintiff's post-hearing submission in this action, Document 17, filed November 30, 2007, and the facts concerning payment show that the payment postdated the settlement (*see* Order filed Sept. 11, 2003, pp. 13-14 of Document 17-3 therein).

The complaint alleges that the Bank paid the tax deficiencies "in 2003" (¶ 12). Since no other date of payment was shown in the motion papers, that is the date from which the statute of limitations must be assumed to run.

Since it has held that the Bank's claims were not barred by the statute of limitations, the decision that the Court lacks jurisdiction is inexplicable. We now turn to it.

## III. THE COURT'S RULING THAT THE BANK'S CLAIMS WITH RESPECT TO TAXES PAID FOR YEARS PRIOR TO 2001 ARE BARRED IS A MANIFEST ERROR OF LAW

### A. Claim Preclusion Is Not Jurisdictional.

At page 15 of the Memorandum Opinion and Order ("Opinion"), the Court stated that "the claim preclusion element of res judicata is decisive for the tax years covered by the stipulation, 1992, 1993 and 1994," but a page later the Court stated that "plaintiff saved the same argument for another day" so that "the court turns to the three contract claims set forth in plaintiff's complaint." (Opinion at 16.)

That text is the only discussion which Plaintiff has been able to locate which seems to address the defendant's contention that all of the Bank's claims preceding its 2003 (not 2001) tax payments to Guam are barred by *res judicata*; but in its Order, the Court directed that "Defendant's motion to dismiss pursuant to RCFC 12(b)(1) is granted with respect to all tax years prior to 2001. . . ." We have found nothing in the text of the Memorandum Opinion and Order which explains the grounds, or provides any basis, for dismissing the Bank's claims "with respect to all tax years prior to 2001". The reasoning of the Opinion at pages 15 and 16, quoted above, does not support the Court's evident decision to dismiss the Bank's claims insofar as they involve taxes paid to Guam for tax years prior to 2001, for "lack of jurisdiction over the subject matter," which is the ground for a dismissal under RCFC 12(b)(1).

As a first matter, both claim and issue preclusion—also known as *res judicata* and collateral estoppel—are matters of affirmative defense and not matters which thwart jurisdiction. This Court already ruled elsewhere in its Opinion that the Bank's claim was timely with respect to the statute of limitations (discussed in part II above). The Supreme Court has plainly held that "[p]reclusion . . . is not a jurisdictional matter. *See* Fed. Rule Civ. Proc. 8(c) (listing *res judicata* as an affirmative defense)." (*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 293; 125 S.Ct. 1517, 1527; 161 L. Ed. 2d 454 (2005).) This Court's own Rule 8(c) likewise lists estoppel as an affirmative defense. Thus, *res judicata* or issue preclusion would at best be

reasons to grant a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), but are is not conceivably jurisdictional grounds for dismissal under Rule 12(b)(1).

The Court did not provide any legal reasoning for its conclusion that it was without jurisdiction to hear the Bank's case with respect to taxes it was required to pay to Guam for years preceding 2001. The ruling based on Rule 12(b)(1) is manifest error, which cannot stand.

**B. In Any Event, There Is No Basis For Issue Preclusion, Whether For The Years 1992, 1993 And 1994 Or For "All Tax Years Prior To 2001."**

This brings us to the main issue under this part of the motion: "issue preclusion." This issue actually permeates the Court's entire opinion, and we will also discuss it further with respect to the merits of the Court's primary ruling, which as we understand it is that the GTIT "is not imposed by Guam, but by Congress. Therefore, the imposition of the GTIT cannot constitute a breach of either an express or implied contract, as plaintiff alleges." (Opinion at 19.) As we will show, Plaintiff had done its best in its prior briefing to make clear to the Court that the issue Plaintiff sought to raise, and has raised, **is not** whether the tax was "imposed by Guam [or] by Congress." Plaintiff raised an entirely different issue in its suit, namely that the income from the USGOs had been represented as not being subject to any tax payable to a territory. As we will explain separately, it goes virtually without saying that territories cannot pass any laws—and thus, cannot collect any taxes—except as authorized by Congress. Thus, the Court has thoroughly misunderstood the issue which Plaintiff has raised and has dismissed this case for stating a claim the Court found untenable, but which plaintiff never asserted!

In any event, the issue preclusion or *res judicata* issue as ruled on by the Court ignores two critical points. One is that, as the Court went to pains to discuss in its Opinion, "[t]he only decision rendered and entered [in the Guam tax case] was the 'Stipulated Decision.'" (Opinion at 16.) But that decision determined nothing which would bar the Bank's right to maintain this claim.

As the Court pointed out, the stipulated settlement stated only that Plaintiff would pay $5,000,000 for the taxable years 1992, 1993 and 1994, "inclusive of any applicable interest." (Order, Document 31, p. 16; *see also* post-hearing submission, Document 17-3, Exhibit C, p. 3.) But in its decision, the Guam tax court[1] made no findings of fact or conclusions of law. The sum to be paid was not the deficiency which Guam had assessed for those taxable years and which the Bank litigated in the tax case. That amount is stated at Document 17-2, Exhibit A, p. 25 of 59, and totaled $6,877,171.20 plus interest from the various dates of accrual. Obviously, the $5,000,000 figure stated in the stipulated order simply stated an amount to be paid pursuant to the Stipulation of the parties, which as this Court has correctly observed, recited that the concessions made by the parties "are limited to this proceeding and are not [to] be interpreted as concessions by either party with respect to any issue in any other proceeding [*i.e.*, for example, this proceeding] or with respect to any other year." (*See* Opinion herein at 14.) The judgment in the Guam tax case, as far as that goes, only states that "[j]udgment is hereby entered in accordance with the Stipulated Decision re Settlement" (Document 17-3, Exhibit D).

In determining that this history estops the Bank from maintaining some portion of this action, this Court has misread the Supreme Court's decision in *United States v. International Bldg. Co.*, 345 U.S. 502, 73 S.Ct. 807, 97 L. Ed. 1182 (1953), and in particular that part of *International Bldg.* at pages 505-506 which states:

> "A judgment entered with the consent of the parties may involve a determination of questions of fact and law by the court."

(*See* Opinion at 14-15.) As just explained, no such determination was made in the Guam tax court's stipulated order or in its judgment: a number was simply recited, while the language which preceded the recital of that number in the parties' Stipulation (quoted above) made it clear that this was no more than a number of dollars which was to be paid, but not a determination of

---

1 To avoid confusion, we use that description for the Court in which the Bank's suit against the GDRT was brought. That is of course not its formal name.

fact or law with respect to anything. Thus, contrary to this Court's eventual conclusion, there was no "determination of questions of fact and law" of any kind in the Guam settlement and resulting judgment, and no such showing has been made in defendant's moving papers.

Thus, there was no decision in the Guam tax case on which any claim of issue preclusion could be based, whether it be considered as *res judicata* or as collateral estoppel. The Guam tax court simply resolved no issues on its own in any final manner. And the parties in that case stipulated that its judgment would not have any preclusive effect.

**C. In Any Event, There Is No Basis For Barring Claims For "All Tax Years Prior to 2001."**

The Guam tax case involved only the tax years 1992, 1993 and 1994, as repeatedly noted. (*See* Opinion herein, page 4. *See also* Complaint in the Guam tax case, which clearly alleges that it seeks a redetermination of "income taxes for [P]etitioners taxable years ended December 31, 1992, 1993, and 1994." (Paragraph 3, Document 17-2, page 3.)) In its complaint in this action, the Bank alleged that in 2003 it paid "a $15 million tax deficiency to the Guam Territorial government with respect to the Bank's income from USGOs for all open tax years through and including 2001." (Complaint, ¶ 12.) The quoted language is the only reference to "all open tax years through and including 2001" that we have found in this Court's entire file. Certainly, there is no separate discussion of any issues concerning "all open tax years through 2001" in this Court's Memorandum Opinion. As explained at length in the previous section of this memorandum, the only years specifically identified in the settlement documents between the Bank and the Guam Director of Revenue and Taxation in the Guam tax case were 1992, 1993 and 1994, and $5 million was the only sum mentioned therein as an amount to be paid. The complaint herein, on the other hand, refers to "all open tax years through and including 2001" and refers to a payment of $15 million in taxes by the Bank to the Territory of Guam. (¶ 12.)

