No. 07-32C
(Judge Miller, C.)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BANK OF GUAM,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S RESPONSE TO PLAINTIFF BANK OF GUAM'S MOTION FOR RECONSIDERATION

JEFFREY S. BUCHOLTZ
Assistant Attorney General

JEANNE E. DAVIDSON
Director

BRIAN A. MIZOGUCHI
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
Attn.: Classification Unit 8th Flr.
1100 L Street, N.W.
Washington, D.C. 20530

Tel: 202.305.3319

Attorneys for Defendant

OF COUNSEL:

THEODORE C. SIMMS II
Attorney-Advisor
Department of the Treasury
Bureau of the Public Debt
Washington, D.C.

CLEVE LISECKI
Attorney-Advisor
Internal Revenue Service
Office of the Associate Chief Counsel
(International)
1111 Constitution Ave, NW
Washington, DC 20224

Dated: April 10, 2008

# TABLE OF CONTENTS

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

DEFENDANT'S RESPONSE TO PLAINTIFF BANK OF GUAM'S MOTION FOR RECONSIDERATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. Standard Of Review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II. The Court Correctly Dismissed All Of The Bank's Claims Pursuant To Rule 12(b)(6) For Failure To State A Claim Upon Which Relief May Be Granted.. . . . 2

A. The Bank Has Not Alleged And Cannot Plausibly Allege A Contract With The United States Exempting Its USGOs From The Guam Territorial Income Tax, 48 U.S.C. § 1421i, Imposed By The United States Congress. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

1. The Bank's Alleged Contract Continues To Vary From The Actual Text Of Its USGOs And Its Pleadings Of Fact.. . . . . . . . . . 3

2. The Bank's USGOs Do Not Constitute A Contract With The United States Exempting Or Indemnifying The Bank From The GTIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

B. Conduct Of The Bank Confirms That It Never Had A Contract With The United States Exempting Or Indemnifying USGOs From Congress's GTIT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

1. Prior To Any Dispute, From The Outset Of Its USGO Purchases And For "Other Adjacent Years" The Bank Reported Its USGOs As Taxable Under The GTIT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

2. The Bank Misplaces Its Reliance Upon The Earlier Conduct Of The GDRT Before It Finally Determined That The Bank's USGOs Are Subject To The GTIT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

3. The IRS Did Not Issue To The Bank Any Determination That Its USGOs Are Exempt From The GTIT. . . . . . . . . . . . . . . . . . . . . . . 9

4. The Court Of Appeals In Gumataotao Rejected Attempted Reliance Upon The Same Or Similar Type Of IRS Opinion Whether USGOs Are Subject To Taxation Imposed By A Possession. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

5. The Bank In This Case Has Disclaimed Reliance Upon Any Statements By Any Federal Employee . . . . . . . . . . . . . . . . . . . . . . 11

6. No Indemnification Contract May Be Implied, And The Bank's Conduct Contravenes The Existence Of Such A Contract . . . . . . 11

C. The Bank Cannot Plausibly Allege A "Winstar" Claim. . . . . . . . . . . . . . 12

III. The Court Correctly Dismissed The Bank's Reformation Claim. . . . . . . . . . . . . 15

IV. The Court's Issue And Claim Preclusion Decisions Do Not Appear To Have Been Dispositive For Purposes Of The Court's Rule 12(b)(1) Or Rule 12(b)(6) Dismissals. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

V. The Bank's Motion For Reconsideration Of The Court's Rule 12(b)(1) Dismissal Is Based Upon Flawed Arguments And Interpretations Of The Court's Decision. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

A. Statute Of Limitations. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

B. The Court Correctly Dismissed The Bank's Declaratory Judgment Claim. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

## TABLE OF AUTHORITIES

## CASES

Ammex, Inc. v. United States,
52Fed. Cl. 555 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Bank of America v. Chaco,
539 F.2d 1226 (9th Cir. 1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Bank of Guam v. United States,
No. 07-32 (Mar. 12, 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Bishop v. United States,
26 Cl. Ct. 281 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

California-Pac. Util. Co.,
194 Ct. C 1971 WL 17822 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Circle K Corp. v. United States,
23 Cl. Ct. 659 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Crowley v. United States,
56 Fed. Cl. 291 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 17

Gumataotao v. Director of Dep't. of Revenue & Taxation,
236 F.3d 1077 (9th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 10, 13, 14

Hercules, Inc. v. United States,
516 U.S. 417 (1996).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Johnson v. United States,
54 Fed. Cl. 187 (2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Julius Goldman's Egg City v. United States,
697 F.2d 1051 (Fed.Cir.1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Merrion v. Jicarilla Apache Tribe,
455 U.S. 130 (1982).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Nonprofits' Ins. Alliance of California v. United States,
32 Fed. Cl. 277 (1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Purk v. United States,
30 Fed. Cl. 565(1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Rodriguez v. United States,
69 Fed. Cl. 487 (Fed. Cl. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Snap-On Tools, Inc. v. United States,
26 Cl. Ct. 1045 (Cl. Ct. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

