NO. 07-32C
(JUDGE C. MILLER)

BANK OF GUAM,
Plaintiff,

vs.

THE UNITED STATES,
Defendant.

# MOTION FOR LEAVE TO FILE REPLY BRIEF AND PLAINTIFF'S REPLY BRIEF ON MOTION FOR RECONSIDERATION

Kurt W. Melchior
NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP
50 California Street, Thirty-Fourth Floor
San Francisco, California 94111-4707
Telephone: (415) 398-3600
Facsimile: (415) 398-2438
kmelchior@nossaman.com

Attorneys for Plaintiff
BANK OF GUAM

# TABLE OF CONTENTS

**Page**

**MOTION FOR LEAVE TO FILE REPLY BRIEF** .......... 1

**REPLY BRIEF ON MOTION FOR RECONSIDERATION OF THIS COURT'S ORDER OF MARCH 12, 2008** .......... 1

**CONCLUSION** .......... 17

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Amino Bros. Co. v. United States*,
372 F. 2d 485, 178 Ct. Cl. 515 (1967) .......... 15

*Andres v. United States*,
333 U.S. 740; 68 S. Ct. 880; 92 L. Ed. 1055 (1948) .......... 6

*Arizona v. California*,
530 U.S. 392; 120 S. Ct. 2304; 147 L. Ed. 2d 374 (2000) .......... 10

*Bank of America, Nat'l Trust & Sav. Ass'n v. Chaco*,
539 F. 2d 1226 (9th Cir. 1976) .......... 9, 10, 11

*Bell Atlantic v. Twombly*
____ U.S. ___, 127 S. Ct. 1955 (2007) .......... 4

*Curcio v. United States*,
354 U.S. 118, 77 S. Ct. 1145, 1 L. Ed. 2d 1225 (1957) .......... 5

*Diversified Products Corp. v. United States*,
572 F. Supp. 883 (C.I.T. 1983) .......... 5

*Gumataotao v. Dir. of Dep't of Revenue & Taxation*,
236 F. 3d 1077 (9th Cir. 2001) .......... passim

*Int. Broth. of Elec. Wkrs., Loc. U. 474 v. N.L.R.B.*,
814 F. 2d 697 (D.C. Cir. 1987) .......... 7

*Keene Corp. v. United States* ,
508 U.S. 200; 113 S. Ct. 2035; 124 L. Ed. 118 (1993) .......... 6

*Laguana v. Ansell*,
102 F. Supp. 919 (D. Guam 1952),
*aff'd.* 212 F. 2d 207 (9th Cir. 1954) .......... 10

*Lewyt Corp. v. Commissioner of Int. Rev.*,
349 U.S. 237, 75 S. Ct. 736 (1955) .......... 5

*MVM, Inc. v. United States*,
46 Fed. Cl. 126 (1999) .......... 1

*Palahnur v. United States*,
475 F. 3d 1380 (Fed. Cir. 2007) .......... 2

*Sayre & Co. v. Riddell*,
395 F. 2d 407 (9th Cir. 1968) ....................10

*Snap-On Tools, Inc. v. United States*,
26 Cl. Ct. 1045 (1992) ....................14

*Tucker v. Alexander*,
275 U.S. 228, 48 S. Ct. 45 (1927) ....................2

*U. .S. v. Stewart*,
104 F. 3d 1377 (D.C. Cir. 1997);
*cert. den.* 520 U.S. 1246 ....................6

*United States v. Clintwood Elkhorn Mining Co.*,
2008 U.S. LEXIS 3472 (U.S. Apr. 15, 2008) ....................2

*United States v. Dauphin Deposit Trust Co.*,
50 F. Supp. 73 (M.D. Pa. 1943) ....................9

*United States v. Salameh*,
152 F. 3d 88 (2d Cir. N.Y. 1998) ....................8

*United States v. Winstar Corp.*,
518 U.S. 839, 116 S. Ct. 2432, 135 L. Ed. 2d 964 (1996) ....................7, 15

*Vons Cos. Inc. v. United States*,
55 Fed. Cl. 709 (2003) ....................13

**Statutes**

12 U.S.C. § 548 ....................10

26 U.S.C. § 6511(a) ....................2

26 U.S.C. § 7422 ....................2

31 C.F.R. § 357 ....................6

31 C.F.R. § 357.2 ....................5

Revenue Act of 1924, § 3226 ....................2

**Rules**

R.C.F.C. 12(b)(1) ....................1, 16

R.C.F.C. 12(b)(6) ....................1

R.C.F.C. 5.2(a)(2) .......... 1

R.C.F.C. 5.2(a)(3) .......... 1, 2

R.C.F.C. 59(b) .......... 2

R.C.F.C. 59(b)(1) .......... 1

R.C.F.C. 8(a)(2) .......... 12

Rev. Rul. 57-501, 1957-2 C.B. 849 (I.R.S. 1957) .......... 2

**Other Authorities**

Black's Law Dictionary, 772 (7th ed. 1999) .......... 15

*California Practice Guide, Federal Civil Procedure Before Trial*, by Judges William Schwarzer and Wallace Tashima and attorney James Wagstaffe (The Rutter Group, 2008) .......... 1

**MOTION FOR LEAVE TO FILE REPLY BRIEF**

After the Bank moved for reconsideration of this Court's Order which directed the Clerk to dismiss the complaint in part under R.C.F.C. 12(b)(1) and in part under R.C.F.C. 12(b)(6), this Court ordered that "[p]ursuant to R.C.F.C. 59(b)(l), defendant shall file its response by April 10, 2008." (Document 33.) Defendant did so (Document 35). However, defendant has raised new issues and arguments and defendant has misstated many of the issues which plaintiff raised. Plaintiff therefore strongly believes that a reply brief is necessary.

Plaintiff reviewed the rules of this Court and found that Rule 5.2(a)(3) of those rules states: "A reply brief or memorandum shall conform to the requirements of subdivision (a)(2)." But the Bank has found nothing in this Court's Rules which specifically states that a reply brief may or may not be filed after a response brief has been filed. This Court's Order, Document 34, only addresses the time when defendant may file a response brief but does not say that a reply brief may or may not be filed.

Plaintiff's research has located the case *MVM, Inc. v. United States*, 46 Fed. Cl. 126, 129 (1999), in which the court stated that "the parties had agreed to waive their rights to file reply briefs." That language implies that a moving party has a right to file a reply brief. Other than that, we have found only a reference in a practice guide. *California Practice Guide, Federal Civil Procedure Before Trial*, by Judges William Schwarzer and Wallace Tashima and attorney James Wagstaffe (The Rutter Group, 2008), states at section 12:106: "Local rules generally permit the moving party to file a reply brief in order to respond to the opposition or counter-motion. [See CD CA Rule 7-10; ND CA Rule 7-3(c); ED CA Rule 230(d), (e); SD CA Rule 7.1(e)(3), (h).]"

It thus appears under this Court's Rule 5.2(a)(3), and by implication from this Court's *MVM* case, that plaintiff has the right to file a reply brief. Plaintiff filed a notice of intention to file a reply brief on April 14, 2008 (Document 36) because it wished to alert the Court that such

a brief would be forthcoming. But it then received an email from the Administrative Office of this Court, reading in full as follows:

> Dear Counselor:
>
> Pursuant to RCFC 59(b), there is no provision in our rules for this filing dated 4/14/2008. See Order dated 3/25/2008, a motion for leave to file this document is required.
>
> Any questions I can be reached at (202)-357-6419.
>
> Thanks
> Beverly

A true copy of this email message is attached.

Pursuant to the Clerk's advice, and perhaps in an excess of caution, plaintiff hereby moves for leave to file its reply brief which is attached to this motion. The grounds for that motion are that:

First, although the rules of this Court are silent as to the right or lack of right to file a reply brief, such briefs are customary as noted above and seem to be contemplated under Rule 5.2(a)(3) of this Court.

Second, a reply brief is necessary in order to address misstatements and new statements made for the first time in defendant's response brief.

WHEREFORE, plaintiff respectfully requests leave of this Court to permit the filing of the attached brief.

Dated: April 18, 2008

Respectfully submitted.

NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP

By: /s/ Kurt W. Melchior
Kurt W. Melchior
Attorneys for Plaintiff
BANK OF GUAM

**Melchior, Kurt W.**

---

**From:** Beverly_Eason@ao.uscourts.gov
**Sent:** Tuesday, April 15, 2008 9:05 AM
**To:** Melchior, Kurt W.
**Subject:** Re:Guam 07-32C

Dear Counselor:

Pursuant to RCFC 59(b), there is no provision in our rules for this filing dated 4/14/2008. See Order dated 3/25/2008, a motion for leave
to file this document is required.

Any questions I can be reached at (202)-357-6419.

Thanks
Beverly

**REPLY BRIEF ON MOTION FOR RECONSIDERATION**

**OF THIS COURT'S ORDER OF MARCH 12, 2008**

This brief will address only specific errors, misstatements and omissions in defendant's response to plaintiff's Motion for Reconsideration, Document 35. This brief follows the order of defendant's response.

1. At page 1 of its brief, defendant states that "[n]othing in the Bank's motion can overcome the fact that there is no contract it has alleged (nor any that it could truthfully plead) between the Bank and the United States relating to taxation." But the Complaint in this action states repeatedly, in many places, that there was such a contract. Thus, paragraph 7 of the Complaint states that "the USGO obligations issued after 1986 and purchased by the Bank continued to contain and still contain the United States government's covenant that the income from such USGOs is free of any Territorial taxation" or from "any taxation by any possession … including the Territory of Guam" (*Ibid.*, ¶ 6.) Paragraph 8 of the Complaint states: "In purchasing USGOs, the Bank relied at all times on these contract terms and commitments …." Paragraph 13 states: "The United States government, through its Congress, breached the contract terms, representations and promises contained in all of the Bank's USGOs that income from USGOs would be free of the Guam Territorial income tax, by authorizing the imposition of the Guam Territorial income tax thereon."

We could go on and on, but this much should make clear that the Bank **did** allege that there was a contract, indeed, repeated contracts, between the Bank and the United States relating to taxation. It is shocking that the defendant would misrepresent the record.

2. The sentence at page 1 of the defendant's response which is quoted in section 1 above continues by stating that there is no allegation in the Complaint about any "contract promising to exempt the Bank's United States treasury bonds [etc.] from the Guam Territorial income tax … imposed by the United States Congress." The quotations from the Complaint in section 1 of this brief make it perfectly plain that the Bank did allege in its complaint that defendant contracted that the income it received from the USGOs would be exempt from the

Territorial income tax which was authorized by "the United States government through its Congress," to repeat paragraph 13 of the Bank's Complaint.

Defendant must not have read the Complaint when it wrote its Response.

3. The defendant claims that "the Bank's own conduct—in filing its tax returns reporting USGO interest income as subject to the GTIT from the inception of the Bank's USGO purchases … contradicts its contract claims."

People make mistakes on their tax returns. The Bank is no exception. It is for that reason that the law allows amendments of tax returns, claims for refund and even suits for refund of taxes erroneously paid. This Court has ample experience with tax refund suits, (see, e.g., *Palahnur v. United States*, 475 F. 3d 1380 (Fed. Cir. 2007)), so that no extensive discussion of the point should be necessary. Since the early days of the federal income tax, the law has provided that suits could be brought "for the recovery of any internal revenue tax alleged to have been erroneously or illegally assessed or collected." (See, e.g., *Tucker v. Alexander*, 275 U.S. 228, 230, 48 S. Ct. 45, 46 (1927), quoting section 3226 of the Revenue Act of 1924.)[1] Indeed, a ruling of the Internal Revenue Service provides that an amended tax return serves as the equivalent of a claim for refund. (Rev. Rul. 57-501, 1957-2 C.B. 849 (I.R.S. 1957).) Even as this brief was written, the Supreme Court published an opinion stating that "[a] taxpayer seeking a refund of taxes erroneously or unlawfully assessed or collected may bring an action against the Government …." (*United States v. Clintwood Elkhorn Mining Co.*, 2008 U.S. LEXIS 3472 (U.S. Apr. 15, 2008).) The thought that an overpayment of tax is an admission that the tax was properly due would vitiate the extensive history of overpayments of tax and of the ensuing litigation to recover them.

---

1 The current provisions for filing claims for refund and suits to recover erroneously assessed and collected taxes are found at 26 U.S.C. §§ 6511(a) and 7422.

More importantly, defendant misrepresents the record, even as to the Bank's 1978 territorial income tax return. The Bank promptly filed a claim for a refund of the tax it had mistakenly paid on its USGO income, and that claim was allowed.

Guam thereby confirmed that the Bank's USGO income was not subject to the GTIT. When this case comes to trial, the Bank will offer evidence that the reporting of its 1978 USGO income as subject to Guam income taxes was the result of an error by its outside accountants, which contributed to the termination of their relationship with the Bank.

4. It is hard to comprehend the comment at the top of page 2 of the defendant's response, that the Bank's "representing to this Court that '[t]he Bank does not allege that its claim is based on any comments by federal employees'—contradicts its contract claims." The Bank's claim is based on the law, and on a solemn commitment by the United States through its legends on the bonds and through its regulations that there would be no Territorial income tax imposed on the bond income. (See Complaint, ¶ 7.) *As an evidentiary matter*, the Bank most appropriately pointed out in its brief in support of the Motion for Reconsideration that there is a lengthy trail of official analysis by the Internal Revenue Service which shows that both contracting parties—defendant and the Bank—understood for many, many years that USGO income was to be free of the specific tax which the Bank later had to pay to Guam. Defendant interpreted its own regulations to mean just that.

Because of the defendant's current position that these official pronouncements were just idle chit-chat by government employees, we are attaching to this brief an extensive compendium of part of certain material which the Bank obtained through an FOI request to the Bureau of the Public Debt. This attachment shows clearly that both the IRS and the Bureau of the Public Debt have long and formally been on record that the particular, specific tax which the Bank was

forced to pay under *Gumataotao*[2] cannot be assessed on USGO interest income. Because of the length of that material, we submit it as a separate appendix rather than as a part of this brief.

5. Defendant complains at page 3 of its Response that "plaintiff has been inconsistent" in the allegations of its Complaint as to "the nature of the promise" that the USGO interest was free of Territorial taxes. It is hard to see the point of that observation inasmuch as the Complaint clearly discloses the Bank's contentions (see point 1, *supra*), and since in its Opinion, Document 31, this Court quoted the Supreme Court's recent *Bell Atlantic v. Twombly* opinion at ____ U.S. ___, 127 S. Ct. 1955, 1968 (2007), to the effect that '"[a]ny statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings."' As we observed in our brief on the Motion to Reconsider (hereafter, "Motion"), if the Court is not satisfied that the Bank's claim is clearly stated it should allow the Bank to amend its Complaint to be more specific in respect to any such perceived defects. (See Document 32, pp. 12-13.)

6. Defendant claims an inconsistency in the Bank's references that it is immune from "any tax payable to a Territory," or "in any Territory" (Response, p. 3). This contention ignores the point which the Bank made emphatically in its motion, to the effect that "the Bank pleaded that it was Congress which was the moving force that allowed the Guam Territorial tax to be imposed" (p. 12; emphasis in original) and "that Congress authorized and Guam then collected the offending tax" (*ibid.*, p. 15). The defendant ignores these points entirely, and seeks to impale the Bank on a pleading it never made.

7. In the paragraph running from page 3 to page 4 of its Response, the defendant still seeks to split hairs about who "imposed" this tax. The Bank explained at length in its Motion that "imposed" means any one or more of "established," "applied as compulsory," and "levied." (Document 32, p. 22.) The defendant does not respond with even one word to that argument, but

2 *Gumataotao v. Dir. of Dep't of Revenue & Taxation*, 236 F. 3d 1077 (9th Cir. 2001)

again seeks to make untenable and irrelevant distinctions. To say it again, it is absolutely not true that the "'issue' raised by the Bank is whether the GTIT is taxation 'imposed … by … any of the Possessions of the United States' as distinguished from a tax imposed by the United States," as the defendant would have it at page 4 of its response (emphasis supplied). The issue is whether defendant's allowing Guam to tax this income breaches the Bank's USGO contracts, as represented and interpreted by defendant. This point was dealt with at great length at Parts IV. E, F and G of the Bank's motion for reconsideration, but defendant ignores those arguments in favor of a shallow misrepresentation of the Bank's position.[3]

8. Defendant complains that no USGO text or Treasury regulation "recites, let alone promises contractually, that USGOs are exempt from the GTIT." (Response, p. 4.) No so: at page 23 of the Bank's Motion, it set forth the Treasury regulations which exempt bond income from taxation "by any State, or any of the Possessions of the United States." As stated at greater length in the Appendix, the Treasury's primary (but not sole) means to accomplish this result has been by defining "State" to include "any other territory or possession of the United States." (31 C.F.R. section 357.2; emphasis supplied.) (See discussion at pp. 9-11 of Appendix.)

We trust that everyone agrees that Guam is a possession of the United States. It seems that the defendant has never heard of the elementary proposition that the greater includes the less. (*Curcio v. United States*, 354 U.S. 118, 125, 77 S. Ct. 1145, 1150, 1 L. Ed. 2d 1225 (1957).)

9. At page 4 of its brief, the defendant suggests that the Treasury's promise to make USGO income exempt from a Territorial tax such as the GTIT would be "tantamount to a restraint upon the Congress's authority to legislate in the tax arena," and apparently argues that this promise was therefore *an illegal act of the Treasury*, although expressed in its formal

---

3 That the word "impose" has multiple possible meanings, see, e.g., *Lewyt Corp. v. Commissioner of Int. Rev.*, 349 U.S. 237, 240, 75 S. Ct. 736, 739 (1955) and *Diversified Products Corp. v. United States*, 572 F. Supp. 883, 890 (C.I.T. 1983).

regulations. But aside from the astonishing nature of that claim, it was Congress, which exempted the income from USGOs from state and Territorial taxation. The statute and regulations are extensively traced at pages 22-26 of the Bank's current Motion, Document 13, and are incorporated here by this reference.

It is astonishing that defendant would attribute to the Bank arguments which it never made and which no reasonably informed person would make. Nothing is implied: the promise of tax exemption was statutory, regulatory, open and notorious! We elaborate further.

As explained in detail at pp. 084-086 of exhibit 15 to the Appendix, at one time the United States statutes clearly exempted USGO income from territorial as well as state and local taxation. When these statutes were revised in 1959, the language which identified territories among those entities which could not impose such taxes was deleted; but the Bureau of the Public Debt, which authored Exhibit 15, could not explain how this change occurred. It could not determine whether Congress intended any change in the territorial tax exemption of such instruments. That circumstance invokes several well established principles of law:

a. It is not presumed that recodification of an established law is intended to work a change in that law unless that intention is clearly expressed. (*Keene Corp. v. United States* , 508 U.S. 200, 209; 113 S. Ct. 2035, 2041; 124 L. Ed. 118 (1993).) Here, the Bureau of the Public Debt's memorandum explains that there was no such expression. Instead, there was merely silence on the point.

b. The manifest intent of a statute governs over the letter of the law. (*U.S. v. Stewart*, 104 F. 3d 1377, 1388 (D.C. Cir. 1997); *cert. den.* 520 U.S. 1246).

c. The meaning of the word "state" in a statute may encompass a territory (there, Hawaii prior to statehood). (*Andres v. United States*, 333 U.S. 740, 745; 68 S. Ct. 880, 883; 92 L. Ed. 1055 (1948).) Similarly, 31 C.F.R. Part 357 defines "State" to include "possession[s]" and territories.

d. Long standing administrative construction of a statute, coupled with failure of Congress to modify the relevant law, constitutes implicit Congressional approval of that

interpretation. (*Int. Broth. of Elec. Wkrs., Loc. U. 474 v. N.L.R.B.*, 814 F. 2d 697, 711 (D.C. Cir. 1987).)

