# In the United States Court of Federal Claims

No. 07-32C
(Filed March 12, 2008)
(reissued *nunc pro tunc* May 9, 2008)

| | |
|---|---|
| * * * * * * * * * * * * * * * * * * * | * Contracts; breach of contract; |
| | * anticipatory repudiation; the Guam |
| **BANK OF GUAM,** | * Territorial income tax, 48 U.S.C. § 1421i |
| | * (2000); RCFC 12(b)(1) motion to |
| Plaintiff, | * dismiss; accrual of the statute of |
| | * limitations; John R. Sand & Gravel v. |
| v. | * United States, __ U.S. __, 128 S. Ct. 750 |
| | * (2008); declaratory relief; issue |
| **THE UNITED STATES,** | * preclusion; RCFC 12(b)(6) motion to |
| | * dismiss; exemption from tax imposed by |
| Defendant. | * a State or possession of the United States |
| | * on United States Government |
| * * * * * * * * * * * * * * * * * * * | * Obligations, 31 U.S.C. § 3124 (2000); 31 C.F.R. §§ 309.4, 340.3, 345.5 (2007); whether the Guam Territorial income tax is a tax imposed by Congress. |

Kurt W. Melchior, San Francisco, CA, for plaintiff. Nossaman, Guthner, Knox & Elliott, LLP, of counsel.

Brian A. Mizoguchi, Washington, DC, with whom was Assistant Attorney General Jeffrey S. Bucholtz, for defendant. Theodore C. Simms, II, Department of the Treasury, Bureau of the Public Debt, and Cleve Lisecki, Internal Revenue Service, Office of the Associate Chief Counsel (International), of counsel.

## MEMORANDUM OPINION AND ORDER

**MILLER**, Judge.

Since 1978 Bank of Guam ("plaintiff") has purchased and held certain United States Government obligations ("USGOs"), including bonds and Treasury bills from the United States. In 2001 the Guam Department of Revenue and Taxation (the "GDRT") issued a Notice of Deficiency to plaintiff for the tax years 1992, 1993, and 1994 due to plaintiff's failure to pay any Guam Territorial income tax (the "GTIT") on its interest income from USGOs. Plaintiff alleges that the USGOs purchased and held constituted contracts with the United States Government, and that these contracts included a promise that income from the

USGOs was "exempt from all taxation now or hereafter imposed . . . by . . . any of the possessions of the United States." Compl. in Bank of Guam v. United States, No. 07-32C, ¶ 7 (Fed. Cl. Jan. 17, 2007) (omissions in original). By allowing Guam to collect GTIT on income from the USGOs, plaintiff argues that the United States Government breached these contracts for 1992, 1993, and 1994 tax years, as well as for all preceding years within the statute of limitations.

Pending before the court, following argument before Judge Susan G. Braden and supplemental briefing ordered after the case was transferred, is defendant's motion to dismiss. Defendant argues that jurisdiction is lacking because plaintiff's claims are barred by the applicable six-year statute of limitations. See 28 U.S.C. § 2501 (2000). Defendant also questions jurisdiction to hear plaintiff's arguments over allegations pleading the torts of fraudulent misrepresentation or inducement to contract. Defendant's third jurisdictional challenge is that the court cannot entertain plaintiff's demand for declaratory relief, which is predicated not on money presently due, but on contracts that have not yet come into being. Defendant alternatively contests the sufficiency of plaintiff's contract claims, arguing that issue preclusion prevents plaintiff from arguing that the GTIT is a tax imposed by a possession and that plaintiff fails on this issue as a matter of law, in any case.

**BACKGROUND**

In 1950 Congress enacted the Organic Act of Guam to establish a civil government for Guam, an unincorporated territory of the United States. See Organic Act of Guam, Pub. L. No. 630, 64 Stat. 384 (1950) (codified at 48 U.S.C. § 1421 (2000)) ("the Act"). The Act provides that the "income tax laws in force in the United States [including Title 26 of the United States Code, the Internal Revenue Code] . . . and those which may hereafter be enacted shall be held to be likewise in force in Guam." 48 U.S.C. § 1421i(a) (2000). Congress directed that the "income-tax laws in force in Guam pursuant to subsection (a) of this section shall be deemed to impose a separate Territorial income tax, payable to the government of Guam, which tax is designated that 'Guam Territorial income tax.'" 48 U.S.C. § 1421i(b). 1/ Instead of legislating a new tax code for Guam, Congress elected, in effect, to mirror the application of the existing Internal Revenue Code by instituting the GTIT. In this manner tax is collected and disbursed internally by the Government of Guam instead of being remitted to the United States Treasury. For this mirroring to refer to the appropriate entities, when applying the GTIT,

1/ Guam is also authorized to "levy a separate tax on all taxpayers in an amount not to exceed 10 per centum of their annual income tax obligation to the Government of Guam." 48 U.S.C. § 1421i(a). This separately levied tax is not in involved in plaintiff's complaint.

> the applicable provisions of the [Internal Revenue Code] shall be read so as to substitute "Guam" for "United States", "Governor or his delegate" for "Secretary or his delegate", "Governor or his delegate" for "Commissioner of Internal Revenue" and "Collector of Internal Revenue", "District Court of Guam" for "district court" and with other changes in nomenclature and other language, including the omission of inapplicable language, where necessary to effect the intent of this section.

48 U.S.C. § 1421i(e). This process has been referred to as "one-way mirroring." See Gumataotao v. Dir. of Dep't of Revenue & Taxation, 236 F.3d 1077, 1080 (9th Cir. 2001). 2/

The Governor of Guam is charged with "administration and enforcement" of the GTIT. 48 U.S.C. § 1421i(c). "The Governor or his delegate shall have the same administrative and enforcement powers and remedies with regard to the Guam Territorial income tax as the Secretary of the Treasury, and other United States officials of the executive branch, have with respect to the United States income tax." 48 U.S.C. § 1421i(d)(2). The Governor of Guam has delegated these responsibilities to the GDRT.