It must be evident from the foregoing that the settlement and payment of Territorial taxes which the Bank made for tax years other than 1992, 1993 and 1994 was *outside* the parameters of the formal settlement of the Guam tax case, and was separately arrived at out of court, as a

private settlement between the Bank and the Guam Department of Revenue and Taxation (GDRT). There can be no *res judicata* or issue preclusion here as a result of such a private settlement of a dispute between the Bank and a party other than the present defendant the United States, and where that settlement was never the subject of any Court order.

Moreover, it is elementary tax law that "[t]axable income shall be computed on the basis of the taxpayer's taxable year" (26 U.S.C. section 441(a), attributable to Guam under 48 U.S.C. section 1421i) and that "taxable year" means "the taxpayer's annual accounting period," subject to certain clarifications. (*See* 26 U.S.C. section 441(b).) The Supreme Court has announced this rule repeatedly, to the point where it has become a truism. "The federal income tax system is based on an annual accounting period. Under that law the question [of] whether taxable profits have been made is determined annually by the result of the operations of the year." (*Heiner v. Mellon*, 304 U.S. 271, 275, 58 S.Ct. 926, 928-929, 82 L. Ed. 1337 (1938) (footnote omitted).) As noted, Congress has determined that the same rules apply to Guam.

Simply stated, it is hard to understand how this Court, without citation of any authority, could have concluded that without any prior decision of any tribunal anywhere, and without any prior litigation between the present parties, this Court was somehow without jurisdiction to hear the Bank's claims involving all of its tax years prior to 2001. There is nothing before the Court to suggest that any of those taxes and years (except 1992, 1993 and 1994) have ever previously been litigated even with the GDRT, and certainly not with the United States. The Bank is puzzled and mystified as to how the Court could have concluded, as it did, that this Court is without jurisdiction to hear those claims (RCFC Rule 12(b)(1)), or that those claims are somehow barred by any theory of issue preclusion or claims preclusion. Those conclusions are plain error, not justified or even reviewed by any element of the Court's discussion in the Memorandum Opinion.

## IV. THE COURT'S MOST BASIC ERROR LIES IN ITS RULING THAT IF CONGRESS RATHER THAN GUAM CAUSED THE SUBJECT TAX TO APPLY, PLAINTIFF HAS STATED NO CLAIM

The Court's Memorandum Opinion is permeated by observations that it reads Plaintiff's claims as contending that Guam—and Guam alone—imposed an income tax on the Bank's Government USGO income, and that the Bank claims that thereby *Guam* caused a breach of the Treasury Department's covenant that such income shall not be taxed by any territory. From that incorrect premise, the Court goes on to find that it was Congress, not Guam, which imposed the territorial tax, and that because the Bank had allegedly identified Guam as the culprit in its present complaint, the tax assessment could not be a breach of the Treasury Department's covenants that are a part of the USGOs that the Bank owned, since it was not Guam but the Congress who "did it."

If that had been the Bank's complaint, the Court might have a point; but the Complaint was not so limited. We thought we had repeatedly made that point clear, most particularly in the Bank's Response Brief Concerning Issue Preclusion, Document 26, where we said among other things that "[n]othing in the Complaint alleges that (to quote the December 7 Order), 'the GTIT is not a tax imposed by Congress, but one imposed by Guam.' In fact [we explained correctly], Congress and Guam worked as a tag team to impose, assess and collect this tax." (Document 26, page 3 of 11.) That is but one of many occasions where the Bank brought this point to the Court's attention.

We will show in the following pages that the Guam income tax on the Bank's USGOs was indeed imposed ***both*** by Congress and by Guam and that the Complaint in this action is very plain and specific to the effect that the Bank complains action *of Congress* as well as action by the Ninth Circuit and by the *Government of Guam*, as having caused this tax to be levied in contravention of the Government's promise that no territorial tax would be laid. And if the onus of that tax falls on Congress—or on the way in which the courts with jurisdiction over Guam have interpreted the works of Congress—then the Bank has a claim against the United States for

a breach of the tax-free covenant under *United States v. Winstar Corp.*, 518 U.S. 839, 116 S.Ct. 2432, 135 L. Ed. 2d 964 (1996). And, if necessary, it has a claim for reformation of the government's bond contracts in order to reflect the nature of the representations which the Government has made and to avoid an unfair loss to the Bank by the fact that the Government has not kept its promise that the bond income would be free of tax payable to a territory.

**A. What This Court Said In Its Ruling.**

At page 12 of its Memorandum Opinion, this Court incorrectly described "the issue before the Guam district court" in the tax case of 2001-2002, noting that "[n]o dispute exists that [that] issue . . . was whether the GTIT is a tax imposed by Guam or by Congress." This Court then went on to state there, quite incorrectly: "nor is it disputed that this issue is identical to the one that plaintiff now brings before the Court."

At page 13 of the Memorandum Opinion, this Court incorrectly stated that "the Guam [D]istrict [C]ourt held that the Director of the GDRT did not err in determining that the GTIT was a tax imposed by Congress, not a tax imposed by Guam. . . . " (Citing *Bank of Guam*, 2002 U.S. Dist. LEXIS 9662.)[2] At page 16, this Court also incorrectly stated:

> The thrust of plaintiff's argument is that the United States Government promised that income from the USGOs would be exempt from taxation imposed by any of the possessions of the United States. If the GTIT is, as defendant argues, a tax imposed not by Guam but by the United States Congress, the GTIT does not constitute taxation imposed by a possession of the United States, and the levy of the GTIT on income from the USGOs purchased and held by plaintiff cannot constitute breach of an express or implied-in-fact contract.

At page 19, the Court opined:

> Income earned on USGOs is subject to federal income tax imposed by Congress; because the GTIT, imposed by Congress, is a mirror of the federal income tax, income earned on USGOs is likewise subject to the GTIT. While the GTIT is collected by Guam, it is not imposed by Guam, but by Congress. Therefore, the imposition

---

2 That decision said no such thing.

> of the GTIT cannot constitute a breach of either an express or implied contract, as plaintiff alleges."

It was on this very ground that the Court then expressly granted Defendant's motion to dismiss the first, second and third counts of Plaintiff's Complaint.[3]

**B. What The Bank Actually Alleged In Its Complaint.**

The Court will look in vain for any allegation in the Complaint that Guam, and Guam alone, imposed, assessed and collected this tax. Plaintiff is not so naïve as to believe that a territory has sovereign authority to do as it may wish.[4] Rather, the Complaint specifically alleged to the contrary:

> "The United States government is the authority under which the income from USGOs is now taxed by the government of the Territory of Guam, a possession of the United States (*see* 48 U.S.C. sec. 1421a). Without authority from the United States government, the Guam Territorial government would be unable to impose the Territorial income tax described in this Complaint."

(Complaint, ¶ 10.)

Nor is that all. In paragraph 7, the Bank pleaded that the USGO obligations issued after 1986 and purchased by the Bank "continued to contain and still contain the United States Government's covenant that the income from such USGOs is free of any Territorial taxation." Paragraphs 8 and 9 allege the Federal government's representations and conduct to the effect that it interpreted its own covenants to mean that Guam could not tax this income, and the Bank's reliance on those representations and conduct in buying and holding USGOs.

Following those allegations, paragraph 13 of the Complaint reads:

> "The United States government, through its Congress, breached the contract terms, representations and promises contained in all of the

---

3 The Court separately granted the Defendant's motion to dismiss the fourth count on the ground that it is without jurisdiction to grant declaratory relief. That point is the subject of a separate argument in this brief.

4 It is common ground between the Court and the parties that Guam is a territory, or a possession, of the United States. (*See* Opinion at 11, 16; Complaint, ¶ 3; Motion to Dismiss at 16, 21.)

> Bank's USGOs that income from USGOs would be free of the Guam Territorial Income Tax, by authorizing the imposition of the Guam territorial income tax thereon."

And paragraph 19 of the Complaint reads

> "The United States government has breached its contractual obligation that the income from USGOs shall be free of the Guam Territorial income tax; and its representation to that effect has proved to be false."