The Floyd Acceptances,
74 U.S. (7 Wall.) 666 (1868). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

United States v. Carlton,
512 U.S. 26 (1994).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Vons Co. Inc. v. United States,
55 Fed. Cl. 709 (Fed. Cl. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

United States v. Winstar Corp.,
518 U.S. at 876-77. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12, 13, 14

**STATUTES AND REGULATIONS**

26 U.S.C. § 6110(k)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

26 U.S.C. § 6511. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

28 U.S.C. § 2501. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

31 U.S.C. 3124(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

48 U.S.C. § 1421i.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 9, 13

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| **BANK OF GUAM,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 07-32C** |
| | ) | **(Judge Miller, C.)** |
| | ) | |
| **THE UNITED STATES,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFF BANK OF GUAM'S MOTION FOR RECONSIDERATION**

Defendant, the United States, pursuant to the Court's March 25, 2008 order, respectfully responds to the plaintiff Bank of Guam (the "Bank")'s motion for reconsideration[1] of the Court's March 12, 2008 decision granting our motion to dismiss[2] the Bank's complaint. Bank of Guam v. United States, no. 07-32, slip op. (Mar. 12, 2008).

The Bank's motion attempts to prove a "manifest" error largely by reiterating and recasting prior arguments. Nothing in the Bank's motion can overcome the fact that there is no contract that it has alleged (nor any that it truthfully could plead) between the Bank and the United States relating to taxation, let alone a contract promising to exempt the Bank's United States Treasury Bonds, Notes, Bills and like obligations ("USGOs") from the Guam Territorial Income Tax ("GTIT"), 48 U.S.C. § 1421i, imposed by the United States Congress. Appellate precedent forecloses the Bank's claim that it had such a contract. Indeed, the Bank's own conduct -- in filing its tax returns reporting USGO interest income as subject to the GTIT from the inception of the Bank's USGO purchases and in "other adjacent years," and in representing to

---

[1] Referenced herein as "Pl. Recon."

[2] Referenced herein as "Def. MTD."

this Court that "[t]he Bank does not allege that its claim is based on any comments by federal employees" -- contradicts its contract claims.

For the reasons set forth in the Court's decision, this response, and in the parties' prior filings, the Court should deny the Bank's motion for reconsideration.

## I. Standard Of Review

A motion for reconsideration "must be based upon manifest error of law, or mistake of fact, and is not intended to give an unhappy litigant an additional chance to sway the court." Circle K Corp. v. United States, 23 Cl. Ct. 659, 664-65 (1991). In order to prevail upon a motion for reconsideration, the movant must show that: (a) an intervening change in the controlling law has occurred; (b) evidence not previously available has become available; or (c) that the motion is necessary to prevent manifest injustice. See Bishop v. United States, 26 Cl. Ct. 281, 286 (1991). "A court, therefore, will *not* grant a motion for reconsideration if the movant 'merely reasserts . . . arguments previously made . . . all of which were carefully considered by the Court.'" Crowley v. United States, 56 Fed. Cl. 291, 294 (2003), quoting, Ammex, Inc. v. United States, 52 Fed. Cl. 555, 557 (2002).

## II. The Court Correctly Dismissed All Of The Bank's Claims Pursuant To Rule 12(b)(6) For Failure To State A Claim Upon Which Relief May Be Granted

### A. The Bank Has Not Alleged And Cannot Plausibly Allege A Contract With The United States Exempting Its USGOs From The Guam Territorial Income Tax, 48 U.S.C. § 1421i, Imposed By The United States Congress

The Bank spends much of its brief re-arguing that the GTIT actually is not "imposed" by the United States Congress but rather is imposed by Guam. See Pl. Recon at 9-26. The Bank's arguments are contrary to the plain text of its USGOs and appellate precedent established before

the Bank purchased its first USGO.

### 1. The Bank's Alleged Contract Continues To Vary From The Actual Text Of Its USGOs And Its Pleadings Of Fact

As the Court has observed, "Plaintiff has been inconsistent . . . in characterizing the nature of the promise." Bank of Guam, slip op. at 16. Since we filed our motion to dismiss, the Bank's characterization of the facts has departed from the actual text of USGOs about which it complains. The Bank's latest characterization slips further from the text of its USGOs and Treasury regulations to contend that it has USGO contracts providing that they are "not . . . subject to any tax payable to a territory," Pl. Recon. at 5 (emphasis added), or alternatively, that "there shall be no imposition of any tax upon USGO interest income in any territory," id. at 23 (emphasis added). We submit that such inconsistency admits tacitly the absence of any plausible contract claim for exemption of the GTIT.