Taken together with (a) the Bureau of the Public Debt's long maintenance of the same regulations, which have at all times since the 1959 recodification of what is now section 3124 plainly stated that income from U.S. bonds is exempt from territorial taxation, and (b) the Treasury's inability to obtain a statutory change of the Internal Revenue Code which would allow such taxation, which request was rebuffed by Congress (see Appendix, Exh. 11), establish that section 3124 is a sufficient statutory basis for the Treasury's long standing rule and contractual commitment that such income may not be taxed by a territory of the United States.

10. Defendant's *Winstar*[4] argument at the foot of page 4 of its Response suggests again that the Bank's position is based purely on impermissible inferences. How often do we have to say that the promise of "no tax" was explicit, regulatory and absolute? Nothing is *implied* in the Bank's position. The government's promise is right there in the statute, regulations, offering Circulars and Treasury language, for all the world to see!

11. At the top of page 5 of its brief, the defendant admits that "[t]he text of USGOs and Treasury regulations alleged by the Bank recites the law that USGOs are exempt from taxation imposed by states or any of the 'Possessions of the United States.'" How, then, can the defendant with a straight face say what it just said in the preceding section of its brief? We have repeatedly explained how the Bank's motion, and its Complaint, are anchored in the statutory and regulatory framework.

12. Defendant goes on immediately to allege, still at page 5, that "the Bank has not alleged (and cannot possibly allege) any contractual promise of an exemption or indemnification." Again, this statement misrepresents the Bank's position. The Bank has alleged that it suffered **damages** by virtue of the breach of the government's promise that the

---

4 *United States v. Winstar Corp.*, 518 U.S. 839, 116 S. Ct. 2432, 135 L. Ed. 2d 964 (1996).

USGO income would be free of Territorial taxes (Complaint, ¶¶ 19-20), and it sought reformation of all the USGO contracts only "so as to cause them to contain an obligation on the part of the United States government, requiring it to reimburse and indemnify the Bank for all the Guam Territorial income taxes the Bank has paid...." (Complaint, ¶ 26.) That obligation is one which is legally due on account of the defendant's breach of its promise that no Territorial tax can be imposed on the USGO income, as the Bank plainly alleges. The Bank has further alleged an implied obligation of reimbursement in paragraphs 30 and 31 of its Complaint. Thus the Complaint is replete with allegations that defendant says do not exist. The defendant's misrepresentation of the obvious is astonishing.

13. Defendant's quotation from the *Gumataotao* case is highly selective, where it argues that the Opinion states that '"It was Congress, not the Guam government, that imposed a tax on U.S. bonds." (Response at 5.) Once again, we point out how we have explained that *Gumataotao* stated at page 1078 that "**the government of Guam could indeed tax its residents** on interest earned from U.S. bonds." (Motion at 17; emphasis supplied.) We explained at great length that "Congress and Guam worked as a tag team to impose, assess and collect this tax." (*Id.*, at 9.) Defendant continues its course of selectively quoting limited parts of the record and briefs out of context, and ignoring rather than addressing those parts of the Bank's position that it cannot answer.

Such misrepresentations by defendant are improper. It has been said of U.S. government prosecutors that "the prosecutor has a special duty not to mislead; the government should ... never make affirmative statements contrary to what it knows to be the truth." (*United States v. Salameh*, 152 F. 3d 88, 99 (2d Cir. N.Y. 1998). The Court should expect the same standard of performance from the government when it is in a defensive rather than a prosecutorial position.

14. Lower down at page 5 of its Response, the defendant states that the proposition that USGOs in general could comprise a contract promise of certain tax treatment is "a proposition that plaintiff nowhere supports with fact or law." At pain of repeating ourselves, we call the Court's attention to *the defendant's own earlier concession* that the USGOs themselves,

together with the statutes, Treasury regulations and Treasury circulars, constitute a contract determining the rights of the parties. (See Motion to Dismiss, Document 8, p. 22.) The very case the defendant cited there, *United States v. Dauphin Deposit Trust Co.*, 50 F. Supp. 73, 76 (M.D. Pa. 1943) holds exactly that.

15. There is much more to the Bank's claim of contractual tax exemption (Response, p. 5) than the language imprinted on certain USGOs which the Bank first purchased, which the defendant falsely claims to be the only support the Bank could possibly assert.[5] At trial, the Bank will offer in evidence very extensive documents which it obtained from the Bureau of the Public Debt through a 2002 Freedom of Information Act request. Some of those documents are supplied here, with an explanation of their contents and a declaration of attorney David A. Sauers establishing their authenticity, as an Appendix and Exhibit A thereto. Exhibit A amply demonstrates that the Bureau of the Public Debt and the Internal Revenue Service have long understood that exemption from territorial taxation "may be [one] of the contractual rights of the investors....Case law has generally held that government securities are issued pursuant to a contract between the purchasers and the United States, and that the securities together with statutes, Treasury regulations, and circulars make up the terms of the contract." (See Exhibit 15 to Attachment A, unnumbered 13th page, Document Control Number BPD093.)

16. The defendant builds much of its argument on the fact that the Bank did not cite in its Motion *Bank of America, Nat'l Trust & Sav. Ass'n v. Chaco*, 539 F. 2d 1226 (9th Cir. 1976), which according to the defendant's current brief, "addressed directly whether the GTIT was ... also 'imposed' by Guam...." The defendant asserts that "[t]he Court of Appeal in *Bank of America* concluded that the GTIT 'is not a tax imposed by Guam.'" (Response at 6.)

That is a mischaracterization of the *Chaco* case. We quote from that case:

> Although there is no dispute that the Guam territorial

5 Those imprints should in themselves be sufficient evidence of the Government's commitment.

> income tax was enacted by Congress, the issue is whether or not it is nevertheless to be considered an imposition by the government of Guam for the purposes of 12 U.S.C. § 548.

(539 F. 2d at 1227; emphasis supplied.)

Section 548, no longer in effect as it read in the years addressed by the *Chaco* case, had then provided that for certain purposes concerning the taxation of "shares of national banking associations located within its limits," certain particular taxes were to be considered as lying "in lieu of the other [taxes]." (See loc. cit., fn 1.) The issue litigated in *Chaco* was whether the GTIT was such an in lieu tax: the court ruled that it was not. Contrary to the defendant's brief, *Chaco* did not decide "that the Guam Territorial Income Tax was enacted by Congress" since the point was not disputed by the parties. A decision is not authority for matters not actually contested and decided. (*Arizona v. California*, 530 U.S. 392, 414; 120 S. Ct. 2304, 2319; 147 L. Ed. 2d 374 (2000).) A fortiori, such a case is not precedent for matters that were stipulated therein and not submitted for decision.

Nor did the *Chaco* court "conclude" that the GTIT "is not a tax imposed by Guam." Rather, it concluded in the passage which the defendant has truncated in its quotation, "that the Guam Territorial Income Tax is not a tax imposed by Guam **for the purposes of 12 U.S.C. § 548** ...." (*Chaco*, 539 F. 2d at 1228; emphasis supplied.)

Notably, *Chaco* says in so many words the very opposite of what the defendant argues here. The *Chaco* case is in fact right in line with the other case law which the Bank cited at length at pages 21-22 of its Motion, none of which defendant has addressed in its Response. *Chaco* cites and discusses at some length two of the cases which the Bank cited in that motion, *Laguana v. Ansell*, 102 F. Supp. 919 (D. Guam 1952), *aff'd.* 212 F. 2d 207 (9th Cir. 1954) and *Sayre & Co. v. Riddell*, 395 F. 2d 407, 412 (9th Cir. 1968). *Chaco* stated with respect to *Laguana* that there "[t]he [Guam Territorial Income] tax has been held not to be a federal tax collected by the United States but rather a territorial tax collected by the government of Guam," and with respect to *Sayre v. Riddell*, that '"Congress intended that Guam should apply the Internal Revenue Code ... to persons and income within its territory"' and that '"Congress

viewed section 31 [of the Guam Organic Act] as creating a separate integral taxing structure for Guam …." (*Chaco*, 539 F. 2d at 1227.) Thus, it is an oversimplification for defendant to claim that the *Chaco* case determined "that the GTIT 'is not a tax imposed by Guam,'" where much of the decision states the opposite. (Response at 6.)

17. Defendant does not help this Court to analyze the Bank's arguments by simply stating, as it does at page 6 of its Response, that this Court ruled correctly in holding that the imposition of the GTIT on the Bank's bond income "does not violate the contract or 'covenant' alleged by the Bank." The Bank explained at length, in parts IV. G through K of its Motion, that this Court's conclusion was in error and gravely contrary to law. Defendant provides inaccurate material in to the Court, but it never addresses the Bank's central arguments.

18. It is surprising that the defendant looks to "conduct" as a basis to support this Court's ruling. Defendant has it wrong, both as to the Bank's conduct and as to the government's conduct. It is amazing that the defendant would claim, as it does at page 7 of its Response, that "the Bank's pre-dispute conduct is contrary to its present claims." As we have already pointed out, the Bank's outside tax preparer made a mistake in respect to the tax year 1978 where it reported the bond income as taxable. (See p. 3, *supra*.) The Bank promptly filed a claim for refund, and that claim for refund was approved by the GDRT, which as we noted at page 18 of our Motion, "thus confirm[ed] that such interest was not taxable." "Thereafter [we noted], the Bank relied on that interpretation by treating interest on its Treasury obligations as non-taxable in later years." The Bank's conduct is entirely clear: after a mistake by its outside tax preparer, which caused the Bank to relieve that firm, the Bank consistently reported its UGSO income as not taxable from 1981 to 2003. (See Motion, pp. 18-21.)

It is surprising how the defendant tries to twist and misstate that very plain record into suggesting that the Bank's conduct "is contrary to its present claims," etc., as it argues at length at pages 7 and 8 of the Response brief. We noted at page 2 above the obvious truth that mistakes can be made and that taxes can be paid erroneously, for which the law provides clear avenues of relief. One error, promptly recognized and satisfactorily resolved, is now falsely argued by

internal communications of a government agency "are admissible as evidence of the Internal Revenue Service's [or any other agency's] administrative practice," and such "[a]dministrative interpretations are … helpful guides to aid courts in their task of statutory construction." (*Snap-On Tools, Inc. v. United States*, 26 Cl. Ct. 1045, 1060 (1992)). Thus, the Bank's proffers of IRS communications are entirely proper and relevant.

This is not a suit against Guam to recover a tax that has been collected. Rather, the Bank has made it plain throughout its briefs that under *Gumataotao*, unfortunately, the tax lies. Its complaint is against the United States, whose Bureau of the Public Debt has repeatedly contracted that no such tax would be assessed. The Bank sues to recover the damages it suffered from the breach of that contract. Whether the tax was properly or improperly charged and collected really does not matter to that point: it was imposed under the law, and the USGO contracts were thereby breached.

Moreover, the point of this administrative history—some of which, it must be borne in mind, was provided to the Bank by the very taxing authority in question, the GDRT—is that these representations simply provided further assurance from the relevant federal governmental authorities that the contracts would be honored and no tax would be imposed. But that turned out not to be the case, which is why the Bank is in this Court.

24. Defendant tells this Court that the Bank has rejected reliance upon any statements by a federal employee "and in particular, those that arose after the Bank's dispute over the GTIT" (Response at 11). The Bank has no idea to what the defendant might be referring: there simply **is no post-*Gumataotao* statement** by any administrative officer, whether of Guam, the IRS or the Bureau of the Public Debt, which the Bank has advanced as a basis for any contention whatever. Once again, the defendant makes arguments which have not the slightest basis in fact.

Since the defendant keeps repeating that the Bank "reject[s] reliance" upon any government officer's interpretation, let us state once again the Bank's position: **it relies on the bond contracts**, which provide that no Territorial tax would be levied. It here simply offers ***evidence*** that this understanding of the contracts was common ground between the IRS, the BPD,

the GDRT and the Bank for many, many years. A contract is a contract, and evidence is evidence. The defendant should understand that much!

25. The defendant denies liability under its contract that the bond income would be free of Territorial taxation because, it says, "the Bank knew or should have known ... that ... no indemnification agreement can be made with the United States." If, by "indemnification," the defendant means the concept that a party who is secondarily liable has a right to recover from the party who is primarily liable for reimbursement of expenditures paid to a third party (see Black's Law Dictionary, 772 (7th ed. 1999)), that point—whether true or not—is utterly irrelevant to the issues before this Court. We are asking the Court to enforce the rule cited in *Winstar*, 518 U.S. at 881-882, which quoted this Court in *Amino Bros. Co. v. United States*, 372 F. 2d 485, 481, 178 Ct. Cl. 515, 525 (1967), that "[t]he government cannot make a binding contract that it will not exercise a sovereign power, but it can agree in a contract that if it does so, it will pay the other contracting party the amount by which its costs are increased by the government's sovereign act." Thus the defendant's argument that no statute or appropriation provides for indemnification of the Bank, and that no claim for indemnification was even tendered, made at pages 11-12 of its Response, is another red herring.

26. The only answer which defendant provides to the Bank's *Winstar* arguments (Response, 13-15) is that the law which, in 2001, *Gumataotao* interpreted differently from all that went before, was enacted before the Bank purchased any USGOs whose interest Guam was able to tax under the *Gumataotao* construction of that statute. We have shown at length that the statute and regulations had been consistently interpreted by the federal government as not allowing such a tax, until *Gumataotao* changed the law in 2001. The Bank relied on the government's promise that there would be no such tax, and that promise was not kept. It does not matter whether the reason for the breach of that promise was a pre-existing law, a new, post-bond purchase construction of that law, or, as in *Winstar*, a subsequent legal enactment. In any one of those of situations, the rule applies (to quote *Winstar* again) that the government "can agree in a contract that if it does ["exercise a sovereign power" in a way that negates the benefit

of a contract], it will pay the other contracting party the amount by which its costs are increased by the government's sovereign act." (See discussion, *supra*, p. 15.) Nothing in that rule says that the exercise of sovereign power has to postdate the contract. Nothing in it says that the exercise of the sovereign power must depend on a new legislative enactment rather than on a new judicial interpretation. Nothing in this language creates any temporal barriers or any other barriers of any kind to enforcement of this basic proposition: ***the government made a contract. The contract was broken as the result of something else the government did. The government must pay the damages caused by that breach***. End of story.

27. The defendant's comments on the Bank's reformation claim only recite that in its view there is a difference between a Congressional act which imposes a Territorial tax, and such a tax Guam might impose on its own authority—which as we explained at length (Motion pp. 17-18)—Guam could never do. Thus, the government knocks down a straw man. **Nowhere** in its Response has the defendant come to grips with the Bank's extensive argument, which encompassed the 26 pages of Part IV of its Motion, that the imposition of the Guam tax was a joint effort by the federal government and the government of Guam, and that an effective imposition of that tax—whether by the action of one, the other or both of those governments—constituted a breach of the "no Territorial tax" covenant incorporated in the Treasury bonds. We have made that point again and again, and will not repeat the argument once more to reply to Part III of the defendant's Response.

28. Regarding this Court's issue and claim preclusion decisions, i.e., that portion of the Court's Order which dismissed part of the Bank's claims under Rule 12(b)(1), R.C.F.C., the defendant's brief, pages 15-18, seem to state by inference that it agrees that the Court's decision is not based on any sustainable analysis. The defendant offers no argument in rebuttal of the Bank's contentions in that regard, see Motion at 1-8. Thus, no reply is necessary.

///

///

**CONCLUSION**

Defendant's arguments are universally shallow, mistaken, or even deliberately misleading. The Bank's Motion for Reconsideration was well founded. It should be granted, and the Court should reverse its Order dismissing the action.

Dated: April 18, 2008

Respectfully submitted.

NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP

By: /s/ Kurt W. Melchior
Kurt W. Melchior
Attorneys for Plaintiff
BANK OF GUAM

NO. 07-32C
(JUDGE C. MILLER)

BANK OF GUAM,
Plaintiff,

vs.

THE UNITED STATES,
Defendant.

**APPENDIX TO PLAINTIFF'S REPLY BRIEF ON MOTION FOR RECONSIDERATION**

Kurt W. Melchior
NOSSAMAN, GUTHNER, KNOX & ELLIOTT, LLP
50 California Street, Thirty-Fourth Floor
San Francisco, California 94111-4707
Telephone: (415) 398-3600
Facsimile: (415) 398-2438
kmelchior@nossaman.com

Attorneys for Plaintiff
BANK OF GUAM

As noted in the Reply Brief, the material concerning the history of various federal agencies; analysis of the right and power of territories to levy taxes on USGO income is both extensive and persuasive of the Bank's position. The Bank had not previously considered it necessary to present this material—clearly admissible in evidence per the *Snap-On Tools* case cited in both the Response and Reply briefs—on consideration of a motion to dismiss. But the government's eager and persistent arguments to the contrary of its own long-held position have persuaded plaintiff's counsel that this material must be a part of the record before this Court and any reviewing court. We therefore present this voluminous evidentiary material, all of which emanates from the defendant and the governments of Guam and the Virgin Islands, at length herewith.

Defendant's assertions about the opinion letter of the **Office of Chief Counsel** of the Internal Revenue Service are disingenuous at best. That letter was given to the Bank by the Guam Department of Revenue and Taxation as part of Guam's representations long ago that the issue was closed and that the income the Bank receives from USGOs cannot be taxed under the regulations of the Bureau of the Public Debt. Until this case, the Internal Revenue Service and the Bureau of the Public Debt repeatedly opined, agreed, admitted, and confirmed that the relevant phrase in the Treasury Regulations ["**shall be exempt** from all taxation now or hereafter **imposed** on the principal or interest thereof by … **any of the possessions** of the United States …"] means that Guam and other possessions cannot tax USGO income.

Part of the reason that defendant's argument is disingenuous is that defendant well knows that the possessions of the United States and the Bureau of the Public Debt itself, rely on the Internal Revenue Service for opinions about whether a possession may tax income from USGOs. The Internal Revenue Service's communications with the Bureau of the Public Debt, Guam, and the Virgin Islands are replete with admissions that the phrase "**shall be exempt** from all taxation now or hereafter **imposed** on the principal or interest thereof by … **any possessions** of the United States …" means that Guam and other possessions cannot tax USGO income.

Defendant misses the point when it cites 26 U.S.C. § 6100(k)(3). This is not a Tax Court proceeding. This is not a dispute over whether the Bank is obliged to pay Guam Territorial Income Tax on its USGO income. It is a suit for breach of contract. The documents from the Internal Revenue Service and the Bureau of the Public Debt are evidence of defendant's understanding of the meaning of its own Treasury Regulations, which are part of the Bank's USGO contracts. At trial, statements of the Internal Revenue Service and of the Bureau of the Public Debt will be admissible as admissions. They are substantive evidence of the facts stated in them. Fed. Rule Evid. 801(d)(2). See *Auto-Owners Ins. Co. v Jensen*, 667 F. 2d 714, 722-23 (8th Cir. 1981). Those statements are also evidence of defendant's understanding of the USGO contracts before this dispute arose. As stated in our motion for reconsideration, at page 25, defendant's own actions in the course of performance of its USGO contracts is the best indicator of what defendant meant by its use of the phrase "**shall be exempt** from all taxation now or hereafter **imposed** on the principal or interest thereof by … **any of the possessions** of the United States …." At trial, the Bank will offer many Internal Revenue Service and Bureau of the Public Debt documents that prove that both agencies understood that phrase to mean that Guam and other possessions could not use their mirror codes to tax USGO income.