The Bureau of the Public Debt of the United States Department of the Treasury is authorized to sell and issue USGOs. See 5 U.S.C § 301 (2000); 12 U.S.C. § 391 (2000); 31 U.S.C. § 3102 (2000); see also 31 C.F.R. § 356.1 (2007) (regulation governing USGOs from March 1, 1993, to date). Congress exempted USGOs "from taxation by a State or political subdivision of a State," except as specifically authorized. 31 U.S.C. § 3124(a) (2000). Certain treasury regulations also exempt USGOs from taxation imposed by any of the possessions of the United States. See 31 C.F.R. § 309.4 (2007) (Treasury bills); 31 C.F.R. § 340.3 (2007) (bonds sold through competitive bidding); 31 C.F.R. § 345.5 (2007) (certain Treasury certificates of indebtedness).

## FACTS

The following facts are not disputed. In 1978 plaintiff began to purchase USGOs, each stating in boldface print that these securities are "exempt from all taxation now or hereafter

---

2/ Because the intent of this statute was to create uniformity between the tax laws of the United States and those of Guam, courts sometimes have substituted in the reverse direction, substituting "United States" for "Guam" where appropriate in order to prevent disparate tax treatment between United States taxpayers and Guam taxpayers. This reverse substitution is referred to as "two-way mirroring." See Gumataotao, 236 F.3d at 1080.

imposed . . . by . . . any of the possessions of the United States." See Compl. ¶ 7 (omissions in original). The USGOs included this statement until 1986, when USGOs were no longer issued in paper form. Thereafter, USGOs have been recorded electronically in book entry form. The terms of sale and issuance are governed by 31 C.F.R. § 356 (2007), providing, in relevant part:

> (a) General. Securities issued under this part are subject to all applicable taxes imposed under the Internal Revenue Code of 1986, or its successor. Under section 3124 of title 31, United States Code, the securities are exempt from taxation by a State or political subdivision of a State, except for State estate or inheritance taxes and other exceptions as provided in that section.

31 C.F.R. § 356.32(a). Plaintiff has been required to maintain "account balances in USGOs in amounts that would provide adequate assurances to the [Government of Guam] that its funds deposited at the Bank were not in jeopardy." Compl. ¶ 14.

On January 24, 2001, the Director of the GDRT issued a Notice of Deficiency to plaintiff for the tax years 1992, 1993, and 1994, for GTIT owed in the total amount of $6,886,903.30 on $20,732,620.00 interest earned on United States Treasury bonds owned by plaintiff. On April 24, 2001, plaintiff filed a Verified Petition in the United States District Court for the District of Guam 3/ asserting four claims, seeking relief from the Notice of Deficiency. See Bank of Guam v. Dir. of Dep't of Revenue & Taxation, No. 01-CV-16, 2002 U.S. Dist. LEXIS 9662 (D. Guam May 14, 2002).

Before that court was the Director of GDRT's motion to dismiss for failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6), the first three of plaintiff's four claims. See id. Ruling on plaintiff's first claim, the court held that the "Ninth Circuit's holding in Gumataotao directly contradicts [plaintiff's] assertion that the [Director] erred when he determined that Guam could tax the interest income on United States Treasury Bonds." Bank of Guam, No. 01-CV-16, 2002 U.S. Dist. LEXIS 9662 at *7. The court granted the Director's motion to dismiss the first claim of plaintiff's petition – that the Director erred in his determination that the GTIT was a tax imposed by Congress. This claim was "not supported by a legally cognizable theory because it is directly contrary to controlling substantive law." Id. at *15.

---

3/ The United States District Court for the District of Guam has jurisdiction over suits "for the recovery of any Guam Territorial income tax alleged to have been erroneously or illegally assessed or collected" and sits as a tax court for such suits. See 48 U.S.C. § 1421i(h)(2) (2000).

However, the court denied the Director's motion to dismiss as to plaintiff's second and third claims. Id.

On September 12, 2003, the parties filed with the Guam district court a Stipulated Decision Re Settlement. (Plaintiff submitted a copy of that stipulation to this court post-argument in a filing dated November 30, 2007.) In that document the parties stipulated and agreed

> that the issues in this matter have been resolved as follows: [plaintiff] agrees to pay $5,000,000.00, inclusive of any applicable interest, as the deficiency owed . . . for the tax years ending in December of 1992, 1993 and 1994.
>
> The parties further stipulate that the respective concessions made by each party which led to the final resolution of each issue set forth in this Stipulation of Settlement are not to be interpreted as reflecting the view of either party on the merits of each such issue. Moreover, the parties stipulate that such respective concessions, except as otherwise expressly indicated herein, are limited to this proceeding and are not to be interpreted as concessions by either party with respect to any issue in any other proceeding or with respect to any other year.
>
> The parties further stipulate that the Court may enter the foregoing as a decision of the Court in this proceeding . . . .

Stipulated Decision Re Settlement, Bank of Guam v. Dir. of Dep't of Revenue & Taxation, 01-CV-16 (D. Guam. filed Sept. 12, 2003), at 1-2; Pl.'s Br. filed Jan. 30, 2007, at Ex. C. Also on September 12, 2003, the Guam district court entered judgment. The substantive text of the judgment, in its entirety, reads: "Judgment is hereby entered in accordance with the Stipulated Decision re Settlement filed September 12, 2003." Bank of Guam v. Dir. of Dep't of Revenue & Taxation, 01-CV-16 (D. Guam filed Sept. 12, 2003); Pl.'s Br. filed Jan. 30, 2007, at Ex. D.

On January 17, 2007, plaintiff filed its four-count complaint in the United States Court of Federal Claims. The first count alleges that, because Guam sought to collect GTIT on income from the USGOs, the United States breached its promise (under statute, regulations, and representations on the face of USGOs) that income from the USGOs would be exempt from taxation imposed by a possession of the United States. The second count seeks reformation of the contract, alleging that both plaintiff and those agencies of the United States that were in charge of the offer, sale, and taxation of USGOs understood that the United States Congress did not authorize the levy of any GTIT on income from USGOs and that this understanding constituted a common and mutual mistake of both parties. Reformation of the contracts would include an obligation requiring the United States to reimburse and indemnify

plaintiff for all GTIT that plaintiff has paid to Guam on account of income that plaintiff has realized from the USGOs and all GTIT that it may be required to pay on account of such future income. Plaintiff's third count alleges that the parties' course of conduct created an implied-in-fact contract requiring the United States to reimburse plaintiff in amounts equal to all the GTIT that it has paid, or will hereafter be required to pay, to Guam on account of income that plaintiff has realized from the USGOs. The fourth count alleges that plaintiff expects to continue purchasing and holding USGOs due to various regulatory requirements and seeks a declaratory judgment (1) that all existing and future USGO contracts between the parties must be reformed in the manner sought in the second count, and (2) that the United States Government reimburse plaintiff for any GTIT it pays, or will pay in the future, to Guam on account of income realized from the USGOs.