Nowhere in these recitals is there a statement that could even remotely support this Court's statement at page 12 of its Opinion, that it is undisputed that the issue Plaintiff brings before this Court "was whether the GTIT is a tax imposed by Guam or by Congress."[5] The foregoing quotations make it as plain as the English language permits that the Bank pleaded that it was Congress which was the moving force that allowed the Guam Territorial tax to be imposed. The Bank was aware of that fact, and it so alleged here. Thus, all of the Court's recitals set out in the previous subsection are totally untethered to the allegations of the Bank's complaint. If there be any doubt that the Bank meant to allege in its complaint what is stated in the second sentence of this paragraph (which should not be the case), it is of course plainly the law that in ruling on a motion to dismiss, "[the court] must accept as true all the factual allegations in the complaint, . . . [and] indulge all reasonable inferences in favor of the non-movant.'" (*Sommers Oil Co. v. United States*, 241 F.3d 1375, 1378 (Fed. Cir. 2001), quoted in *Chapman Law Firm Co. v. Greenleaf Construction Co.*, 490 F.3d 934, 938 (Fed. Cir. 2007).)

If that does not suffice, the Bank should be allowed to amend to make its complaint even more explicit. This Court held quite recently that if, in connection with a motion for reconsideration of a dismissal, "plaintiffs have facts that would support an amendment, if an amendment would not be futile, and if defendant does not succeed in opposing reconsideration

---

5 Nor does the record from the Guam tax court support the statement at page 12 that "No dispute exists that the issue before the Guam district court was whether the GTIT is a tax imposed by Guam or by Congress." Document 17 on the Court Clerk's docket contains no such statement, and the Guam tax court did not decide that issue.

on the ground that plaintiffs had no excuse for not bringing these facts to the court's attention in their opposition, plaintiffs may attempt to replead." (*Griffin Broadband Communs., Inc. v. United States*, 79 Fed. Cl. 320, 324 n.3 (2007).)

To be clear, Plaintiff does not suggest that its complaint is inadequate to make its point plain that it was the United States Government, which initiated by Congressional action the ultimate imposition of the Guam Territorial Income Tax on the Plaintiff's USGOs interest income. But if the Court believes that a plainer statement of that contention is required, Plaintiff respectfully requests leave to so amend its Complaint.

**C. The Basis Of Defendant's Motion.**

Defendant captioned its motion as based on collateral estoppel (Defendant's Motion to Dismiss, Document 8, Part III A), but then argued that the complaint failed to state a claim upon which relief could be granted on the quite different ground that "The United States Was Not Bound Either To Exempt The Bank From Application Of The GTIT To USGOs Or To Indemnify The Bank Against GTIT Liability" (*ibid.*, page 22). In making that argument, the defendant clearly understood the Bank's position that Congress had, through legislation, caused the situation that breached the Treasury's covenant that no tax on government bond income would have to be paid to a territory. It said at page 18 of its motion that "[t]he Bank's complaint consists of claims that the United States breached a term of its USGOs providing in effect (or conversely, that the USGOs should be reformed as if they had provided) for an exemption from the Congress's GTIT. . . ." (Emphasis supplied.)

Defendant thus acknowledged that the Bank's claim was that it was Congress which had caused the GTIT to be levied. But defendant then inexplicably reversed its field, going on to argue that the Bank's claims were "dependent upon the core construct that USGOs are exempt from tax by a possession" (*id.* at p. 19), and that once it was shown that the tax was authorized, or "imposed," by Congress, the Bank's position was defeated. It never explained how it accomplished that 180° turn. Simply stated, the government's position on this motion then

became: if Congress caused Guam to tax the bond interest income, no covenant was breached. We will address that subject in Parts IV D and IV F-H of this Memorandum.

At page 21 of its motion, the defendant brought up the issue which has consumed so much of the later briefs and of the Court's time, but which was always a red herring: that the Guam tax court had decided that the tax had been imposed by Congress and not by Guam, and that that supposedly was the end of plaintiff's case. As noted in the immediately preceding part of this brief, the Guam tax court did not so decide, and the Bank has always contended here that it was Congress's action in allowing this tax to be levied which was at the core of its Complaint. And *Winstar*, *supra*, of course would have no application to actions other than those of the United States—here through its Congress—which repudiated commitments made elsewhere in the United States Government.[6]

Thus the defendant tried to recast the issue in this case as being whether the tax had been imposed by Guam. As pointed out in the preceding subpart of this memorandum, the Bank never made such an allegation, but always alleged that Congress was the moving force in that regard.

**D. What The Bank Argued In Its Briefs.**

The Bank was totally consistent in asserting in its Briefs in this Court that its claim was based on action by the Congress or by the United States, not just action by Guam. In its Opposition to Defendant's Motion to Dismiss, Document 12, the Bank pointed out that its Complaint alleged:

> Acting through Congress, Defendant authorized assessment of the GTIT against income derived from USGOs. . . . In so doing, Defendant breached its covenant that such income will be free from taxation by Defendant's possessions.

(Opposition, page 3.)

---

6 *Winstar* was cited throughout the Bank's opposition to the motion to dismiss: we count nine times altogether.

At page 10, the Bank noted that "Defendant also folds into its statute of limitations argument its point—repeated over and over in the Motion—that the tax complained of was imposed by Defendant and not by the possession of Guam." The Bank immediately went on to state: "It is unclear why Defendant portrays this point as one in its favor." After discussion relevant here but too long to quote, the Bank concluded that paragraph as follows:

> In fact, as *Gumataotao*[7] carefully explains, *Guam taxes the interest* from the USGOs ('**Guam May Tax Guam Residents on the Interest From U.S. Bonds**': Caption B at 236 F.3d at 1079); but it was *Congress which caused that tax to apply*. (Quoting *Gumataotao* at 1079-1080; bolding and italics in original.)

If that were not enough, the Bank went on immediately to say:

> Of course it is one of the central points of the Bank's Complaint that Congress, and later the Ninth Circuit, took away what the Treasury, as seller of the bonds, promised: that the income from these instruments would be free of tax payable to any Territory.

(Opposition, page 11.)

Later on page 11, the Bank repeated this point: that Defendant had not made the argument that the case should be dismissed because a breach by Guam had not taken place; but if it had made that argument, "it would miss the point just made, that Congress authorized and Guam then collected the offending tax."

At page 17, the Bank repeated once more that it "does not dispute, and in fact it specifically alleged, that Defendant authorized the imposition of the GTIT." It repeated what it said just a few paragraphs above: "[t]he very premise of the Bank's Complaint—and a necessary element of the Bank's *Winstar* argument—is that Defendant authorized the imposition of the GTIT." (Opposition, page 17.)

At page 21 of its brief, the Bank stated:

> The Bank alleges instead that Defendant promised in its contracts that there would be no territorial tax on USGO income and that

---

7 *Gumataotao v. Director of Department of Revenue and Taxation*, 236 F.3d 1077 (9th Cir. 2001).

> Defendant breached that promise by allowing, indeed by specifically authorizing, the tax in issue. Such is the essence of the Bank's *Winstar* claim.... (Emphasis deleted.)

Later, the Bank filed a response brief concerning issue preclusion at this Court's specific request, Document 26. There, the Bank repeatedly stressed the same contention, this time responding to the Court' Order of December 7, Document 20. Once again, the Bank pointed out that it had alleged in its Complaint that:

> '[w]ithout authority from the United States government, the Guam Territorial government would be unable to impose the Territorial income tax described in this Complaint'

and that:

> '[t]he United States government, through its Congress breached the [USGO] contract terms . . . by authorizing the imposition of the Guam territorial income tax thereon.'

(Response Brief, Document 26, page 2.)

Later on the same page, the Bank stated that:

> nothing in the Complaint alleges that (to quote the December 7 Order), 'the GTIT is not a tax imposed by Congress, but one imposed by Guam.' In fact, Congress and Guam worked as a tag team to impose, assess and collect this tax.

These statements should have made the Bank's position very clear to the Court: no motion to dismiss had been filed on the ground that Guam had not imposed the tax. But if there had been, the response was that the Bank had not so limited its claim. Moreover, the Response Brief contained an entire section at pages 8-10 which explained very clearly that the Bank's Complaint was tied to the fact that Congress had authorized the imposition of the Guam Territorial income tax on the USGO income; and it asserted with regard to that contention that:

> *Gumataotao* and the *Guam* court's 12(b)(6) Order both held exactly the same thing.