In its complaint, the Bank made the following allegation of a USGO tax exemption "covenant":

> [c]ommencing in or about 1978, the Bank purchased a number of USGOs that stated in boldface print that they were "exempt from all taxation now or hereafter imposed . . . by . . . any of the possessions of the United States." More recently, since about 1986, USGOs have not been issued in paper form . . . . but the United States continued to commit through the Code of Federal Regulations, whose provisions are incorporated in all USGO contracts, that the same tax-exempt status of USGOs continued. Thus, the USGO obligations issued after 1986 and purchased by the Bank continued to contain and still contain the United States government's covenant that the income from such USGOs is free of any Territorial taxation.

Compl. ¶ 7 (emphasis added). Plainly, the Bank's complaint ties its allegation of the "government's covenant that the income from such USGOs is free of any Territorial taxation" to

the "imposed . . . by any . . . possessions" recital allegedly imprinted upon the Bank's paper USGOs since the 1978 inception of the Bank's USGO purchases and to the "same" exemption allegedly "continued" in Treasury regulations. Id. It follows that the Court correctly held that the "core" issue raised by the Bank is whether the GTIT is taxation "imposed . . . by . . . any of the possessions of the United States" as distinguished from a tax imposed by the United States. Bank of Guam, slip op at 16.

The Bank has not identified any USGO text or Treasury regulation that recites, let alone promises contractually, that USGOs are exempt from the GTIT. Income tax exemptions are matters of legislative grace which the courts have consistently strictly construed; accordingly, income taxes must be paid unless the taxpayer is squarely within the parameters of a listed exemption from taxation. Nonprofits' Ins. Alliance of California v. United States, 32 Fed. Cl. 277, 282 (1994). If the Treasury intended to promise that USGOs would be exempt from the Congress's GTIT, any such promise would have been tantamount to a restraint upon the Congress's authority to legislate in the tax arena. Such a promise would have to be made unmistakably and not implied. As observed in Winstar, 518 U.S. at 876-77, courts should not infer that a contract with the Government waives the sovereign power to tax "unless it has been specifically surrendered in terms which admit of no other reasonable interpretation," quoting Merrion v. Jicarilla Apache Tribe, 455 U.S. 130, 148 (1982).

**2. The Bank's USGOs Do Not Constitute A Contract With The United States Exempting Or Indemnifying The Bank From The GTIT**

The text of USGOs and Treasury regulations alleged by the Bank recites the law that USGOs are exempt from taxation imposed by states or any of the "possessions of the United States." See Compl. ¶ 7. However, the Bank has not alleged (and cannot plausibly allege) any contractual promise of an exemption or indemnification.[3] Federal law governing the taxation of USGOs, 31 U.S.C. 3124(a), plainly does not prohibit taxation under the GTIT. Rather, "it was Congress, not the Guam government, that imposed a tax on U.S. bonds." Gumataotao v. Director of Dep't. of Revenue & Taxation, 236 F.3d 1077, 1081 (9th Cir. 2001). "Even assuming that Guam is a "State" for purposes of section 3124(a), the provision is inapposite to the situation at bar. As explained above, Congress, not the local legislature of Guam, imposed the tax on interest from federal bonds." Id. at 1082.

Even assuming that USGOs in general could comprise a contract promise of certain tax treatment -- a proposition that plaintiff nowhere supports with fact or law -- the Bank cannot identify any contract with the United States exempting or indemnifying USGOs against the GTIT imposed by the United States.[4] The Bank's varying characterizations of fact and argument cannot overcome the fact, admitted by the Bank in its complaint, that the alleged "covenant" and characterization of the "territorial" tax exemption, all are based upon the "same" language

[3] See Def. MTD at 22-24; Defendant's Reply To Plaintiff Bank of Guam's Opposition to Defendant's Motion to Dismiss ("Def. Repl.") at 10-13.

[4] Nor has the Bank ever been able to explain why the United States Congress would impose the GTIT, but grant the Treasury the power to exempt the Bank from both state/possession taxes and the Federal Internal Revenue Code-equivalent GTIT -- a windfall unavailable to residents of the United States who purchase USGOs but must pay Federal income tax upon USGO interest income.

imprinted upon the first USGOs that the Bank purchased and "continued" in the Treasury's regulations. See Compl. ¶ 7. Consequently, the facts as alleged and thus admitted by the Bank inextricably tie its alleged government "covenant" to the plain text of USGOs that merely recites that they are exempt from taxation "imposed" by a state or "possession" of the United States. Id.