For example, on September 24, 1984, the Virgin Islands Department of Law wrote to the Assistant Chief Counsel of the Bureau of the Public Debt, requesting the Bureau's "position on the taxability of interest from United States Government Securities by the Government of the Virgin Islands." Exh. 2, p. 1.[1] Instead of responding to the letter itself, the Bureau of the Public Debt forwarded the Virgin Islands' inquiry to the Internal Revenue Service for response, stating:

> As you can see from the letter, however, the question that is raised really involves the mirroring provisions of the Virgin Islands tax arrangement. Since that is the question, the IRS should respond to it.

---

[1] In this brief, all references to "Exh. ___" are to exhibits to the declaration of David A. Sauers filed and served herewith.

Exh. 3. The Internal Revenue Service responded to the Virgin Islands on November 8, 1984. In that response, the Internal Revenue Service opined that the Virgin Islands could not tax the income from USGOs, because of the doctrine of sovereign immunity and because of some of the same Treasury Regulations cited by the Bank in opposition to defendant's motion to dismiss.

> Neither party has addressed the fact that nothing in the Revised Organic Act or in section 103 as mirrored operates to waive the immunity from taxation by local jurisdictions which the United States debt instruments enjoy. The rule that interest from U.S. obligations is not subject to taxation by state or local jurisdictions is codified in 31 U.S.C. § 3124 and was recently upheld as part of the doctrine of sovereign immunity. Members Bank and Trust Company v. Garner, 103 Supreme Court 692 (1983). In Memphis Bank, the Supreme Court interpreted the constitutional rule of tax immunity established in M'Culloch v. Maryland, 4 Wheat. 316, 4 L. Ed. 579 (1819). Because the economic effect of the tax involved in Memphis Bank resulted in discrimination against the holders of federal property, the Court concluded that it was an unconstitutional tax. Though not directly analogous, the rule of these cases has been extended by treasury regulation to Treasury Bills (31 C.F.R. § 309.4), Treasury bonds sold at competitive bids (31 C.F.R. § 340.3) and various U.S. savings bonds (31 C.F.R. §§ 316.9, 332.9, and 342.5).

Exh. 4, p. 3. To this day, those same regulations still contain the same phrase that the Internal Revenue Service interpreted to mean that possessions such as Guam cannot tax USGO income, namely "**shall be exempt** from all taxation now or hereafter **imposed** on the principal or interest thereof by … **any of the possessions** of the United States …."

When dealing with the subject of possession taxation, even the Bureau of the Public Debt relies on the opinions of the Internal Revenue Service. On June 19, 1985, an attorney from the Bureau of the Public Debt wrote to an attorney at the Internal Revenue Service, requesting an opinion as to whether interest income from USGOs may be taxed by possessions of the United States. The Bureau of the Public Debt was determining whether to recommend changes to its regulations so as to make USGO income taxable by possessions, and wanted to know the tax consequences of such changes. The Bureau did not make its own determination about whether the interest income would be taxable. Instead, just as Guam and the Virgin Islands do, the Bureau asked the Internal Revenue Service:

> Before we make recommendations regarding a change in

> either the statute [31 U.S.C. § 3124(a)] or regulations, we would like to determine **what the tax consequences would be if the securities were not exempt from taxation by possessions**. U.S.C. § 3124(b) [*sic*] states that the tax status of interest on government securities is decided under the Internal Revenue Code of 1954 (26 U.S.C. 1 et seq.). Therefore, we are asking you for an opinion on the tax consequences.
>
> Please provide us with an opinion on how interest would be taxed in each of the following situations:
>
> 1. Securities hold [*sic*] by a U.S. citizen who is a resident in a possession.
>
> 2. Securities hold [*sic*] by a citizen of a possession.
>
> 3. Securities hold [*sic*] by a resident of a possession who is neither a citizen of the U.S. nor a citizen of the possession.
>
> Since it is my understanding that different possessions/territories have different tax laws, I would appreciate it if you would specify the results for each of the following possessions:
>
> *Virgin Islands
> *Puerto Rico
> *Guam
> *Northern Mariana Islands
> *American Samoa
> Wake Island
> Carolina Islands
> Marshall Islands

Exh. 5, pp. 1-2 [emphasis added].

In a letter dated September 29, 1987, the Internal Revenue Service began its response to the Bureau by referring to the Treasury Regulations governing USGOs as exempting USGO income from taxation by possessions such as Guam:

> … Section 3124 of Title 31 only exempts U.S. obligations from taxation by states and their political subdivisions. **Most of the pertinent regulations, however, also exempt U.S. obligations from taxation by possessions.** This exemption is reflected on the debt instruments issued by the government. Your office is concerned that, as a result of the exemption contained in the regulations, there may be significant revenue loss resulting from the interplay of the Internal Revenue Code and the lax laws of the possessions, which in certain instances results in the income derived from U.S. government securities escaping all taxation.

Exh. 6, p. 1 [emphasis added; footnote omitted]. In stating that possessions may not tax USGO income, the Internal Revenue Service was obviously referring to the Treasury Regulations that say that USGO income "**shall be exempt** from all taxation now or hereafter **imposed** on the principal or interest thereof by ... **any of the possessions** of the United States...."

Until this litigation, the Bureau of the Public Debt and the Internal Revenue Service both admitted that the Treasury Regulations by the Bureau, with their phrase "**shall be exempt** from all taxation now or hereafter **imposed** on the principal or interest thereof by ... **any of the possessions** of the United States...," made income from USGOs exempt from taxation payable to possessions of the United States. Both of those agencies also knew, understood, and intended that this meant that residents of possessions who owned USGOs would escape taxation on income derived from them entirely, under both federal and territorial tax laws. As stated in the October 1, 1987, letter from the Internal Revenue Service to the Director of the Virgin Islands Bureau of Internal Revenue:

> Pursuant to your request, Counsel has again reviewed the November 30, 1984 memo prepared by your staff. The fundamental problem we have with accepting the position set forth in that memo is that it is inconsistent with the Treasury Regulations promulgated by the Bureau of Public Debt regarding the exemption from taxation of U.S. government bonds, notes, etc. The Internal Revenue Service is bound by those regulations. However, as indicated in our letter dated July 6, 1987, Counsel is working with the Bureau of Public Debt to determine what legislative or regulatory changes will be necessary to prevent income derived from U.S. government securities from escaping all taxation. (Emphasis supplied.)

Because the Internal Revenue Service handles questions under possessions' mirror codes, it is no surprise that the Director of Guam's Department of Revenue and Taxation wrote to the Internal Revenue Service in 1988 to ask whether the Service agreed with the opinion of the Attorney General of Guam that Guam could tax the income from USGOs. Exh. 8. The letter is addressed to the Associate Chief Counsel (International). *Ibid.* The response came on the

letterhead of the Office of Chief Counsel of the Internal Revenue Service. Exh. 9.[2] Contrary to the innuendo of defendant's opposition brief herein, the Bureau of the Public Debt was fully aware of the Internal Revenue Service's opinion that, because of Treasury Regulations that contain the phrase "**shall be exempt** from all taxation now or hereafter **imposed** on the principal or interest thereof by ... **any of the possessions** of the United States...," Guam cannot tax USGO income. We know that because a copy of the Internal Revenue Service's own file copy of its opinion letter is in the files of the Bureau of the Public Debt. Exh. 9. That copy even bears the initials of the lawyers at the Internal Revenue Service who approved the letter before it was sent to Guam. *Id.*, p. 2. In language that tracks its October 1, 1987, letter to the Virgin Islands (Exh. 7), the Internal Revenue Service rejected the Guam Attorney General's opinion that Guam could tax the income from USGOs:

> ... The fundamental problem we have with accepting the position set forth in that memo is that it is inconsistent with the Treasury Regulations promulgated by the Bureau of Public Debt regarding the exemption from taxation of U.S. government bonds, notes, etc. (See attached list.) The current regulations, with two exceptions, ... state that the income derived from the obligations **is exempt from taxation** by any state, any possession of the United States, or any local taxing authority.

Exh. 9, p. 1 [emphasis added]. So Guam could not miss the point, an enclosure listed the sections in the code of Federal Regulations to which the Internal Revenue Service referred. *Id.*, p. 4. The Service's statement that income derived from USGOs is exempt from possession taxation is based on the following phrase from the Treasury Regulations: "**shall be exempt** from all taxation now or hereafter **imposed** on the principal or interest thereof by ... **any possessions** of the United States...."

---

2 Another copy of that same letter is Exhibit 5 to the Bank's tax court petition. (Docket No. 17, Exh. A.) That exhibit is a copy of the Internal Revenue Service's letter, as received by the Director of the Guam Department of Revenue and Taxation, who, in turn, provided it to the Bank.

In 1988 or 1989, the Internal Revenue Service also prepared an opinion letter to the Director of the Guam Department of Revenue and Taxation. Exh. 10.[3] As stated in that letter:

> … As explained below, it is our view that interest on federal obligations may not be taxed under the Guam mirror Code; the following also describes the federal taxability of such interest.

*Id.*, p. 1. The letter concludes, in part, that Guam's tax code is a "possession tax" that cannot be imposed on USGO income:

> The income tax laws of Guam, while a mirror of federal law, impose tax liabilities separate and distinct from U.S. liabilities. As such, the code as mirrored in Guam is a possession tax that may not be imposed on interest on federal obligations; such imposition is barred by regulations issued by the Bureau of Public Debt....
>
> For the same reasons that apply to individual taxpayers, Guam may not impose a mirror code income tax liability on interest received on U.S. obligations by a corporate taxpayer....

Exh. 10, pp. 9-10.

In interpreting its Treasury Regulations to exempt USGO income from possession taxation, defendant has long known that those regulations mean that a taxpayer in Guam will escape both federal and territorial income tax on such income. The Internal Revenue Service and the Bureau of the Public Debt considered whether to amend the Internal Revenue Code to avoid the precise fact that the owner of USGOs might escape both federal and territorial income taxation. However, they abandoned that effort:

> In connection with this issue, we recently contacted the Joint Committee on Taxation regarding the possibility of including a change in Title 26 to clarify the tax treatment in the possessions of interest from U.S. obligations. This proposal, however, was rejected. Therefore, it appears that the necessary clarification should be contained in the Title 31 regulations.

---

[3] Although a copy of the letter was produced by the Bureau of the Public Debt, the Bank is not aware that the letter was actually sent by the Internal Revenue Service to the Director of the Guam Department of Revenue and Taxation.

Exh. 11, p. 1. Thus, the Internal Revenue Service recommended that the Bureau of the Public Debt consider changing its regulations, because "a solution via Title 26 [the Internal Revenue Code] is not possible." *Ibid.* The Bureau never did amend its regulations. The USGO income remains free of territorial tax.

The Virgin Islands threatened to litigate with taxpayers who were not paying territorial income tax on USGO income. The Virgin Islands notified the Internal Revenue Service of its intention, and, in turn, the Service notified the Bureau of the Public Debt. The Bureau admitted that this created a liability for defendant, because the offering circulars and Treasury Regulations continued to say that interest paid on USGOs is exempt from taxation by a possession such as Guam (or the Virgin Islands). As stated in a "Memorandum for the File" memorializing conversations between two attorneys in the Bureau of the Public Debt:

> ... Our dilemma is that since 1959 there has been no legal authority, in terms of a statute, which gives an exemption to interest paid on US obligations to certain residents or citizens of a possession of this country. **Yet, in our offering circulars, etc., provision has continued to be made for the exemption**.

Exh. 12, p. 1 [emphasis added]. Thus, both the Internal Revenue Service and the Bureau of the Public Debt clearly understood and intended that the phrase "**shall be exempt** from all taxation now or hereafter **imposed** on the principal or interest thereof by ... **any of the possessions** of the United States ..." meant that possessions could not tax income derived from USGOs.

In 1989, at the request of the Bureau of the Public Debt, the same Office of Chief Counsel of the Internal Revenue Service whose authority defendant now denigrates proposed language to amend the Treasury Regulations promulgated by the Bureau with respect to the taxation of USGOs. The Internal Revenue Service proposed language that, in its opinion, would have continued to exempt income derived from USGOs "from taxes permitted by Congress to be enacted by a possession or territory which are the equivalent of state or local taxes, but would [have changed the regulations to] permit the collection of taxes on Treasury bills by possessions and territories that are required to 'mirror' the provisions of the Internal Revenue Code."

Exh. 13, pp. 1-2, emphasis supplied. The Bureau did not adopt that proposed amendment to its regulations.

The Bureau of the Public Debt tried to develop a proposal that would have amended its own regulations so as to eliminate the exemption from taxation under the mirror codes. In doing so, the Bureau again admitted that the phrase "**shall be exempt** from all taxation nor or hereafter **imposed** on the principal or interest thereof by … **any of the possessions** of the United States …" in Treasury Regulations means that income from USGOs "are exempt" from taxation by any possession of the United States. For example, a memorandum from the Commissioner of the Public Debt to the Fiscal Assistant Secretary proposed an amendment to the Bureau's regulations:

> 1. ACTION FORCING EVENT: 31 U.S.C. § 3124(a) states that U.S. government obligations are "exempt from taxation by a State or political subdivision of a State." Applicable regulations with two exceptions, 31 CFR § 341.13 and 31 CFR § 346.13, state that U.S. government obligations are exempt from taxation by any state, any possession of the United States, or any local taxing authority. The attached amendment clarifies the meaning of the phrase "exempt from taxation by … any possession of the United States."

Exh. 14, p.1 [underscoring in original].

For reasons of which the Bank is not aware, the Department of Treasury never did amend its regulations to provide that Guam (or any other possession) may tax the income from USGOs. Instead, the language from which the Internal Revenue Service and the Bureau of the Public Debt concluded that Guam and other possessions may not tax such income still forms part of the applicable Treasury Regulations. It has even been augmented by the provisions of newer regulations governing the uniform offering circular that **explicitly** make the income from USGOs not taxable by Guam or other possessions. Specifically, 31 C.F.R. Part 356 and Part 357, read together, state that Guam and other possessions may not tax income from USGOs. 31 C.F.R. § 356.32(a) says:

> (a) General. Securities issued under this part are subject to all applicable taxes imposed under the Internal Revenue Code of 1986, or its successor. Under section 3124 of title 31, United States Code, the securities are exempt from taxation by a State or

> political subdivision of a State, except for State estate or inheritance taxes and other exceptions as provided in that section.

However, Section 356.32(a) cannot be read in isolation from the other relevant regulations. 31 C.F.R. section 356.5 makes USGOs also subject to Part 357. The word "State" is used in Section 356.32(a), quoted above. Part 356 does not contain a definition of the word "State." The definition of the word "State" appears in Part 357. As used in Parts 356 and 357, the word "State" is not confined just to states of the United States. Instead, it also means possessions of the United States, including Guam.

> **State means** any State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, or **any other territory or possession of the United States**.

31 C.F.R. section 357.2 [emphasis added].

Thus, 31 C.F.R. Section 356.2(a) prohibits both states and possessions of the United States from taxing income from USGOs. If the definition of the word "State" from Section 357.2 is substituted for the word "State" in Section 356.32(a), that section reads:

> (a) General. Securities issued under this part are subject to all applicable taxes imposed under the Internal Revenue Code of 1986, or its successor. Under section 3124 of title 31, United States Code, the securities are exempt from taxation by ~~a State~~ any State of the United States, the District of Columbia, Puerto Rico, the Virgin Islands, or any other territory or possession of the United States, or political subdivision of a State, except for State estate or inheritance taxes and other exceptions as provided in that section.

31 C.F.R. § 356.32(a) [redlined to show insertion of definition of the word "State" from 31 C.F.R. § 357.2].

Thus, although defendant knew when it adopted 31 C.F.R. Parts 356 and 357 that its then existing regulations meant that possessions such as Guam could not tax the income from USGOs, and although defendant contemplated amending the regulations to permit Guam and other possessions to tax such income, defendant did not adopt such amendments. Instead, it adopted a definition of "State" in its uniform offering circular that expressly prohibits possessions such as Guam from taxing such income.

In addition, defendant has continued in effect the Treasury Regulations governing specific securities that it previously construed to prohibit taxation by possessions. Those regulations still contain the very phrase that the Internal Revenue Service and the Bureau of the Public Debt have expressly acknowledged to prohibit possessions such as Guam from taxing income derived from USGOs ["exempt from all taxation now or hereafter imposed on the principal or interest thereof by … any of the possessions of the United States…."] As to Treasury bills, 31 C.F.R. section 309.4 still states [emphasis added]:

> The income derived from Treasury bills, whether interest or gain from the sale or other disposition of the bills, shall not have any exemption, as such, and loss from the sale or other disposition of Treasury bills shall not have any special treatment, as such, under the Internal Revenue Code, or laws amendatory or supplementary thereto. **The bills** shall be subject to estate, inheritance, gift or other excise taxes, whether Federal or State, but **shall be exempt from all taxation now or hereafter imposed on the principal or interest thereof by** any State, or **any of the possessions of the United States**, or by any local taxing authority.

Similarly, as to bonds, 31 C.F.R. section 340.3 still states [emphasis added]:

> The income derived from the bonds will be subject to all taxes imposed under the Internal Revenue Code of 1954. The bonds will be subject to estate, inheritance, gift or other excise taxes, whether Federal or State, **but will be exempt from all taxation now or hereafter imposed on the principal or interest thereof by** any State, or **any of the possessions of the United States**, or by any local taxing authority.

The phrase is repeated regarding Series E savings bonds, 31 C.F.R. § 316.9(a); Series H savings bonds, 31 C.F.R. § 332.9; savings notes, 31 C.F.R. § 342.6(a); and R.E.A. Series 5% treasury certificates, 31 C.F.R. § 345.5.

Cleary, the current regulations, including both the regulations for the current offering circular and the regulations governing specific USGOs, all still use the very same wording that the Internal Revenue Service and the Bureau of Public Debt understand and intend to mean that a possession such as Guam may not tax the income from these securities. At all times, until the *Gumataotao* case, the Internal Revenue Service and the Bureau of the Public Debt admitted and asserted, both publicly and within intra-government communications, that the phrase "exempt

from all taxation now or hereafter imposed on the principal or interest thereof by … any of the possessions of the United States …" means that buyers of USGOs would not find their income taxed by Guam or any other possession. As this record shows, defendant has repeatedly represented and admitted that that is the way its own regulations are to be interpreted and applied. As was eloquently stated in a research memorandum prepared by the Bureau of the Public Debt.

> A more persuasive argument in favor of exemption from taxation may be that of the contractual rights of the investors. The argument can be made that investors purchasing securities have a contract with the Federal government pursuant to the terms contained in the "contract," in this case, on the face of the security or in department circulars referred to on the securities.
>
> Case law has generally held that government securities are issued pursuant to a contract between the purchasers and the United States, and that the securities together with statutes, Treasury regulations, and circulars make up the terms of the contract. "Each of said bonds, together with the statutes, Treasury Regulations, and [Treasury] circulars constitute a valid and binding contract determining the rights of the parties therein…." (United States v. Dauphin Deposit Trust Co., 50 F. Supp. 73, 76 (1943) cited in Wolak v. United States, 366 F. Supp. 1106, 1112 (1973); Bodek v. Dept. of Treasury, Bureau of the Public Debt, 532 F. 2d 277 (2nd Cir. 1976); Boyd v. United States, 493 F. Supp. 529 (W.D. Pa. 1980); Spicer v. United States, 217 F. Supp. 44 (D. Kan. 1963).

Exh. 15, unnumbered 13th page (Doc. Control No. BPD 093).

NO: 07-32C
(JUDGE C. MILLER)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BANK OF GUAM
Plaintiff,
vs.
THE UNITED STATES
Defendant.