On April 18, 2007, defendant filed its motion to dismiss plaintiff's complaint for lack of jurisdiction pursuant to RCFC 12(b)(1), arguing that plaintiff's contract claims are barred by the six-year statute of limitations on actions brought under the Tucker Act, 28 U.S.C. § 1491(a) (2000); its tort claims cannot be heard in this forum; and its demand for declaratory relief is not based on contracts in existence. Pursuant to RCFC 12(b)(6), defendant alternatively moves to dismiss for failure to state a claim upon which relief may be granted, arguing that collateral estoppel attaches to the previous proceeding in which the Guam district court dismissed plaintiff's claim that the GTIT is not a tax imposed by a possession. Defendant's ultimate argument is that plaintiff's contract claims are meritless because the United States Court of Appeals for the Ninth Circuit ruled against arguments identical to plaintiff's in Gumataotao, a decision defendant commends as a template for the Court of Federal Claims. Briefing was completed on July 19, 2007.

During argument before Judge Braden on November 19, 2007, the court requested a copy of the Verified Petition in Tax Case before the Guam district court. On November 30, 2007, plaintiff filed that document, as well as the Notice of Deficiency, the Guam district court's original opinion and order, the Stipulated Decision Re Settlement, and the Judgment entered by the Guam district court. See Pl.'s Br. filed Nov. 30, 2007, at Exs. A-D.

On December 4, 2007, this case was transferred to the undersigned pursuant to RCFC 40.1(b). Examination of the judgment entered by the Guam district court disclosed that it did not purport to direct entry of judgment for defendant on plaintiff's first claim. On December 7, 2007, the court therefore ordered supplemental briefing regarding the scope and nature of the judgment entered in Bank of Guam v. Director of Department of Revenue & Taxation, 01-CV-16 (D. Guam filed Sept. 12, 2003); Pl.'s Br. filed Jan. 30, 2007, at Ex. D, and its effect on whether issue preclusion forecloses plaintiff from arguing that the GTIT is not a tax imposed by Congress, but one imposed by Guam. See Order entered Dec. 7, 2007, at 3. The court rules without further argument. See Order entered Feb. 21, 2008.

## DISCUSSION

I. Jurisdiction

1. Standard for motions to dismiss under RCFC 12(b)(1)

The Court of Federal Claims, like all federal courts, is a court of limited jurisdiction. RHI Holdings, Inc. v. United States, 142 F.3d 1459, 1461 (Fed. Cir. 1998); see also Sakar Int'l, Inc. v. United States, __ F.3d __, 2008 WL 426499, at *7 (Fed. Cir. Feb. 19, 2008) (referring to United States Court of International Trade). The court's jurisdiction is set forth primarily in the Tucker Act, which confers "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). This grant of jurisdiction constitutes a waiver of sovereign immunity by the United States. "It long has been established, of course, that the United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" United States v. Testan, 424 U.S. 392, 399 (1976) (omission in original) (quoting United States v. Sherwood, 312 U.S. 584, 586 (1941)). Thus, the Court of Federal Claims has no jurisdiction over a cause of action except to the extent that Congress has waived sovereign immunity. Id. Moreover, "in a Court of Claims context . . . , a waiver of the traditional sovereign immunity 'cannot be implied but must be unequivocally expressed.'" Id. (quoting United States v. King, 395 U.S. 1, 4 (1969)). Given this construction, the jurisdiction of the Court of Federal Claims extends as far, but only as far, as the United States has consented to suits against it. "The jurisdiction of the Court of Federal Claims is prescribed by the metes and bounds of the United States' consent to be sued in its waiver of immunity." RHI Holdings, 142 F.3d at 1461.

Plaintiff bears the burden of proving subject matter jurisdiction. See Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998) (plaintiff must establish subject matter jurisdiction by preponderance of evidence). However, in rendering a decision on a motion to dismiss for lack of subject matter jurisdiction, all undisputed factual allegations are presumed to be true. Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 747 (Fed. Cir. 1988).

2. Statute of limitations

Plaintiff properly has alleged a contractual relationship with the United States Government. See Compl. ¶¶ 18-20; see also Berg's Estate v. U. S., 687 F.2d 377, 377-380 (Ct. Cl. 1982) (bonds are contracts between United States and registered bondholder); Rotman v. United States, 31 Fed. Cl. 724, 724 (1994) ("A U.S. Savings Bond is a contract between the

United States and the person to whom it is registered."). Defendant interposes the statute of limitations governing plaintiff's claims, which provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. Filing a claim within the six-year statute of limitations prescribed in 28 U.S.C. § 2501 is a prerequisite to the court's exercising jurisdiction over a claim. John R. Sand & Gravel, __ U.S. __, 128 S. Ct. 750, 757 (2008) (reaffirming precedent under principles of *stare decisis* that Tucker Act's statute of limitations is "jurisdictional").

Defendant argues that plaintiff "attributes the cause of liability to an act of the United States Congress" – authorization of the GTIT. Def.'s Br. filed Apr. 18, 2007, at 12. The GTIT was authorized by Congress in 1950 as a part of the Organic Act of Guam establishing the Government of Guam. According to defendant, the authorization of the GTIT was the last – and only – act that the United States Government committed that could give rise to the alleged breach in question. Thus, the six-year statute of limitations would begin running in 1950. Recognizing that plaintiff had not entered into any USGO contracts until 1978, when it began purchasing and holding USGOs, defendant alternatively argues that the statute of limitations began to run in 1978.