Namely, as the Bank quoted from *Gumataotao* at 236 F.3d, page 1081:

> Guam did not pass any law purporting to tax the Federal bonds, Congress did.

We also noted that both *Gumataotao* and Judge Unpingco in the Guam tax case had each held that the ultimate imposition of the tax was done by Guam, albeit under Congressional authority. Thus, *Gumataotao* at page 1078: "the government of Guam could indeed tax its residents on interest earned from U.S. bonds." At page 9, footnote 9 of our brief we quoted 48 U.S.C. section 1421i as noting that Congress had provided:

> The income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in Guam
>
> (b) Guam Territorial income tax
>
> The income-tax laws in force in Guam pursuant to subsection (a) of this section shall be deemed to impose a separate Territorial income tax, payable to the government of Guam, which tax is designated the 'Guam Territorial income tax.'[8]

And we noted that all this was subject to the obvious, that "[a]s a Territory, Guam could not take any independent action except as blessed by Congress." That sentence appeared at page 10 in the penultimate paragraph of the Bank's response brief concerning issue preclusion,

---

8 This Court apparently concluded, directly contrary to section 1421i(b), that the USGO income tax which Guam collected was a "federal income tax imposed by Congress" and that Guam is merely collecting that tax, seemingly for administrative convenience. (Opinion at 19.) But section 1421i(b) states quite clearly that the tax which is imposed by Guam is not a federal income tax, from which the Bank as a resident of Guam would be exempt (26 U.S.C. §§ 881(b), 882(e)), but is a separate tax which Guam assesses and collects, albeit under authority of the Congress. *See* the GDRT's Notice of Deficiency, Exhibit 1 to Exhibit A to post-hearing submission, Document 17, page 23 of 59 ["we will assess the deficiency and take action to collect the tax"]; page 24 of 59: ["It has been determined that interest earned from U.S. Treasury obligations is taxable under Section 61(a)(4) of the Guam Territorial Income Tax Law (GTIT) and section 1.61-7(b)(3) of the GTIT regulations"].

Note also the following Internal Revenue rulings: "The effect of section 31 of the Organic Act of Guam is to set up a separate tax system for Guam which is a duplicate of the federal income tax system." I.T. 4046, C.B. 1951-1, p. 58.

"The United States and Guam are separate and distinct taxing jurisdictions although their income tax laws arise from an identical statute applicable to each." Rev. Rul. 70-229, 1970-1 C.B. 164.

where the Bank cited both *Late Corporation of the Church of Jesus Christ of Latter-Day Saints v. United States*, 136 U.S. 1, 42; 10 S.Ct. 792, 802; 34 L. Ed. 478 (1890), and 48 U.S.C. Sections 1421, *et seq.* for that proposition.

There is not a trace of a hint of a suggestion in the Court's Memorandum of Decision that this Court considered or even observed any of this material which the Bank had submitted to it. We are at a loss to understand how these repeated statements escaped the Court when it ruled that the Bank had stated no case because (as the Court believed) it was arguing for a position—that its case rested on imposition of the tax solely by Guam—which is directly antithetical to that which it had in fact stated, restated and restated again. Thus, reconsideration of the Court's Order is required "to prevent manifest injustice." (*CBS Corporation*, *supra*, at 500.)

**E. What The Actual Facts Are.**

There should be no dispute about the actual facts of the case. The Bank earned interest income on its USGOs. Congress enacted the Organic Act of Guam in 1950, 64 Stat. 384, codified at 42 U.S.C. Sections 1421, *et seq.* As we have seen (pp. 17, n. 8, *supra*), Guam was charged with the administration of the tax which that law authorized, which is called the Guam Territorial Income Tax (GTIT).

The Bank and Guam have a long history with respect to the question whether Guam can impose a GTIT on the Bank's USGO interest income. That history is set forth at length, as a matter of notice pleading at paragraphs 7-9 of the complaint herein and as an evidentiary narrative at paragraphs 5(a)(3)-(13) of the Petition in the Guam Tax Case, Document 17, Exh. A, and is briefly restated here:

As early as the tax year 1978, the Bank erroneously reported interest income on Treasury obligations as taxable income to Guam. But the Bank submitted a refund claim for that and other adjacent years' tax which the GDRT approved, thus confirming that such interest was not taxable. Thereafter, the Bank relied on that interpretation by treating interest on its Treasury obligations as non-taxable in later years.

In 1987, the GDRT audited petitioner's tax returns for the tax years 1983 through 1985 and issued a preliminary notice of deficiency which sought to treat the USGO interest income as subject to Guam tax, but the Department later revoked that notice.

That course repeated itself in the following year with respect to the same 1983, 1984 and 1985 tax years. But at that time and upon the Bank's protest, the GDRT sought guidance on the issue from the United States Internal Revenue Service. The Office of Chief Counsel of the Internal Revenue Service then advised the Director of the GDRT that interest income on Treasury obligations was not subject to tax under the GTIT, notably upon the grounds that taxation by Guam of interest on U.S. obligations "is inconsistent with" the relevant Treasury regulations "regarding the exemption from taxation of U.S. government bonds, notes, etc." The relevant part of this letter reads in full:

> The fundamental problem we have with accepting the position set forth in that memo is that it is inconsistent with the Treasury Regulations promulgated by the Bureau of Public Debt regarding the exemption from taxation of U.S. government bonds, notes, etc. (*See* attached list). The current regulations, with two exceptions, . . . state that the income derived from the obligations is exempt from taxation by any state, any possession of the United States, or any local taxing authority.
>
> * * * *
>
> In addition, it should be noted that many of the obligations expressly state on their face that they are exempt from taxation by possessions. (See specimen attached). These obligations are contracts between the United States and the purchaser, and the United States is bound by the terms thereof.

(Petition in Tax Case, Document 17-2, p. 44.) Thus, the United States Department of the Treasury opined through the Chief Counsel of the IRS that under the language of its regulations, such USGO income "shall be exempt from all taxation now or hereafter imposed . . . by . . . any of the possessions of the United States" meant that the income **was exempt** from the Guam Territorial Income Tax, and that the regulatory exemption from taxation was contractual.

That letter was given to the Bank by the GDRT and is attached as Exhibit 5 to Exhibit A to Document 17 (pages 7, 43-46).

More official action followed, this time by the Director of the GDRT who asked the Attorney General of Guam for an opinion on the issue, stating in part,

> It is very clear to me based on the above discussions that Interest from Obligations of the U.S. is not taxable by the Territory of Guam.

(Petition in Tax Case, Document 17-2, Exh. 6, p. 3, p. 51 of 59.)

The Attorney General of Guam opined in response that, in light of the "unequivocal" position of the IRS and of "explicit directions from the Internal Revenue Service," interest income on Treasury obligations should not be considered as subject to tax under the GTIT. This important memorandum is reproduced at pages 53-54 of Document 17-2. The Director of the GDRT sent the Bank copies of both Opinions. (Document 17, Exh. A at ¶ 5(a)(6).)

In 1998, the Guam Department of Revenue and Taxation withdrew its preliminary notice of deficiency for the 1983 through 1985 tax years. From then until Guam asserted a deficiency in 2001 for the years 1992 through 1994, Guam had considered the issue "closed." *Id.*, ¶ 5(a)(7).

Thus, the situation had been stable for many years, with periodic back-and-forth between the Bank and the GDRT on the question whether USGO interest income should be subject to Guam taxation, which question was always finally answered "no." But no such tax was ever imposed until *Gumataotao*; and as we have seen (*supra*, p. 19), the Internal Revenue Service had also ruled that no such tax would lie. Until *Gumataotao* the federal government expressly interpreted the Treasury regulations to mean that Guam could not tax USGO income. That decision radically changed the scene.[9] As soon as *Gumataotao* was decided by the Ninth Circuit,

---

9 Though this does not matter to the legal analysis, the fact is that Guam is a small community. There was about this time a change in the political alignment of its public officials, and the Bank believes that after that change the GDRT assessed this tax on Mr. Gumataotao, one of relatively few people on the island known to own U.S. Government bonds, as a test case against a taxpayer with less resources than the Bank, hoping that a favorable result would give it leverage to assess the same tax against the Bank.

the Department assessed a tax deficiency against the Bank based on its USGO interest income for three prior tax years.