Accordingly, the Bank's claims must fail, because appellate precedent established, well before the Bank first purchased USGOs in 1978, that the GTIT was imposed by the Congress and "is not a tax imposed by Guam." Bank of America v. Chaco, 539 F.2d 1226, 1227-28 (9th Cir. 1976). The court of appeals in Bank of America examined whether, notwithstanding the GTIT's enactment by the United States Congress, the GTIT was an "imposition" by Guam (in which case it would violate a statutory prohibition upon the imposition of more than one tax by a state or, as the court assumed, a possession such as Guam). Id. Bank of America thus addressed directly whether the GTIT was, as the Bank claims, also "imposed" by Guam in administering and collecting the GTIT. Compare id. with Pl. Recon at 22-24. The court of appeals in Bank of America concluded that the GTIT "is not a tax imposed by Guam." Id. at 1228. [5]

The Court here likewise held, correctly, that the GTIT is not a tax imposed by Guam; accordingly, the Congress's imposition of the GTIT does not violate the contract or "covenant" alleged by the Bank. Bank of Guam, slip op. at 16-19.

---

[5] Although our motion to dismiss, and the Court's opinion, both cite and rely extensively upon Bank of America, it appears that the Bank does not even once address Bank of America in its 37-page motion for reconsideration. The Bank, accordingly, should be deemed to have conceded to the Court's findings and holding relating to Bank of America.

**B. Conduct Of The Bank Confirms That It Never Had A Contract With The United States Exempting Or Indemnifying USGOs From Congress's GTIT**

The Bank's complaint bases its allegations of a contract or "covenant" upon the "imposed . . . by . . . any . . . possessions" text recited in the USGOs that it purchased. Compl. ¶ 7. In addition, the Bank mistakenly relies upon "conduct," e.g., Pl. Recon. at 25, to override the textual limitations of its USGOs and appellate precedent confirming, before the Bank ever purchased a USGO, that the GTIT is not a tax "imposed" by the possession of Guam. Def. Repl. at 15-16.

**1. Prior To Any Dispute, From The Outset Of Its USGO Purchases And For "Other Adjacent Years" The Bank Reported Its USGOs As Taxable Under The GTIT**

The Bank's pre-dispute conduct confirms the absence of any contract with the United States that the Bank's USGOs would be exempt from the GTIT. As first alleged in our motion to dismiss, and now conceded by the Bank, from the outset of its USGO purchases in 1978 -- prior to any alleged dispute -- and in "other adjacent years," the Bank's tax returns reported as taxable the income received from its USGOs. See Pl. Recon. at 18. The Bank's pre-dispute conduct is contrary to its present claims but is consistent with what it knew or should have known through public notice of the legislative facts that Congress imposed the GTIT in 1950, and that, in 1976 -- two years before the Bank first allegedly purchased USGOs -- the United States Court of Appeals for the Ninth Circuit (in which the Bank resides) confirmed that the GTIT was imposed by the Congress and "is not a tax imposed by Guam." Bank of America v. Chaco, 539 F.2d 1226, 1227-28 (9th Cir. 1976).[6]

---

[6] The Bank does not allege that it was unaware of the law in its circuit. In any event, ignorance of the law would not be an excuse. See The Floyd Acceptances, 74 U.S. (7 Wall.) 666, 682-83 (1868).

The Bank now characterizes its pre-dispute treatment of its USGOs income as subject to the GTIT in the year that it commenced purchasing USGOs and in "other adjacent years" as "erroneous[]." Pl. Recon. at 18. Although the Bank would thus conveniently ignore the evidence of its own conduct and actual understanding of the applicability of the GTIT – unaltered by any self-serving monetary incentive or contemplated or pending litigation -- that pre-dispute conduct is the best evidence of the Bank's understanding of any alleged contract that it entered into when it purchased USGOs. See Julius Goldman's Egg City v. United States, 697 F.2d 1051, 1058 (Fed.Cir.1983) ("contract must be interpreted in accordance with the parties' understanding as shown by their conduct before the controversy").

**2. The Bank Misplaces Its Reliance Upon The Earlier Conduct Of The GDRT Before It Finally Determined That The Bank's USGOs Are Subject To The GTIT**

The Bank also has asserted that it is now relying upon its later success in persuading the Guam Department of Revenue and Taxation ("GDRT") to refund the GTIT for some tax years as "confirming" that it had previously contracted with the United States that USGOs are exempt from the GTIT. Pl. Recon. at 18. Whatever conduct may have occurred between the Bank and the GDRT, it was not alleged to have involved the United States Treasury Bureau of Public Debt that issued the USGOs purchased by the Bank. Further, the Bank's alleged reliance upon the GDRT's acts or omissions has been selective and is undercut by the GDRT's ultimate conclusion that the Bank's USGO income is not exempt from the GTIT. The Bank ignores the fact that the tax that it is complaining about was collected after the GDRT ultimately rejected the Bank's claims of exemption from the GTIT.