DECLARATION OF DAVID A. SAUERS

Kurt W. Melchior
NOSSAMAN, GUTHNER,
KNOX & ELLIOTT, L.L.P.
50 California Street, 34th Floor
San Francisco, CA 94111-4799
Telephone: (415) 398-3600
Facsimile: (415) 398-2438
kmelchior@nossaman.com

Attorneys for Plaintiff
BANK OF GUAM

I, David A. Sauers, declare:

1. I am a member of the bar of this honorable Court.

2. On August 22, 2002, I served on the Department of the Treasury, Bureau of the Public Debt, a Freedom of Information Act request. In response to that request, on September 26, 2002, I received a letter dated September 20, 2002. Attached as Exhibit 1 is a true and correct copy of that letter.

3. Attached as Exhibits 2 through 15 are true and correct copies of some of the documents that were enclosed with Exhibit 1, which have been altered only by the addition of document control numbers, using a BPD prefix, in the lower right corner of each page.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 17, 2008.

David A. Sauers

(0242.87:100:vy)

# EXHIBIT 1

DEPARTMENT OF THE TREASURY
BUREAU OF THE PUBLIC DEBT
PARKERSBURG, WV 26106-1328

RECEIVED
SEP 26 2002
4:25 p.m.
THE SAPIRO LAW FIRM

September 20, 2002

The Sapiro Law Firm
Attn: David Sauers
711 Van Ness Avenue, Suite 440
San Francisco, CA 94102-3270

Dear Mr. Sauers:

This is in reference to your Freedom of Information Act (FOIA) request that was faxed to us on August 22, 2002, asking for information on all documents that address, refer to, or relate to the subject of United States Treasury bills, notes, and bonds in relationship to the Territory of Guam or other territories.

Enclosed are all records responsive to your request. Some information has been deleted in accordance with subsection (b) (6) Exemption 6 of the FOIA, 5 U.S.C. 552. Exemption 6 permits the government to withhold all information about individuals in "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."

No other responsive records were located.

This is a partial denial of your request. You may appeal this decision within 35 days from the date of this letter. Your appeal must be in writing, signed by you, and should be addressed to: Executive Director, Bureau of the Public Debt, 200 Third Street, Room 211, Parkersburg, WV 26101.

The invoice for fees incurred in processing your request is enclosed.

Sincerely,

Denise K. Hofmann

Denise K. Hofmann
Disclosure Officer

Enclosures
cc: Records and Files

# EXHIBIT 2

GOVERNMENT OF
THE VIRGIN ISLANDS OF THE UNITED STATES
DEPARTMENT OF LAW
P. O. Box 280
Charlotte Amalie, St. Thomas, V. I. 00801

In reply please refer to our
File No. ................

September 24, 1984

Gerald Rock, Esq.
United States Treasury Department
Assistant Chief Counsel
Bureau of Public Debt
1435 G Street, N.W.
Room 309
Washington, D.C. 20226

Re: West Indies Investment Company v. Olive
Civil No. 84/265 (D.V.I.)

Dear Mr. Rock:

Pursuant to your September 21, 1984, telephone conversation with Assistant Attorney General Kevin C. Reilly, this is to request your office's position on the taxability of interest from United States Government Securities by the Government of the Virgin Islands.

The attorneys for the taxpayers maintain that I.R.C. §103 precludes the taxability of interest paid on United States Government Securities.

As you know, the Virgin Islands income tax law is the Internal Revenue Code as mirrored. The government in the instant cases argues that the required mirroring does not result in Section 103 (exclusion from income of interest paid by States) applying to the United States. The taxpayers argue that the mirroring concept does substitute "United States" for "State".

The taxpayers' attorneys place great emphasis on the appearance of the phrase "exempt from taxation by United States possessions" on the face of the debt instrument.

If your office's position is that the bond is taxable by the Virgin Islands because of the "mirrored Internal Revenue Code", we would appreciate an affidavit to that effect for use in summary judgment proceeding in the United States District Court.

If you have any questions, please contact Mr. Reilly at (FTS) 809-774-5666.

Sincerely yours,

J'ADA M. FINCH-SHEEN
Attorney General

By: Kevin C. Reilly
Kevin C. Reilly
Assistant Attorney General

# EXHIBIT 3

# Department of the Treasury

BUREAU OF THE PUBLIC DEBT
OFFICE OF THE CHIEF COUNSEL

FISCAL SERVICE
Washington, D.C. 20226

October 2, 1984

Mr. Daniel Folzenlogen
Special Appellate Counsel
Office of the Associate Chief Counsel
Internal Revenue Service
1111 Constitution Avenue, NW
Room 3543
Washington, DC 20224

Re: West Indies Investment Company v. Olive
Civil No. 84/265 (D.V.I.)

Dear Dan,

Enclosed is the letter that I talked with you about on the phone last week.

As I stated, the telephone conversation I had with Mr. Reilly indicated that the question was whether a possession could tax a United States security. That question relates to the provision in regulations under Title 31 and the inscription on the security that it is exempt from all taxation imposed by a possession of the United States.

As you can see from the letter, however, the question that is raised really involves the mirroring provisions of the Virgin Islands tax arrangement. Since that is the question, the IRS should respond to it.

While the fourth paragraph of the letter refers to the "possession" language on the security, I believe that the tone of the letter indicates that the mirroring problem is the decisive issue. For your convenience, I enclose a copy of a current bond with the "possessions" language.

Very truly yours,

Gerry

Gerald Rock
Assistant Chief Counsel

# EXHIBIT 4

NOV 08 1984

CC:FO:GL-566-84
KARoth

AIR MAIL

J'ada M. Finch-Sheen
Attorney General of the Virgin Islands
P.O. Box 280
St. Thomas, Virgin Islands 00801

Attn: Assistant Attorney General
Kevin C. Reilly

In re: Virgin Islands-Ability of V.I. to Tax Interest from U.S. Government Securities

Dear Mr. Finch-Sheen

A letter of September 24, 1984 to Gerald S. Rock, Esq. of the U.S. Treasury Department, Assistant Chief Counsel, Bureau of Public Debt has been forwarded to this office for response. The question involved the appropriateness of taxation of interest on U.S. debt obligations by the Virgin Islands tax administration. We conclude that the Virgin Island government may not assert its territorial income tax on interest earned on obligations or U.S. government securities.

It is our understanding that the issue arose in the context of litigation by the West Indies Investments Company v. Olive in the U.S. District Court in the District of Virgin Islands. The Virgin Islands government argues that there is a deficiency in Virgin Island income tax due to the taxpayer's exclusion from income of interest on U.S. Treasury bonds. Attorneys for the taxpayers maintain that the interest is exempt by reason of I.R.C. §103, as mirrored for use in the territorial income tax system of the Virgin Islands. In addition, the taxpayers note that the face of the U.S. bond states that it is exempt from taxation by a U.S. possession.

Both parties focus their attention on the effect of the mirroring provisions of the Virgin Islands Revised Organic Act. We do not consider the so-called "Mirror Code" to be dispositive of the question. Under Section 28(a) of that statue, 48 U.S.C. §1397, a territorial income tax of the Virgin Islands was created which implemented the statute identical to the Internal Revenue Code of 1954, including its amendments, but required the substitution of terms and nomenclature to effect a "mirroring" of the federal tax system. At a minimum, where the words "United States" are used in the Internal Revenue Code, the words "Virgin

Islands" must be substituted. In addition, changes in nomenclature necessary to avoid confusion as to the tax consequences contemplated by Congress are also required. Chicago Bridge and Iron Company v. Wheatley, 430 F 2d 973 (3d Cir. 1960.) A similar statute is in effect for the U.S. possession, Guam, enacted in 48 U.S.C. §§1421i(b) and 1421i(c) and requires that "except where it is manifestly otherwise required, the applicable provisions of the Internal Revenue Codes of 1954 and 1939 shall be read so as to substitute 'Guam' for 'United States', 'governor or his delegate' for 'secretary or his delegate', 'governor or his delegate' for 'Commissioner of Internal Revenue' and 'Collector of Internal Revenue', 'District Court of Guam' for 'district court' and with other changes in nomenclature in other language, including the omission of inapplicable language, where necessary to effect the intent of the section." This statute provides a guide for the correct manner in which the substitution of nomenclature should be made in the Virgin Islands Code. The mirroring necessary to effect the territorial tax system extends to the Treasury Regulations as well. Vitco Inc. v. Government of Virgin Islands, 560 F 2d 180 (3d Cir. 1977).

The U.S. taxation of interest on governmental securities is governed by I.R.C. §103. The parties' have drawn their competing arguments from their interpretation of that section. For U.S. income tax purposes, section 103 provides a limited exclusion from gross income of interest on the obligations of a state, territory or possession of the U.S. or a political subdivision. It does not exclude from income interest earned on obligations of the U.S. government. In Treasury Regulations §1.103-4, it is made explicit that interest earned on federal debt instruments are not exempt from federal income tax. If section 103 is mirrored, it would read as follow (substituted words are in brackets):

> (a) GENERAL RULE - Gross income does not interest on -
>
> (1) The obligation of a State, a territory, or a possession of the [Virgin Islands] or any political subdivision of any of the foregoing, or of the District Columbia; and
>
> (2) Qualified scholarship funding bonds.

Section 103 as mirrored provides that the interest earned on an obligation of a subdivision of the Virgin Islands, including one of its states, territories, or possessions, could be exempt from Virgin Island taxation. By negative implication, the Virgin

Islands Tax Administration infers that interest from U.S. obligations are subject to its taxing authority. The taxpayers argue instead that the provision as mirrored should also substitute the phrase "United States" for the word "State," thus excluding the interest from Virgin Island gross income. We do not believe that such substitution is permissible.

Neither party has addressed the fact that nothing in the Revised Organic Act or in section 103 as mirrored operates to waive the immunity from taxation by local jurisdictions which the United States debt instruments enjoy. The rule that interest from U.S. obligations is not subject to taxation by state or local jurisdictions is codified in 31 U.S.C. §3124 and was recently upheld as part of the doctrine of sovereign immunity. Memphis Bank and Trust Company v. Garner, 103 Supreme Court 692 (1983). In Memphis Bank, the Supreme Court interpreted the constitutional rule of tax immunity established in M'Culloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579 (1819). Because the economic effect of the tax involved in Memphis Bank resulted in discrimination against the holders of federal property, the Court concluded that it was an unconstitutional tax. Though not directly analogous, the rule of these cases has been extended by treasury regulation to Treasury bills (31 C.F.R. §309.4), Treasury bonds sold at competitive bids (31 C.F.R. §340.3) and various U.S. savings bonds (31 C.F.R. §§316.9, 332.9, and 342.5).

If you have questions concerning this advice, please contact Kristine Roth at FTS 8-202-566-5862. Copies of this advice are being forwarded to Gerald Rock, Assistant Chief Counsel, Bureau of Public Debt, Daniel Folzenlogen, Special Appellant Counsel, Office of the Associate Chief Counsel, Internal Revenue Service, and Michael Patton, General Litigation Division.

Sincerely,

FRED T. GOLDBERG, JR.
Chief Counsel
Internal Revenue Service

By: /S/
JAMES F. KEARNEY
Acting District Counsel
Foreign Operations

KARoth/jvr/1108/84

| Code | Initiator | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer | Reviewer |
|---|---|---|---|---|---|---|---|
| | CC:FO:e | | | | | | |
| Surname | | | | | | | |

BPD 0505

# EXHIBIT 5

June 19, 1985

Dear Mr. Miller:

Phyllis Marcus suggested that I write to you asking for an opinion. I an with the legal staff of the Bureau of the Public Debt. We are researching a problem related to taxation of government securities e.g., Treasury bills, notes, bonds, by possessions of the United States.

The following background information may be helpful in answering this request. At presents there is an inconsistency between the statute and regulations regarding exemption of securities from taxation by possessions. 31 U.S.C. §3124(a) states that obligations of the United States government are exempt from taxation by a State or political subdivision of a State." (Emphasis added)

Title 31 of the Code of Federal Regulations contains numerous sections referring to the taxation of government securities. Most of the sections contain variations of the wording found in 31 CFR §340.3. "The bonds will be subject to estate, inheritance, gift or other excise taxes, whether Federal or State, but will be exempt from all taxation now or hereafter imposed on the principal or interest thereof by any states or any of the possessions of the United States, or by any local tax authority." (Emphasis added)

The inconsistency occurred because of an apparent oversights The Second Liberty Bond Acts, enacted in 1917, provided for exemptions from taxation by possessions. This provision was repealed in 1959 but the regulations were apparently not changed accordingly and, therefore, a discrepancy exists.

Before we make recommendations regarding a change in either the statute or regulations, we would like to determine what the tax consequences would be if the securities were not exempt from taxation by possessions. U.S.C. §3124(b) states that the tax status of interest on government securities is decided under the Internal Revenue Code of 1954 (26 U.S.C. 1 et seq.). Therefore, we are asking you for an opinion on the tax consequences.

Please provide us with an opinion on how interest would be taxed in each of the following situations:

1. Securities hold by a U.S. citizen who is a resident in a possession.

2. Securities hold by a citizen of a possession.

3. Securities hold by a resident of a possession who is

neither a citizen of the U.S. nor a citizen of the possession.

Since it is my understanding that different possessions/ territories have different tax laws, I would appreciate it if you would specify the results for each of the following possessions:

*Virgin Islands
*Puerto Rico
*Guam
*Northern Mariana Islands
*American Samoa
Wake Island
Carolina Islands
Marshall Islands

If it is not possible to provide information an all of the above, please provide data on those possessions which are starred.

Thank you for assisting with this project. If you have questions regarding my request, please contact me at 447-9859. Please call me also when your response is ready so that I can pick it up. We are anxious to proceed with a recommended solution to the stated problem and feel that the data you will provide is essential in order to reach a solution which is consistent with current tax law.

Sincerely,

Margaret Marquette
Attorney-Advisor

Internal Revenue Service
Attn: Mr. Paul Miller
CC:C:R:3, Room 5508
1111 Constitution Avenue, N.W.
Washington, D.C. 20224

# EXHIBIT 6

Department of the Treasury

**Office of**
**Chief Counsel**
Internal Revenue Service
Branch 1
Associate Chief Counsel (International)
Room 3319
950 L'Enfant Plaza South, SW
Washington, DC 20024

Sep 29 1987

CC:INTL:421-86
Brl:GPerez-Navarro

Ms. Margaret Marquette
Office of Chief Counsel
Bureau of the Public Debt
Department of the Treasury
Washington, D.C. 20226

Re: Taxation of Federal Obligations by Possessions of the United States

Dear Ms. Marquette:

This is in response to your request for information regarding taxation of U.S. government obligations by possessions of the United States. At present, there is an inconsistency between the statute and the regulations regarding the exemption of U.S. obligations from taxation by possessions. Section 3124 of Title 31 only exempts U.S. obligations from taxation by states and their political subdivisions. Most of the pertinent regulations, however, also exempt U.S. obligations from taxation by possessions. This exemption is reflected on the debt instruments issued by the government. Your office is concerned that, as a result of the exemption contained in the regulations, there may be significant revenue loss resulting from the interplay of the Internal Revenue Code and the tax laws of the possessions, which in certain instances results in the income derived from U.S. government securities escaping all taxation.1/

In order to assist you in determining the extent of the revenue loss and whether legislative changes are necessary, we are providing you with an explanation of the current tax treatment in the possessions of income derived from U.S. government obligations. We are also providing you with an

1/ Although you address the problem in terms of interest income, gain on the sale or exchange of U.S. securities is also affected.

explanation of the tax treatment of the income if it were not exempt from taxation by the possessions. Since the tax laws of the possessions differ, each possession will be discussed separately.

In order to understand the income tax systems of the possessions, it is necessary to understand certain basic concepts of U.S. taxation. U.S. citizens, non-U.S. citizens who are resident in the U.S., and corporations organized under the laws of one of the fifty states or the District of Columbia, are taxed on income from all sources. Nonresident aliens and foreign corporations are taxed only on U.S.-source income and income effectively connected with a trade or business in the U.S. Corporations organized under the laws of a possession are treated as foreign corporation for U.S. tax purposes.

The Internal Revenue Code provides rules to determine the source of income of nonresident aliens and foreign corporations. Interest on U.S. government obligations is treated as U.S.-source income under I.R.C. §§ 861, 871, and 881 [although it has been exempted from taxation as portfolio interest of nonresident aliens and foreign corporations under I.R.C. §§ 871(h) and 881(c), respectively].

In general, the sourcing of income from the sale or exchange of U.S. government securities depends on the residence of the seller under I.R.C. § 865. If the seller is a resident of the U.S., the income is sourced in the U.S. If the seller is a nonresident (or a foreign corporation), the income is sourced outside the U.S. Thus, to the extent that residents of the possessions are treated as nonresidents for U.S. tax purposes, income from the sale or exchange of U.S. government obligations is not taxable by the U.S. to nonresidents of the U.S. residing in a U.S. possession.

The Tax Reform Act of 1986 authorizes the Secretary of the Treasury to provide separate sourcing rules for the Virgin Islands, Guam, the Northern Mariana Islands, and American Samoa. Grace Perez-Navarro and Lilo Hester of this office are responsible for drafting those regulations.

## VIRGIN ISLANDS

The Virgin Islands is currently administered as an unincorporated territory subject to the jurisdiction of the Secretary of the Interior. 48 U.S.C. § 1541. The Naval Appropriations Act of 1921, 48 U.S.C. § 1397 (Supp. 1984) mirrors the provisions of the Internal Revenue Code as the tax law of the Virgin Islands. The mirror system requires that the words "Virgin Islands" be substituted for the words "United States" where appropriate.

Prior to the Tax Reform Act of 1986, I.R.C. § 934A authorized the Virgin Islands to impose a ten percent surtax on its residents. Section 934A was repealed by the Tax Reform Act of 1986. Section 1274(b) of the Act authorizes the Virgin Islands to enact nondiscriminatory local taxes.

The "Inhabitant" Rule

Prior to the Tax Reform Act of 1986, inhabitants of the Virgin Islands (which included corporations as well as individuals) could satisfy their U.S. tax liabilities by filing one return with the Virgin Islands, provided they reported and paid tax on income from all sources to the Virgin Islands. Since the income received by inhabitants from U.S. government obligations is exempt from taxation by the Virgin Islands, the income escaped all taxation because no tax was required to be paid to the U.S. if it was paid to the Virgin Islands. The inhabitant rule was repealed by section 1275(b) of the Tax Reform Act of 1986.

Bona Fide Residents

Under the provisions of the Tax Reform Act of 1986, individuals2/ who qualify as bona fide residents of the Virgin Islands on the last day of the taxable year who report and identify income from all sources on their Virgin Islands income tax returns may exclude that income from gross income on their U.S. returns. Therefore, unless the Virgin Islands is permitted to tax the income from government obligations, the income will escape all taxation.

Non-Bona Fide Residents

A citizen or resident of the U.S. (other than a bona fide resident of the Virgin Islands) deriving income from the Virgin Islands is no longer liable to the Virgin Islands for any tax determined under the Virgin Islands mirror code. Rather, in the case of such an individual, his Virgin Islands tax liability is a fraction of his U.S. tax liability, based on the ratio of adjusted gross income derived from Virgin Islands sources to worldwide adjusted gross income. Such an individual is required to file identical returns with the U.S. and the Virgin Islands. The Virgin Islands' portion of the individual's tax liability will be credited against his total U.S. tax liability. In this situation, the income from U.S. obligations does not escape taxation because it is taxed as part of the worldwide adjusted gross income of the individual.

2/ Note that corporations cannot qualify as bona fide residents.