Plaintiff would trigger the statute of limitations in 2003, when plaintiff first paid the GTIT to the GDRT as part of its settlement of the lawsuit that plaintiff filed in the Guam district court in 2001. Plaintiff sees a parallel between the timing of the breach and the situation examined in Franconia Assocs. v. United States, 536 U.S. 129 (2002). Franconia involved an option allowing contracting parties to prepay government loans entered into in 1979. Congress was concerned about the import of prepayments on the subsidized housing programs that these loans were intended to foster. To this end Congress changed the law several times, notably by passing the Emergency Low Income Housing Preservation Act of 1987, Pub. L. No. 100-242, 101 Stat. 1815 (1988) ("ELIHPA"). ELIHPA, among other objectives, undertook to forestall the borrowers' exercise of their prepayment rights on these loans and thereby to prevent removal of the properties from the low-income housing program. The borrowers in Franconia sued the United States in 1997, contending that ELIHPA and other changes in the law had effected a repudiation of their contracts with the Government. The Government countered that the cause of action was a breach which accrued in 1988 upon passage of ELIHPA and that by 1997, when the borrowers sued, the six-year statute of limitations had run.

The Supreme Court held that whether the claims were filed within the six-year statute of limitations was a function of "when the Government breached the prepayment undertaking stated in the promissory notes," because a cause of action for breach of contract accrues, and correspondingly the statute of limitations begins to run, at the time of the breach. Franconia,

536 U.S. at 141. The Court characterized the Government's duty of performance as one "to accept prepayment and execute the appropriate releases," id. at 142, because "[f]ailure by the promisor [the Government] to perform at the time indicated for performance in the contract establishes an immediate breach." Id. at 142-43. The passage of ELIHPA operated as a "renunciation of a contractual duty *before* the time fixed in the contract for . . . performance." Id. at 143 (internal quotations omitted). In other words, because the time for the Government's performance had yet to arrive, the passage of ELIHPA represented an anticipatory repudiation.

"'An anticipatory repudiation occurs . . . when an obligor communicates to an obligee that he will commit a breach in the future.'" Id. at 139 (quoting Franconia v. United States, 240 F.3d 1358, 1363 (Fed. Cir. 2001)). A party faced with anticipatory repudiation may elect to treat such repudiation as an immediate breach, or it may choose to wait until the repudiating party actually breaches the contract. See Ind. Mich. Power Co. v. United States, 422 F.3d 1369, 1373 (Fed. Cir. 2005). Based on this reasoning, plaintiff urges the court to reject defendant's arguments that plaintiff's claims accrued, and the statute of limitations began to run, in 1950, with the passage of the Organic Act of Guam, or in 1978, when plaintiff began purchasing and holding USGOs. Plaintiff correctly reads the case law. Plaintiff had the option to await action by the United States Government that breached the contracts.

Plaintiff's position that its claims accrued only in 2003 when it paid its settlement to the GDRT, however, cannot be accepted. When the GDRT issued its Notice of Deficiency on January 24, 2001, that demand for payment of the GTIT constituted the breaching act that plaintiff alleges. Before the statute of limitations expired on January 24, 2007, plaintiff had filed its complaint on January 17, 2007. The passage of the Organic Act of Guam might have effected an anticipatory repudiation with respect to contracts existing at the time. The filing of the Notice of Deficiency in January 2001, in contrast, constituted an actual breach, not an anticipatory repudiation. Plaintiff filed suit within six years of this actual breach. Defendant's motion to dismiss for lack of jurisdiction based on the time bar of the statute of limitations therefore is denied.

3. Allegations of fraudulent misrepresentation or inducement to contract

Defendant has objected to a tort claim: "[A]ssuming that the Bank intended to allege that it was the victim of some sort of fraudulent misrepresentation or inducement to purchase USGOs because they were exempt specifically from the GTIT, such a claim would be a tort claim expressly beyond the Court's jurisdiction." Def.'s Br. filed Apr. 18, 2007, at 16-17. Plaintiff rejoins that "[t]he fact is that the Bank has brought a claim for breach of contract, nothing else." Pl.'s Br. filed June 20, 2007, at 12. Defendant's argument is moot.

4. Declaratory judgment

Plaintiff's fourth count seeks a declaration of present and future contractual responsibilities. Plaintiff asks this court to declare that the United States Government is obligated to reimburse plaintiff for any GTIT plaintiff pays for income that it realizes from the USGOs purchased under the contract term on the face of the USGOs or the statutory and regulatory representations that such income is free from taxation by the government of Guam. See Compl. ¶ 35.

Defendant responds that jurisdiction cannot be based on "anticipatory" claims. See Def.'s Br. filed Apr. 18, 2007, at 17-18. Defendant also stands on the proposition that jurisdiction to issue declaratory relief is dependent upon a claim for money presently due.

The Tucker Act confers on the Court of Federal Claims jurisdiction to adjudicate claims for monetary damages against the United States "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The court has jurisdiction to grant equitable relief, primarily in cases involving protests of the government procurement process. See 28 U.S.C. § 1491(b)(2); Banknote Corp. of Am., Inc. v. United States, 365 F.3d 1345, 1350 (Fed. Cir. 2004). The court also can grant limited equitable relief ancillary to claims for monetary relief over which it has jurisdiction. See 28 U.S.C. § 1491(a)(2).

Apart from ordering relief under 28 U.S.C. §§ 1491(a)(2) or (b)(2), the Court of Federal Claims has no power to grant a declaratory judgment. Nat'l Air Traffic Controllers Ass'n v. United States, 160 F.3d 714, 716 (Fed. Cir. 1998). The Court of Federal Claims cannot adjudicate a complaint that seeks only declaratory relief. Id. at 716-17. See United States v. King, 395 U.S. 1, 5 (1969) ("In the absence of an express grant of jurisdiction from Congress, we decline to assume that the court of Claims has been given the authority to issue declaratory judgments."). The United States Court of Appeals for the Federal Circuit has reaffirmed that the Court of Federal Claims lacks jurisdiction to grant declaratory judgments. See Gonzales & Gonzales Bonds and Ins. Agency, Inc. v. Dep't of Homeland Sec., 490 F.3d 940, 944-46 (Fed. Cir. 2007).