### F. *Gumataotao* In Perspective.

This Court critically ruled that "[w]hile the GTIT is collected by Guam, it is not imposed by Guam, but by Congress" (Opinion, page 19). That statement is incomplete. *Gumataotao* did not hold that the GTIT "is not imposed by Guam, but by Congress." *Gumataotao* ruled that "the government of Guam could indeed tax its residents on interest earned from U.S. bonds," 236 F.3d at 1078 (emphasis supplied), although of course the court also noted that Congress had passed the law which enabled Guam to impose that tax.

Judge Unpingco in the Guam tax case said much the same thing. After noting that "allowing Guam to tax United States Treasury bonds is not 'incompatible' with Congressional intent," he concluded "that Guam could tax the interest income on United States Treasury Bonds." (*See* Document 17-3, Exhibit B; Order at 4; emphasis supplied).

There is in fact an extensive trail of judicial decisions which have identified the taxes collected by Guam as Territorial income taxes. For example, *Sayre v. Riddell*, 395 F.2d 407 (9th Cir. 1968) discussed the history of the GTIT in language that makes clear that the Guam taxation system is separate from the Internal Revenue Code. Discussing Section 31 of the Organic Act, 48 U.S.C. Section 1421i, the Court stated:

> Taxpayers soon contended that section 31 of the Organic Act of Guam simply extended the territorial coverage of the United States Internal Revenue Code to include Guam. We rejected this contention in *Laguana* [*v. Ansell,* 212 F.2d 207 (9th Cir. 1954), cert. denied 348 U.S. 830 (1954)], adopting the district court's conclusion that section 31 established a territorial income tax to be collected by the Government of Guam, and that Guam and the United States were to be treated as separate and distinct taxing jurisdictions even though their income tax laws arose from an identical statute applicable to each. (Emphasis supplied.)

Footnote 5 at that point of *Sayre v. Riddell* explains that "Section 31 was added on the floor of the House with explanatory comments which made it clear that Congress intended to create a separate, though identical, income tax structure for Guam itself."

In *Forbes v. Maddox*, 339 F.2d 387 (9th Cir. 1964), the Ninth Circuit stated:

> Congress has given the legislature of Guam power to act with respect to 'all subjects of legislation of local application not inconsistent with the provisions of . . . the laws of the United States applicable to Guam.' 48 U.S.C.A. § 1423a.
>
> Legislation authorizing suits challenging deficiency determinations under the Territorial income tax would seem preeminently 'of local application.' The tax itself is a local Territorial tax [citing four cases]. . . .

Thus, it is an oversimplification to say that Congress enacted the Guam Territorial income tax. Congress authorized it; Guam maintains it and enforces it. But plaintiff never based its case in this Court on the proposition that the tax was "imposed" solely by Guam, as this Court stated as the ground for dismissing the case. "Imposed," in fact means any of "to establish," to "apply as compulsory," or to "levy." ("Imposed:" The American Heritage Dictionary of the English Language, Fourth Edition, Houghton Mifflin Company, 2004, accessed March 24, 2008. <Dictionary.com, http://dictionary.reference.com/browse/imposed>) Under those dictionary definitions, Congress and Guam both **established** the tax. But as the record here shows, Guam **applied it as compulsory**, and Guam **levied** the actual deficiency assessment.

We submit that in light of these multiple definitions of that term, the Court has placed altogether too much weight on the word "impose." While the regulations state that no tax will be imposed by a territory, *see* 31 C.F.R. sections 309.4 and 340.3, "imposition" thus by its dictionary definitions means the levy as well as the authorization of the tax; and as explained above, the federal government had concluded long ago that its regulations mean that Guam may not tax this income.

### G. The Record Of This Tax's Creation Shows That The Tax Levy Violates The Government's Promise That Bond Income Shall Be Exempt From Territorial Tax.

We start by restating for the Court's convenience the relevant regulations, which were fully briefed at pp 24-26 of the Bank's opposition to the motion to dismiss, but not addressed by the Court. 31 C.F.R. Section 309.4 states with respect to Treasury bills:

> The bills . . . shall be exempt from all taxation now or hereafter imposed on the principal or interest thereof by any State, or any of the possessions of the United States. . . .

Part 340 of the regulations addresses Treasury bonds. 31 C.F.R. section 340.3 states:

> The bonds . . . will be exempt from all taxation now or hereafter imposed on the principal or interest thereof by any State, or any of the possessions of the United States. . . .

The Bank also pointed out in its opposition at Document 12, page 24, that the Treasury regulations include "any other territory or possession of the United States" in the definition of "State" (31 C.F.R. Section 357.2) in identifying those entities, *i.e.*, "States," from whose taxes the bond income is exempt. And the Bank then cited the interplay of the various regulations, which together make it plain that there shall be no imposition of any tax upon USGO interest income in any Territory. (*See id.*, pages 22-27.) None of this material was given consideration by the Court.

Thus, when the word "impose" is construed to include the definitions "to apply as compulsory" and "to levy," (*see* p. 22, above), and if this Court reviews the extensive treatment of Guam territorial taxes as being imposed by the Government of Guam in cases such as *Sayre, Forbes and Laguana*, discussed in the previous subsection, it is plain that the imposts which the Bank had to bear on its USGO income are the very taxes that the Treasury had contracted in its regulations would not be levied against bond interest income.[10]

---

10 Treasury regulations are considered to be a part of the terms governing the bond contracts. *Spicer v. United States*, 217 F. Supp 44, 50 (D. Kan. 1963), *aff'd* 332 F.2d 750 (10th Cir. 1964) ["Savings Bonds are issued pursuant to a contract between the purchasers and the United States. The Treasury Regulations constitute a part of that contract."]; *Bodek v. Department of Treasury, Bureau of Public Debt*, 532 F.2d 277, 279 (2nd Cir 1976) ["Treasury regulations are considered an implied part of the contract between the United States and a purchaser of its bonds."]; *Guldager v. United States*, 204 F.2d 487, 488 (6th Cir 1953) [noting that Treasury regulations are "part of the contract" when Series E bonds are issued by the Treasury]; *Boyd v. U.S.*, 493 F.Supp. 529, 532 (W.D. Pa. 1980)["Treasury notes represent federal contracts, and Treasury Regulations are considered an implied part of the contract between the United States and the

Under the Supremacy Clause of the United States Constitution, Article VI, Clause 2, such a tax imposed solely by Guam on its own would have been void unless authorized by Congress. (*Goodyear Atomic Corp. v. Miller*, 486 U.S. 174, 180; 108 S.Ct 1704, 1709; 100 L. Ed. 2d 158 (1988).) *Gumataotao* tells us that Congress did just that—it authorized the Guam tax. Thus, in the final analysis, the picture shapes up this way: Congress passed legislation which enabled Guam to impose, or levy, a tax on the bond income, in contravention of the Treasury's express warranty to the contrary. Or, if that made a difference, *Congress* "imposed" that tax by the enabling legislation. Either version violates the Treasury's contrary warranties and representations.

As we have demonstrated, both versions are true: Congress enabled the tax, and Guam imposed it. But, even if Congress had acted alone as both the enabler and the enactor, that legislation would still constitute a breach of the representations and warranties contained in the Federal Regulations, to the effect that the bond income would be free of territorial tax.

The USGOs purchased by the Bank stated on their face (when they were issued in paper form) and in the Code of Federal Regulations that their income is exempt from all taxation now or hereinafter imposed by any of the possessions of the United States. (Complaint, ¶ 7.) At all times until this litigation, the United States interpreted that covenant to mean that income the Bank received from its USGO contracts would not be subject to the Guam Territorial Income

---

purchaser of its bonds."]. W*olak v. United States*., 366 F.Supp. 1106, 1112-13 (D. Conn. 1973), stated:

> As was said in the analogous context of Liberty Bonds: "Each of said bonds, together with the statutes, Treasury Regulations, and [Treasury] Circulars constitute a valid and binding contract determining the rights of the parties therein)" *United States v. Dauphin Deposit Trust Co.*, 50 F.Supp. 73, 76 (M.D.Pa.1943). The Government there successfully contended "that the regulations promulgated by the Secretary of the Treasury in connection with the Second Liberty Bond Act ... have the force and effect of law; that the regulations must be read into the contract between the United States and [a purchaser] so as to become a part thereof)." *Ibid.*

Tax. The American common law rule is that the course of performance is the best indicator of what the parties meant by the words used in a contract. This rule is predicated on the concept that actions speak louder than words. As stated in Restatement 2d, Contracts, § 202, Comment g:

> The parties to an agreement know best what they meant, and their action under it is often the strongest evidence of their meaning.