### 3. The IRS Did Not Issue To The Bank Any Determination That Its USGOs Are Exempt From The GTIT

The Bank alleges that "upon the Bank's protest," i.e., in the context of the Bank's dispute with the Guam Department of Revenue & Taxation ("GDRT") protesting its audit and issuance of a notice of deficiency assessing the GTIT upon the Bank's USGOs, "the GDRT sought guidance" from the IRS. Pl. Recon. at 19. The Bank cites and relies upon a June 9, 1988 letter from an IRS attorney[7] addressed to the GDRT. Pl. Recon. at 19. The Bank thus claims reliance upon a letter that is not even addressed to it, and that was not given to it by the IRS, as support for its argument that the United States advised [not the Bank, but] the GDRT, that income from USGOs was not subject to the GTIT.

The Bank's attempt to rely upon a letter written 10 years after it elected to purchase USGOs in 1978, cannot prevail. A letter expressing the opinion of an IRS attorney, that was not even addressed to the party seeking to rely upon it (the Bank), cannot support its claims. Further, this attorney's letter does not express that the Congress's GTIT, 48 U.S.C. § 1421i, is a tax imposed by a "possession," or explain how a USGO obligation that recites that it is exempt from a tax imposed by a "possession" is a contract with respect to the Congress's GTIT, contrary to fact and then-existing appellate precedent.[8] In any event, the Bank could not rely upon this letter,

---

[7] An inspection of the document cited and filed by the Bank reveals that the opinion the Bank attributes to the "Chief Counsel," Pl. Recon. at 19, actually was issued by an Associate Chief Counsel. See id. (citing June 9, 1988 letter, Exh. 5 to Exh. A filed as document number 17-2 on the Court's docket).

[8] Indeed, any such opinion would have plainly been contrary to law, as reflected by the fact that in 1950, the United States Congress, not Guam, imposed the GTIT, and that, in 1976, appellate precedent in the Bank's circuit confirmed that the GTIT "is not a tax imposed by Guam." Bank of America, 539 F.2d at 1227-28.

because IRS determinations can only be used by the particular taxpayer who requested it and cannot be relied upon by other taxpayers. See I.R.C. [26 U.S.C.] § 6110(k)(3)(IRS determinations may not be used or cited as precedent).[9]

### 4. The Court Of Appeals In Gumataotao Rejected Attempted Reliance Upon The Same Or Similar Type Of IRS Opinion Whether USGOs Are Subject To Taxation Imposed By A Possession

There is no basis upon which a tax opinion (or even a statutory and thus it follows regulatory provision regarding taxes)[10] can be inflated into a contract of indemnification.[11] Appellate precedent confirms that such an opinion -- including what we infer was the very same 1988 letter upon which the Bank seeks to rely -- would not be binding upon the United States. See Gumataotao v. Director of Dept. of Rev. & Taxation, 236 F.3d 1077, 1082-83 (9th Cir. 2001).

[9] The Court has noted that "General Counsel Memoranda . . . have no binding precedential force . . . . As stated by the Supreme Court, 'departmental rulings not promulgated by the Secretary are of little aid in interpreting a tax statute.'" Snap-On Tools, Inc. v. United States, 26 Cl. Ct. 1045, 1060 (Cl. Ct. 1992). The Court has also explained that "[t]he truth of the matter is that the IRS 'positions' . . . [private letter rulings, technical advice memoranda, general counsel memoranda and the like] were never intended to be relied upon by any taxpayers except those to which the rulings were directed." Vons Co. Inc. v. United States, 55 Fed. Cl. 709, 718 (Fed. Cl. 2003)(internal references added).

[10] The Supreme Court has established that "[t]ax legislation is not a promise, and a taxpayer has no vested right in the Internal Revenue Code." United States v. Carlton, 512 U.S. 26, 33 (1994).

[11] Even assuming, for the sake of argument, that a Federal Government employee had stated to the Bank that the GTIT was a possession tax, or that the United States would indemnify the Bank if it turned out not to be an exempt possession tax, those statements would not be binding upon the United States, because they would be contrary to law and unauthorized. See Def. MTD at 23-24 and authorities cited therein.

### 5. The Bank In This Case Has Disclaimed Reliance Upon Any Statements By Any Federal Employee

Although the statements of the IRS' Mr. Patton as a matter of law cannot be relied upon by the Bank, I.R.C. [26 U.S.C.] § 6110(k)(3), they should also be deemed irrelevant because the Bank itself disclaimed any reliance upon any comments by any Federal employee. In the Bank's June 27, 2007 opposition to our motion to dismiss ("Pl. Opp."), the Bank represented to the Court that: "[t]he Bank does not allege that its claim is based on any comments by federal employees . . . ." Pl. Opp. at 27. Having rejected reliance upon any statements by a Federal employee, and in particular, those that arose after the Bank's dispute over the GTIT, the Bank now cannot credibly rely upon the statements of Mr. Patton.

### 6. No Indemnification Contract May Be Implied, And The Bank's Conduct Contravenes The Existence Of Such A Contract

The Bank did not identify, and cannot plausibly allege, any USGO, Treasury regulation, or comment by a Federal employee, that contractually promised that the United States would defend and hold harmless the Bank in the event that it was required to pay the GTIT. Even if the Bank had made such an allegation, it would be wholly unsupported by the text of the Bank's USGOs and the "same" covenant that continued in Treasury regulations. See Compl. ¶ 7.