A corporation chartered in the Virgin Islands is required under the Virgin Islands mirror code to file a Virgin Islands tax return and report income from all sources. If the Virgin Islands were permitted to tax Virgin Islands corporations on income from U.S. obligations, all of the income from U.S. government obligations would be taxable by the Virgin Islands. For U.S. tax purposes, interest paid on U.S. government obligations would either be taxable by the U.S. as U.S.-source income earned by a foreign corporation under I.R.C. S 881 [although it would qualify for the portfolio interest exemption under I.R.C. § 881(c)], or as income of a domestic corporation under I.R.C. § 881(b).3/ Income from the sale or exchange of U.S. government obligations would, however, escape taxation because it is not U.S.-source income of a foreign corporation. This could be corrected by changing the sourcing rules under the regulatory authority provided by I.R.C. § 934.

GUAM AND THE NORTHERN MARIANA ISLANDS

The 1950 Organic Act of Guam establishes a mirror code system for Guam similar to that of the Virgin Islands. The Covenant to Establish a Commonwealth of the Northern Mariana Islands, the pertinent sections of which became effective in January 1979, provides in section 601 that the U.S. income tax laws are in force in the Northern Mariana Islands "in the same manner as those in force in Guam." It also provides that references to Guam in the Internal Revenue Code will be deemed to refer to the Northern Mariana Islands as well. Therefore, the discussion which follows applies to both Guam and the Northern Mariana Islands.

Residents

Under section 935 of the Internal Revenue Code, a U.S. or Guam citizen or resident is required to file only one return with Guam if he is a resident of Guam on the last day of the year, or with the U.S. if he is a resident of one of the fifty

---

3/ I.R.C. § 881(b) provides that a possession corporation will not be treated as a foreign corporation for purposes of the portfolio interest exemption if at all times during the taxable year less than 25% of the stock is owned by foreign persons, at least 65% of the corporation's gross income is effectively connected to a trade or business in the possession or the U.S. for the preceding 3 years, and no substantial part of the corporation's income is used to satisfy obligations to persons who are not bona fide residents of the possession or the U.S. The purpose of this rule is to prevent foreign persons not resident in the possessions from using possessions corporations as conduits to obtain U.S.-source income without paying U.S. or territorial taxes.

states or the District of Columbia on the last day of the year. Section 935 also provides that, for purposes of the Guamanian individual income tax, income from U.S. sources is to be treated as domestic source income; for purposes of the U.S. individual income tax, income from Guamanian sources is to be treated as domestic source. Thus, residents of Guam on the last day of the taxable year would escape taxation of income derived from U.S. government obligations unless the possessions were permitted to tax the interest because residents of Guam on the last day of the taxable year are not required to report and pay tax to the U.S.

Nonresidents

An individual who is neither a resident of the U.S. or Guam on the last day of the taxable year is required to file one tax return -- with Guam if he is a citizen of Guam (but not otherwise a citizen of the U.S.), or with the U.S. if he is not a citizen of Guam. As a result, the income derived from U.S. government obligations of all citizens of Guam not otherwise citizens of the U.S. escapes all taxation. (In light of the fact that Guam is primarily inhabited by U.S. government personnel, it is unlikely that a significant number of people qualify as true citizens of Guam.)

Corporations

Like the Virgin Islands, Guam taxes U.S. corporations as foreign corporations. Similarly, corporations chartered in Guam are generally considered foreign corporations for U.S. tax purposes. Please refer to the discussion of the tax consequences to corporations contained under the Virgin Islands heading.

Tax Reform Act of 1986

Section 1271 of the Tax Reform Act of 1986 authorizes Guam, American Samoa, and the Northern Mariana Islands to enact their own tax laws with respect to income from sources within, or effectively connected with the conduct of a trade or business within any such possession, or income received or accrued by any resident of such possession, provided an implementing agreement is in effect between the U.S. and such possession. To date, none of these possessions has entered into an implementing agreement with the U.S., although it is anticipated that implementing agreements will be entered into within the next year. (Note that section 1277(d) of the Tax Reform Act of 1986 requires a report to be filed with the Senate if implementing agreements have not been executed within a year of the date of enactment of the Act.)

When Guam and the Northern Mariana Islands enter into implementing agreements with the U.S., all persons with Guam or Northern Mariana Islands income will be required to file two returns -- one with the appropriate possession and one with the U.S. Individuals who qualify as bona fide residents of Guam or the Northern Mariana Islands will be taxed by the U.S. on worldwide

income but shall exclude income which is sourced or effectively connected to a trade or business in the possession in which they are bona fide residents. I.R.C. § 931. Individuals who do not qualify as bona fide residents will be required to file a return with Guam or the Northern Mariana Islands, as appropriate, on which they report their Guam or Northern Mariana Islands-source income and income effectively connected with a trade or business in the possession. They will also be required to file a U.S. tax return and pay tax on their worldwide income. They will receive a credit for taxes paid to the possession under I.R.C. § 901, subject to the limitations of I.R.C. § 904.

## AMERICAN SAMOA

Congress granted the legislature of American Samoa the authority to impose its own income tax. In 1963, the American Samoan legislature adopted a mirror version of the Internal Revenue Code, but with a number of modifications.

### U.S. Citizens Residing in American Samoa

Although American Samoa is on a mirror system, U.S. citizens who are resident in American Samoa are required to file two returns--one with the U.S. and one with American Samoa. Section 931 provides, in effect, that any U.S. citizen resident in American Samoa who meets a certain threshold of possessions source income, is exempt from U.S. tax on all foreign-source income. If a U.S. citizen has American Samoa-source income which does not qualify for the section 931 exclusion, the U.S. grants a foreign tax credit against the U.S. tax liability of U.S. citizens for taxes paid on income derived from American Samoa. Thus, U.S. citizens resident in American Samoa are taxed by the U.S. on all income derived from U.S. government obligations. U.S. citizens resident in American Samoa are subject to American Samoa income tax on income sourced in American Samoa. Interest on U.S. government obligations is not sourced in American Samoa and would not be taxed by American Samoa, regardless of whether the possessions are authorized to tax income from U.S. government obligations. Gain on the sale or exchange of U.S. government obligations under the current sourcing rules would be taxable as Samoan-source income if it were permitted to be taxed by the possessions.

### Native Residents

Native residents of American Samoa are classified as nonresident aliens for U.S. tax purposes. As such, they are taxed on U.S.-source income and income effectively connected with a trade or business in the U.S. Thus, interest on U.S. government obligations earned by native residents is taxable by the U.S., although it qualifies for the portfolio interest exemption under I.R.C. § 871(h). Gain on the sale or exchange of U.S. government obligations is not subject to tax by the U.S. because it is sourced outside the U.S.

U.S. Citizens

All U.S. citizens in Puerto Rico are taxable under the Internal Revenue Code on their worldwide income. In the case of a U.S. citizen who is a resident of Puerto Rico for the entire taxable year, or who is a part-year Puerto Rican resident and who was a Puerto Rican resident for the previous two years, section 933 provides for an exclusion without dollar limitations for all income "from sources within Puerto Rico." A U.S. citizen who is not present in Puerto Rico long enough to qualify for the exclusion is eligible for the foreign tax credit under section 901 of the Code to the extent of the section 904 limitation. Under this system, income derived from U.S. government securities does not escape taxation.

Resident Aliens

Resident aliens of Puerto Rico who receive income from U.S. government obligations are not taxed under Puerto Rico's tax laws. The U.S., however, generally taxes resident aliens of Puerto Rico as resident aliens of the U.S. Therefore, income from U.S. government obligations is includible in worldwide income and does not escape taxation.

Corporations

Corporations in Puerto Rico are taxed by Puerto Rico in substantially the same manner that Guam and the Virgin Islands currently tax corporations.

WAKE ISLAND, JOHNSTON ISLAND AND MIDWAY ISLAND

Wake Island, Johnston Island, and Midway Island have no native inhabitants and are occupied almost exclusively by U.S. government employees. None of these islands has an internal income tax law. U.S. citizens who are residents of these islands are subject to U.S. tax on worldwide income. Resident aliens of these islands are taxed as resident aliens of the U.S. and are subject to tax on worldwide income. Income from U.S. government obligations does not escape taxation in these possessions.

THE FEDERATED STATES OF MICRONESIA AND THE MARSHAL ISLANDS

As of November 7, 1986, the Federated States of Micronesia and the Marshall Islands (which are part of the chain of islands known as the Carolina Islands) are no longer U.S. possessions.

CONCLUSION

Under the present system, the following classes of taxpayers deriving income from U.S. obligations are not subject to tax on that income:

- bona fide residents of the Virgin Islands on the last day of the taxable year;

- residents of Guam and the Northern Mariana islands on the last day of the year;

- citizens of Guam and the Northern Mariana Islands not resident in Guam, the Northern Mariana Islands, or the U.S. on the last day of the year; and

- possessions corporations, but only with respect to gain on the sale or exchange of U.S. government obligations.

The revenue loss problem in Guam and the Northern Mariana Islands will be virtually eliminated with respect to individuals when these possessions enter into implementing agreements because the U.S. will tax all citizens and residents of these possessions on worldwide income. The revenue loss problem may be completely eliminated in these possessions (as well as American Samoa) by changing the sourcing rule for gain on the sale or exchange of U.S. government obligations so that such income is sourced in the U.S.

The government of the Virgin Islands believes that section 3124 and the regulations should not be construed to prohibit the Virgin Islands from taxing U.S. government obligations because the doctrine of sovereign immunity upon which section 3124 and the regulations are based would not be violated. The Virgin Islands argues that, even though the Virgin Islands tax is treated as a separate territorial tax, its tax laws are actually enacted by the U.S. Congress and, therefore, the tax is not one imposed by the Virgin Islands on the U.S. obligations. (This argument would not apply to any nondiscriminatory local laws which the Virgin Islands has now been authorized to enact.) By adopting the Virgin Islands' position and incorporating it into the regulations relating to the exemption, the revenue loss created by the exemption would be eliminated in the Virgin Islands.

Double taxation will not pose a problem if it is determined that the regulations should be amended to permit the possessions to tax income on U.S. government obligations. For U.S. tax purposes, taxpayers would be entitled to a foreign tax credit under I.R.C. § 901, subject to the limitations of I.R.C.§ 904 for taxes paid to any of the possessions. In addition, the implementing agreement between the U.S. and the Virgin Islands contains a mutual agreement procedure provision to prevent double taxation. The implementing agreements being negotiated with the other possessions will contain a similar provision.

We hope this information will be helpful to you in formulating your recommendations regarding the inconsistencies currently present in the law with respect to the possessions'

authority to tax income derived from U.S. government securities. If you need additional information, please contact Grace Perez-Navarro at 287-4851.

Sincerely,

WILLIAM F. NELSON
Chief Counsel

By: s/ Michael F. Patton
MICHAEL F. PATTON
Chief, Branch 1

# EXHIBIT 7

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
950 L'ENFANT PLAZA SOUTH, S.W.
WASHINGTON, DC 20024

ASSISTANT COMMISSIONER
(INTERNATIONAL)

OCT 1 1987

The Honorable Anthony P. Olive
Director
Virgin Islands Bureau of Internal Revenue
P.O. Box 3186
Charlotte Amalie
St. Thomas, U.S.V.I. 00801

Re: Virgin Islands Taxation of U.S. Government Securities

Dear Director Olive:

This is in response to your letter of July 16, 1987 regarding the taxation of U.S. government securities by the Virgin Islands.

Pursuant to your request, Counsel has again reviewed the November 30, 1984 memo prepared by your staff. The fundamental problem we have with accepting the position set forth in that memo is that it is inconsistent with the Treasury Regulations promulgated by the Bureau of Public Debt regarding the exemption from taxation of U.S. government bonds, notes, etc. The Internal Revenue Service is bound by those regulations. However, as indicated in our letter dated July 6, 1987, Counsel is working with the Bureau of Public Debt to determine what legislative or regulatory changes will be necessary to prevent income derived from U.S. government securities from escaping all taxation.

In your July 16 letter you asked for comments about the arguments raised in the Virgin Islands' November 30, 1984 memorandum. Those arguments have been presented to the Bureau of Public Debt. The Bureau of Public Debt has indicated that the Virgin Islands' reliance on the introductory phrase, "except as otherwise provided," that appears in former section 742 of Title 31, is misplaced because that introductory phrase was not part of Rev. Stat. § 3701 (the Statute at Large from which former section 742 -- which was simply a codification of section 3701 -- was derived). However, Counsel and the Bureau of Public Debt are exploring alternative means by which to ensure that the income derived by U.S. obligations does not escape all taxation.

I want to assure you that the Internal Revenue Service and the Bureau of Public Debt share the concern of the Virgin Islands with respect to the revenue loss posed by the exemption of U.S. government securities from taxation by the possessions. Since we are still in the process of assessing the impact of the exemption on the other possessions, as well as the effects of the Tax Reform Act of 1986 on this issue, we think a meeting at this time would be premature. However, we are expediting this matter and hope to be able to schedule a meeting with you in the near future.

Sincerely,

Percy Woodard, Jr.

# EXHIBIT 8

JOSEPH F. ADA
Governor

FRANK F. BLAS
Lieutenant Governor

DEPARTMENT OF
**REVENUE & TAXATION**
GOVERNMENT OF GUAM

JOAQUIN G. BLAZ, Director • V.M. CONCEPCION, Deputy Director

MAY 04 1988

Lilo A. Hester
Attorney
Associate Chief Counsel (International)
Internal Revenue Service
Suite 3319
950 L'Enfant Plaza (South) S.W.
Washington, D.C. 20024

Dear Ms. Hester:

Thank you for taking time off from your busy schedule to meet with Frank Leon Guerrero, my Deputy Tax Commissioner. He related to me that you and your staff were very helpful in discussing some of the concerns our department has in the area of the Mirror Code.

In his meeting with you he brought up the subject of the Government of Guam taxing interest from Federal Government obligations. We have our Attorney General's opinion advising us that such interest is indeed taxable by the Government of Guam.

The question of the taxability of interest from Federal Government obligations is an important one. And I feel that your office can be of significant help to us on this issue because I know that you might have researched this matter extensively at one time or another.

Ms. Perez-Navarro who was at the meeting offered to look at the Government of Guam Attorney General's opinion and comment whether or not the opinion interprets the law properly.

Attached to this letter is a copy of the Government of Guam Attorney General's opinion.

It is our understanding that the Government of the Virgin Islands does exempt from taxation interest income from U.S. Treasury obligations. If this is correct and you are aware of it, please forward to us copies of the rulings or regulations pertaining thereto.

Sincerely,

JOAQUIN G. BLAZ

Enclosure

BPD 0117

855 West Marine Drive Agana, Guam 96910 • Tel: (671) 477-1040 Telex: 721-6218 GOVGUAM • Fax: (671) 472-2643

# EXHIBIT 9

Department of the Treasury

Office of
Chief Counsel
Internal Revenue Service

Branch 1
Associate Chief Counsel (International)
Room 3319
950 L'Enfant Plaza South, SW
Washington, DC 20024

JUN 9 1988

The Honorable Joaquin G. Blas
Director
Department of Revenue and Taxation
Government of Guam
855 West Marine Drive
Agana, Guam 96910

Re: Taxation of Interest on U.S. Government Obligations

Dear Director Blas:

This is in response to your letter of May 4, 1988 regarding the taxation of interest on U.S. government obligations by the Government of Guam.

Pursuant to your request, we have reviewed the opinion of the Government of Guam Attorney General dated July 21, 1987. The fundamental problem we have with accepting the position set forth in that memo is that it is inconsistent with the Treasury Regulations promulgated by the Bureau of Public Debt regarding the exemption from taxation of U.S. government bonds, notes, etc. (See attached list). The current regulations, with two exceptions, 31 CFR sections 341.13 (Retirement Plan Bonds) and 346.13 (Individual Retirement Bonds), state that the income derived from the obligations is exempt from taxation by any state, any possession of the United States, or any local taxing authority. The regulations governing Retirement Plan Bonds and Individual Retirement Bonds do not mention taxation or exemption from taxation by possessions.

The Internal Revenue Service is bound by the regulations promulgated by the Bureau of Public Debt. However, as we indicated to Mr. Guerrero during his last visit, the Bureau of Public Debt is planning to change those regulations prospectively so that the interest on U.S. obligations will not escape all taxation.

In addition, it should be noted that many of the obligations expressly state on their face that they are exempt from taxation by possessions. (See specimen attached). These obligations are contracts between the United States and the purchaser, and the United States is bound by the terms thereof.

The Virgin Islands previously requested our advice as to whether they were authorized to tax interest on U.S. obligations and we also advised them that to do so would be contrary to the regulations promulgated by the Bureau of Public Debt.

(Signed) Michael F. Patton

MICHAEL F. PATTON

Enclosures: as stated

CC:INTL:1
b Perry Narsh[illegible]

CC:INTL:1
[illegible]
6-1-88

CC:INTL:1
Patton
6/1/88

# THE UNITED STATES OF AMERICA

FOR VALUE RECEIVED PROMISES TO PAY TO



0000

13¾%
TREASURY BOND
OF 2004
Dated July 10, 1984
Due August 15, 2004

CUSIP 912810 DK 1

SPECIMEN

OR REGISTERED ASSIGNS, THE SUM OF

## ONE THOUSAND DOLLARS

ON AUGUST 15, 2004, AND TO PAY INTEREST ON THE PRINCIPAL SUM FROM , AT THE RATE OF THIRTEEN AND THREE-QUARTERS PERCENT PER ANNUM, PAYABLE ON A SEMIANNUAL BASIS ON FEBRUARY 15, 1985, AND THEREAFTER ON AUGUST 15 AND FEBRUARY 15 IN EACH YEAR UNTIL THE PRINCIPAL AMOUNT BECOMES PAYABLE, AT THE DEPARTMENT [illegible] TREASURY, WASHINGTON, D.C., OR, AT THE HOLDER'S OPTION, AT ANY AGENCY OR AGENCIES IN THE UNITED STATES WHICH [illegible] OF THE TREASURY MAY FROM TIME TO TIME DESIGNATE FOR THE PURPOSE. THIS BOND IS ONE OF A SERIES OF BONDS [illegible] STATES, AUTHORIZED BY CHAPTER 31 OF TITLE 31, UNITED STATES CODE, ISSUED PURSUANT TO DEPARTMENT OF THE TR[illegible]BLIC DEBT SERIES—No. 20-84, DATED JUNE 20, 1984, AND DESIGNATED 13¾ PERCENT TREASURY BONDS OF 2004 [illegible] CT TO CALL FOR REDEMPTION PRIOR TO MATURITY. THIS BOND IS SUBJECT TO ALL TAXES IMPOSED UNDER THE INTER[illegible] CODE OF 1954. THIS BOND IS EXEMPT FROM ALL TAXATION NOW OR HEREAFTER IMPOSED ON THE OBLIGATION OR INTEREST HEREON BY ANY STATE, OR ANY OF THE POSSESSIONS OF THE UNITED STATES, OR BY ANY LOCAL TAXING AUTHORITY, EXCEPT AS PROVIDED IN 31 U.S.C. 3124. THIS BOND IS ACCEPTABLE TO SECURE DEPOSITS OF PUBLIC MONEYS. IT IS NOT ACCEPTABLE IN PAYMENT OF TAXES.

WASHINGTON, D.C., JULY 10, 1984.

Donald T. Regan
SECRETARY OF THE TREASURY

TRANSFERABLE ON THE BOOKS OF THE DEPARTMENT OF THE TREASURY.