Because the court cannot grant equitable relief unrelated to a claim for monetary relief pending before the court, Katz v. Cisneros, 16 F.3d 1204, 1208 (Fed. Cir.1994), it is not sufficient that the court's decision may affect the disposition of a monetary claim pending elsewhere, or that the court's decision ultimately will enable plaintiff to receive money from the Government. See King, 395 U.S. at 4 ("[C]ases seeking relief other than money damages from the [United States] Court of Claims have never been 'within its jurisdiction.'"). The basic

rule that the Supreme Court announced in King is the law today and has not been changed by subsequent legislation. See N.Y. Life Ins. Co. v. United States, 118 F.3d 1553, 1556 (Fed. Cir. 1997), cert. denied, 523 U.S. 1094 (1998) (quoting Eastport S.S. Corp. v. United States, 178 Ct. Cl. 599 (1967) ("[I]t is not every claim involving or invoking the Constitution, a federal statute, or a regulation which is cognizable here. The claim must, of course, be for money.")). Plaintiff's claim for declaratory relief – pleaded in a separate count and not incident to a money claim – cannot be entertained. To the extent that it presumes a money judgment under the first three counts of the complaint, it has been orphaned; the court resolves the motion to dismiss plaintiff's contract claims in defendant's favor.

## II. Motion to dismiss on the merits

### 1. Standards for motions to dismiss under RCFC 12(b)(6)

Plaintiff alleges that defendant promised that income from the USGOs would be "exempt from all taxation now or hereafter imposed . . . by . . . any of the possessions of the United States." Compl. ¶ 7 (omissions in original). The core issue becomes whether the GTIT is actually a tax imposed by Guam, a possession of the United States, as plaintiff argues, or whether the GTIT is a tax imposed by Congress, as defendant argues.

The court's task in considering a motion to dismiss for failure to state a claim is not to determine whether a plaintiff will ultimately prevail, but "'whether the claimant is entitled to offer evidence to support the claims.'" Chapman Law Firm Co. v. Greenleaf Constr. Co., 490 F.3d 934, 938 (Fed. Cir. 2007) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). In Bell Atlantic Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955 (2007), the United States Supreme Court clarified the standard enunciated in Conley v. Gibson, 355 U.S. 41 (1957), with respect to what a plaintiff must plead to survive a Rule 12(b)(6) motion. 4/ The Supreme Court circumscribed the standard, stating: "'[A]ny statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings.'" McZeal v. Sprint Nextel Corp., 501 F.3d 1354, 1356 n.4 (Fed. Cir. 2007) (quoting Twombly Corp., 127 S. Ct. at 1968). Accordingly, the court must assess whether plaintiff adequately states a claim

---

4/ The Conley standard, abrogated by Twombly, stated "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley, 355 U.S. at 45-46. Twombly retired the literal interpretation of Conley's "no set of facts" language "as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 127 S. Ct. at 1969.

and whether plaintiff can allege any facts that, if proven, would entitle it to the relief sought. See Twombly, 127 S. Ct. at 1968-69; McZeal, 501 F.3d at 1361-62.

Although plaintiff's factual allegations need not be "detailed," they "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1964-65 (internal citation omitted). The court thus "'accept[s] as true all factual allegations in the complaint, and . . . indulge[s] all reasonable inferences in favor of the non-movant,'" to evaluate whether plaintiffs have stated a claim upon which relief can be granted. Chapman Law Firm, 490 F.3d at 938 (omission in original) (quoting Sommers Oil Co. v. United States, 241 F.3d 1375, 1378 (Fed. Cir. 2001)).

2. Issue preclusion (or collateral estoppel)

Defendant asserts that issue preclusion, or collateral estoppel, precludes plaintiff from arguing that the GTIT is a tax imposed by Guam, not by Congress. According to defendant, this issue has been resolved in other cases involving other parties in Bank of America v. Chaco, 539 F.2d 1226 (9th Cir. 1976), and Gumataotao v. Director of Department of Revenue & Taxation, 236 F.3d 1077 (9th Cir. 2001), and that the identical issue was resolved against plaintiff in Bank of Guam, No. 01-CV-16, 2002 U.S. Dist. LEXIS 9662, the tax-refund petition that plaintiff filed in the Guam district court.

Often used interchangeably, the terms "issue preclusion" and "collateral estoppel," are considered synonyms, and the trend has been to refer to the denoted doctrine as issue preclusion. See, e.g., Foster v. Hallco Mfg. Co., 947 F.2d 469, 478 n.1 (Fed. Cir. 1991). The older term "res judicata," broadly speaking, encompasses issue preclusion, as well as claim preclusion. Carson v. Dep't of Energy, 398 F.3d 1369, 1375 (Fed. Cir. 2005).

Four prerequisites must be met before the doctrine of issue preclusion can be applied to preclude a party from rearguing a particular issue in an ongoing litigation: "'(1) identity of the issues in a prior proceeding; (2) the issues were actually litigated; (3) the determination of the issues was necessary to the resulting judgment; and, (4) the party defending against preclusion had a full and fair opportunity to litigate the issues.'" In re Trans Tex. Holdings Corp., 498 F.3d 1290, 1297 (Fed. Cir. 2007) (quoting Jet, Inc. v. Sewage Aeration Sys., 223 F.3d 1360, 1365-66 (Fed. Cir. 2000)). No dispute exists that the issue before the Guam district court was whether the GTIT is a tax imposed by Guam or by Congress, nor is it disputed that this issue is identical to the one that plaintiff now brings before the court. Plaintiff cannot dispute that it had a full and fair opportunity to litigate the issue, nor that it was well represented by counsel throughout the prior litigation. While this issue was actually litigated,

the parties do dispute to what extent the issue was determined beyond tax years 1992, 1993, and 1994 and whether a resulting judgment ever entered.