Indeed, if the conduct of the parties in the course of performance of the contract is inconsistent with the words of the contract, that conduct is evidence of an agreed modification or waiver by one party. (*Ibid.*) This Court follows the Restatement. (*Seaboard Lumber Co. v. United States*, 41 Fed. Cl. 401, 416 (1998.))

The Treasury Regulations governing the Bank's USGOs are part of the Bank's contracts with the United States. The securities with the statutes, Treasury Regulations, and circulars make up the terms of the contracts. (*See, e.g., United States v. Dauphin Deposit Trust Co.*, 50 F. Supp. 73, 76 (M.D. Pa. 1943) ["Each of said bonds, together with the statutes, Treasury Regulations, and Circulars constitute a valid and binding contract determining the rights of the parties therein."].)

As alleged in paragraph 8 of the Complaint herein, before the Bank purchased the USGOs on which it now sues, the United States government represented that its regulations meant that income from USGOs would not be subject to the Guam Territorial Income Tax. The Bank relied on those representations when it bought its USGOs. (Complaint, ¶ 8.) That allegation is amplified in paragraph 9 of the complaint, discussed in some detail in the preceding subsection, where the Bank alleges a course of conduct by the United States in which the United States and the government of Guam both assured the Bank that the income from its USGOs is not subject to the Guam Territorial Income Tax.

Since defendant drafted the Treasury Regulations, Treasury Circulars, and negotiable instruments relevant here, those regulations, circulars, and instruments must be construed "strictly against the defendant." (*United States v. Seckinger*, 397 U.S. 203, 210-11; 90 S.Ct. 880,

884; 25 L. Ed. 2d 224 (1970)[reciting "... the general maxim that a contract should be construed most strongly against the drafter, which in this case was the United States." (Footnote citations omitted)]; *Garrison v. United States*, 74 U.S. 688, 690; 19 L. Ed. 277, 7 Wall. 688 (1869); *Ferguson v. Union National Bank*, 126 F.2d 753, 758 (4th Cir. 1942).) Until *Gumataotao*, the government interpreted its own language to mean that Guam could not tax this income. If that language does not clearly mean on its face what the government interpreted it to mean, it should be construed as the government interpreted it.

As noted in subparts IV B and D of this brief, the Bank had always contended that the Federal government breached its commitment that the bond income would be free of any territorial tax—not just of a territorial tax imposed without any action by Congress, which is the subject discussed in this Court's Memorandum Opinion. The Bank does not know and does not understand why its contentions in this regard, repeated over and over in its previous briefs,[11] were not referred to in any way by the Court in its Memorandum Opinion. If a Congressional enactment was the cause of the imposition of this tax, it still violated the government's promise that there would be no such tax. That is the holding of the *Winstar* decision and the many cases which follow it.

**H. The *Winstar* Rule.**

At the risk of elaborating the obvious, we explain how the rationale of *Winstar* (full citation at p. 9, *supra*) applies to this situation. As described recently by the Federal Circuit in *Local Oklahoma Bank, N.A. v. United States*, 452 F.3d 1371 (2006), "[c]ommon to all of these so-called '*Winstar*' cases is a contractual relationship between the bank and the United States and an allegation by the complaining bank that the United States breached its contractual obligations to the bank when Congress enacted certain tax legislation in 1993. (*See, e.g.*, *Centex*

---

11 *See* Plaintiff's Opposition to Defendant's Motion to Dismiss at pages 1, 7, 11, 17, 21, 33, 34, 35.

*Corp. v. United States,* 395 F.3d 1283 (Fed. Cir. 2005); *First Heights Bank, FSB v. United States*, 422 F.3d 1311 (Fed. Cir. 2005); *First Nationwide Bank v. United States*, 431 F.3d 1342 (Fed. Cir. 2005)." That passage fits this case almost verbatim. The only difference between the two cases is that the "certain tax legislation" which gives rise to the Bank's present claim was not enacted in 1993.

We say once more that *Gumataotao* established that through an Act of Congress, a tax was imposed on the Bank's interest income from USGOs, contrary to the representations made in the Treasury Regulations and other contract documents. That is exactly like *Winstar*, in that (to paraphrase the just cited passage) "the United States breached its contractual obligations to the bank when the Ninth Circuit interpreted certain tax legislation enacted by Congress" in a manner that breached the Government's commitment that the USGO income would be free of taxes to be paid to Guam.

That is the Bank's primary cause of action for breach of contract, which the Court dismissed without discussing that theory in even a phrase, although the theory was plainly presented to the Court in both of the Bank's briefs in opposition to the present motion to dismiss.

Nor does it matter that *Gumataotao*, in 2001, construed Congressional legislation which may have preceded, rather than post-dated, the Treasury's representation of the tax-free nature of the bond income. Nothing in *Winstar* or related authorities suggests that the time sequence of the promise and the breach are determinative. Here, it is obvious from the long history about the activities of both the relevant government authority, *i.e.*, the Chief Counsel of the Internal Revenue Service and the Guam Department of Revenue and Taxation on the one hand, and the Bank on the other hand (*see supra*, pp. 19-20), that before *Gumataotao* it had ultimately always been common ground between the relevant Federal and Territorial government officers and the Bank that the bond interest income would not be subject to Guam tax—indeed, not taxable specifically because the U.S. Bureau of Public Debt had promised there would be no such tax (*see* Ex. 5 to Ex. A of Document 17-2).

*Gumataotao* reversed that situation. If this Court believes that the temporal sequence of events is critical, that the change of position by the government to the contracting party's detriment must be **subsequent** to the original promise, then it is clear that the change of position was that of *Gumataotao*.[12]

There is no reason to apply any temporal sequence to this promise-and-breach situation. Such a situation is governed by sections 178 and 180 of the Restatement (Second) of Contracts, and will ultimately depend on whether "performance [of the promise that the bond income would be free of territorial taxes] is rendered impossible or impracticable, through no fault of the party [here, the government], because of a fact, existing at the time the contract was made [*i.e.*, that by a later court decision, a preexisting territorial tax would be newly applied to the bond income], of which the party [the government, in making the tax-free promise] neither knew nor had reason to know and the non-existence of which was a basic assumption of the party's agreement." (*Massachusetts Bay Transportation Authority v. United States*, 254 F. 3d 1367, 1372 (2001).) Under that rule, the government would have to prove that it, in promising freedom of the bond income from Territorial taxes, it acted reasonably *although without knowledge of its own laws* – a proposition hard to swallow, and certainly one which cannot support a dismissal of the Bank's claim without exploration of that question.

Nothing in the *Winstar* decision limits its reasoning to <u>subsequent</u> acts of Congress. The point is that a promise was made, considered to be enforceable, and broken when the relevant law changed. Here, the law clearly "changed" when the Court with jurisdiction over the issue construed it the way it did in *Gumataotao*, overturning more than a dozen years of governmental interpretation at both the Federal and Territorial levels.

---

12 Compare *Gumataotao* to the Ninth Circuit's prior cases, which applied the "double mirroring" rule to questions of *Gumataotao* taxation, discussed in Subpart IV F of this brief.

**I. *Gumataotao* May Have Been Wrongly Decided.**

As a matter of interest, *Gumataotao* may in fact have misconstrued the law.

**1) The Law Before *Gumataotao*.**

Whether or not *Gumataotao* was correctly decided does not matter to the Bank's main position, since *Gumataotao* plainly is the law. Its interpretation of the relevant statute has directly undercut the Treasury's promises and has cost the Bank a great deal of money, which under *Winstar's* reasoning it is entitled to recover here. *Gumataotao* has established the law that covers Guam; but the fact is that under the Organic Act of Guam, 48 U.S.C. Section 1421i(e), "except where it is manifestly otherwise required, the applicable provisions of the Internal Revenue Codes of 1986 and 1939, shall be read so as to substitute 'Guam' for 'United States'" Later enacted 48 U.S.C. Section 1421i(d)(1) also includes the Internal Revenue Code of 1986 as being in force in Guam, "where not manifestly inapplicable or incompatible with the intent of this section." The practice of substituting the word "Guam" for "United States" in the I.R.C. except where the reading would be "manifestly inapplicable or incompatible with the [statutory] intent" is known as "one-way mirroring." *Gumataotao*, at 1080.