Further, the Bank knew or should have known from public notice, before it purchased its first USGO, that because an indemnification generally involves a potentially unlimited obligation not covered by appropriations, in the absence of express statutory authority, no indemnification agreement can be made with the United States. See California-Pac. Util. Co., 194 Ct. Cl. 703, 1971 WL 17822, *5 (1971). The Bank has not identified any express statutory authority conferred by the Congress to indemnify the Bank against the Congress's GTIT. Nor may an

indemnification agreement be implied, because to do so would violate the Anti-Deficiency Act. See Hercules, Inc. v. United States, 516 U.S. 417 (1996). No statute or covering appropriation providing for the United States to indemnify the Bank against application of the GTIT, has been alleged by the Bank.

The Bank's conduct also is inconsistent with any claim of an indemnification contract with the United States. Nowhere does the Bank complain that, prior to any dispute, from the inception of its USGO purchases in 1978, and continuing through "other adjacent years," that it tendered to the United States a claim for indemnification of its GTIT. Nor does the Bank allege that, when the GDRT issued to it tax notices in 1987, and again in 1998,[12] that it tendered to the United States any request that it defend and indemnify the Bank against the GDRT's assessment of the GTIT. The Bank describes the settlement of its GTIT assessment for years other than 1992-1994 as a "private" agreement between the Bank and the GDRT. See Pl. Recon. at 7-8. There cannot be any plausible factual or legal basis upon which the Bank could hold the United States liable for the Bank's "private" agreement with the GDRT.[13]

### C. The Bank Cannot Plausibly Allege A "Winstar" Claim

The Bank also characterizes its claim as a "Winstar" claim, citing to a number of cases in which, after contracts were executed, Congress enacted legislation held to have breached those contracts. See Pl. Recon. at 26-29. The Bank's claim bears no resemblance to a Winstar or any

---

[12] See "Petition in Tax Case" at 5, ¶ 5(a)(4) (1987 audit and notice of deficiency), and Exhibit 1 thereto, (Jan. 24, 2001 Notice of Deficiency) at 2 ("Date of 30–day letter: July 1, 1998"), filed as document number 17-2 on this Court's docket.

[13] We are not aware of any GTIT-based claim by the Bank tendered to the United States, other than that which appeared in January 2007, when the Bank informed the Bureau of Public Debt of the Bank's intended filing of the complaint in this case.

other breach of contract decision.

First, the Bank never had a contract with the United States promising that its USGOs would be exempt or indemnified from the GTIT. Nor is it plausible that the Bureau of Public Debt and/or the Internal Revenue Service would be authorized to contract for an exemption from 48 U.S.C. § 1421i, a tax imposed by the Congress, without the Congress expressly and unmistakably authorizing such an exemption from the tax that it had imposed.

Second, the law did not "change" nor was it "reversed." Congress's legislation establishing the GTIT was enacted in 1950, and appellate precedent confirming that the GTIT was imposed by the Congress and "is not a tax imposed by Guam," was published in 1976, well before the Bank first purchased USGOs in 1978. See Bank of America, 539 F.2d at 1227-28 (9th Cir. 1976). Gumataotao is not, as the Bank characterizes it, Pl. Recon. at 28, a "change of position." Rather, Gumataotao is consistent with Bank of America in treating the GTIT as having been imposed not by a state or possession but rather by the United States Congress.

The Bank appears to contend that the Ninth Circuit itself breached the Bank's alleged contracts in 2001 by issuing the Gumataotao decision concluding that the Congress, not Guam, imposed the GTIT. Pl. Recon. at 27.[14] The Bank complains that "[t]hat is the Bank's primary cause of action for breach of contract, which the Court dismissed without discussing that theory in even a phrase." Pl. Recon. at 27. However, the Bank omitted to note that -- as the Court had

---

[14] The Bank also alleges that Gumataotao "may" have been wrongly decided, discussing a double-mirroring argument that is also discussed and rejected by Gumatatao. See Pl. Recon. at 29-32. However, the Bank contends that "whether or not Gumataotao was correctly decided does not matter to the Bank's main position, since Gumataotao plainly is the law." Pl. Recon. at 29 (emphasis in original). Because the Bank only suggests that Gumataotao "may" have been wrongly decided, and concedes that it "does not matter," there is no apparent point to this section of the Bank's brief.

observed, Bank of Guam, slip op. at 17-20 -- the Ninth Circuit held that the GTIT was imposed by the Congress, not the possession of Guam, in its 1976 Bank of America decision. In short, there appears to be no need to elaborately discuss the Bank's "Winstar" claim, given that there is no contract to exempt USGOs from the GTIT in the first instance, and thus no contract for the Congress (or the Ninth Circuit) to breach.