ONE THOUSAND DOLLARS

BPD 0115

# U.S. OBLIGATIONS REGULATIONS

| | |
|---|---|
| 31 CFR section 309.4 | (Treasury Bills) |
| 31 CFR section 316.9 | (Series E Savings Bonds) |
| 31 CFR section 332.9 | (Series H Savings Bonds) |
| 31 CFR section 340.3 | (Treasury Bonds) |
| 31 CFR section 341.13 | (Retirement Plan Bonds) |
| 31 CFR section 342.5 | (Savings Notes) |
| 31 CFR section 343.4 | (U.S. Mortgage Guaranty Insurance Company Tax and Loss Bonds) |
| 31 CFR section 345.5 | (Treasury Certificates of Indebtedness) |
| 31 CFR section 346.13 | (Individual Retirement Bonds) |
| 31 CFR section 347.5 | (2 Percent Treasury Bonds) |
| 31 CFR section 348.4 | (2 Percent Depositary Bonds) |
| 31 CFR section 349.14 | (Book-Entry Treasury Bills) |
| 31 CFR section 351.8 | (Series EE Savings Bonds) |
| 31 CFR section 352.10 | (Series HH Savings Bonds) |

# EXHIBIT 10

Department of the Treasury

**Office of**
**Chief Counsel**
Internal Revenue Service

DRAFT

Branch 1
Associate Chief Counsel (International)
Room 3319
950 L'Enfant Plaza South, SW
Washington, DC 20024

CC:INTL-0311-88
Brl:WEWilliams

Mr. Joaquin G. Blaz
Director
Department of Revenue & Taxation
Government of Guam
855 West Marine Drive
Agana, Guam 96910

Dear Director Blaz:

This refers to your request that the question of whether Guam may tax interest on federal obligations be addressed in a Revenue Ruling. We must decline your request that a revenue ruling be issued, because it is not the practice of the Internal Revenue Service to publish rulings concerning application of a tax imposed by another jurisdiction.

You also point out that the Attorney General of Guam questions whether equity requires the interest in question to be subjected to tax by either the Internal Revenue Code or the mirror Code of Guam. As explained below, it is our view that interest on federal obligations may not be taxed under the Guam mirror Code; the following also describes the federal taxability of such interest.

Facts:

The Guamanian taxpayer receiving interest on a U.S. obligation could be a U.S. citizen residing on Guam, an alien resident of Guam, a U.S. corporation carrying on business on Guam, or a Guamanian corporation.

The case with which you are apparently most concerned involves the Bank of Guam, a Guamanian corporation, that is authorized to do business on Guam. The Bank owns and receives interest on U.S. Treasury bills and notes and did not report this interest on its income tax returns filed with Guam for the years 1983 through 1985.

Discussion:

1. Extent to which interest on federal obligations is exempt from tax

Section 3124 of Title 31 of the U.S. Code, entitled Exemption from taxation, is as follows:

> (a) Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation or both, to be considered in computing a tax ....

While this statute is silent as to taxes imposed by U.S. possessions, the regulations issued by the Bureau of Public Debt refer specifically to possessions. An example of these regulations is 31 CFR 309.4, dealing with Treasury bills:

> The income derived from Treasury bills, whether interest or gain from the sale or other disposition of the bills shall not have any exemption, as such, and loss from the sale or other disposition of Treasury bills shall not have any special treatment, as such, under the Internal Revenue Code, or laws amendatory or supplementary thereto. The bills shall be subject to estate, inheritance, gift or other excise taxes, whether Federal or State, but shall be exempt from all taxation now or hereafter imposed on the principal or interest thereof by any State, or any of the possessions of the United States, or by any local taxing authority. For purposes of taxation the amount of discount at which Treasury bills are originally sold by the United States shall be considered to be interest. [Emphasis added.]

1. Background of income tax laws of Guam

Prior to 1951, Guam had no income tax; Guamanians were subject to income tax solely on their U.S. source income. No income tax was imposed by Guam on income earned in the territory. Revenue shortfalls of the Guamanian government were met by direct appropriations of the U.S. Congress. In 1950, Congress passed the Organic Act of Guam, 64 Stat. 392, 48 U.S.C. § 1421 et seq. Section 30 (i.e., 48 U.S.C. § 1421(h)) provides as follows:

> All customs duties and Federal income taxes derived from Guam, the proceeds of all taxes collected under the internal-revenue laws of the United States on articles produced in Guam and transported to the United States, its Territories, or possessions, or consumed in Guam, and the proceeds of any other taxes which may be levied by the Congress on the inhabitants of Guam, and all quarantine, passport, immigration, and naturalization fees collected in

> Guam shall be covered into the treasury of Guam and held in account for the government of Guam, and shall be expended for the benefit and government of Guam in accordance with the annual budgets.

Section 31 of the Organic Act (i.e., 48 U.S.C. § 1421(i)), effective January 1, 1951, is as follows:

> The income-tax laws in force in the United States of America and those which may hereafter be enacted shall be held to be likewise in force in Guam.

Section 31 is the statutory source of the Guam mirror Code. The Ninth Circuit has taken the view

> that section 31 [of the Organic Act] established a territorial income tax to be collected by the Government of Guam, and that Guam and the United States were to be treated as separate and distinct taxing jurisdictions even though their income tax laws arose from an identical statute applicable to each. [Footnote omitted.]

Sayre & Co. v. Riddell, 395 F.2d 407 (9th Cir. 1968).

Therefore, solely as a result of section 31 of the Organic Act, a U.S. citizen who was a resident of Guam and who had income from both U.S. and Guamanian sources, was required to file an income tax return with Guam reporting tax, under the mirror code, on worldwide income; and a second return with the U.S. which also reported worldwide income but claimed a tax credit for the income tax paid to Guam. See Rev. Rul. 8, 1953-1 C.B. 300, 302, which states the following:

> In any case where a citizen of the United States incurs liability both to Guam and to the United States for tax upon the same income, he may claim a credit for the tax paid to Guam, under the provisions of section 131 of the Internal Revenue Code [of 1939, the predecessor of section 901 of the 1986 Code], subject to the conditions and limitations of that section ....[1/]

---

1/ The Ways and Means Committee Report, H.R. 92-1479, 92d Cong., 2d Sess. (Oct. 1972), 1972-2 C.B. 760, 761, accompanying P.L. 92-606, which enacted I.R.C. § 935, contains the following with respect to the dual filing requirement of individuals:

> a U.S. Stateside citizen [footnote omitted] who derives business income from Guam must file tax returns with both Guam and the United States. He then must pay tax to Guam on his business income derived from Guam, and claim a foreign tax credit for these taxes on his U.S. tax return.

Similarly, a U.S. corporation, a foreign corporation for purposes of the tax laws of Guam[2]/, with Guamanian as well as U.S. source income was required to file a Guamanian return reporting and paying tax on Guamanian source and effectively connected income; the corporation would also file a U.S. return reporting and paying tax on worldwide income, with a credit for tax paid to Guam. A Guamanian corporation, a foreign corporation for U.S. tax purposes, with Guamanian as well as U.S. source income was required to file a U.S. return reporting and paying tax on U.S. source and effectively connected income and a Guamanian return reporting and paying tax on worldwide income, with a credit for the tax paid to the U.S.

We have been unable to find support for arguing that any portion of the income tax liability imposed by Guam is a federal rather than a territorial obligation arising under the mirror code. This contrasts to our view of the tax liability of corporate and individual inhabitants of the Virgin Islands during the period prior to the effective date of the retroactive repeal of the V.I. inhabitancy rule by section 1275(b) of the Tax Reform Act of 1986, P.L. 99-514. It is our view that because of the inhabitancy rule contained in section 28(a) of the Revised Organic Act of the V.I., 69 Stat. 508 (1954), the tax owed to the V.I. by an inhabitant consisted of both a territorial liability imposed under the mirror code as well as the federal liability that such persons would owe the U.S. but for the fact that the U.S. had ceded collection of this liability to the V.I. Support for our view is found in I.R.C. § 932(c) that continues the inhabitancy rule with respect to individual inhabitants of the V.I. and makes clear that to the extent the federal liability is not paid to the V.I., it remains as a liability to the U.S. See also the discussion of the effect of the V.I. inhabitancy rule in Danbury, Inc. v. Anthony Olive, Director, Bureau of Internal Revenue, Government of the Virgin Islands, 820 F.2d 618 (3d Cir. 1987), cert. denied 108 S. Ct. 453 (1987).

I.R.C. § 935 was enacted by section 1(a) of P.L. 92-606 (Oct. 31, 1972), 1972-2 C.B. 709, effective for tax years

---

[2]/ H.R. Rep. No. 92-1479, supra, includes the following:

As a result of the "mirror image" system, corporations which are not created or organized in Guam are treated as foreign corporations .... This means that a domestic U.S. corporation is treated as a foreign corporation for purposes of Guam tax laws. Similarly, a Guam corporation is treated as a foreign corporation for purposes of U.S. tax law.

beginning after December 31, 1972.[3] This section of the Code, entitled Coordination of United States and Guam Individual Income Taxes, provides an exception from the dual filing requirement described above for certain individuals. Section 935 applies to individuals who fall into one of the following categories:

(1) a resident of Guam;
(2) a citizen of Guam but not otherwise a citizen of the U.S.;
(3) has income derived from Guam for the taxable year and is a citizen or resident of the U.S.; or
(4) files a joint return for the taxable year with an individual who satisfies (1), (2), or (3) for the taxable year.

Section 935(b)(1) requires an individual who falls into one of the categories listed above to file his income tax return

(A) with the United States, if he is a resident of the United States,
(B) with Guam, if he is a resident of Guam, and
(C) if neither subparagraph (A) nor subparagraph (B) applies-
 (i) with Guam, if he is a citizen of Guam but not otherwise a citizen of the United States, or
 (ii) with the United States, if clause (i) does not apply.

I.R.C. § 935(b)(1). An individual taxpayer qualifying for the exception from the dual filing requirement and filing his return with the U.S. or Guam is relieved from liability to the other jurisdiction. Residency and citizenship are determined on the last day of the taxable year. I.R.C. § 935(2).

At the present time, application of the mirror code in Guam is as described above. While the Tax Reform Act of 1986 repealed section 935, the repeal is effective only upon entry into force of a coordination agreement between the U.S. and Guam and only for so long as such an agreement remains in force.

---

[3]/ Section 935 was repealed by P.L. 99-514, § 1272(d), effective only if (and so long as) an implementing agreement under P.L. 99-514, § 1271, is in effect between the U.S. and Guam. No such implementing agreement is yet in effect. If the repeal of section 935 becomes effective, the coordination of U.S. and Guam income taxes will be controlled by section 931.

2. Interest on U.S. Treasury obligations received by Guamanian taxpayers

In the case of an individual qualifying for section 935 filing treatment and required only to file a return with Guam (i.e., a resident of Guam; or a citizen of Guam and not otherwise a citizen of the U.S.), the individual's income tax liability is computed under the Guam mirror Code. As previously discussed, this liability is to Guam. As such, it is a liability to the possession (in contrast to a federal liability the collection of which the U.S. has ceded to a possession, as was the case of the V.I. inhabitant rule and currently under section 932(c)) and cannot be imposed on interest on federal obligations as a result of the regulations issued by the Bureau of Public Debt. Furthermore, an individual qualifying for filing in Guam under section 935 and doing so, is relieved of all liability to the U.S. I.R.C. § 935(c)(3).

Corporations

In the case of a Guamanian corporation (e.g., the Bank of Guam) with U.S. source income (e.g., interest on federal obligations), the taxpayer would normally file two income tax returns - a U.S. return reporting U.S. source and effectively-connected income and a Guamanian return reporting worldwide income and claiming a credit for tax paid to the U.S. For the same reasons that Guam may not tax interest on federal obligations received by individual taxpayers, Gaum cannot tax such interest received by corporate taxpayers. Furthermore, as explained below, the rules governing federal taxation of such interest received by a Guamanian corporation depend, in part, on whether the interest is effectively connected with a U.S. trade or business (or deemed to be so connected), whether the Guam corporation satisfies the anti-conduit limitations in section 881(b)(1), and the date on which the interest is received.

Interest on a federal obligation is income from a U.S. source. See I.R.C. § 861(a)(1) and Treas. Reg. § 1-861-2(a)(1). Such income may or may not be effectively connected with a U.S. trade or business. If certain U.S. source income, including interest, is gross income of a foreign corporation and is not effectively connected with a U.S. trade or business, a tax of 30 percent is applicable and must be withheld at the source. I.R.C. §§ 881(a)(1) and 1442(a). However, section 881(b)(1) effectively provides an exemption from the 30-percent tax imposed by section 881(a)(1) for certain Guam corporations by providing that they are not foreign corporations. Subsection (b)(1) states that a Guam corporation will not be treated as a foreign corporation if

> (A) at all times during such taxable year less than 25 percent in value of the stock of such corporation is

beneficially owned (directly or indirectly) by foreign persons,

(B) at least 65 percent of the gross income of such corporation is shown to the satisfaction of the Secretary to be effectively connected with the conduct of a trade or business in such a possession or the United States for the 3-year period ending with the close of the taxable year of such corporation (or for such part of such period as the corporation or any predecessor has been in existence), and

(C) no substantial part of the income of such corporation is used (directly or indirectly) to satisfy obligations to persons who are not bona fide residents of such a possession or the United States.

"Foreign person", for purposes of section 881(b)(1)(A), is defined in section 881(b)(2)(A) as any person other than a U.S. person, or "a person who would be a United States person if references to the United States in section 7701 included references to a possession of the United States." Section 1442(c) provides that a corporation meeting the requirements of section 881(b)(1)(A), (B), and (C) is not subject to 30-percent withholding. These provisions were added by P.L. 92-606, supra.

The legislative history of section 881(b)(1) indicates that under the code as mirrored in Guam and prior to enactment of section 881(b)(1), U.S. corporations were foreign corporations, and that a 30-percent tax on the Guam source, non-ECI income of these corporations was a disincentive for these corporations to invest in Guam. The exemption in sections 881(b)(1) and 1442(c) would be mirrored in Guam with the effect of exempting U.S. corporations with Guam source, non-ECI income from the 30-percent tax imposed by the possession. This removed the investment disincentive. See H.R. No. 92-1479, 92d Cong., 2d Sess. (1972), 1972-2 C.B. 761. Sections 881(b)(1) and 1442(c) also has the effect of providing an exemption for certain Guamanian corporations from federal tax on U.S. source, non-ECI income.

As to income of a foreign corporation that is effectively connected to a U.S. trade or business, section 882(a) imposes a graduated tax on net income. For taxable years beginning before January 1, 1989, section 882(e), enacted by P.L. 89-809, sec. 104(b)(1), effective January 1, 1967, provided that interest received on a U.S. obligation by a possession corporation engaged in a banking business would be treated as effectively connected to a U.S. trade or business and would be taxed at graduated rates under section 882(a), whether or not the corporation was engaged in a U.S. trade or business. However, section 1236 of the Tax Reform Act of 1986, effective for taxable years beginning after November 16, 1985, added a provision to section 882(e) making the subsection inapplicable "to any Guam corporation which is treated as not being a foreign corporation by section 881(b)(1) ..." (i.e., a Guam corporation satisfying the anti-conduit

limitations). In describing section 1236 of the Act, the Conference Committee Report, H.R. No. 99-841, 99th Cong., 2d Sess. II-681 (Sept. 18, 1986), states that

> [t]he House bill [which was adopted in Conference] provides that interest income on U.S. Government obligations held by the <u>Bank of Guam</u> is treated as not effectively connected with the conduct of a U.S. trade or business. [Emphasis added.]

Thus, for taxable years beginning after November 16, 1985 and prior to January 1, 1989, interest on federal obligations received by a Guamanian corporation engaged in a banking business, but not in a U.S. trade or business, was not deemed to be effectively connected to a U.S. trade or business (and not taxed at graduated rates) if the corporation satisfied the requirements of section 881(b)(1); non-Guamanian possession corporations in the same circumstances remained taxable on such interest under section 882(a) regardless of whether the corporation was engaged in a U.S. trade or business.

Section 882(e) was amended by the Technical and Miscellaneous Revenue Act of 1988, P.L. 10-647 (Nov. 10, 1988), sec. 6133. The amendment, effective for tax years beginning after December 31, 1988, excludes portfolio interest, defined in section 881(c)(2), from the operation of section 882(e), and removes the provision excepting from application of the section "any Guam corporation which is treated as not being a foreign corporation by section 881(b)(1)...."[4]/ Thus, for taxable years beginning after December 31, 1988, unless the interest on the federal obligations held by the Bank of Guam is portfolio interest, it will be subject to net basis taxation under section 882(a), whether or not the Bank is actually engaged in a U.S. trade or business.

---

[4]/ The Conference Committee Report (H.R. No. 100-1104, Vol. II, 100th Cong., 2d Sess. 196 (Oct. 21, 1988), states that under present law

> [c]ertain non-Guamanian possession banks are subject to net-basis U.S. income tax ... with respect to interest on U.S. Government obligations, regardless of whether the banks have an actual trade or business in the United States.

In describing the Senate Amendment, which was adopted by the Conference, the Report states that the

> amendment excludes banks organized and doing business in any U.S. possession from net-basis U.S. taxation on interest on U.S. government obligations <u>that is portfolio interest</u> .... [Emphasis added.]

Section 881(c)(2) defines "portfolio interest" as including interest received by a foreign corporation

> on an obligation -
> (i) which is in registered form, and
> (ii) with respect to which the person who would otherwise be required to deduct and withhold tax from such interest under section 1442(a) receives a statement which meets the requirements of section 871(h)(4) that the beneficial owner of the obligation is not a United States person.

The Treasury Bills and Notes held by the Bank of Guam are in registered form. However, the interest on such obligations received by the Bank would not otherwise be subject to withholding. As previously discussed, section 1442(a) requires withholding, at the rate of 30 percent, "on the same items of income as is provided in section 1441" that are paid to a foreign corporation subject to withholding under section 1441. Section 1.1441-3(c)(1) of the Regulations states that

> [w]ithholding is required ... in the case of interest paid on obligations issued on or after March 1, 1941, by the United States or any agency or instrumentality thereof.

However, it is possible, as previously discussed, that the Bank of Guam qualifies for the exception in section 1442(c) from the definition of "foreign corporation" for purposes of withholding. If the bank meets the anti-conduit limitations in section 881(b)(1) and the exception applies, no withholding under section 1442 is required; thus, the interest in issue would not be portfolio interest because withholding is not otherwise required. If such is the case, the interest is subject to net basis taxation under section 882(a). I.R.C. sec. 882(e).

Conclusions:

The income tax laws of Guam, while a mirror of federal law, impose tax liabilities separate and distinct from U.S. liabilities. As such, the code as mirrored in Guam is a possession tax that may not be imposed on interest on federal obligations; such imposition is barred by regulations issued by the Bureau of Public Debt. Furthermore, in the case of individual taxpayers, qualifying under section 935 to file a return with Guam only, the filing of such return extinguishes any federal liability. Therefore, interest on a U.S. obligation received by individuals who file a single return with Guam under the authority of section 935 would not be subject to U.S. tax.

For the same reasons that apply to individual taxpayers, Guam may not impose a mirror code income tax liability on

# EXHIBIT 11

Department of the Treasury

**Office of Chief Counsel**
Internal Revenue Service
Branch 1
Associate Chief Counsel (International)
Room 3319
950 L'Enfant Plaza South, SW
Washington, DC 20024

DEC 21 1987

CCINTL:421-86
Br1:GPerez-Navarro

Ms. Margaret Marquette
Office of Chief Counsel
Bureau of the Public Debt
Department of the Treasury
Washington, D.C. 20226

Re: Taxation of Federal Obligations by Possessions of the United States

Dear Ms. Marquette:

Pursuant to your request, by letter dated September 29, 1987, we provided you with a detailed explanation of the tax treatment in the possessions of income derived from U.S. obligations.