In Bank of Guam, 2002 U.S. Dist. LEXIS 9662, the Guam district court held that the Director of the GDRT did not err in determining that the GTIT was a tax imposed by Congress, not a tax imposed by Guam, and that income from plaintiff's USGOs was subject to the GTIT. Id. at *7. The court granted the Director's motion to dismiss with regard to this first claim of plaintiff's petition. It held that this count was "not supported by a legally cognizable theory because it is directly contrary to controlling substantive law." Id. at *15 (citing to Gumataotao, 236 F.3d 1077). While the district court granted the Director's motion to dismiss with respect to plaintiff's first claim, it denied the motion with respect to the remaining two claims – (1) whether the Director was equitably estopped from assessing the tax due to representations to the contrary and (2) whether retroactive application of a court decision might constitute an abuse of discretion. For that reason the litigation continued. While the Guam district court issued an opinion and order dismissing plaintiff's first claim, it did not enter judgment because the litigation was ongoing. 5/ The final judgment of September 12, 2003, was entered pursuant to a stipulated settlement. The judgment reads, in its entirety: "Judgment is hereby entered in accordance with the Stipulated Decision re Settlement filed September 12, 2003." Bank of Guam, 01-CV-16; Pl.'s Br. filed Jan. 30, 2007, at Ex. D.

Defendant argues that the issue of whether the GTIT is a tax imposed by Guam or by Congress was actually litigated and that the determination of this issue was necessary to the resulting judgment. Indeed, defendant contends that the grant of the Director's 12(b)(6) motion to dismiss itself operates as a judgment. See Def.'s Br. filed Jan. 17, 2008, at 5 ("[D]ismissal under . . . 12(b)(6) is a judgment on the merits." (quoting Pedra v. Chun, 906 F. Supp. 1377,

---

5/ In this circuit, as well as others, there is a general policy disfavoring interlocutory review of trial court determinations

> because such review results in piecemeal treatment of litigation. Intermediate appeals disrupt and delay proceedings at the trial level. From the perspective of the reviewing court, interlocutory appeals may require decisions without the full factual and legal context. Furthermore, it can result in the waste of judicial resources in deciding issues which are subsequently rendered moot.

Allied Materials & Equip. Co. v. United States, 223 Ct. Cl. 657, 659 (1980); see Fed. R. Civ. P. 54(b) (providing for "the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay").

1401 (D. Haw. 1995) (citing Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 399 n.3 (1981)))). Defendant misunderstands the import of Federated Department Stores. While the Supreme Court observed that "dismissal for failure to state a claim" is a "'judgment on the merits,'" 452 U.S. 394, 399 n.3, it held only that 12(b)(6) motions address the merits of a claim. By extension, any judgment entered pursuant to a 12(b)(6) dismissal operates as a judgment on the merits. The Guam district court did not enter judgment pursuant to Fed. R. Civ. P. 54(b), see supra note 5, at the time it issued its opinion and order granting the Director's 12(b)(6) motion with respect to plaintiff's first claim or at any time thereafter. The court did not direct entry of judgment on this claim or incorporate its earlier ruling when it ordered entry of judgment on the claims that were settled per the stipulation. The only judgment entered in that case was pursuant to the stipulated settlement agreement between plaintiff and the Director, and the stipulation did not purport to settle claims other than for the three tax years in suit.

The language of the stipulated settlement contemplated only that plaintiff would pay $5,000,000.00 as the deficiency for the tax years in suit and that the "respective concessions made by each party which led to the final resolution of each issue . . . . are limited to this proceeding and are not [to] be interpreted as concessions by either party with respect to any issue in any other proceeding or with respect to any other year." Stipulated Decision Re Settlement, Bank of Guam v. Dir. of Dep't of Revenue & Taxation, 01-CV-16 (D. Guam. filed Sept. 12, 2003) at 1-2 (emphasis added); Pl.'s Br. filed Jan. 30, 2007, at Ex C. Because the judgment was restricted to the terms of the stipulation, and the stipulation self-referenced as the "decision" in the case, a final judgment dismissing plaintiff's first count never entered. Plaintiff also emphasizes that the Guam district court did not make findings of fact or conclusions of law, that the case was never tried, and that there was no opportunity to appeal.

Plaintiff cites United States v. International Building Co., 345 U.S. 502 (1953), in which the Supreme Court considered the effect of entry of formal decisions pursuant to a stipulated agreement. In that case the United States Tax Court "held no hearing; no stipulations of fact were entered into; no briefs were filed or argument had." Int'l Building Co., 345 U.S. at 504. The Supreme Court held that

> the decisions entered by the Tax Court . . . were only a pro forma acceptance by the Tax Court of an agreement between the parties to settle their controversy for reasons undisclosed. There is no showing either in the record or by extrinsic evidence . . . that the issues raised by the pleadings were submitted to the Tax Court for determination or determined by that court. They may or may not have been agreed upon by the parties. Perhaps, as the Court of Appeals inferred, the parties did agree on the basis for depreciation. Perhaps the settlement was made for a different reason, for some exigency arising out of the bankruptcy

> proceeding. As the case reaches us, we are unable to tell whether the agreement of the parties was based on the merits or on some collateral consideration. Certainly the judgments entered are res judicata of the tax claims for [the relevant years], whether or not the basis of the agreements on which they rest reached the merits. But unless we can say that they were an adjudication of the merits, the doctrine of estoppel by judgment would serve an unjust cause: it would become a device by which a decision not shown to be on the merits would forever foreclose inquiry into the merits. Estoppel by judgment includes matters in a second proceeding which were actually presented and determined in an earlier suit . . . . A judgment entered with the consent of the parties may involve a determination of questions of fact and law by the court. But unless a showing is made that that was the case, the judgment has no greater dignity, so far as collateral estoppel is concerned, than any judgment entered only as a compromise of the parties.

Id. at 505-06 (emphases added). The situation in International Building is not identical to the case at bar. The Guam district court ruled on the Director's motion to dismiss and determined the issue concerning the characterization of the tax. However, that ruling was not entered as a final judgment and the parties' stipulation did not indicate that the ruling was involved in the agreement to settle or incorporated in the stipulation. Indeed, the stipulation recited that the stipulation itself was the "decision" and that no concession on the merits had been made other than those in respect of the three tax years in suit. The situation thus is sufficiently similar such that the Supreme Court's reasoning leads to the same holding in the case at bar.