Two-way mirroring, on the other hand, also substitutes "the phrase 'United States' for the word 'Guam.'" (*Ibid.*) *See*, also to the same effect, amendments to Internal Revenue Code sections 881 and 1442 contained in Guam-Tax Laws, Pub. L. 92-606 (1972), particularly House Rpt. No. 92-1479 (Pub. L. 92-606) (3 U.S. Code Cong. & Admin. News, 92d Congress, 2d Sess. (1972) at 5402-03); and amendments to Internal Revenue Code section 887 contained in Omnibus Budget Reconciliation Act of 1989, particularly House Rpt. No. 101-247 (Pub. L. 101-239) (4 U.S. Code Cong. & Admin. News, 101st Congress, 1st Sess. (1989) at 2886-87.

In *Sayre v. Riddell*, *supra*, the Ninth Circuit applied double mirroring; and *Gumataotao* itself pointed out that case law recognized two-way mirroring as the standard approach with respect to the application of the I.R.C. to U.S. territories generally. The Third Circuit, which has jurisdiction over the territory of the Virgin Islands, has been consistent that the "one-way" mirroring technique, which *Gumataotao* applied, is "simply contrary to Congress's

understanding of this [mirroring] technique." (*Vitco, Inc. v. Virgin Islands*, 560 F.2d 180, 184 (1977)), citing *Sayre, supra*, among other cases.[13] Likewise, the Internal Revenue Service has applied two-way mirroring. Thus, in Revenue Ruling 83-9 (1983-1 C.B.126), the IRS explained how it would enforce a part of the Temporary Income Tax Regulations:

> Section 4a.861-1(a) of the Temporary Income Tax Regulations provides, in part, that for purposes of sections 1.861-2(b)(2) and 1.861-2(c)(2) of the regulations, income of a *U.S. corporation* derived from sources *within Guam* that is not subject to income tax to the recipient by Guam shall be considered income from sources *within the United States* (emphasis added).

The I.R.S. then mirrored the statute to replace both "United States" with "Guam" and "Guam" with "United States":

> When mirrored as the Guam Code, section 4a.861-1(a) of the temporary regulations provides, in part, that interest income of a *Guam corporation* derived from sources *within the United States* that is not subject to U.S. income tax to the recipient shall be considered income from sources *within Guam* for purposes of Guam Code section 861(a)(1)(B) and sections 1.861-2(b)(2) and 1.861-2(c)(2) of the Income Tax Regulations (emphasis added).

In mirroring the statute, the I.R.S. replaced the word "Guam" with "United States" in addition to replacing the words "United States" with "Guam." Thereby the I.R.S. indicated its understanding that double mirroring is the correct approach. Thus not only Congress, but also case law and the I.R.S.'s revenue rulings have established that two-way mirroring is required.

**2) *Gumataotao* Rejected A Two-Way Mirroring Approach To Avoid "Disparate Tax Treatment" And "Because Of The Equality Principle."**

Consistent with this authority, the petitioner in *Gumataotao* sought to have the same two-way mirroring technique applied so as to exempt his U.S. bonds from Guamanian taxation under (I.R.C. § 103(a).) The statute provides as follows:

---

13 *See also Abramson Enter. v. Government of the Virgin Islands*, 994 F.2d 140, 142 (3d Cir. 1993); *Chicago Bridge & Iron Co. v. Wheatley,* 430 F.2d 973, 977 (3d Cir. 1970).

> (a) Exclusion. Except as provided in subsection (b), gross income does not include interest on any State or local bond.
>
> . . .
>
> (c) Definitions—For purposes of this section
>
> . . .
>
> (1) State or local bond—The term "State or local bond" means an obligation of a State or political subdivision thereof.
>
> (2) State. The term "State" includes the District of Columbia and any possession of the United States.

Thus, I.R.C. § 103(a) provides that a federal taxpayer's "gross income does not include interest on any State or local bond." Included in the definition of "State or local bond[s]" are those of "any possession of the United States," including Guam. I.R.C. §§ 103(c)(1)-(2). According to the *Gumataotao* court, applying a one-way mirror results in the following statute for Guam tax purposes:

> (a) Exclusion. Except as provided in subsection (b), gross income does not include interest on any [Guam] bond. *Gumataotao*, 236 F.3d at 1080.

However, the *Gumataotao* court expressly declined to double mirror the statute. Relying on what it perceived as *Vitco's* "equality principle" that "courts will substitute 'United States' for 'Guam' when failing to do so would lead to 'disparate tax treatment' between U.S. taxpayers and Guam taxpayers,"[14] the *Gumataotao* court expressly declined to use a two-way mirroring technique in this instance in order to avoid such "'disparate tax treatment,'" where as a result of that technique a U.S. taxpayer's gross income would include the interest on federal bonds under I.R.C. § 61(a)(4), but a Guamanian taxpayer's gross income would not. *Id.*

Other Third Circuit cases besides *Vitco* have historically supported the notion that a system of "mirrored" taxation is a means to promote equality among taxpayers,[15] a concept

---

14 *Gumataotao*, 236 F.3d at 1080.

15 *See Vitco*, 560 F.2d at 185 ("Guided by the equality principle for which *Chicago Bridge*

sometimes referred to as the "equality principle." (*Abramson Enters. v. Government of the Virgin Islands*, 994 F.2d 140, 142 (3d Cir. 1993) ("'the tax to be paid [to the Virgin Islands] ordinarily is measured by the amount of income tax the taxpayer would be required to pay to the United States of America if the taxpayer were residing in the continental United States") (citing *Johnson v. Quinn*, 821 F.2d 212, 214 (3d Cir. 1987)); *Chicago Bridge*, 430 F.2d at 977 (noting that "substantive equality of treatment" under the Virgin Islands mirror system is required to "impose a tax obligation to the Virgin Islands equivalent to what the United States would collect on the same income, but for the mirror system," citing *Sayre*, 395 F.2d at 410-11).)

A different Third Circuit panel noted that: "The mirror code system does not always produce identical results to the Federal IRC. This does not, however, affect its legal effectiveness. This court has stated that where disparities result in inequity, 'the remedy . . . must be sought from Congress not from the courts.'" (*Johnson v. Quinn*, 821 F.2d at 214 (citing *Great Cruz Bay, Inc. v. Wheatley*, 495 F.2d 301, 308 (1974)), commenting on the need for identical construction of the Internal Revenue Code with respect to the Virgin Islands and Guam.))

Thus, *Gumataotao* is a departure, solely for the purpose of allowing Guam to levy a tax on USGO income, from a well established pattern of double mirroring on which both the Bank and the GDRT had long relied to allow the Bank's USGO income to go untaxed.

That case may stand as an oddity in jurisprudence. But whether or not that is so, the fact is that by judicial construction, an Act of Congress has now been held to authorize the impost and levy of this tax on income from securities which the Treasury had promised to be free of just such tax. Although the Bank had every reason to believe that such income would be contractually protected against the tax and bought the bonds in part for that reason, the promise has been broken. This suit is the consequence.

---

*and Iron* stands, we hold that the Virgin Islands may not require withholding of the tax under § 1442").

**J. Breach Of The Covenant Of Good Faith And Fair Dealing.**

The government committed that, to quote again the relevant Treasury Regulation, 31 C.F.R. Section 340.3, the bonds "will be exempt from all taxation now or hereafter imposed on the principal or interest thereof by . . . any of the possessions of the United States." It was the clear understanding of the parties at the time of contracting, and the Bank has so alleged (Complaint, ¶¶ 22-23), "that the acts of the United States Congress did ***not*** authorize the levy of any Guam Territorial income tax on income from the USGOs." (¶ 22.) This allegation is borne out, among other things, by the opinion of the Internal Revenue Service referred to *supra*, p. 19. Nor is there any suggestion in this multi-year record that this understanding turned, as this Court believed, on an interpretation (not to mention the dictionary definition) of the word "imposed" or on questions about the exercise of independent authority by the territory of Guam rather than on the Territory's conduct under Congressional oversight, as it always was.