Apparently at a loss to explain how the Congress through its 1950 legislation was able to breach a contract that did not exist until decades later, the Bank simply inverts Winstar and contends that:

> [n]or does it matter that Gumataotao, in 2001, construed Congressional legislation which may have preceded, rather than post-dated, the Treasury's representation of the tax-free nature of the bond income.
>
> * * *
>
> There is no reason to apply any temporal sequence to this promise-and-breach situation.

Pl. Recon. at 27-28. This argument, like the Bank's claims in general, bears no resemblance to a breach of contract claim, let alone the breach of contract that is found in Winstar cases. Implicitly, however, the Bank is conceding our point: that the Bank has alleged no act by the United States, other than that by the Congress in enacting the GTIT in 1950, that purportedly caused the subsequent breach of its alleged contract.[15]

---

[15] We do not understand how the court of appeals itself could be a party to the Bank's alleged contract, let alone breach that contract by issuing a decision that in pertinent part essentially follows its 1976 Bank of America holding that the GTIT is not imposed by the possession of Guam. Because of the separation of powers, actions taken by a court in its judicial capacity may not bind the Executive Branch in contract.

For these reasons, the Court correctly dismissed the Bank's breach of contract claims in their entirety.

## III. The Court Correctly Dismissed The Bank's Reformation Claim

The Court correctly dismissed plaintiff's reformation claim after observing that plaintiff has not alleged that the United States and the Bank entered into USGOs under a mutually mistaken understanding that the United States had acted to exempt USGO income from the Congress's GTIT, as distinguished from taxes imposed by a possession. Bank of Guam, slip op. at 19-20. In its motion, the Bank fails to address the Court's decision, and instead appears to argue that it is entitled to reformation based upon a covenant of good faith and fair dealing. See Pl. Recon. at 33-34. As support for this proposition, the Bank cites Rodriguez v. United States, 69 Fed. Cl. 487 (Fed. Cl. 2006), a case allowing a claim for breach of an implied warranty that an automobile sold by Customs had been searched for illegal drugs. The Bank is mistaken in its apparent assumption that a covenant of good faith and fair dealing could create a contract that USGOs are exempted from or indemnified against the Congress's GTIT.

## IV. The Court's Issue And Claim Preclusion Decisions Do Not Appear To Have Been Dispositive For Purposes Of The Court's Rule 12(b)(1) Or Rule 12(b)(6) Dismissals

The Court denied our motion to dismiss the Bank's complaint in its entirety based upon issue preclusion resulting from the denial with prejudice of its district court complaint. See Bank of Guam, slip op. at 12-16. The Court also appeared, however, to rule that claim preclusion applied to tax years 1992-1994.[16] Id. The Bank in its motion addresses the Court's claim and

---

[16] For reasons set forth in our prior filings regarding this issue, we have asserted that the Bank is subject to issue preclusion, based upon the dismissal with prejudice for failure to state a claim, of count one of its district court complaint. Although we did not assert claim preclusion, we note that the Bank's district court complaint claimed that the GDRT's GTIT assessment "is

issue preclusion findings as if they may relate to the Court's dismissal for lack of jurisdiction. See Pl. Recon. at 4-7. Assuming that we have understood correctly the Court's intended rulings, it does not appear to us that the Court's issue or claim preclusion rulings were dispositive with respect to either of our Rule 12(b) motions. Accordingly, the Bank's discussion of this subject appears to be unnecessary.

## V. The Bank's Motion For Reconsideration Of The Court's Rule 12(b)(1) Dismissal Is Based Upon Flawed Arguments And Interpretations Of The Court's Decision

### A. Statute Of Limitations

The Bank's motion asserts that the Court erred by finding that the statute of limitations began to run upon the "assessment" of the GTIT, rather than the date upon which the Bank ultimately decided to pay its taxes. See Pl. Recon. at 1-3. In support of its claim to the effect that the Bank unilaterally can suspend the statute of limitations upon its breach of contract claim, until it decides to pay its tax bill, the Bank argues that:

> [t]his Court has repeatedly observed that the date of the actual payment of a tax determines the timeliness of claims for subsequent legal relief, such as claims for refund or suits for recovery of a tax paid. (See e.g., Johnson v. United States, 54 Fed. Cl. 187, 193 (2002) aff'd 2003 (U.S. App. Lexis 16892 (Fed. Cir. 2003); Purk v. United States, 30 Fed. Cl. 565, 570 (1994)).) . . .

Pl. Recon. at 3. The Bank failed to note that the authorities it cites are inapposite, because they concern 26 U.S.C. § 6511, a statute that expressly requires that a claim for the "overpayment" of any tax must be filed within the later of three years from the filing of a return or two years from

---

contrary to law and to the contractual terms relating to the purchase of such Treasury obligations." See "Petition in Tax Case" at 3, ¶ 4 (a), filed as document number 17-2 on this Court's docket. That claim appears to be substantively the same as the Bank's breach of contract claim here.

the time the tax was paid. See 26 U.S.C. § 6511(a). Thus, the Bank's contention that "actual payment of the tax is the only relevant standard for calculating the time when the actual violation of the tax-free covenant occurred, i.e. for breach of performance." (See Franconia, supra)," Pl. Recon. at 3, is without merit.