In connection with this issue, we recently contacted the Joint Committee on Taxation regarding the possibility of including a change in Title 26 to clarify the tax treatment in the possessions of interest from U.S. obligations. This proposal, however, was rejected. Therefore, it appears that the necessary clarification should be contained in the Title 31 regulations.

It is our understanding that you will be meeting with the Chief Counsel of the Bureau of the Public Debt this week to discuss possible solutions to the revenue loss problem created by the inconsistency between section 3124 of Title 31 and the regulations promulgated thereunder. We request that you advise the Chief Counsel that a solution via Title 26 is not possible. In addition, he should be made aware of the fact that the Virgin Islands Bureau of Internal Revenue recently advised us that they plan to litigate the issue of whether they may tax the interest on U.S. government obligations. Therefore, we need to resolve this issue promptly as we may be confronting it in court in the near future.

# EXHIBIT 12

Memorandum for the File

SUBJ: Conversation with Margaret Marquette, 1/27/88, re Virgin Island Taxation

This refers to a meeting I had with Margaret Marquette on 1/27/88, about an IRS request that we have a meeting with them for the purpose of resolving the issue of the taxation of the interest on US obligations by the Virgin Islands (VI). According to Margaret, VI officials have informed IRS that they were planning to institute judicial proceedings against taxpayers (factually, non-taxpayers), who are able to obtain totally tax-free income for investments in Treasury securities. This results from the fact that under IRS rules the interest paid on US obligations is not subject to tax where paid to certain citizens/residents of VI, and given the exemption that it provided and the fact that VI law is supposed to "mirror" US law, the exemption applies to income received in the recipient's place of residence.

One of the objectives of VI authorities is to see if they can reach back and subject to tax previously paid interest on US securities. Our dilemma is that since 1959 there has been no legal authority, in terms of a statute, which gives an exemption to interest paid on US obligations to certain residents or citizens of a possession of this country. Yet, in our offering circulars, etc., provision has continued to be made for the exemption.

what is occurring vis-a-vis the VIs.

C. Ninomiya

January 27, 1988

# EXHIBIT 13

Department of the Treasury

**Office of Chief Counsel**
Internal Revenue Service

Branch 1
Associate Chief Counsel (International)
Room 3319
950 L'Enfant Plaza South, SW
Washington, DC 20024

JAN 4 1989

CC:INTL:0311-88
Br1:GPerez-Navarro

Ms. Margaret Marquette
Office of Chief Counsel
Bureau of the Public Debt
Department of the Treasury
Washington, D.C. 20226

Re: Taxation of Interest on U.S. Obligations by Possessions

Dear Ms. Marquette:

Pursuant to your request, we have drafted language to amend the regulations concerning the taxation of U.S. obligations. Using 31 CFR 309.4 as an example, we propose that all of the applicable regulations be revised as follows:

> The income derived from [securities] Treasury bills, whether interest or gain from the sale or other disposition of the [securities] bills shall not have any exemption, as such, and loss from the sale or other disposition of Treasury bills shall not have any special treatment, as such under the Internal Revenue Code, or laws amendatory or supplementary thereto. The bills shall be subject to estate, inheritance, gift or other excise taxes, whether Federal or State, but shall be exempt from all taxation now or hereafter imposed on the principal or interest thereof by any State or local taxing authority, and shall be exempt from any tax authorized by Congress to be imposed by a possession or territory of the United States. For purposes of this section, a tax authorized by Congress to be imposed by a possession or territory of the United States does not include: (1) the application of the income tax laws in force in the United States and those which may hereafter be enacted by a possession or territory pursuant to 48 U.S.C. § 1397, 48 U.S.C. § 1421i, or Public Law 94-241, 90 Stat. 263 (1976); and (2) tax laws enacted by Guam, American Samoa, or the Commonwealth of the Northern Mariana Islands pursuant to Public Law 99-514 § 1271, 100 Stat. 2085.

The above modification would exempt the bills from taxes permitted by Congress to be enacted by a possession or territory which are the equivalent of state or local taxes, but would

permit the collection of taxes on Treasury bills by possessions and territories that are required to "mirror" the provisions of the Internal Revenue Code. The proposed amendment also makes clear that the bills would not be exempt from taxes that Guam, American Samoa and the Northern Mariana Islands are authorized to impose (in lieu of the mirror code) under § 1271 of the Tax Reform Act of 1986 once they enter into implementing agreements with the United States.

If you have any questions, please contact Grace Perez-Navarro at 287-4851.

Sincerely,

PETER K. SCOTT
Acting Chief Counsel

By: [signature]
MICHAEL F. PATTON
Chief, Branch 1

cc: Rom Watson

# EXHIBIT 14

ACTION

MEMORANDUM FOR GERALD MURPHY
FISCAL ASSISTANT SECRETARY

THROUGH: MARY ANN GADZIALA
ASSISTANT GENERAL COUNSEL
(BANKING AND FINANCE)

FROM: RICHARD L. GREGG
COMMISSIONER OF THE PUBLIC DEBT

SUBJECT: Amendment to regulations governing taxation of U.S. government obligations by possessions of the United States

I. ACTION FORCING EVENT: 31 U.S.C. §3124(a) states that U.S. government obligations are "exempt from taxation by a State or political subdivision of a State." Applicable regulations, with two exceptions, 31 CFR §341.13 and 31 CFR §346.13, state that U.S. government obligations are exempt from taxation by any state, any possession of the United States, or any local taxing authority. The attached amendment clarifies the meaning of the phrase "exempt from taxation by ... any possession of the United States."

II. ANALYSIS: Legislative history indicates changes in the tax-exempt status of U.S. government obligations over the years. Revised Statute §3701 (1878), codified in 1935 as 31 U.S.C. §742, exempted federal obligations from taxation by or under state or municipal or local authority. The Second Liberty Bond Act

Code. The proposed amendment also makes clear that the obligations would not be exempt from taxes that Guam, American Samoa, and the Northern Mariana Islands are authorized to impose (in lieu of the mirror code) under §1217 of the Tax Reform Act of 1986 once they enter into implementing agreements with the United States.

The amendment applies to obligations issued on or after the effective date of the amendment. No retroactive tax would be imposed.

III. RECOMMENDATION: After your review and concurrence, please sign the memorandum to the Executive Secretary and forward it to Richard Carro with three copies of the document. Please sign three originals of the document and return them to my office. After the Executive Secretary's approval is received, I will transmit them to the Federal Register for publication.

IV. DECISION:

Approvel ________ Disapprove ________ Other ________

Attachment

TAB A - Document for publication
TAB B - Memorandum from the Internal Revenue Service
TAB C - Transmittal memorandum

# EXHIBIT 15

# TABLE OF CONTENTS

I. Introduction

II. Statutory Law

A. Revised Statute Rule

B. Second Liberty Bond Act

C. Public Debt Act

D. Discussion

III. Federal Regulations, Circulars, and other Information

A. Discussion

IV. Taxation by Possessions of the United States

V. Recommendations

## I. Introduction

Taxation of United States government securities is governed by statutes and regulations found in Title 31 of the United States Code, Title 31 of the Code of Federal Regulations, and the Internal Revenue Code. A review of these statutes and regulations indicates a possible conflict between applicable provisions related to taxation of securities by United States possessions. Given that new regulations will be enacted for the implementation of the Treasury Direct Access Book-entry Securities System, this would appear to be an appropriate time to make such revisions as are necessary to eliminate the conflicting language.

The issue is whether U.S. government securities are exempt from taxation by United States possessions. In order to resolve that issue it is necessary to examine the applicable statutes and regulations related to taxation of government securities in general.

## II. Statutory Law

### A. Revised-Statute Rule

The existing rule contained in 31 U.S.C. §3124(a)(1983) is as follows:

> Stocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State. The exemption applies to each form of taxation that would require the obligation, the interest on the obligation, or both, to be considered in computing a tax, except--
>
> (1) a nondiscriminatory franchise tax or another nonproperty tax instead of a franchise tax, imposed on a corporation; and
>
> (2) an estate or inheritance tax.

[Emphasis added.]

The language found in 31 U.S.C. §3124(a) has its origin in the Act of February 25, 1862, ch. 33, §2, 12 Stat. 346 (1862) which stated that "all stocks, bonds, and other securities of the United States held by individuals, corporations, or associations, within the United States, shall be exempt from taxation by or under State authority." [Emphasis added.]

The Act of 1862 along with succeeding acts1/ containing variations of the same wording ultimately became Revised Statute §3701 (1878), hereinafter referred to as the Revised Statute Rule. The Revised Statute Rule stated that "All stocks, bonds, Treasury notes, and other obligations of the United States, shall be exempt from taxation by or under State or municipal or local authority." [Emphasis added.]

The rule, therefore, exempted obligations from taxation by state or municipal or local authority. It did not mention any exemption from taxation by the United States or possessions of the United States. The reason why such exemptions were not included is most likely that federal taxation in its modern form did not become law until 1913 and it was also at that time that for purposes of the income tax, the term "United States" was defined to include territories. Tariff Act of October 3, 1913, ch. 16, §11H, 38 Stat. 166, 172.

In 1935, the Revised Statute Rule was codified in 31 U.S.C. §742 (1935). §742 contained the same wording as the Revised Statute but added as an introductory phrase "Except as otherwise provided by law . . ." It should be noted that 31 U.S.C. §742, though presumptively accepted as law, was never enacted. Therefore, the Revised Statue Rule was the operative law until 1982 when Title 31 was enacted into positive law and 31 U.S.C. §742 was replaced by 31 U.S.C. §3124(a)2/ The result is that in case of any inconsistency between the Revised Statute and the Code, 31 U.S.C. §742, i.e., the addition of the introductory

---

1/ Succeeding acts included the following:

Act of March 3,1863, ch. 73, §1, which specified that securities would be "exempt from taxation by or under state or municipal authority." (Emphasis added.]
Act of March 3, 1964, ch. 17, §1.
Act of June 30, 1864, ch. 172, §1.
Act of January 28, 1865, ch. 22, §1.
Act of March 3, 1865, ch. 77, §2.
Act of July 14, 1870, ch. 256 §1 which specified that securities would be exempt "from taxation in any form by or under State or local authority." [Emphasis added.]

2/ 31 U.S.C. §3124(a) is similar to the Revised Statute Rule except for a change in language from "shall be exempt from taxation by or under State or municipal or local authority" to "exempt from taxation by a State or political subdivision of a State."

phrase stated above, the Statute prevails and the phrase is not to be considered in analyzing the law.1/ American Bank and Trust Co. v. Dallas County 463 U.S. 855, 864 (1983).

B. Second Liberty Bond Act

The Liberty Bond Acts, first enacted in 1917 to provide funding for national security and defense and other purposes provided that federal obligations would be "exempt, both as to principal and interest from all taxation now or hereafter imposed by the United States, any State, or any of the possessions of the United States or by any local taxing authority."2/ This statute differed from those statutes previously enacted, i.e., Act of 1862, Revised Statute Rule, etc., in that it included exemption from taxation imposed by the United States or its possessions as well as taxation by state or local taxing authority. The reason for this change, as explained before, may be that federal taxation in its modern form did not become law until 1913 and therefore logically would not have been included in any tax exemption clause enacted prior to that date.

The Liberty Loan Act clauses were codified in 1935 in 31 U.S.C. §746 and §747. As explained before, these sections, while presumptively accepted, were never enacted into positive statutory law. Therefore, the original statutes remained the operative law.

In 1959, the tax exempt status of federal obligations issued under the Second Liberty Bond Act was changed with the passage of the Act of September 22, 1959, Pub. L. No.86-346, §105, 73 Stat. 621. §105(b) of this law repealed those sections of the Second Liberty Bond Act relating to the tax exempt status of obligations of the United States. Specifically, the following provisions were repealed:

(1) Subsections (b) and (d) of section 5 (31 U.S.C., sec. 754(b) and (d):
§754. Second and third Liberty loans; certificates of indebtedness and Treasury bills ....

---

1/ 31 U.S.C. §3124(a), formerly 31 U.S.C. §742, contains a note explaining that the phrase "Except as otherwise provided by law" was eliminated as being "surplus." This is not totally accurate. The phrase was not "surplus;' rather it was never operative law because, as explained before, 31 U.S.C. §742 was never enacted into positive law and, therefore, the Revised Statute Rule was the operative law prior to 31 U.S.C. §3124(a).

2/ The tax exemption clauses in the various Liberty Bond Acts were similar except for the addition in the second and subsequent liberty loans of the wording "except (b) graduated additional income taxes, commonly known as surtaxes, and excess profits and war-profit takes, now or hereafter imposed by the United States, upon the income or profits of individuals, partnerships, associations, or corporations."

(b) Exemption from taxation.
All certificates of indebtedness and Treasury bills issued hereunder ... shall be exempt, both as to principal and interest, from all taxation (except estate and inheritance taxes) now or hereafter imposed by the United States, any State, or any of the possessions of the United States, or by any local taxing authority ....

(d) Gain from sale of Treasury bills; exemption from taxation ....

Any gain from the sale or other disposition of Treasury bills issued hereunder ... shall be exempt from all taxation (except estate or inheritance taxes) now or hereafter imposed by the United States, any State, or any of the possessions of the United States, or by any local taxing authority ....

(2) Second and third sentences of section 7 (31 U.S.C. sec. 747);

§747. Tax exemptions; second and subsequent Liberty loans.

All bonds and certificates authorized by sections 752, 754, and 757 of this title shall be exempt, both as to principal and
interest from all taxation imposed by the
United States, any State, or any of the possessions of the United States, or by any local taxing authority, except ....

(3) Subsection (b) of section 18 (31 U.S.C., sec. 753(b));

§753. United States notes.

(b) Series; exemptions.

(1) Exempt, both as to principal and interest, from all taxation (except estate or inheritance taxes) imposed on September 14, 1917, or thereafter by the United States, any State, or any of the possessions of the United States, or by any local taxing authority. . . .

(4) The first sentence of subsection (d) of section 22 (31 U.S.C., sec. 757c(d)).

§757c. United States savings bond and Treasury savings

certificates ....

(d) Exemption from taxation; circulation privilege.

The provisions of section 757 of this title (relating to exemptions from taxation), shall apply to savings bonds issued before March 1, 1941.

With the passage of the Act of 1959, therefore, the only statutory authority for exempting government securities from taxation was found in the Revised Statute Rule (now 31 U.S.C. §3124(a)). This meant that there was exemption from taxation by a state or political subdivision of state. There was no longer a stated exemption from taxation by a possession of United States or, as indicated in the following, the United States.

C. Public Debt Act

A third statute which relates to the taxation of federal obligations is 31 U.S.C. §3124(b) which states the following:

> The tax status of interest on obligations and dividends, earnings, or other income from evidences of ownership issued by the Government or an agency and the tax treatment of gain and loss from the disposition of those obligations and evidences of ownership is decided under the Internal Revenue Code of 1954 (26 U.S.C. 1 et seq.).

This statute has its origin in the Public Debt Act of February 19, 1941, ch. 7, §4, 55 Stat. 9, codified in 1946 as 31 U.S.C. §742a. The Public Debt Act provided that interest upon obligations issued by the United States or any agency or instrumentality thereof on or after March 28, 1942, shall not have any exemption, as such, under Federal Tax Acts now or hereafter enacted. As of 1942, therefore, U.S. obligations were subject to federal tax. This provision with minor revisions1/ was renumbered in 1982 to become the present 31 U.S.C. §3124(b).

---

1/ In 1947 the wording "Federal Tax Acts now or hereafter enacted" was changed to "the Internal Revenue Code, or laws mandatory or supplementary thereto" to "eliminate any doubt as to the intended scope of taxability of Federal securities." (Act of June 25, 1947, ch. 147, §4, 61 Stat. 180)

Pub. L. No. 86-346 §202, 73 Stat. 624 (1959) amended 31 U.S.C. §742a by striking out "under the Internal Revenue Code, or laws amendatory or supplementary thereto" and inserting in lieu thereof "except as provided under the Internal Revenue Code of 1954."

Pub. L. No. 97-258, 96 Stat. 945 (1982) then further changed the wording of that section to "The tax status of ... is decided under the Internal Revenue Code of 1954" for "clarity."
In addition Pub. L. No. 97-258 also eliminated the words "on or

after March 28, 1942."

D. Discussion

The Revised Statute Rule (1878) exempted federal obligations from taxation by or under state or municipal or local authority. The Second Liberty Bond Act (1917) exempted federal obligations from taxation by the United States, any state, any possession of the United States, or any local taxing authority. The Public Debt Act (1941) provided that interest upon federal obligations shall not have any exemption under federal tax acts. The Act of 1959 then specifically repealed those sections of the Second Liberty Bond Act relating to the tax exempt status of obligations.

The end result is that as of 1942, federal obligations were exempt from taxation by state or municipal or local authority under the Revised Statute Rule and subject to federal tax under the Public Debt Act of 1941. As of 1960, federal obligations were still exempt from taxation by state or municipal or local authority and were still subject to federal tax. They were, however, under the Act of 1959, no longer exempt from taxation by possessions.

An argument can even be made that securities were not exempt from taxation as far back as 1942, based on the theory that the Public Debt Act of 1941 repealed by implication the tax exemption clauses of the Second Liberty Bond Act. Given that for purposes of federal income tax the term "United States" was defined to include territories in the Tariff Act of October 3, 1913, and thereafter the Second Liberty Bond Act provided for the exemption of obligations from taxation by both the U.S. and U.S. possessions, it can be argued that the taxes were considered one and the repeal in 1941 of tax exemption by the U.S. was also considered a repeal of tax exemption by possessions.

This argument can also be made on the basis of the general statutory rule that where there is a conflict between an earlier statute, i.e., the Second Liberty Bond Act, and a subsequent enactment, i.e., the Public Debt Act of 1941, the subsequent enactment governs. I.C.C. v. Southern Ry. Co., 543 F.2d 534 (5th Cir. (1976); Busbee v. Smith, 549 F.Supp. 494 (D.C. 1982). Likewise, when the purpose behind one statute appears to be in conflict with the purpose of another and there is no cross reference from one statute to another, and the legislative history is silent as to the conflict, it is generally considered that the later statute constitutes an amendment of the earlier one. Hines, Inc. v. United States, 551 F.2d 717 (6th Cir. 1977).

Courts have found the following in reference to repeals by implication:

(1) to find that an earlier statute has been impliedly

repealed by a later one, the intent of Congress must be clear and manifest. Nebraska Public Power Dist. v. 100.95 Acres of Land, 719 F.2d 956 (8th Cir. 1983);

(2) to constitute an implied repeal, the later-enacted statute must cover the entire field occupied by the earlier one. United States v. Boffa, 688 F.2d 919 (3rd Cir. 1982);

(3) repeals by implication will only be found when the new statute is clearly repugnant or irreconcilable, in words or purpose, to the old statute. Grindstone Butte Project v. Kleppe, 638 F.2d 100 (9th Cir. 1981); Morton v. Mancari, 417 U.S. 535 (1974); and

(4) there is no need for the court to find express statements in congressional debates that the amendment conflicts with the earlier act. It is enough that the natural result of the clearly expressed intent to legislate was to create a positive repugnancy between the amendment and provisions of an earlier act. Such a repugnancy itself suggest the intent to repeal. Preterm, Inc. v. Dukakis, 591 F.2d 121 (1st Cir. 1979).