Entry of judgment demarcates finality from orders that do not have consequences that foreclose a party's rights to appeal. A federal court must be zealous to adhere to the requirements of its rules that either judgment enter on all claims or that judgment enter on fewer than all claims upon an express finding and direction. See Fed. R. Civ. P. 54(b); RCFC 54(b). The Federal Circuit recently observed that a stipulation for judgment must be restricted to its terms. See Doe v. United States, 513 F.3d 1348, 1352 (Fed. Cir. 2008) (interpreting judgment intended to reflect parties' stipulation narrowly). The judgment entered by the Guam district court pursuant to the stipulated agreement between plaintiff and the Director of the GDRT cannot serve to preclude plaintiff from arguing the issue of whether the GTIT is imposed by Guam or by Congress with respect to tax years that the stipulation and judgment do not bar.

2. Breach of express or implied contract

The core issue remains whether the GTIT is actually a tax imposed by Guam, a possession of the United States, as plaintiff argues, or whether the GTIT is a tax imposed by

Congress, as defendant argues. Plaintiff views each of the USGOs that plaintiff purchased as a separate contract between plaintiff and the Government. The core promise in this contract was that income from the USGOs was "exempt from all taxation now or hereafter imposed . . . by . . . any of the possessions of the United States." Compl. ¶ 7 (omissions in original). Plaintiff has been inconsistent, however, in characterizing the nature of the promise. Compare Compl. ¶ 7 ("exempt from all taxation now or hereafter imposed . . . by . . . any of the possessions of the United States." (omissions in original)) with Pl.'s Br. filed June 20, 2007, at 21 ("[plaintiff] alleges that [d]efendant promised in its contracts that there would be no territorial tax on USGO income").

The thrust of plaintiff's argument is that the United States Government promised that income from the USGOs would be exempt from taxation imposed by any of the possessions of the United States. If the GTIT is, as defendant argues, a tax imposed not by Guam but by the United States Congress, the GTIT does not constitute taxation imposed by a possession of the United States, and the levy of the GTIT on income from the USGOs purchased and held by plaintiff cannot constitute breach of an express or implied-in-fact contract.

The Federal Circuit has not had occasion to address the GTIT at all, let alone whether it is a tax imposed by Guam or by Congress. The United States Court of Appeals for the Ninth Circuit, the court that hears appeals from the United States District Court for the District of Guam, has decided at least two cases involving this issue. Gumataotao v. Dir. of Dep't of Revenue & Taxation, 236 F.3d 1077 (9th Cir. 2001); Bank of Am. v. Chaco, 539 F.2d 1226 (9th Cir. 1976). While the holdings of the regional circuits are not binding authority on the Court of Federal Claims, the Federal Circuit considers them persuasive authority that can be instructive or helpful. See, e.g., Summit Tech. Inc. v. Nidek Co., 435 F.3d 1371, 1376 (Fed. Cir. 2006) (when attempting to determine a circuit law on issue never addressed by that circuit, holdings of other regional circuits instructive); Teva Pharm. USA, Inc. v. Pfizer Inc., 405 F.3d 990 (Fed. Cir. 2005) (when addressing case or controversy requirements, approach of sister circuits considered).

In Bank of America, the Ninth Circuit addressed a statutory restriction on the manner in which the States could tax national banking associations located within their limits. The statute limited the imposition of tax by a State to one of four taxation schemes, including allowing the States to "tax such associations on their net income" or tax "according to or measured by their net income." Bank of Am., 539 F.2d at 1227 (internal quotations omitted). The statute also provided that the "imposition by any State of any one of the above four forms of taxation shall be in lieu of the others" and that "Guam is considered a State for the purpose of this Act." Id. (internal quotations omitted).

Because it was compelled to pay a 4% net profits tax imposed by the Government of Guam as a business privilege tax, Bank of America complained that the imposition of the GTIT violated the provisions of the statute that limited States (or Guam) to one form of taxation in lieu of all others. The Ninth Circuit recognized that, "[a]lthough there is no dispute that the Guam territorial income tax was enacted by Congress," the issue for resolution was "whether or not it is nevertheless to be considered an imposition by the Government of Guam for the purposes of" the statute at hand. Id. The court characterized the tax as "a territorial income tax mirroring the provisions of the federal tax code." Id. While "tax is collected by the Government of Guam for its own use in lieu of direct appropriations from the United States Treasury," the GTIT was organized in this fashion "primarily to relieve the United States Treasury of the necessity of making direct appropriations." Id. The Ninth Circuit concluded that "[A]lthough Congress has delegated the collection and enforcement functions to the Government of Guam, the latter is powerless to vary the terms of the federal income tax laws as applied to Guam, except as permitted by Congress." Id. at 1227-28. The holding followed that "the Guam territorial income tax is not a tax imposed by Guam for the purposes" of the statute that prohibited duplicative taxation of national banking associations by States or by Guam. Id.

The Gumataotao decision is even more directly on point with, if not identical to, the issue presented by plaintiff's complaint. Mr. Gumataotao was a Guam resident who received a substantial amount of interest income from United States bonds. In filing his GTIT returns, he reported that the interest from those United States bonds was non-taxable, and he did not pay tax on that income. Just as in this case, the Director of the GDRT issued a deficiency notice to Mr. Gumataotao, and, just as in this case, Mr. Gumataotao filed a petition in the Guam district court seeking a redetermination of his tax liability. Gumataotao 236 F.3d at 1078-79. Mr. Gumataotao's argument, as characterized by the Ninth Circuit, could be viewed as consisting of four propositions, three of which are relevant to the case at bar:

> [1)] As a possession of the United States, Guam cannot constitutionally tax a U.S. bond because the federal government has not "explicitly consented" to such a tax. [2)] Title 31 U.S.C. § 3124(a), which precludes states from taxing the interest on federal bonds, prevents Guam from taxing U.S. bonds. [3)] Allowing Guam to tax U.S. bonds is "manifestly inapplicable or incompatible" with Congressional intent.

Id. at 1079. The Ninth Circuit rejected each of Mr. Gumataotao's arguments.

Mr. Gumataotao argued "that it is unconstitutional for Guam, a possession of the United States, to tax an instrumentality of the federal government." Id. at 1081. The Ninth Circuit discounted the argument "for one simple reason: Guam did not pass any law purporting to tax

the federal bonds, Congress did." Id. Congress employed one-way mirroring to avoid "the arduous task of writing an entirely new tax code for the possession of Guam." Id. Thus, because "it was Congress, in [26 U.S.C.] § 61(a)(4), that taxed the interest from U.S. bonds," and because "it was Congress that applied the provisions of the I.R.C. to Guam taxpayers" through the one-way mirroring of 48 U.S.C. §§ 1421i(a), (d), (e), the GTIT was a tax imposed by Congress, not by Guam. Gumataotao, 236 F.3d at 1081.