As noted throughout this memorandum, anyone familiar with the relationships between the United States and its territories knows that territories have no power to act except as Congress authorizes them to do so. Thus, if the Treasury's definitions are narrowly construed by this Court to mean only that the Treasury had promised that no territory would ***on its own authority*** impose a tax—that no territory would go wild and do things that are on their face unlawful—then the proper enforcement of that belittlingly restrictive view of the government's commitments to the buyers of its bonds calls into action the covenant of good faith and fair dealing, which is implied in all government contracts as in all private contracts. *See Rodriguez v. United States*, 69 Fed. Cl. 487, 498-499 (2006):

> 'In every contract there is an implied covenant of good faith.' [Citations] The covenant obligates both parties 'not to interfere with the other party's performance and not to act so as to destroy the reasonable expectations of the other party regarding the fruits of the contracts.' [[Citations] [w]hile a plaintiff must allege facts which if proved would constitute malice or an intent to injure[ . . . t]he intended injury may be as simple and straight forward as elimination of tax benefits previously granted.

The Bank has pleaded for reformation of the agreement that the bond income is free of territorial taxes, "so as to place on the United States government the financial burden of the Guam Territorial income taxes that the Bank paid" on its USGO income (Complaint, ¶ 23). *Rodriguez* shows that if needed to obtain proper relief from that unexpected burden, the Bank is entitled to such reformation. If necessary, it is legally entitled to that relief.

**K. Conclusion On *Gumataotao* And On The Bank's *Winstar* Claims.**

Nothing in *Winstar* limits the right to recover damages for a loss of benefits from a government contract to subsequent actions *by Congress*. Rather, the Supreme Court viewed "'[t]he application of the [unmistakability] doctrine,'" on which the government primarily relied in its failed effort to defeat the *Winstar* claim, as "turn[ing] on whether enforcement of the contractual obligation alleged would block the exercise of a sovereign power of the Government." (*Centex Corp.*, 395 F.3d at 1307, citing *Winstar*, 518 U.S. at 879.) But just as in *Winstar*, which must govern the present case, the rule here is that "The Government cannot make a binding contract that it will not exercise a sovereign power, but it can agree in a contract that if it does so, it will pay the other contracting party the amount by which its costs are increased by the Government's sovereign acts." (*Centex Corp.* at 1309, citing *Winstar*, 518 U.S. at 881-882.)

That is exactly the Bank's position. Whether *Gumataotao* was correctly decided or not, it is the law. It is, as interpreted by the Ninth Circuit which is of course also a part of the United States government, an exercise of the government's sovereign power; but the government had agreed in its bond contracts that the sovereign power would not be so exercised. That means that the Bank's "costs [were] increased" through the taxes paid to Guam; and this took place by the government's sovereign act. Those are the damages the Bank is entitled to recover under *Winstar*. *Winstar* at 881 (citation omitted). (*See Centex Corporation v. United States, supra*, 395 F.3d 1283, 1309; *Local Oklahoma Bank, supra*, and as the Federal Circuit noted in *Local Oklahoma Bank, supra*, p. 26, a long line of similar cases.)

## V. THE COURT ERRED IN DISMISSING THE BANK'S CLAIMS FOR DECLARATORY RELIEF.

This Court dismissed the fourth cause of action, which seeks declaratory relief, for lack of jurisdiction. RCFC Rule 12(b)(1). As the Court noted, however, "[t]he court also can grant limited equitable relief ancillary to claims for monetary relief over which it has jurisdiction." (Opinion, p. 10; emphasis supplied.) We agree that as the Court stated, to sustain a claim for declaratory relief "it is not sufficient that the court's decision may affect the disposition of a monetary claim pending elsewhere, or that the court's decision ultimately will enable plaintiff to receive money from the Government." (*Ibid.*) But those words do not adequately address the exception to the otherwise general lack of jurisdiction in this Court over claims for declaratory relief, which has been described by the Court of Appeals for the Federal Circuit as follows:

> Although the Tucker Act has been amended to permit the Court of Federal Claims to grant equitable relief ancillary to claims for monetary relief over which it has jurisdiction, [CITATION], there is no provision giving the Court of Federal Claims jurisdiction to grant equitable relief when it is unrelated to a claim for monetary relief pending before the court.

(*National Air Traffic Controllers Association v. United States*, 160 F.3d 714, 716 (1998); emphasis supplied.) The court said that it could not "hold that the Court of Federal Claims may issue a declaratory judgment in this case, unrelated to any money claim pending before it." (*Id.* at 716-717.)

But the declaratory relief claim in the instant case is certainly not "unrelated to any money claim pending before [this Court]." Though we have looked in vain for case law which defines "unrelated to any money claim" per *National Air Traffic Controllers Association*, the Supreme Court has defined "ancillary" in the context of jurisdictional authority. In *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 379; 114 S. Ct. 1673, 1676; 128 L. Ed. 2d 391 (1994), the question was whether the district court could entertain claims about enforcement of a settlement agreement over which it had no original jurisdiction (p. 376). Speaking to a claim of ancillary jurisdiction, the Court unanimously held:

> Generally speaking, we have asserted ancillary jurisdiction (in the very broad sense in which that term is sometimes used) . . . to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent."

From that perspective, the declaratory relief claim which the Bank has brought to this Court certainly is "ancillary" to its present claims for monetary relief, in the sense that the claims arise from a common bundle of facts. The Bank incorporated all of the factual allegations of its claims for monetary relief into the declaratory relief claim by reference (Complaint, ¶ 33), and moreover, paragraph 35 of the declaratory relief claim asks for "a declaration from this Court . . . that the United States government must reimburse the Bank for any Guam Territorial income taxes the Bank pays, or will pay hereafter, to the government of the Territory of Guam on the income from USGOs." Thus, the request for a Declaration is directly tied to the Bank's money claims and is certainly ancillary to those claims. Indeed, as the above quotation from paragraph 35 shows, the declaration which the Bank seeks is related in part to taxes it has already paid to Guam. Certainly, this Court's ruling should not and cannot preclude a full consideration of ***that part*** of the Bank's claim, simply because it was inserted in the declaratory relief portion of the Complaint as well as in the part which seeks a direct recovery of money which are found in claims one, two and three. The Court should not have to try more than once the same issues which govern the Bank's claims for reimbursement of the same taxes imposed under the same reasoning for succeeding and future years.

This Court's Opinion does not analyze the question *why* a claim for relief, based upon the identical underlying facts but later time periods, as with respect to the Bank's claim for eventual reimbursement of taxes which the Bank "will pay hereafter, to the government of the Territory of Guam on the income from USGOs that the Bank now holds and may purchase hereafter," (to quote ¶ 35 of the Complaint again), is not "directly related" or "ancillary" to the identical issue which arises on the identical facts with respect to the Bank's current money claim for recovery of the damages caused to it by the same type of tax which it has already paid. Further tax assessments by Guam, based on the Bank's income from USGOs in later periods, will follow as

surely as the night follows the day. That seems the epitome of a claim or legal argument which is indeed "ancillary" or "directly related" to the main claim for monetary relief, per *Kokkonen*. It explains why these claims should survive in this case.

The government cited a number of cases in its motion to dismiss, and the Bank answered every one of those cases. (*See* Motion to Dismiss, Document 8, p. 17-18 and the Bank's Reply, Document 12, at 13-17.) The Court did not address any of the cases cited by the parties but reached out to dismiss the declaratory relief claim on the basis of conclusionary statements in other opinions that, as we have shown, have no relation to the facts before the Court in this case.

Once again, the Order dismissing the declaratory portions of the complaint shows that the present motion for reconsideration is "necessary to prevent manifest injustice" because the Court's ruling constitutes a "manifest error of law." (*See* citations at page 1, *supra*.) For those reasons, the Order dismissing the declaratory relief portions of the complaint should be vacated, and a different Order should be granted, denying that Motion to Dismiss.

## VI. CONCLUSION

For all of the foregoing reasons, it is respectfully requested that this Court grant reconsideration of its memorandum and order dismissing this action, both under RCFC Rules 12(b)(1) and 12(b)(6), and enter another and different order, overruling the motion to dismiss.

Dated: March 24, 2008 Respectfully submitted.

NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP

By: /s/ Kurt W. Melchior
Kurt W. Melchior
Attorneys for Plaintiff
BANK OF GUAM