Further, although the Bank contends that "[t]he tax payment is the relevant point of breach" [by the United States], see Pl. Recon. at 2 (emphasis in original), it should be noted that, as the Bank admits, after it commenced purchasing USGOs -- prior to any dispute that could color the positions asserted by the Bank -- the Bank voluntarily and without protest reported income from its USGOs as subject to tax. See Pl. Recon. at 18. Thus, beginning in 1978, the Bank accrued a GTIT liability and would have paid that tax liability with its tax returns for 1978 and "other adjacent years." Id. Under the Bank's construct, that payment of the GTIT would have been a breach of contract, and thus the Bank itself triggered that breach by paying the GTIT in 1978 and "other adjacent years."

In any event, it is not clear that the Bank's motion concerning the statute of limitations concerns any matter of dispositive importance. The Court dismissed all of the Bank's contract claims pursuant to Rule 12(b)(6). Bank of Guam, slip op. at 20. Further, the Court's decision in its discussion section appeared to deny our motion to dismiss based upon the six-year statute of limitations upon claims within this Court's jurisdiction, 28 U.S.C. § 2501. See Bank of Guam, slip op. at 7-9.[17] The Court's decision also orders, however, that:

---

[17] The last and only breaching act by the United States alleged by the Bank in its complaint, is the Congress's authorization of the GTIT cited in Compl. ¶ 13. That authorization occurred in 1950. Given the Bank's pleadings, we have looked to that last breaching act alleged to trigger the statute of limitations. See Def. MTD at 11-14; Def. Repl. 5-6.

> [d]efendant's motion to dismiss pursuant to RCFC 12(b)(1) is granted with respect to all tax years prior to 2001 and the fourth count of plaintiff's complaint [declaratory relief] and otherwise is denied.

Id. at 20. The decision does not elaborate upon the basis for dismissal of "all tax years prior to 2001." If the Court had not ruled that it considered the 2001 date upon which the GDRT issued its final notice of deficiency as the date triggering the statute of limitations upon claims against the United States, Bank of Guam, slip op. at 9, we would assume that the Court had relied upon the first adverse notification of GTIT liability, that is, the preliminary notice of deficiency, as having triggered the statute of limitations.[18]

**B. The Court Correctly Dismissed The Bank's Declaratory Judgment Claim**

We moved to dismiss the Bank's claim for a declaratory judgment declaring breach, reformation and implying an indemnification obligation in hypothetical future USGOs that the Bank may elect to purchase. Def. MTD. at 17-18; Def. Repl. at 6-7. Because the Bank had no contract claim, and, it follows, no money claim, upon which relief may be granted, whether as to existing USGOs that it elected to purchase, or the anticipated hypothetical future USGOs that it will elect to purchase, the Court properly dismissed the Bank's claim for declaratory relief.

---

[18] The Bank's claim that the GDRT considered the issue "closed" and did not maintain any claim that the GTIT applied to its USGOs for 1992-1994 until 2001, see Pl. Recon. at 20, is contradicted by the fact that the 1992-1994 assessment is based upon a 1998 notice of proposed deficiency. See "Petition in Tax Case," Exhibit 1 (Jan. 24, 2001 Notice of Deficiency) at 2 ("Date of 30–day letter: July 1, 1998"), filed as document number 17-2 on this Court's docket.

**CONCLUSION**

For these reasons, as well as those set forth in our previous filings in connection with our motion to dismiss, we respectfully submit that the Court correctly dismissed the Bank's complaint in its entirety.

Respectfully submitted,

JEFFREY S. BUCHOLTZ
Assistant Attorney General

s/Jeanne E. Davidson
JEANNE E. DAVIDSON
Director

s/Brian A. Mizoguchi
BRIAN A. MIZOGUCHI
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice
Attn.: Classification Unit 8th Flr.
1100 L Street, N.W.
Washington, D.C. 20530

Tel: 202.305.3319

Attorneys for Defendant

OF COUNSEL:

THEODORE C. SIMMS II
Attorney-Advisor
Department of the Treasury
Bureau of the Public Debt
Washington, D.C.

CLEVE LISECKI
Attorney-Advisor
Internal Revenue Service
Office of the Associate Chief Counsel
(International)
1111 Constitution Ave, NW
Washington, DC 20224

Dated: April 10, 2008

CERTIFICATE OF FILING

I hereby certify that on April 10, 2008, a copy of the foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF BANK OF GUAM'S MOTION FOR RECONSIDERATION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Brian A. Mizoguchi