The Second Liberty Bond Act enacted in 1917 exempted principal and interest of U.S. obligations from all taxation imposed by the United States, any State, or any of the possessions of the United States, or by any local taxing authority. The subsequent 1941 Act stated that interest upon obligations issued on or after 1942 shall not have any exemption under the Internal Revenue Code (Federal Tax Acts). There is a conflict, therefore, on the part of the United States regarding taxation of obligations issued by the United States after the enactment of the 1941 taxation statute. The question is whether Congress upon enactment of the 1941 Act intended that all United States obligations be taxable under the tax laws of the United States, and that provisions of the Second Liberty Bond Act regarding exemption from taxation be repealed in their entirety, including the provision of exemption from taxation by "any of the possessions of the United States." As indicated previously, a separate and distinct provision for exemption from taxation by states or local authority had been in existence since its enactment in 1862 and remained in effect at that time.

An examination of the rules of statutory construction and the available legislative history on taxation of United States obligations indicates that Congress may have meant to repeal all provisions exempting from taxation obligations issued under the Second Liberty Bond Act when it enacted the 1941 taxation statute. This conclusion is based on the following:

(1) the fact that the two statutes dealing with federal taxation are in irreconcilable conflict;

(2) the clear legislative intent of the 1941 Act of imposing Federal tax on all future United States government issued obligations;

(3) silence on the part of Congress regarding taxation by possessions when it enacted the 1941 taxation statute and when it subsequently repealed in 1959 the provisions of the Second Liberty Bond Act dealing with exemption from taxation.

An opposing argument is that the tax law in this area is ambiguous because the statute does not specifically state that government obligations are not exempt from taxation by possessions and the legislative history does not speak to this issue. According to rules of statutory construction, it is a settled rule that if tax laws are ambiguous, they are to be strictly construed against the state and in favor of the taxpayer. In Gould v. Gould, the United States Supreme Court held that "In the interpretation of statutes levying taxes it is the established rule not to extend their provisions by implication, beyond the clear import of the language used, or to enlarge their operation so as to embrace matters not specifically pointed out. In case of doubt they are construed most strongly against the government, and in favor to the citizen." Gould v. Gould, 245 U.S. 151 (1917); Estate of Renick v. United States, 687 F.2d 371 (Ct. Cl. 1982).

Other authorities, however, speak to a "reasonable construction" of tax statutes where tax laws are given a "reasonable construction, without bias or prejudice against either the taxpayer or state, in order to carryout the intention of the legislature and further the important public interests which such statutes subserve." State v. Brandt, 225 Minn. 345, 31 N.W.2d 5 (1948). The legislative history of the Act of 1959 does not speak to the reasoning behind repealing the tax exemption clauses. It may be that Congress intended that government securities would no longer be exempt from taxation by possessions. It may be, however, that Congress repealed the tax exemption clauses because they contained language that was in some cases no longer in effect and in other cases no longer needed, and in so doing, inadvertently repealed language related to possessions.

The Second Liberty Bond Act (1917) stated that securities would be exempt from taxation by the United States. The Public Debt Act of 1941 effectively repealed that exemption, however, by holding that interest on government securities would not have any exemption under Federal Tax Acts. Therefore, the language appearing in taxation sections of the Second Liberty Bond Act related to exemption from taxation by the United States was outdated.

Also, the Second Liberty Bond Act stated that securities would be exempt from taxation by any State. This exemption was first promulgated in 1862 and continued to be included in the Code as a separate section (31 U.S.C. §3124(a), formerly 31 U.S.C.

§742). Therefore, the language in taxation sections of the Second Liberty Bond Act relating to exemption from taxation by any State was redundant. The argument could be made then that the intent in repealing the tax sections was merely to remove that language which no longer applied and was redundant and that there was no conscious intent to repeal the exemption from taxation by possessions. This argument is made plausible in view of the fact that there was no discussion of the effect of repealing the exemption by possessions.

On the other hand, however, legislative history indicates that as of 1941, there was no intent to make government securities completely tax exempt. In addition, those who advocate looking to a "reasonable construction" of tax statutes place emphasis upon the general objectives of such laws and the importance of accomplishing uniformity and equality among all classes of taxpayers in the complex network of taxation in which strict construction may be the equivalent of an exemption which shifts the burden to others. Colgate-Palmolive-Peet Co. v. United States, 64 S.Ct. 227 (1944); Helvering V. Clifford, 60 S.Ct. 554 (1940). In the case at hand, uniformity and equality among all classes of taxpayers could only be achieved if the exemption of government securities from taxation by possessions were repealed since, otherwise, certain taxpayers would escape taxation completely.

Furthermore, as a general rule, grants of tax exemptions are given a strict interpretation against the assertions of the taxpayer and in favor of the taxing power. James v. United States, 176 F. Supp. 270 (1959) Luben Industries, Inc. v. United States, 707 F.2d 1037 (9th Cir. 1983); Matter of Fox, 609 F.2d 178 (5th Cir. 1980); Herren v. United States, 317 F. Supp. 1198 (S.D. Tx 1970); Julius Roehes Co. v. Division of Tax Appeals, Etc., 109 A.2d 611 (N.J. 1954). The basis for applying this rule of strict construction is to minimize differential treatment and foster impartiality, fairness, and equality of treatment among taxpayers. Crosby v. United States, 292 F. Supp. 314 (1968); Occidental Life Ins. Co. of Cal. v. Commonwealth, 295 A.2d 853 (Pa. 1972); Meyers v. Flournoy, 25 So.2d 601 (La. 1946).

In conclusion, it appears that statutorily all federal obligations should have been subject to taxation by possessions upon the enactment of the Act of 1959. Whether or not obligations issued between 1942 and 1959 should have been subject to such taxation is questionable.

## III. Federal Regulations, Circulars and Other Information

Title 31 of the Code of Federal Regulations contains numerous sections referring to the taxation of government securities.1/ As a general rule, regulations enacted from 1938, the date The Code of Federal Regulations was first published, to 1941 made reference to the exemption of federal obligations from taxation by United States, states, or possessions of the United States. Regulations enacted after 1941 reflected the fact that federal obligations were subject to federal tax and exempt from taxation by states or possessions of the United States. Regulations enacted after 1959 remained unchanged, i.e., they did not reflect the fact that the Act of 1959 repealed those provisions of the Second Liberty Bond Act relating to the tax exempt status of federal obligations including exemption from tax by U.S. possessions. The fact that the regulations were not revised to reflect this change appears to have been an oversight.

Current regulations, with two exceptions, 31 CFR §341.13 and 31 CFR §346.13, state that income derived from the obligations is subject to taxes imposed under the Internal Revenue Code. They are exempt from taxation by any state, any possession of the United States, or any local taxing authority.

31 CFR §341.13 (Retirement Plan Bonds) and 31 CFR §346.13 (Individual Retirement Bonds) state that the obligations are exempt from taxation by any state, municipality, or local taxing authority. They do not mention taxation or exemption from taxation by possessions.

---

| | | |
|---|---|---|
| 1/ | 31 CFR §309.4 | (Treasury Bills) |
| | 31 CFR §316.9 | (Series E Savings Bonds) |
| | 31 CFR §332.9 | (Series H Savings Bonds) |
| | 31 CFR §340.3 | (Treasury Bonds) |
| | 31 CFR §341.13 | (Retirement Plan Bonds) |
| | 31 CFR §342.5 | (Savings Notes) |
| | 31 CFR §343.4 | (United States Mortgage Guaranty Insurance Company Tax and Loss Bonds) |
| | 31 CFR §345.5 | (Treasury Certificates of Indebtedness) |
| | 31 CFR §346.13 | (Individual Retirement Bonds) |
| | 31 CFR §347.5 | (2 Percent Treasury Bonds) |
| | 31 CFR §348.4 | (2 Percent Depositary Bonds) |
| | 31 CFR §349.14 | (Book-Entry Treasury Bills) |
| | 31 CPR §351.8 | (Series EE Savings Bonds) |
| | 31 CFR §352.10 | (Series HH Savings Bonds) |

There does not appear to be any logical explanation for the discrepancy in language between those regulations specifically exempting securities from taxation by possessions and those not doing so. All securities were authorized by the Second Liberty Bond Act of 1917. Some were issued prior to 1959; some were issued after 1959. The retirement bonds are the only federal obligations to be specifically named in the Internal Revenue Code (see 26 U.S.C. §405(b) and 26 U.S.C. §409) but the Code does not authorize issuance and terms of issuance. It simply refers to bonds issued under the Second Liberty Bond Act. Therefore, this does not explain the discrepancy. It would appear that the retirement regulations were simply drafted by someone who, for unknown reasons, did not put in the language related to possessions.

Information, other than statutes or regulations, related to exemption of government securities from taxation by possessions varies according to the type of security. Some securities, such as Treasury notes and bonds, have on their face a statement to the effect that "This bond is subject to estate, inheritance, gift, or other excise taxes, whether federal or state, but is exempt from all taxation now or hereafter imposed on the principal or interest hereof by <u>any state, or any of the possessions of the United States, or by any local taxing authority</u>." [Emphasis added.]

Other securities, such as Savings bonds Series E, H, EE, and HH, do not include a statement regarding taxation on the security itself but rather refer to Department Circulars. For example, Savings bonds, Series HH, refer investors to Department Circulars 2-80 and 3-80. Department Circular 2-80 (1982) states that "The bonds ... are exempt from all taxation now or hereafter imposed on the principal or interest by <u>any State, any of the possessions of the United States, or any local taxing authority</u>." [Emphasis added.]

Other general information is made available to investors in publications such as Form PD 800 and PD 800-D. These forms generally indicate that income from federal obligations is subject to Federal taxes but is exempt from state and local taxes. No mention is made of possessions.

A. <u>Discussion</u>

Generally, it appears that the regulations in question conflict with the statutory law and would be considered invalid unless it can be determined that the Secretary of Treasury has the authority to state conditions of tax. This does not, appear to be the case. Under 31 U.S.C. §3121 the terms and conditions do not extend the Secretary's authority to taxation. Furthermore, 31 U.S.C. §3124(b) states that the tax status of federal obligations is decided under the Internal Revenue Code of 1954.

The fact that the regulations state that government

obligations are exempt from taxation by U.S. possessions does not appear to be persuasive in itself in arguing that obligations should in fact be exempt from taxation. The regulations are interpretative regulations. As such they do not have the force and effect of law. "They serve merely as a guide for the benefit of the taxpayer and the agency entrusted with the duty of enforcing the act."1/ Moreover, interpretative regulations which go beyond what a statute has authorized, violate a statute, or are inconsistent or out of harmony with the statute are said to be void. Manhattan General Equipment Co. v. Commissioner of Interna Revenue, 297 U.S. 129 (1936); Rowan Co. v. United States, 452 U.S. 247 (1981).

Regulations are given weight by the courts in resolving doubtful meanings of the taxing laws where regulations were formulated contemporaneously with the enactment of the statute. In the case at hand, however, it does not appear on its face that the taxing law is ambiguous since the statute clearly states that the government obligations are exempt from taxation by a state or political subdivision of a state and the Act of 1959 clearly repeals those provisions of the Second Liberty Bond Act relating to the tax exempt status of federal obligations. Furthermore, the regulations for the most part were formulated before the statutory provisions regarding taxation by possessions were repealed. It appears unlikely, therefore, that the regulations would be considered determinative in the interpretation of the statute unless they were determinative in the interpretation of the Public Debt Act of 1941.

A more persuasive argument in favor of exemption from taxation may be that of the contractual rights of the investors. The argument can be made that investors purchasing securities have a contract with the Federal government pursuant to the terms contained in the "contract," in this case, on the face of the security or in department circulars referred to on the securities.

Case law has generally held that government securities are issued pursuant to a contract between the purchasers and the United States, and that the securities together with statutes, Treasury regulations, and circulars make up the terms of the contract. "Each of said bonds, together with the statutes, Treasury Regulations, and [Treasury] circulars constitute a valid and binding contract determining the rights of the parties therein...." (United States v. Dauphin Deposit Trust Co., 50 F. Supp. 73, 76 (1943) cited in Wolak v. United States, 366 F. Supp. 1106, 1112 (1973); Bodek v. Dept. of Treasury, Bureau of the Public Debt, 532 F.2d 277 (2nd Cir. 1976); Boyd v. United States, 493 F. Supp. 529 (W.D. Pa. 1980); Spicer v. United States, 217 F. Supp. 44 (D. Kan. 1963).

---

1/ C.D. Sands, Statutes and Statutory Construction (4th Ed., 1974 with 1984 update), p. 192.

On the other hand, however, the general rule is that an agreement which violates a provision of a federal statute is illegal and void. 17 Am. Jur. Contracts §165 citing Ewert v. Bluejacket, 259 U.S. 129 (1922); Sheet Metal Workers, Etc. v. Employers Ass'n Etc. 430 F. Supp. 540 (D. Del. 1977); Davis v. Parratt, 668 P.2d 451 (8th Cir. 1982). A contract in violation of a statute will only be declared valid if it was not the intent of the legislature to make it illegal and void. This then goes again to the intent of the legislature. If the legislature repealed the tax exemption provisions of the Second Liberty Bond Act in order to clarify the present law, (see page 9), not intending to make any substantive changes (i.e., repealing the clause exempting U.S. obligations from taxation by possessions), then it could be said that the legislature did not intend to make such contracts illegal and void. This seems unlikely but is a possible argument that could be set forth.

Contracts entered into prior to the enactment of the statute are another issue. Generally, it is the law in force at the time a contractual transaction is consummated and made effectual that must be looked to as determining its validity and effect. 17 Am. Jur. Contracts §171 citing Memphis & L.R.R. Co. v. Railroad Comrs., 112 U.S. 609 (1884) and others. An exception is made for certain contracts which are against public policy. The contract for purchase and sale of government securities is not against public policy; therefore, it is reasonable that any securities which were outstanding at the time of the Act of 1959 would not be affected by the repeal of the tax exemption and would be entitled to exemption from taxation by possessions.

## IV. Taxation by Possessions1/ of the United States.

In order to determine the tax consequences if government securities are held to be subject to taxation by possessions, it is necessary to examine the tax structure of possessions. Article 4 §3 of the Constitution of the United States confers upon Congress the power to "dispose of and make all needful rules and regulations respecting the territory or other property belonging to the United States." The fundamental law of an unincorporated territory is the organic law enacted by Congress. The territory derives its powers, including power to tax, from the organic act and from Congress.

---

1/ The terms territory and possession are often used interchangeably. The Internal Revenue Service considers Virgin Islands, Puerto Rico, Guam, Northern Mariana Islands, American Samoa, Wake Island, Carolina Islands, and Marshall Islands as "possessions" for purposes of the Internal Revenue Code.

Congress, in legislating for most territories, i.e., unincorporated territories, is subject to some but not all limitations of the U.S. Constitution. With regard to taxation, the fact that territories are not represented in Congress does not preclude their being taxed by Congress. Loughborough v. Blake, 18 U.S. 317 (1820). A territory is an "agency of the federal government, having no independent sovereignty comparable to that of a state in virtue of which taxes may be levied. Authority to tax must be derived from the United States." Domenech v. National City Bank, 294 U.S. 199, 204 (1935).

Taxation of possessions is unique in that, unlike within the United States, Congress is not held to the uniformity clause of the Constitution. Therefore, it can enact a taxation system for each territory which is not consistent with that of other territories or within the territory itself. Rassmussen v. United States, 197 U.S. 516 (1905); Binns v. United States, 194 U.S. 486 (1904). The result is a tax system which differs according to the possession and within each possession according to the status of the taxpayer, i.e., whether he is a citizen of a possession, a U.S. citizen who is a resident of a possession, or a resident of a possession who is neither a citizen of the United States nor a citizen of a possession.

Under the mirror rule in effect in some possessions, the income tax laws in force in the United States are held to be likewise in force in the possession. This means that for some taxpayers there is no tax. For other taxpayers, however, there is the potential for a double tax if securities are subject to taxation by possessions. Both situations raise policy issue problems which need to be addressed.

Since 1941 and before, there has been no intent on the part of Congress to make federal obligations completely tax exempt. Furthermore, there has been no intent that some taxpayers be treated differently than others. Likewise, however, there has never been any intent to subject government obligations to double taxation. Therefore, any proposed revision to the code or regulations should attempt to make uniform any taxation of federal obligations.

The Internal Revenue Service has been asked to give an opinion as to how interest on federal obligations would be taxed in each of the eight U.S. possessions and according to the status of the taxpayers identified above. Any recommended revision of tax law will depend, in part, on the results of that opinion.

V. Recommendations

A general recommendation is to coordinate the taxation of securities with the Internal Revenue Code rather than attempt to address this as a separate issue. This could be done in one of

three ways:

1. Amend the code so that federal obligations are subject to taxation by possessions but are protected from any double taxation (e.g., cannot be subject to taxation both by a possession and by the U.S.).

2. Amend the code so that federal obligations are exempt from taxation by possessions but, if so, are subject to taxation by the United States so that obligations do not escape taxation entirely.

3. Amend the code so that the Secretary of Treasury has the authority to tax government securities with the restriction that there be no total exemption from tax and no double taxation.

Regardless of which alternative is selected, legislation will be needed. If a decision is made to subject obligations to taxation by possessions, then legislation is needed to determine the retroactivity of the tax (i.e., should taxation be retroactive to 1959 or 1941, or should taxation be made effective with the implementation of the Treasury Direct Access Book-entry Securities System). If a decision is made that possessions cannot tax securities, then legislation to that effect is needed. The third alternative, delegating taxing authority to the Secretary of Treasury, likewise requires legislation. Regulations and offering circulars and other information will, of course, need to be revised in accordance with the legislation.

The question of whether any tax can be applied retroactively depends on the finding regarding the rights of taxpayers. Ordinarily, interpretative regulations have their effect from the time the statute takes effect, in this case 1959. The fact that regulations are not enacted until after a statute has been enacted thereby making the regulations in a sense "retroactive" does not prevent the regulations from relating back to the date of the statute. Helvering v. Reynolds, 313 U.S. 428 (1941). This assumes, of course, a reasonable delay for promulgating new regulations.

This does not apply in the case at hand. Here, if the regulations are amended, there will have been a delay of some twenty-six years between the time that the statute was enacted (in this case repealed) and a change in regulations.

If the proposed change in regulation was not to correct a mistake in law but rather one of interpretation, then it appears that the taxpayer would have a good argument against the retroactive application of the revised regulation. Helvering v. R. J. Reynolds Tobacco Co., 306 U.S. 110 (1939). Here, however, if we take the position that the change in regulation is to correct a mistake, then it seems reasonable that the new regulation could be applied retroactively.1/ §7805(b) of the

Internal Revenue Code states "The Secretary or his delegate may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect." In Southern Hardwood Traffic Association v. U.S., 411 F.2d 563 (1969), the court held that, under the above statute, in a case where a taxpayer had not in the past been required to pay income taxes on certain income, the Commissioner could require that taxes be paid not only from that time on but also retroactively for the three previous years. The Court held that "the Commissioner is not estopped to correct a mistake of law and by §7805(b) Congress has given him broad discretion in determining when to apply his corrections retroactively."

Similarly, though, it appears that the regulation would not have to be applied retroactively if the Secretary or delegate should so prescribe. In this case, where the law has been in effect since 1959, but regulations, circulars, and the securities themselves have stated that the securities were exempt from taxation by possessions, the recommendation is made that securities issued after 1959, the date of repeal of section 7 of the Second Liberty Bond Act, be subject hereafter to taxation by possessions, but not be retroactively taxed. Securities issued prior to 1959 would not be subject to taxation by possessions unless reissued after that date.

1/ I.R.S. §6501(a) provides that the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed. If the amount omitted is in excess of 25 percent of the amount of gross income stated in the return the tax may be assessed within 6 years after the return was filed. I.R.C. §6501 (e)(1)(A).