Mr. Gumataotao also argued that 31 U.S.C. § 3124 (2000), exempts the interest paid on USGOs from the GTIT. This argument is identical to plaintiff's. The statute provides that "[s]tocks and obligations of the United States Government are exempt from taxation by a State or political subdivision of a State." Id. The parties in Gumataotao initially disputed whether Guam is a "State" for the purposes of 31 U.S.C. § 3124. Even assuming that Guam was a "State" for the purposes of the statute, the Ninth Circuit ruled that the provision is irrelevant because the GTIT is a tax imposed by Congress, not by the legislature of Guam. Gumataotao, 236 F.3d at 1082.

Finally, Mr. Gumataotao argued that allowing the GTIT to reach income from interest on USGOs would be "'manifestly inapplicable or incompatible' with Congressional intent in passing the Income Tax Section," given that Congress's intent was "for the [GTIT] to be treated as a separate Territorial tax, and that to permit such taxation [of USGOs] would be treating the [GTIT] not as a separate territorial tax," but as a federal tax. Id. (internal quotations omitted). The Ninth Circuit noted that Mr. Gumataotao misunderstood Congressional intent, which was "to provide uniform tax treatment for U.S. and Guam taxpayers." Id. (citing Sayre & Co. v. Riddell, 395 F.2d 407, 410 (9th Cir. 1968)). According to the court, "allowing Guam to tax the interest from federal bonds would not 'severely frustrate' the intent of Congress to promote uniform tax treatment between U.S. and Guam taxpayers." Id.

This court agrees with the Ninth Circuit's reasoning in Gumataotao and Bank of America. The GTIT was established to provide a tax structure that applied to Guam residents that mirrored the Federal Internal Revenue Code without having to enact and implement a new tax code. The Governor of Guam was given authority to collect the GTIT for ease of administration, saving Congress from having to make appropriations for Guam's use and saving the IRS from having to engage in tax collection in the South Pacific. While Guam has been given the authority to unlink its tax structure from the mirroring of the GTIT, see Tax Reform Act of 1986, §§ 1271, 1277(b), Pub. L. No. 99-514, 100 Stat. 2085 (1986), "until and unless it does so, it was Congress, not the Guam government, that imposed a tax on U.S. bonds." Gumataotao, 236 F.3d at 1081; see Bank of Am., 539 F.2d at 1227.

Income earned on USGOs is subject to federal income tax imposed by Congress; because the GTIT, imposed by Congress, is a mirror of the federal income tax, income earned on USGOs is likewise subject to the GTIT. While the GTIT is collected by Guam, it is not imposed by Guam, but by Congress. Therefore, the imposition of the GTIT cannot constitute a breach of either an express or implied contract, as plaintiff alleges. Defendant's motion to dismiss is granted with respect to plaintiff's first count, for breach of express contract, and plaintiff's third count, for breach of an implied-in-fact contract.

3. Reformation

In the second count of its complaint, plaintiff alleges that, at all times prior to the Gumataotao decision, both the United States Government and plaintiff understood that Congress did not authorize the imposition of any GTIT on income realized from USGOs purchased by plaintiff and that this understanding was a mutual and reasonable mistake. Mutual mistake requires reformation of all the contracts pertaining to USGOs purchased by plaintiff. See Compl. ¶ 23. Plaintiff seeks reformation of the contracts to include an obligation requiring the United States to reimburse and indemnify plaintiff for all GTIT that plaintiff has paid to Guam on account of income that plaintiff has realized from the USGOs and all GTIT that plaintiff may be required to pay on account of such future income. Id.

Reformation of a written agreement on the ground of mutual mistake is an extraordinary remedy and is available only upon presentation of satisfactory proof of four elements:

> (1) the parties to the contract were mistaken in their belief regarding a fact; (2) that mistaken belief constituted a basic assumption underlying the contract; (3) the mistake had a material effect on the bargain; and (4) the contract did not put the risk of the mistake on the party seeking reformation.

Atlas Corp. v. United States, 895 F.2d 745, 750 (Fed. Cir.1990).

Because it does not allege a common mistake of fact between the parties, the complaint does not plead mutual mistake. The complaint does not allege that the United States Government, at any time, has acted to exempt entirely income earned from USGOs from the GTIT. Plaintiff's complaint alleges only that the Government has represented that USGOs were exempt from taxation imposed by a possession. See Compl. ¶ 7 ("[T]he Bank purchased a number of USGOs that stated in boldface print that they were 'exempt from all taxation now or hereafter imposed . . . by . . . any of the possessions of the United States.'"). Reformation is not an available remedy, and defendant's motion to dismiss is granted with respect to plaintiff's second count.

## CONCLUSION

Plaintiff alleges that the United States Government undertook the obligation to exempt income realized from the USGOs plaintiff purchased from taxation imposed by any of the possessions of the United States. The GTIT is a tax imposed by Congress, not a tax imposed by Guam or any possession of the United States. The Government has not breached the contracts it entered into with plaintiff covering tax years pleaded in the complaint. Accordingly, based on the foregoing,

**IT IS ORDERED,** as follows:

1. Defendant's motion to dismiss pursuant to RCFC 12(b)(1) is granted with respect to plaintiff's claim for breach of contract relating to all tax years prior to 2001 and the fourth count of plaintiff's complaint and otherwise is denied.

2. Defendant's motion to dismiss pursuant to RCFC 12(b)(6) is granted with respect to the first, second, and third counts of plaintiff's complaint.

3. The Clerk of the Court shall dismiss the complaint as to breach of contract relating to all tax years prior to 2001 and as to plaintiff's claim for declaratory relief (the fourth count) without prejudice for lack of subject matter jurisdiction. The Clerk of the Court shall enter judgment dismissing the complaint as to all claims for breach of contract and reformation (the first, second, and third counts).

**IT IS SO ORDERED.**

s/ Christine O.C. Miller

__________________________________

**Christine Odell Cook Miller**
Judge